UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEFANO PICCIOTTO, ) <br> JUDITH PICCIOTTO, ) <br> MELITA PICCIOTTO, ) <br> ATHENA PICCIOTTO, and ) <br> FOREIGN CAR CENTER, ) <br> INC., ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CONTINENTAL ) <br> CAUSUALTY COMPANY, ) <br> GREAT NORTHERN ) <br> INSURANCE COMPANY, ) <br> NEUROLOGICAL REFERRAL ) <br> CENTER, INC., and ROBERTA ) <br> F. WHITE, ) <br>    Defendants. ) <br> ) | DOCKET NO: 05-10901-DPW |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OF DEFENDANT CONTINENTAL
CASUALTY COMPANY PURSUANT TO RULE 12(b)(1)**

**Introduction**

The plaintiffs' complaint must be dismissed because there is not complete diversity between the plaintiffs and defendants and, thus, this court does not have jurisdiction over the subject matter.

**The Complaint**

The plaintiffs' stated basis of jurisdiction is diversity. (Civil Cover Sheet, attached hereto as Exhibit A). Paragraphs 1 through 6, inclusive, of the Complaint state as follows:

1.    Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto (hereinafter sometimes "the Picciottos") are individuals who reside at 418 Lafayette Street, Salem, **Massachusetts**, 01970.

2.    Foreign Car Center, Inc. (hereinafter "Foreign Car") is a Massachusetts corporation that formerly had its principal office at 55 Walnut Street, Peabody, **Massachusetts**.

3.    Defendant Continental Casualty Company (hereinafter "Continental") is a foreign corporation, and is an admitted insurance carrier in the Commonwealth of Massachusetts, with its principal office at CNA Plaza, 9th Floor, South Wabash, Avenue, Chicago, Illinois, 60685.

4.    Defendant Great Northern Insurance Company (hereinafter "Great Northern") is a foreign corporation, and is an admitted insurance carrier in the Commonwealth of Massachusetts, with its principal office at 15 Mountain View Road, Warren, New Jersey, 07059.

5.    **Defendant Neurological Referral Center, Inc.** (hereinafter "NRC"), is a Massachusetts corporation with its principal place of business at 720 Harrison Avenue, Boston, **Massachusetts**, 02118.

6.    **Defendant Roberta F. White** (hereinafter referred to as "White"), is a medical care provider who resides at 10 Hilliard Street, Cambridge, **Massachusetts**, 02138, and at al times relevant hereto was an employee of NRC.

(Complaint, attached hereto as Exhibit B) (emphasis added).

The basis of jurisdiction of the plaintiffs' complaint is diversity. However, while the plaintiffs are all residents or principally operated in Massachusetts, they have named a Massachusetts resident (White) and a Massachusetts corporation (NRC) with a principal place of business in Massachusetts as defendants. Because there is not complete diversity in this matter, this court does not have jurisdiction over the subject matter and the plaintiffs' complaint must be dismissed.

970394v1

## <u>Argument</u>

## <u>The Plaintiffs' Complaint Must Be Dismissed Because the Plaintiffs Have Not Alleged Complete Diversity at the Time of Filing.</u>

"It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' . . .It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing--whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."  <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 570-71, 124 S. Ct. 1920; 158 L. Ed. 2d 866 (2004), citing <u>Mullen v. Torrance</u>, 22 U.S. 537, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824).

"The time-of-filing rule is what it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful."  <u>Id.</u> at 580.  "Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful."  <u>Id.</u> at 582 (declining to adopt exception to time-of-filing rule).

Federal diversity jurisdiction is statutorily based; 28 U.S.C. § 1332(a) "confer[s] jurisdiction on federal courts to hear and determine suits between citizens of different states, as long as the amount in controversy exceeds $ 75,000."  <u>Gabriel v. Preble</u>, 396 F.3d 10, 13 (1st Cir. 2005).  "Diversity jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant."  <u>Id.</u> "It is incumbent on the federal courts, as courts of limited jurisdiction, to be scrupulous in applying the tenets that define the limits of their subject matter jurisdiction."  <u>Id.</u> at 16.

970394v1

Again, as the plaintiffs are all residents or principally operated in Massachusetts, and because they have named a Massachusetts resident and a Massachusetts corporation with a principal place of business in Massachusetts as defendants, there is not complete diversity and this court does not have jurisdiction over the subject matter. Gabriel, 396 F.3d at 13-16 (affirming District Court dismissal for lack of jurisdiction over the subject matter arising from lack of complete diversity); see also Hoover v. Gershman Inv. Corp., 774 F. Supp. 60, 64-65 (D. Mass. 1991) (dismissing pro se plaintiff's complaint for lack of jurisdiction over the subject matter arising from lack of complete diversity);[1] Wharton v. Feeley, 1987 U.S. Dist. LEXIS 10039, *5 (D. Mass. 1987) (allowing defendant's motion to dismiss for lack of jurisdiction over the subject matter arising from lack of complete diversity).[2]

### Conclusion

Wherefore, Continental Casualty Company respectfully requests this Honorable court dismiss the plaintiffs' complaint pursuant to Rule 12(b)(1) for lack jurisdiction over the subject matter arising from lack of complete diversity.

---

[1] The Hoover court also allowed the defendant's motion for Rule 11 sanctions against the pro se plaintiff whose allegations of diversity jurisdiction were not well grounded in fact or warranted by existing law. 774 F. Supp. at 65.

[2] The Wharton court also imposed Rule 11 sanctions upon plaintiff's counsel for failing to make reasonable inquiry into the basis for diversity jurisdiction. 1987 U.S. Dist. LEXIS 10039 at *5, citing Kearney v. Todd L. Smith, P.A., 624 F. Supp. 1008, 1015 (S.D.N.Y. 1985) (court imposed sanctions where plaintiff based federal jurisdiction on diversity but failed to allege facts creating diversity in the complaint); Weisman v. Rivlin, 598 F. Supp. 724, 726-27 (D.D.C. 1984) (court imposed sanction of $200 against plaintiff's attorney where the complaint in a diversity action on its face showed that diversity was not complete).

970394v1

Respectfully submitted,
Continental Casualty Company

By its attorneys,

MORRISON MAHONEY LLP

/s/ burke
_____
Scott Douglas Burke~BBO No. 551255
Michael H. Hayden~BBO No. 660746
250 Summer Street
Boston, MA 02210
(617) 439-7500

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

C.A. NO.

| | |
|---|---|
| STEFANO PICCIOTTO, JUDITH PICCIOTTO, MELITA PICCIOTTO, ATHENA PICCIOTTO, and FOREIGN CENTER, INC., <br>    Plaintiffs <br>    v. <br> CONTINENTAL CAUSUALTY COMPANY, GREAT NORTHERN INSURANCE COMPANY, NEUROLOGICAL REFERRAL CENTER, INC., AND ROBERTA F. WHITE <br>    Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**05  10901 DPW**

RECEIPT # _63918_
AMOUNT $____250.00____
SUMMONS ISSUED__4__
LOCAL RULE 4.1_____
WAIVER FORM ____—____
MCF ISSUED____—____
BY DPTY. CLK.____M P____
DATE____5/3/05____

MAGISTRATE JUDGE ____MBB____

## COMPLAINT

1.      Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto (hereinafter sometimes "the Picciottos") are individuals who reside at 418 Lafayette Street, Salem, Massachusetts, 01970.

2.      Foreign Car Center, Inc. (hereinafter "Foreign Car") is a Massachusetts corporation that formerly had its principal office at 55 Walnut Street, Peabody, Massachusetts.

3.      Defendant Continental Casualty Company (hereinafter "Continental") is a foreign corporation, and is an admitted insurance carrier in the Commonwealth of Massachusetts, with its principal office at CNA Plaza, 9th Floor, South Wabash, Avenue, Chicago, Illinois, 60685.

4.      Defendant Great Northern Insurance Company (hereinafter "Great Northern") is a foreign corporation, and is an admitted insurance carrier in the Commonwealth of Massachusetts, with its principal office at 15 Mountain View Road, Warren, New Jersey, 07059.

5.      Defendant Neurological Referral Center, Inc. (hereinafter "NRC"), is a Massachusetts corporation with its principal place of business at 720 Harrison Avenue, Boston, Massachusetts. 02118.

6.      Defendant Roberta F. White (hereinafter referred to as "White"), is a medical care provider who resides at 10 Hilliard Street, Cambridge, Massachusetts, 02138, and at al times relevant hereto was an employee of NRC.

7.      In June of 1998, the Picciottos and Foreign Car entered into a contract for legal representation with a proprietorship/partnership known as Krulewich and Associates and later known as Krulewich, Casher.

8.      During 1998, and for a substantial time thereafter, the proprietorship/ partnership of Krulewich and Associates and Krulewich, Casher operated its business from two offices; one at 50 Staniford Street in Boston, and the other at 153 Woodchester Drive, Newton, Massachusetts.

9.      The proprietors/partners of Krulewich and Associates and Krulewich, Casher were Leonard M. Krulewich and Helen D. Krulewich.

10.     Dana E. Casher of 4 Fawn Circle, Randolph, Massachusetts, was an attorney licensed to practice law in the Commonwealth of Massachusetts, and was an employee of Krulewich and Associates and Krulewich, Casher during the relevant time period.

11.    In 1998, Continental issued a professional liability insurance policy to Krulewich and Associates.

12.    Said policy ran from March 12, 1998, to March 12, 1999.

13.    In 1999, Continental issued a professional liability policy to Krulewich, Casher.

14.    Said Continental policy ran from March 12, 1999, to March 12, 2000.

15.    The Continental policy that ran from March 12, 1999, to March 12, 2000, carried an endorsement for coverage for an error or omission of any predecessor firm (endorsement no. G-118049-A).

16.    Great Northern issued an umbrella policy to Leonard Krulewich and Helen Krulewich during the relevant time period.

17.    Both the Continental policies and the Great Northern policies provided coverage for any injuries caused by Leonard and/or Helen Krulewichs' negligent supervision of the acts, errors, or omissions of the employee Dana E. Casher.

18.    Within a period that commenced in 1975 and extended to 1996, plaintiffs Stefano Picciotto and Judith Picciotto, who are the parents of plaintiffs Melita Picciotto and Athena Picciotto, received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede"). Said factory was located on premises that were adjacent to premises upon which Foreign Car Center, Inc. (hereinafter "Foreign Car"), a corporation owned by plaintiff Judith Picciotto and operated by plaintiff Stefano Picciotto, conducted its business.

3

19.    In 1983, Plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

20.    In September of 1993, after a jury trial, a judgment entered in said action against Salem Suede in favor of the Stefano Picciotto, Judith Picciotto, Foreign Car, and Juan Nunez (hereinafter referred to as "Nunez"). The judgment was upheld on appeal in a decision that was reported in 40 Mass. App. Ct. 15 (1996).

21.    Plaintiffs Melita Picciotto and Athena Picciotto also sustained injuries from exposure to the same toxic chemicals that caused injuries to their parents, and they further suffered harm though loss of parental consortium, affection, and nurture.

22.    In 1994, plaintiffs Melita Picciotto and Athena Picciotto filed an action against Salem Suede seeking to recover for such injuries and other harm that they had suffered. The action was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al* Essex Superior Court No. 94-2155.

23.    In 1996, Salem Suede, facing the judgment that plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and Nunez had obtained against it, and also facing said action that plaintiffs Melita Picciotto and Athena Picciotto had filed against it, filed a petition for bankruptcy in the U.S. Bankruptcy Court entitled *In re Salem Suede*, No. 96-13184 JNF. A related case filed at approximately the same time was *In re Zion Realty Corp.*, No. 96-14692 JNF.

24.    In 1997, plaintiff Melita Picciotto (together with the other Picciottos) filed an action against the Massachusetts Commissioner of Insurance in an effort to

unearth insurance coverage that Salem Suede held with The Travelers Indemnity Company (hereinafter "Travelers") but that Salem Suede and Travelers denied possessing, and also to seek an order that would compel the Commissioner to hold a hearing regarding Travelers' unfair and deceptive conduct in having denied that it provided such coverage. That action was entitled *Melita Picciotto v. Linda Ruthardt as Commissioner of Insurance,* Supreme Judicial Court No. 97-0511.

25.    On June 15, 1998, the Picciottos and Foreign Car entered into an agreement with Casher, an attorney now a principal in Krulewich, Casher, P.C., who then purported to be acting on behalf of a law partnership or proprietorship known as Krulewich, Casher, whereby Casher and the members of said partnership (defendant Leonard Krulewich, defendant Helen Krulewich and Casher) agreed to represent the Picciottos and Foreign Car in connection with the Salem Suede bankruptcy proceeding.

26.    In October of 1998, Casher, without the consent of the Picciottos and Foreign Car, and without the prerequisite "consultation" with them, took on the additional representation in the bankruptcy proceedings of Juan Nunez (hereinafter "Nunez"), a former employee of Foreign Car.

27.    After entering into said agreement, plaintiff Melita Picciotto and the other Picciottos continued to represent themselves in said Supreme Judicial Court action No 97-0511; and, with the help of a nonprofit consumer protection group by the name of United Policy Holders of America, she filed a *pro se* brief in the Massachusetts Supreme Judicial Court on December 24, 1998, whereby she was able to demonstrate that the claims that she, her family, and Foreign Car had against Salem Suede were covered by insurance policies that Travelers had issued to Salem Suede.

28.     Immediately thereafter, Travelers, in light of plaintiff Melita Picciotto's having so demonstrated the existence of such insurance coverage, called for a settlement conference to be held with a view towards settling all claims that the Picciottos, Foreign Car and Nunez had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

29.     The Picciottos and Foreign Car requested of Casher that she arrange for the attorneys who previously had represented them regarding claims that they had made against Salem Suede and Travelers to be included in such a settlement conference so that their claims for fees as well as the claims of the Picciottos and Foreign Car against Salem Suede and Travelers all could be resolved at one time. However, Casher refused to make any such arrangement.

30.     A settlement conference with Travelers commenced on January 5, 1999.

31.     At such conference, Casher represented the Picciottos, Foreign Car and Nunez.

32.     Nunez, throughout the settlement negotiations, was accompanied by Bergeron, his live-in girlfriend.

33.     Bergeron engaged in the negotiations on behalf of Nunez.

34.     On June 2, 1997, Nunez had signed a Proof of Claim that was filed on his behalf in the U.S. Bankruptcy Court stating, under the pains and penalties of perjury, that he was entitled only to the sum of $1,246,720.16.

35.     Casher allowed the negotiations for a settlement to run from approximately 10:00 A.M. on January 5, 1999, to 4:00 A.M. on January 6, 1999, with

6

only bathroom breaks being taken. In the early morning of January 6, 1999, all of Casher's clients were fatigued, in need of rest, and exhausted.

36.    In said settlement conference, Travelers ultimately offered to pay to the Picciottos, Foreign Car and Nunez the total sum of Nine Million Dollars ($9,000,000) to settle all of their claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

37.    Travelers took the position that it would leave it up to the parties whose claims would be settled by a settlement agreement to determine how to allocate among themselves such sum of Nine Million Dollars ($9,000,000).

38.    Nunez and Bergeron made an extremely advantageous settlement agreement on behalf of Nunez.

39.    Nunez and Bergeron demanded Three Million Dollars ($3,000,000) of the Nine Million Dollars ($9,000,000) settlement amount, even though Nunez's proof of claim in the bankruptcy court had been only in the sum of $1,246,720.16.

40.    Casher, the Picciottos, Foreign Car and Nunez conferred and agreed upon how such sum of Nine Million Dollars ($9,000,000) would be allocated among them should they agree to accept such sum in settlement of their claims. The agreed-upon allocations were:

> (a)    To plaintiff Melita Picciotto, the sum of One Million Five Hundred Thousand Dollars ($1,500,000);
>
> (b)    To plaintiff Athena Picciotto, the sum of Five Hundred Thousand Dollars ($500,000);

(c)    To plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car
Center, the sum of Four Million Dollars ($4,000,000); and

(d)    To Nunez, the sum of Three Million Dollars ($3,000,000).

41.    Casher, the Picciottos, Foreign Car and Nunez also agreed at such time
that, if they should accept such sum of Nine Million Dollars ($9,000,000) in settlement of
their claims, Casher would be paid One Million Dollars ($1,000,000) from such sum out
of which she would obtain full compensation for her legal services and pay to any other
attorney who previously had represented the Picciottos, Foreign Car and Nunez with
respect to their claims that were being settled such amounts as might be owed to them for
their services.

42.    The Picciottos and Foreign Car requested that they be allowed to take
home the proposed settlement contract that Travelers was offering in order to be able to
think about it after rest and to be able discuss its terms with independent counsel.

43.    Casher refused to allow the Picciottos to leave the settlement conference;
and, at approximately 3:00 A.M. on January 6, 1999, Casher instructed the Picciottos and
Foreign Car to sign the proposed contract.

44.    Casher at that time claimed that a settlement in the amount of
Nine Million Dollars ($9,000,000) was in the best interests of the Picciottos, Foreign Car
and Nunez; and she further declared specifically that, if the proposed agreement would be
entered into, Salem Suede's bankruptcy plan of reorganization could not be approved
without the Picciottos, Foreign Car and Nunez's receiving the amounts that they had
agreed to allocate among themselves as a condition of the settlement. Casher further
stated that, if the Picciottos, Foreign Car and Nunez were to enter into the settlement,

8

they would furnish Travelers with a release and an agreement to defend and to indemnify Travelers if any lawsuit should be brought against it by the attorney lienholders; and, when the bankruptcy proceedings would be dismissed, Travelers would pay over all of the settlement proceeds to Casher, as attorney for the Picciottos, Foreign Car and Nunez.

45.    Casher assured the Picciottos and Foreign Car that their fears of not receiving the settlement funds were wholly unfounded, and she called upon them to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of Nunez.

46.    The Picciottos and Foreign Car, in reliance upon the assurances of Casher, and in consideration of the payment to them of the amounts that they had agreed would be allocated to each of them from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement, and, as a consequence, to dismiss, with prejudice, all claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

47.    The Picciottos, Foreign Car and Nunez, all of whom were represented by Casher at said conference, as 4:00 A.M. on January 6, 1999, approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they had allocated among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement.

48.    Casher, in violation of the provisions of Rule 1.8 (g) of the Massachusetts Rules of Professional Conduct, did not cause to be placed in the settlement agreement itself the respective allocations of said sum of Nine Million Dollars ($9,000,000.00) that the Picciottos, Foreign Car and Nunez had agreed upon.

49.    The Picciottos, Foreign Car, and Mr. Nunez wanted the attorney liens resolved on January 6, 1999, as a global settlement.

50.    Casher assured the Picciottos, Foreign Car, and Mr. Nunez that it was not necessary, as she had made arrangements for a reasonable resolution of the previous attorney's fees.

51.    Further, at the settlement conference, Casher assured the plaintiffs that upon the bankruptcy of Salem Suede being dismissed, and upon delivering a release signed by all of the settlors to the Travelers, they would be able to receive the sums that they had settled for.

52.    On or about January 12, 1999, Casher realized that Travelers was not going to turn over the settlement funds until it received signed releases from each attorney lienholder.

53.    Casher contacted the attorney lienholders to obtain individual signed releases.

54.    The attorney lienholders refused.

55.    January 12, 1999, after a conversation with Attorney Gilleran and with Attorney McCabe, Casher became aware that she could not deliver on her settlement promises to the clients.

56.    January 12, 1999, Casher became aware, through her conversations with Attorney Gilleran and Attorney McCabe, that she had engaged in an act, error, or omission, at the settlement of January 6, 1999, that could lead to a potential claim.

57.    Casher notified Continental of the unreasonable conduct of the attorney lienholders, and of the potential claim, and Helen Krulewich and Leonard Krulewich

10

notified Great Northern of their negligent supervision of Casher and the potential claim.

58.     Continental and Great Northern took charge of the claim and, from that point on, directed the conduct of Casher, Leonard Krulewich, and Helen Krulewich.

59.     March 9, 1999, Continental, provided loss control guidance to the Krulewiches and to Casher.

60.     Continental sold Full Prior Acts coverage "FPA" to Casher, Leonard Krulewich, and Helen Krulewich.

61.     Under the direction of Continental and Great Northern, on March 12, 1999, Casher exercised coercive pressure on plaintiff Stefano Picciotto to cause him to acquiesce to her demand that he sign an amendment to the settlement agreement in order to release Travelers of its contractual obligation to pay the Picciottos, Foreign Car and Nunez the respective amounts for which they had settled their claims prior to funding Salem Suede's bankruptcy plan of reorganization.

62.     The amendment allowed Travelers to avoid paying the Picciottos, Foreign Car and Nunez. The amendment also allowed Travelers to avoid a claim that the Picciottos and Foreign Car could have pursued against it for breach of contract, and for violation of the provisions of G.L. c. 93A, § 9, G. L. c. 176D, §3(9)(f), and G. L. c. 175, §181 by reason of Travelers' refusal to comply with its contractual obligations to pay in accordance with the settlement agreement.

63.     Said amendment allowed Travelers to escape liability and file an interpleader action in the Suffolk Superior Court (Case No. 99-1594, entitled *Albert P. Zabin, et al v. Stefano Picciotto, et al*) and deposit virtually all of the money of the

Picciottos and Foreign Car, as well as all the other settlement funds, in a court-controlled escrow account.

64.     Under instructions from Continental and Great Northern, Casher prevented the Picciottos and Foreign Car from seasonally sending a G.L. c. 93A letter of demand to Travelers to force them to comply with the terms and conditions of the settlement agreement.

65.     Said M.G.L. c. 93A letter of demand would have exposed Travelers to double (i.e., 12 million dollars) or treble (i.e., 18 million dollars), plus interest, attorneys' fees, and costs, in damages to be paid over to the Picciottos and Foreign Car.

66.     The January 6, 1999, settlement settled all claims of the plaintiffs, Mr. Nunez, and Foreign Car Center, Inc., against Salem Suede, its principals, its attorneys and the Travelers, including the claims of Melita and Athena Picciotto that were engendered by the 1994 Essex Action, case no. 94-2155.

67.     Under the direction of Continental and Great Northern, Casher failed to properly answer the interpleader complaint and spell out all the claims that were settled, including the claims of Melita and Athena Picciotto.

68.     Specifically, under the direction of Continental and Great Northern, Casher failed to state that the settlement agreement settled the 1994 litigation.

69.     Under the direction of Continental and Great Northern, Casher also failed to file the proper crossclaims.

70.     Continental and Great Northern and Casher knew that the Picciottos and Foreign Car had a valid crossclaim or counterclaim against the attorney lienholders for their tortious interference with the Picciottos' and Foreign Car's contract with the

Travelers, but Continental and Great Northern prevented Casher from pleading that claim in state court.

71. Some of the attorney lienholders were also insured by Continental.

72. Continental, through their parent company Swiss Re, reinsured the policies that Travelers had issued to Salem Suede.

73. Great Northern, through the Chubb Group, also reinsured the policies issued by Travelers to Salem Suede.

74. Twin City Fire Insurance is a foreign corporation that insured the negligent acts, errors, or omissions of Albert P. Zabin and the firm of Schneider, Reilly, Zabin and Costello (hereinafter "Zabin").

75. Twin City Fire Insurance is a foreign corporation that insured the negligent acts, errors, or omissions of Michael C. Gilleran, Gilleran and Mortenson, and Pepe & Hazard (hereinafter "Gilleran").

76. First State Management Group, Inc., is a domestic corporation that is a subsidiary of Twin City, which acts as the claim management company for Twin City Fire Insurance.

77. Twin City Fire Insurance Company (hereafter "Twin City")and First State Management Group (hereafter "First State"), knew that their insureds had been negligent in handling the Picciotto and Foreign Car claims.

78. Twin City and First State knew that Zabin had been negligent by dismissing the valid existing G.L. c. 93A claim that was pled in the underlying complaint against Salem Suede by Foreign Car (Exhibit A), and not advancing the rightful G.L. c. 93A claim that the individual plaintiffs had against Salem Suede.

79.    Twin City and First State knew that Gilleran had been negligent by refusing to expose the bankruptcy fraud that Salem Suede engaged in, and that said refusal had caused the Picciottos and Foreign Car an injury.

80.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorney lienholders created a Joint Defense Team known as "The Picciotto Defense Group" to work in a "unified fashion with a single strategy" against the Picciottos and Foreign Car in the interpleader action.

81.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorney lienholders entered into a formalized Joint Litigation Agreement to assist them in unfair and deceptive strategies against the Picciottos and Foreign Car.

82.    Although pretending to the court and to the Picciottos, to be a neutral party, behind the scenes, the attorneys for Travelers were official members of "The Picciotto Defense Group."

83.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorney lienholders agreed to keep the "Joint Litigation Agreement" regarding "Picciotto Actions" secret and confidential.

84.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorney lienholders entered into a formal agreement for "Coordinated Litigation Activities" to assist them in their unfair and deceptive strategies against the Picciottos and Foreign Car.

85.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, one of the unfair litigation strategies was to lay

claim to the entire settlement fund as a trial strategy to prevent the Picciottos and Foreign car from being able to retain independent counsel and to be unable to properly litigate their unfair fee claims.

86.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorneys engaged in extortionist conduct, and knowingly and willfully violated M.G.L. c. 231, § 38, M.G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct promulgated thereunder by the SJC pursuant to it statutory authority.

87.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, the attorney lienholders engaged in bad faith conduct that is in violation of M.G.L. c.. 93A, 2(c), 2(a), and 9, and the Attorney Generals Rules and Regulations promulgated thereunder, more specifically 940 C.M.R. 3.16 (3).

88.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, Albert P. Zabin and other attorney lienholders who were procedurally realigned by the Suffolk Superior Court as plaintiffs in said Suffolk Superior Court interpleader action (counterclaims for malpractice having been filed against them by the Picciottos, Foreign Car and Nunez), claimed that they held a lien on all the settlement funds by reason of their previous representation of one or more of the plaintiffs herein and opposed any release to the plaintiffs of their respective settlement funds, including the funds of plaintiffs Melita Picciotto and Athena Picciotto with whom said attorneys had not entered into any contingency fee agreement, on the grounds that the internal unrecorded allocation of the settlement funds was not binding.

89.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, said attorneys contended that the internal allocation that Travelers had allowed to be made among the beneficiaries of the settlement agreement had been reached in bad faith in order to prevent said attorneys from fully collecting contractual fees owed to them by those of the Picciottos, Foreign Car and Nunez with whom they had contingency fee contracts.

90.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, said attorneys asserted that the monies that each of the Picciottos, Foreign Car and Nunez had agreed to accept in settlement of their claims, even those of them who had no contingency fee contract with said attorneys (Melita and Athena Picciotto), actually belonged to those of the Picciottos, Foreign Car and Nunez with whom said attorneys did have such contingent fee contracts.

91.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, Casher, Leonard Krulewich and Helen Krulewich, realizing that they, through Casher, had been negligent in connection with the representation of the Picciottos and Foreign Car, formed a new firm by the name of "Krulewich Casher, P.C.," for the purpose of shielding them from personal liability from potential future claims against them by the Picciottos and Foreign Car; and they purchased a new liability insurance policy from Twin City Fire Insurance Company to distance Continental and Great Northern from liability.

92.    Based on the arguments advanced by said attorneys who were working under the direction of Continental and Great Northern, in concert with Twin City and First State, the Suffolk Superior Court released to the Picciottos, Foreign Car and Nunez

only such sums as said court determined would be needed in order to provide them with a defense in said interpleader action with respect to the claims of said attorneys. The rest of the settlement funds remained held by the court in an escrow account accruing an extremely low rate of interest.

93.    February 11, 2000, the Suffolk Superior Court issued an order in said interpleader action specifying that at the close of the fact discovery, " . . . the Picciottos must plead with specificity any additional subsidiary factual information which does not presently appear in support of their claims and their counterclaims. If they do not, any additional materials will be barred. And they will have 14 days from the close of the fact based discovery in which to amend their counter claims and to plead with specificity any subsidiary facts."

94.    Casher knew that Melita and Athena Picciotto (in fact, all of the Picciottos) had valid claims for tortious interference with a contract, but under the direction of Continental and Great Northern, and working in concert with Twin City and First State, she did not advance such claims or plead the facts with specificity; thus, the claims were barred.

95.    Casher knew that Melita and Athena Picciotto (in fact, all of the Picciottos) had valid claims for civil conspiracy, but under the direction of Continental and Great Northern, and working in concert with Twin City and First State, she did not advance such claims or plead the facts with specificity; therefore, such claims were barred.

96.    In late April or early May of 2000, answers and affirmative defenses were due to be filed with respect to the claims of Attorney Edward Greer in said interpleader

17

action; however, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, failed to file an answer or affirmative defenses.

97.    In October of 2000, Casher, despite her knowledge that plaintiff Melita Picciotto wanted to represent herself in said interpleader action, and without the consent of plaintiff Melita Picciotto, under the direction of Continental and Great Northern, and working in concert with Twin City and First State, informed the Suffolk Superior Court, at a time when plaintiff Melita Picciotto was not present, that she would be representing plaintiff Melita Picciotto thereafter.

98.    Plaintiff Melita Picciotto attempted to represent herself in said interpleader action despite Casher's representation to the court that she was her attorney; and plaintiff Melita Picciotto filed a notice of appearance on her own behalf.

99.    The Suffolk Superior Court, in light of Casher's said representation, refused to allow plaintiff Melita Picciotto to represent herself and ordered Casher to continue representing said plaintiff.

100.    Casher was called as a witness against the Picciottos and Foreign Car in the trial of the Suffolk Superior Court interpleader action, her testimony being allowed over the Picciottos' and Foreign Car's objections; and, since the court regarded plaintiff Melita Picciotto as being represented by Casher rather than representing herself, plaintiff Melita Picciotto was deprived of an opportunity to cross-examine Casher.

101.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, Casher refused to allow the Picciottos and Foreign Car to engage the services of another attorney to cross-examine her when she so

testified; and, as a result, the Picciottos and Foreign Car were deprived of necessary legal representation during that portion of the trial.

102.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, in said interpleader action, the plaintiff attorneys (Zabin, et al.) filed a claim against plaintiffs Melita Picciotto, Athena Picciotto, Stefano Picciotto and Judith Picciotto under the provisions of G. L. c. 93A despite the fact that said plaintiffs never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute.

103.    At the trial of the interpleader action, the Picciottos and Foreign Car learned that Casher (acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State), had filed on their behalf (except for Foreign Car) an "Intentional Infliction of Emotional Distress" claim against the plaintiff attorneys instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof, and, therefore, preventing the jury from hearing evidence of occasions when the plaintiff attorneys had inflicted emotional distress upon said plaintiffs.

104.    At said trial, the Picciottos and Foreign Car asked Casher to attempt to introduce evidence that would support the claims that they had against the plaintiff attorneys in said action for having knowingly and willfully engaged in acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or in violation of the rules and regulations issued pursuant thereto, and in violation of G. L. c. 221, § 38; G. L. c. 271, § 39(b); G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct,

promulgated thereunder by the SJC pursuant to its statutory authority under G.L. c. 211, § 3 C; see *In the Matter of DeSaulnier*, Jr., 360 Mass. 757 (1971).

105.    Under the direction of Continental and Great Northern, and working in concert with Twin City and First State, Casher refused such requests of the Picciottos and Foreign Car, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial of violations of G. L. c. 93A. When the Picciottos and Foreign Car insisted that Casher at least attempt to introduce such evidence, and, if the judge would not allow the introduction thereof, that she make an "offer of proof," Casher's response was to stick her middle finger up towards Plaintiff Melita Picciotto and to tell her to "eat sh-t and die."

106.    On December 10, 2002, the Suffolk Superior Court ruled in the interpleader action that plaintiffs Melita Picciotto and Athena Picciotto could not testify or argue before the jury that they were entitled to obtain their settlement funds because Casher (under the direction of Continental and Great Northern, and working in concert with Twin City and First State), had not made a claim on their behalf in said action with respect to the settlement funds that were being held in the escrow account.

107.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, failed in said interpleader action:

> (a)    To make a claim on behalf of any of the Picciottos, Foreign Car or Nunez with respect to the settlement funds that were being held in the escrow account;
>
> (b)    To list in the answer or affirmative defenses to Travelers' complaint that the claims regarding Essex Superior Court action

No. 94-2155 also were settled as part of the settlement agreement with Travelers;

(c)    Elicit testimony from the attorney lienholders showing that they had been the parties who made any settlement impossible during the period of January 6, 1999 to April of 1999, by making excessive fee demands;

(d)    To explain to the court that the refusal to pursue the bankruptcy fraud of Salem Suede went to the issue of the breach of contract of Attorney Gilleran and Attorney McCabe, and was appropriate evidence for the fact finder in order to determine the true reason for the breakdown in the attorney-client relationships ( i.e., that the clients' requests were reasonable, but that the attorney lienholders wrongly refused to perform on their contracts);

(d)    To explain the value of the discovery of Salem Suede and the Travelers joint orchestration of a multimillion dollar bankruptcy fraud;

(e)    To confront the oppositions' experts with the evidence that would expose testimony to the jury to be false or erroneous;

(f)    To expose the false testimony of the attorney lienholders to the jury, in order to gain excessive fees and costs; and

(g)    Submit to the jury, as a jury question, the issue of interest, to determine who should be responsible for it (the plaintiff or the attorney lienholders).

108.    Prior to the trial of said interpleader action, Casher, under the direction of Continental and Great Northern, and working in concert with Twin City and First State, failed to *properly* move to dismiss the claims against the Picciottos and Foreign Car by plaintiff-attorney Edward Greer (hereinafter "Greer") under G. L. c. 221, Section 50, because Greer never appeared on behalf of any of the Picciottos or Foreign Car in the cases that were settled with Travelers.

109.    Also with respect to Greer in said interpleader action, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State:

(a)    Failed to seek a ruling that, since the court had ruled that the claims of the Picciottos and Foreign Car against Greer were barred by the statute of limitations, then Greer's claims against them also were so barred; and

(b)    Refused requests of the Picciottos and Foreign Car that she utilize evidence that would show that Greer was being untruthful in his testimony in claiming that the Picciottos and Foreign Car had induced him into representing them by suggesting that a person who had furnished information would be a willing witness when such evidence showed that he knew that such person would not agree to be a witness.

110.    As a result of the unfair or deceptive acts and practices of Casher, under the direction of Continental and Great Northern, and working in concert with Twin City

22

and First State, Geer obtained a judgment against the Picciottos and Foreign Car in said interpleader action based upon such untruthful and totally unchallenged testimony.

111.    During the trial of said interpleader action, Casher, under the direction of Continental and Great Northern, and working in concert with Twin City and First State:

    (a)    Did not answer the expert answers to interrogatories with specificity, thus causing the experts' testimony to be barred;

    (b)    Did not present expert testimony concerning certain aspects of malpractice engaged in by some of the plaintiff-attorneys while they had represented the Picciottos and Foreign Car;

    (c)    Failed to prepare properly the expert witnesses who testified on behalf of the Picciottos and Foreign Car;

    (d)    Did not present evidence that the breakdown of the relationship between the Picciottos and Foreign Car and the plaintiff-attorneys had resulted from the failure or refusal of said attorneys to pursue claims for bankruptcy fraud engaged in by Salem Suede and its insurer, Travelers, the eventual uncovering of which by the Picciottos, themselves, led to the willingness of Travelers to offer Nine Million Dollars ($9,000,000) to settle all claims against Salem Suede and Travelers; and

    (e)    Deliberately and intentionally misled Judith Picciotto regarding the follow-up actions Casher alleged to be taking to protect her from the oppositions' fraud and misconduct relative to Roberta White.

112.    In 1993, NRC provided medical services to plaintiff Stefano Picciotto.

113.    In 1994, NRC provided medical services to plaintiff Judith Picciotto.

114.    Roberta F. White, PhD, was the employee of NCR who executed the medical services on behalf of NRC to Stefano and Judith Picciotto.

115.    In order to wrongly aid the financial interests of her personal friends, Edward Greer and Albert P. Zabin, White provided a knowingly false affidavit and altered the medical records of Judith Picciotto.

116.    During discovery in the interpleader action, NRC negligently failed to supervise the actions of its employee White.

117.    NCR produced to the Picciottos medical expert, Lynn LeSeuer, PhD. (hereafter "LeSeuer"), its entire file on Stefano and Judith Picciotto, including all hand notes and memorandums.

118.    After NCR produced its entire and complete files regarding Stefano and Judith Picciotto to LeSeuer, White then added hand notes to the file for the benefit of her friends, Albert P. Zabin and Edward Greer.

119.    The hand notes were then used at the trial by the attorneys retained by Twin City and First State to wrongly undermine the credibility of the Picciottos, and to also destroy the credibility of their expert witness.

120.    All of the above was done under the direction of Continental and Great Northern, working in concert with Twin City and First State.

121.    Casher was instructed by Continental and Great Northern, working in concert with Twin City and First State, not to question Dr. LeSeuer about the materials she had that contradicted the hand notes of White.

24

122.    Casher was also instructed by Continental and Great Northern, working in concert with Twin City and First State, not to call White to the stand to be questioned about the hand notes, in order to allow the credibility of both LeSeuer and the Picciottos to be undermined with the jury.

123.    Casher was instructed by Judith Picciotto to subpoena White and NRC to obtain the alleged hand notes, and expose the fraud of White.

124.    Casher stated to Judith Picciotto that she was going to subpoena White and was going to get to the bottom of the fraud, but did nothing.

125.    After the trial of the interpleader action, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, attempted to argue that the court had barred her from introducing evidence supporting the claims of the Picciottos and Foreign Car under G. L. c. 93A, so the court should accept her post-verdict briefs on the subject. The court responded:

> As to the Picciotto parties' arguments concerning the 93A claim, the court has reserved to itself that issue upon the basis of evidence introduced at the jury trial. The court has not "barred evidence" of the 93A claim (opposition p. 10). The court required all the evidence upon all open claims to come in at the jury trial. It reserved to itself the claims and not the evidence. [docket entry number 510.0 of 1/17/02 in case no. 99-1594-A, Suffolk Superior Court]

126.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, failed to afford to the Picciottos and Foreign

Car competent and effective legal representation in and with respect to said interpleader action.

127.    After the trial of said interpleader action, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State:

> (a) Refused to answer questions that the Picciottos and Foreign Car had about the case and their claims therein;
>
> (b) Refused to provide the Picciottos and Foreign Car with documents pertaining to the case that they were requesting; and
>
> (c) Claimed that they had not retained the documents (or copies) through which Casher allegedly had made offers of proof.

128.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, mismanaged the settlement funds of the Picciottos and Foreign Car that the court in said interpleader action had released to their custody, care, and control, and they charged the Picciottos and Foreign Car for disbursements that were not made on their behalf and overcharged them for disbursements that were made on their behalf.

129.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., under the direction of Continental and Great Northern, and working in concert with Twin City and First State, also embezzled, misappropriated and converted some of the funds of the Picciottos and Foreign Car that had been so released to their custody, including, but not limited to diversion of funds into Casher's personal account for her

26

son's private school tuition and paying the firm's annual maintenance contract expenses for its photocopying machine.

130.    The removal of said funds was done without the knowledge or consent of the Picciottos and Foreign Car, who only discovered the wrongful actions of Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in December of 2002, after the intervention of the Board of Bar Overseers, which ordered Casher and Krulewich, Casher, P.C., to produce to the Picciottos and Foreign Car the financial documents that they were seeking.

131.    The Picciottos and Foreign Car made demand on Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., for return of the wrongfully-removed funds.

132.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, in order to prevent the Picciottos and Foreign Car from having any funds available to even be able to order the trial transcript, refused to comply with the demands of the Picciottos and Foreign Car that the wrongfully-removed funds be returned to the account.

133.    August 21, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested that Casher file a motion on her behalf in the interpleader action for an emergency release to her of funds from the escrow account because, as she stated therein, "I am in the middle of an immediate and irreversible hardship. I have no money for college. I have no money for therapy, so I've stopped receiving it, and I'm running out of money for my antidepressant medication."

134.    On September 19, 2002, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, sent a letter to the Picciottos and Foreign Car in which she refused to file such emergency motion. In her said letter, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, claimed that "an attorney representing Melita and Athena's interests would quite likely file the motion," but "someone representing" Casher's interests "would oppose it."

135.    Casher knew that the above response was in violation of G.L. c. 221, § 38, G.L. c. 221, § 40, the Mass. R. Prof. Conduct, and other principles governing the conduct of attorneys.

136.    Acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State Casher also sent a letter to the Picciottos and Foreign Car on September 30, 2002, in which she stated that she could not file such a motion because it was "directly contrary to [her] own interest."

137.    At the time Casher made those statements, she was the legal representative of Melita Picciotto and Athena Picciotto, pursuant to an Order from the Suffolk Superior Court; and Athena Picciotto was then a minor child.

138.    On October 20, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. maintained on behalf of the Picciottos so that the Picciottos could "buy medicine, pay mortgage, up coming fuel bill, etc."

28

139.    Thereafter, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, refused to release any funds to plaintiff Melita Picciotto.

140.    The Picciottos requested of Nunez that he call Casher to have the funds released.

141.    At first Nunez agreed to have Bergeron call Casher and have those sums released to Melita Picciotto.

142.    After conferring with Bergeron and Casher, Nunez refused to honor his agreement.

143.    Bergeron stated that having such sums released would be against her and Nunez's financial interests.

144.    In October of 2002, judgment entered against Nunez in said interpleader action, holding him liable for attorneys' fees, interest, and costs, in a sum of over Three Million Dollars.

145.    In October of 2002, judgment was entered against Melita and Athena Picciotto in said interpleader action, holding them liable to attorney Michael C. Gilleran for the sum of $15,797.30 and jointly and severally liable to Attorney Edward McCabe for the sum of $68,507.00 (plus interest). Under said judgment, Melita and Athena Picciotto were determined not to owe anything to any of the other attorney-plaintiffs in said action from their settlement amount of Two Million Dollars ($2,000,000).

146.    Nunez and Bergeron, aided and abetted by Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., who were acting under the direction of

Continental and Great Northern, and working in concert with Twin City and First State,

developed a scheme for Nunez to avoid the Three Million Dollar legal fee judgment by

holding Melita and Athena Picciotto liable for the attorney lienholders' (Zabin, et al)

judgment, plus the attorneys' fees and costs that had been paid, and, allegedly, because

they were further indebted to Casher.

       147.    To accomplish this scheme, Nunez and Bergeron executed the strategies

set in place by Continental and Great Northern, working with Twin City and First State.

Nunez and Bergeron claimed that they were supposed to receive Three Million Dollars

net, regardless of whether the Picciottos and Foreign Car received any settlement funds,

and that the Picciottos and Foreign Car had agreed to pay any and all judgments against

the Picciottos, Foreign Car and Nunez in the interpleader action, plus all of Casher's and

Krulewich, Casher, P.C.'s fees and costs.

       148.    The financial benefit to Nunez and Bergeron under this scheme amounted

to their undue enrichment; the financial benefit to Casher, Leonard Krulewich, Helen

Krulewich and Krulewich, Casher, P.C., was to afford them assistance in wrongfully

obtaining funds that were rightly due to plaintiffs Melita and Athena Picciotto. The

financial benefit to Continental and Great Northern, working in concert with Twin City

and First State, was that the Picciottos and Foreign Car would be rendered financially

unable to pursue their claims against them.

       149.    In furtherance of their scheme, Nunez, acting in concert with Bergeron

and Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., who

were acting under the direction of Continental and Great Northern, and working in

concert with Twin City and First State, refused to allow plaintiff Melita Picciotto to

obtain $5,000.00 from The Picciotto Family Trust fund for her own medical needs; and they further placed the Picciottos under threat of foreclosure on their family home.

150.    Because Nunez, in concert with Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, had removed substantial funds from the Picciotto Family Trust without the Picciottos' knowledge, authorization, or consent, the Picciottos also were rendered unable to order the transcript of the trial in the interpleader action (a necessary condition for pursuing an appeal) for over two years, and plaintiff Melita Picciotto was unable to purchase her prescription medicine, all of which caused additional mental and physical harm.

151.    October 9, 2002, Melita Picciotto requested that Casher move the court to release to her $350,000.00 of her money so she could go to school, buy medication, resume her therapy, and retain an attorney to protect her property interests.

152.    Casher, under the direction of Continental and Great Northern, and working in concert with Twin City and First State, refused to do that.

153.    October 9, 2002, the Suffolk Superior Court (Sikora, J.), instructed Casher to order the trial transcript.

154.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, refused to do that.

155.    On October 31, 2002, plaintiff Melita Picciotto sent a letter to Leonard Krulewich and Helen Krulewich requesting their intervention and specifically requesting:

> (a)    A release of Five Thousand Dollars ($5,000) so that she could meet emergency medical expenses;

> (b)   That the motion be filed that Casher earlier had refused to file; and
>
> (c)   That all the financial records be made available that pertained to the accounts that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. had maintained on behalf of the Picciottos and Foreign Car and that Casher had refused to provide despite requests dating back to June of 2002, in violation of the attorney-client account rules, and because of the instructions from Continental and Great Northern, working in concert with Twin City and First State, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., ignored such requests.

156.   Plaintiffs Melita Picciotto and Stefano Picciotto then turned to the Massachusetts Board of Bar Overseers for help, but despite assistance provided by said Board, the Picciottos and Foreign Car have been able to obtain only incomplete records from Krulewich, Casher, P.C., Helen Krulewich, Leonard Krulewich, and Casher, who are acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State.

157.   The documents that have been produced include copies of checks drawn on commingled accounts with the amount and the name of the payee blacked out, and copies of the corresponding bank statements with the transaction portions also blacked out.

158.   Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, refused to present an account to plaintiffs Melita

Picciotto and Stefano Picciotto in Probate Court Format, as Bar Counsel had requested, Casher stating that she was "unfamiliar with it." Bar Counsel suggested to plaintiffs Melita Picciotto and Stefano Picciotto that they take legal action to enforce their rights.

159.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., when they pursued and obtained in the Suffolk Superior Court an attachment on the residence of the Picciottos in a suit that they filed seeking further fees and costs from the Picciottos, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State falsely claimed that they had been absolved of any wrongdoing by the Bar Counsel with respect to their dealings with the Picciottos.

160.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, sought such attachment  knowing that plaintiffs Stefano Picciotto and Judith Picciotto were about to refinance the mortgage on their said residence so as to enable them to have the funds necessary to appeal the judgment in said interpleader action both by ordering a transcript of the proceedings and by engaging legal representation.

161.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., sought and obtained such attachment under the direction of Continental and Great Northern, and working in concert with Twin City and First State, in effort to, among other things, keep the Picciottos and Foreign Car from being able to have the means to pursue such an appeal and thereby, among other things, expose the misconduct that they had engaged in while representing the Picciottos and Foreign Car and the misconduct of Continental and Great Northern, working in concert with Twin City and First State.

162.    Because Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. (acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State) refused to release to plaintiff Melita Picciotto Five Thousand Dollars ($5,000) of her own funds for her pressing medical needs, and because they also refused to file a motion on behalf of said plaintiff in order to have some of her funds that are being held in the escrow account released to said plaintiff, said plaintiff filed a pro se motion in the Appeals Court for an emergency release of funds. Krulewich, Casher, P.C., and Casher, acting in concert with Continental and Great Northern, and in concert with Twin City and First State, opposed said motion on November 20, 2002.

163.    On November 26, 2002, plaintiffs Melita and Athena Picciotto moved the Suffolk Superior Court to have the attorney-plaintiffs in said interpleader action paid without abridging any party's right to appeal, and to have the remainder of the money released to the Picciottos, Foreign Car and Nunez, pursuant to the jury verdicts and in accordance with their agreed-upon division of the settlement funds.

164.    Nunez, under the direction of Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., and working in concert with Continental and Great Northern, and working in concert with Twin City and First State), opposed receipt by plaintiffs Melita and Athena Picciotto of the remainder of their Two Million Dollar settlement amount after paying the amounts that the jury had found that they owed to the plaintiff-attorneys in said interpleader action.

165.    Even though the Suffolk Superior Court has ordered Nunez to honor his contract (internal settlement allotments) with plaintiffs Melita Picciotto and Athena

Picciotto, Nunez now is refusing to honor his contract because of the interference and undue influence of Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. (who are acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State).

166.    When Krulewich, Casher, P.C., and Casher filed their opposition to the motion of plaintiffs Melita and Athena Picciotto to be allowed to receive their money, Casher was under court order to represent the financial interests of plaintiff Melita Picciotto; and she was obligated, pursuant to the requirements of Rule 1.3 of the Massachusetts Rules of Professional Conduct, to "zealously" represent said plaintiffs' interests.

167.    The verified opposition to the motion of plaintiff Melita  Picciotto that Casher and Krulewich, Casher, P.C. filed in the Appeals Court urged the court not to release any funds to said plaintiff; and it contained facts that Krulewich, Casher, P.C., and Casher knew to be harmful and false (such as that the Picciottos' mortgage loan on their house had been paid, etc.); however, despite having such knowledge, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State failed to zealously represent plaintiff Melita Picciotto's interests with respect to said motion and the matter that was addressed therein, in violation of Rule 1.3 of the Mass. R. Prof. C..

168.    But for the malpractice of Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P.C., in:

(a)  Negligently taking on Nunez as a client without the perquisite "consultation";

(b)  Negligently not listing the amounts that each party was settling for in the settlement agreement with Travelers;

(c)  Negligently not reducing to writing in the same settlement agreement the terms and conditions of the internal settlement agreement;

(d)  Negligently refusing to settle the attorney lienholders claim on the night of the settlement with the Travelers; and

(d)  Negligently not making a claim on behalf of Melita and Athena Picciotto against the fund that was deposited by Travelers into the Suffolk Superior court.  Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., would not have created an otherwise avoidable conflict of interest.

169.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P.C., had a heightened duty to zealously represent the financial interests of plaintiff Athena Picciotto, who was a minor throughout their representation, but. at the direction of Continental and Great Northern, and working in concert with Twin City and First State, they filed an opposition to Athena Picciotto's receiving her property while they were her legal representatives.

170.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, intended to inflame the court, prejudice plaintiff

Melita Picciotto, and coerce her into acquiescing to their unfair fee demands that she be
financially liable for the legal fees and expenses incurred by the other clients, including
Nunez, absent any contractual agreement to such liability. This was done in bad faith so
that the Picciottos would be rendered unable to pursue their claim against Continental and
Great Northern.

171.    On November 29, 2002, plaintiffs Melita and Athena Picciotto sent a
demand letter to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,
P.C., under the provisions of G. L. c. 93A, § 9, setting forth claims on their behalf for
damages of between Five Million Seven Hundred Twenty Thousand Dollars ($5,720,000)
and Eight Million Four Hundred Thousand Dollars ($8,400,000).

172.    Plaintiffs Melita Picciotto and Athena Picciotto offered to reduce and
settle their claims against Casher, Leonard Krulewich, Helen Krulewich and Krulewich,
Casher, P.C., for Two Million Dollars ($2,000,000), which the insurer for said defendants
has claimed is the limit of coverage under their professional liability insurance policies.

173.    On December 28, 2002, Casher, Leonard Krulewich, Helen Krulewich and
Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern,
and working in concert with Twin City and First State, responded to said demand letter
by denying all "allegations of wrongdoing" and by refusing to make any tender of
settlement at all.

174.    On March 4, 2004, an attorney selected by Leonard Krulewich and Dana
Casher to represent Nunez, wrote a letter to the Picciottos and Foreign Car in which she
demanded that they acquiesce to Nunez's being released an additional One Million Eight

Hundred Thousand Dollars ($1,800,000) from the escrow fund held by the Suffolk Superior Court.

175.    When the Picciottos and Foreign Car would not acquiesce to such demand, Nunez and Bergeron, working in concert with Dana Casher, Leonard Krulewich, and Helen Krulewich, who were taking "marching orders" Continental and Great Northern, and working in concert with Twin City and First State,  took action to inflict additional economic harm on the Picciottos and Foreign Car by seeking in said interpleader action to have Judge Sikora, whom they have admitted under the pains and penalties of perjury of having a bias against the Picciottos, release to Nunez funds that they knew rightfully belonged to plaintiffs Melita Picciotto and Athena Picciotto.

176.    On March 1, 2001, Casher had her deposition taken in and with respect to said interpleader action, in which she represented the Picciottos and Nunez.

177.    On March 12, 2001, Krulewich, Casher, P.C., now fully aware that the negligence of Casher and/or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. had been exposed, again gave notice of a potential malpractice claim to its insurer (which at the time was Twin City Fire Insurance Company).

178.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. knew, or had reason to know, that their insurers Continental and Twin City also provided liability insurance coverage to the plaintiff-attorneys in said interpleader action.

179.    Neither Casher, Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C., nor anyone else on their behalf, ever informed the Picciottos and/or Foreign Car that a notice of a potential claim had been provided to said insurers.

180.    On October 15, 2002, although Casher was then the official record-keeper of Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, informed plaintiff Melita Picciotto that she had no idea as to who the malpractice insurance carrier was for her or Krulewich, Casher, P.C.

181.    Casher, Leonard Krulewich, and Helen Krulewich, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State have denied that either they or Krulewich, Casher, P.C., or anyone on its behalf, ever provided notice of a potential claim to either Twin City or Continental prior to the filing by plaintiff Melita Picciotto of a malpractice claim against Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

182.    On March 12, 2001, Krulewich, Casher, P.C. purchased a professional liability policy with Clarendon National Insurance Company (hereinafter "Clarendon").

183.    March 12, 2002, Krulewich, Casher, P.C. purchased a professional liability policy with TIG Specialty Insurance Solution (hereinafter referred to as "TIG").

184.    Due to the refusal of Leonard Krulewich, Helen Krulewich, Dana E. Casher, or Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, to provide Melita and Athena Picciotto with any relief, Melita and Athena Picciotto were forced to send a G.L. c. 93A letter of demand to the forgoing parties.

185.    In order to shield the liabilities from Continental and Great Northern, in November of 2002, Leonard Krulewich, Helen Krulewich, Dana E. Casher, or

Krulewich, Casher, P.C., requested defense from TIG against the rightful claims of Melita and Athena Picciotto.

186.    At the time they did that, Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., knew that Continental had the duty to defend and indemnify the claims of Melita and Athena Picciotto because the claim was first reported to Continental.

187.    Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, agreed to hide the true insurance coverage for ulterior motives.

188.    Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, have provided periodic reports to the insurers.

189.    The insurers Continental and Twin City used the periodic reports during the interpleader action to their unfair advantage in defending the attorney lienholders to the unfair detriment of the plaintiffs.

190.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, refused to obey an order of the Essex Superior Court to provide Melita Picciotto with (among other things) all notices of claims, all applications for insurance, and all of the insurance policies that they submitted to, or obtained from, their insurance companies.

191.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, retained Stolzberg to be an expert witness in said interpleader action against Attorney Michael Gilleran, who was one of the plaintiff-attorneys therein, and the other attorney lienholders.

192.    Stolzberg, Casher, and Krulewich, Casher, P.C., represented to the Picciottos and Foreign Car that Stolzberg was a Harvard Law School graduate and an expert in contract law and that he would be well able to testify to the malpractice of Attorney Gilleran in and with respect to his representation of the Picciottos and Foreign Car.

193.    Stolzberg, Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., worked together in preparing answers to interrogatories that would describe the intended testimony of Stolzberg in said interpleader action.

194.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.. acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, failed to prepare with Stolzberg said answers carefully with sufficient and complete specificity as to the anticipated testimony of Stolzberg; and, as a result, Stolzberg was barred by the Suffolk superior Court in the interpleader action from testifying with respect to several issues that pertained to the malpractice of Attorney Gilleran. Attorney Zabin, Attorney Eigerman, and Attorney McCabe.

195.    December 24, 2001, plaintiff Stefano Picciotto sent a letter to Casher and Krulewich, Casher, P.C., urging them to make sure that Stolzberg would testify with

regard to the issues that said plaintiff presented in said letter (a copy of which is attached hereto as Exhibit B).

196.    December 26, 2001, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, Casher assured plaintiff Stefano Picciotto that she had faxed a copy of said letter to Stolzberg, and she and Stolzberg had discussed it at length, and that Stolzberg was familiar with the case law, and that Stolzberg was going to testify in accordance with the information contained in said letter.

197.    On December 27, 2001, Stolzberg testified in said interpleader action; and while on the stand, he could not remember: (a) any of the facts or law that were described in said letter of December 24, 2001, or (b) the name of the judge who had made the case law with respect to one of the significant issues discussed therein.

198.    Stolzberg left the jury with the clear impression that the Picciottos, Foreign Car and he were simply there to unfairly malign Attorney Gilleran and deceptively prevent him from collecting what would have been a fair fee if he had not been guilty of any malpractice or breach of contract.

199.    Continental knew that Casher has a history of depression and suicidal ideation.

200.    Continental knew that Casher has been hospitalized for attempted suicide, and used this information to unfairly take advantage of the Picciottos and Foreign Car.

201.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, attributed her inability to remember the facts of the case during the trial of the interpleader action to the unethical conduct of

the plaintiff-attorneys, combined with a "crooked" judge, all of whom she claimed were making her feel suicidal, causing her to be emotionally upset, and causing her to be so depressed that she was losing her memory.

202. Prior to the trial of the interpleader action, Casher never revealed to any of the Picciottos or Foreign Car that she had a mental condition that could materially impair her ability to represent them.

203. Casher had an obligation to the Picciottos and Foreign Car, pursuant to Rule 1.16(a) (2) of the Mass. R. Prof C., to withdraw from representing them and to help them to find another attorney to represent them, but acting under direct marching orders from Continental and Great Northern, working in concert with Twin City and First State, failed or refused to do so.

204. Casher knew that she was a material witness, and as a lawyer, pursuant to Rule 3.7A of the Massachusetts Rules of Professional Conduct, knew that she could not act as an advocate in a trial in which she was a necessary witness, but acting under direct marching orders from Continental and Great Northern, working in concert with Twin City and First State, failed or refused to do so..

205. After the judgment entered against the Picciottos and Foreign Car in the interpleader action that was filed in the Suffolk Superior Court, the Picciottos and Foreign Car filed a notice of appeal.

206. The Picciottos and Foreign Car requested of Casher that she or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. order a copy of the transcript of the proceedings. Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, responded that there was no

43

money to order the transcript (an initial deposit in the amount of $25,000 being required in order for preparation thereof to commence) despite the fact that the Suffolk Superior Court had released to her and/or her firm Seven Hundred and Fifty Thousand Dollars ($750,000) in April of 2001.

207.    Acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, after said sum had been released to Casher and/or Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., said sum was deposited in the operating account for said attorneys in April of 2001, and then a check in the amount of only Five Hundred Fifty Thousand Dollars ($550,000) was made out against such sum in favor of Casher, as Trustee of the Picciotto Family Trust, without obtaining any authorization therefore from the Picciottos and Foreign Car to retain the missing difference (i.e., $200,000.00).

208.    Subsequently, in December of 2001, without the authorization of the Picciottos or Foreign Car, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, sent to Bergeron a check payable to Bergeron in the amount of Twenty-five Thousand Dollars ($25,000) against funds held by Casher as Trustee of the Picciotto Family Trust.

209.    As a result of the failure of Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, to make money available for the ordering of said transcript from funds belonging to the Picciottos and Foreign Car, they caused a delay of the appeal of the judgment in the Suffolk Superior Court interpleader action, thereby causing the amount of interest accruing with respect to

the judgment to increase beyond what should have been necessary; and they have

jeopardized the appeal because the Suffolk Superior Court has suggested that the appeal

should be dismissed because of the delay in ordering said transcript.

Count One

210.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 209 of the complaint.

211.    Continental, by its forgoing actions, engaged in a civil conspiracy against

the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car

to be wrongly transferred to the attorney lienholders, Casher, Nunez, and Bergeron.

212.    As a result, the Picciottos and Foreign Car have been caused to suffer

harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against

Continental in the amount of their damages, plus interest and costs.

Count Two

213.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 209 of the complaint.

214.    Continental, by its forgoing actions, engaged in fraud and deceit against

the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car

to be wrongly transferred to the attorney lienholders, Casher, Nunez, and Bergeron.

215.    As a result, the Picciottos and Foreign Car have been caused to suffer

harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against

Continental in the amount of their damages, plus interest and costs.

Count Three

216.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 209 of the complaint.

217.    Great Northern, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney lienholders, Casher, Nunez, and Bergeron.

218.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Great Northern in the amount of their damages, plus interest and costs.

Count Four

219.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 209 of the complaint.

220.    Great Northern, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney lienholders, Casher, Nunez, and Bergeron.

221.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great Northern in the amount of their damages, plus interest and costs.

46

## Count Five

222.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 209 of the complaint.

223.    White, by her forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney lienholders.

224.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against White in the amount of their damages, plus interest and costs.

## Count Six

225.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 209 of the complaint.

226.    White, by her forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney lienholders.

227.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against White in the amount of their damages, plus interest and costs.

## Count Seven

228.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 209 of the complaint.

229.    NRC, by its forgoing actions or failure to act, was negligent in supervising White, so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney lienholders.

230.    As. result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the NCR in the amount of their damages, plus interest and costs.

## DEMAND FOR JURY TRIAL

The Picciottos and Foreign Car hereby demand a trial by jury with respect to all issues as to which they are entitled to a jury trial.

STEFANO PICCIOTTO
Pro Se

Stefano Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

JUDITH PICCIOTTO
Pro Se

Judith Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

48

MELITA PICCIOTTO
Pro Se

_____
Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


ATHENA PICCIOTTO
Pro Se

_____
Athena Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


FOREIGN CAR CENTER, INC.
By its attorney,

_____
James M. Shannon
BBO # 453610
418 Rear Lafayette Street
Salem, Massachusetts 01970
(978) 741-0218


Dated:  May 2, 2005

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Stefano Picciotto et. al.

**DEFENDANTS**
Continental Casualty Co.

**(b)** County of Residence of First Listed Plaintiff _Essex_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _Chicago, Illinois_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

05 10901 DPW

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pro Se

Attorney's (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff
☐ 2   U.S. Government Defendant
☐ 3   Federal Question (U.S. Government Not a Party)
☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander   ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability   ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment   **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare   ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights   ☐ 555 Prison Condition | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Unfair and Deceptive Insurance Practices

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 9 million    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   2 May 2005

SIGNATURE OF ATTORNEY OF RECORD   _Signed Picciotto_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) *Stefano Picciotto et. al. v. Continental Causualty Company, et. al.*

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   - [ ] II.  195, 196, 368, 400, 440, 441-445, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

   - [x] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 37
             380, 385, 450, 891.

   - [ ] IV.  220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   - [ ] V.  150, 152, 153.

   **05 10901 DPW**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]   NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES [ ]   NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [x]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]   NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [ ]   NO [x]

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division [ ]    Central Division [ ]    Western Division [ ]

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division [x]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]   NO [x]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____*Stefano Picillo pro se*_____
ADDRESS _____*418 Lafayette St. Salem Mass 01970*_____
TELEPHONE NO. _____*978-741-0218*_____

(CategoryForm.wpd - 2/15/05)