UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEFANO PICCIOTTO, JUDITH PICCIOTTO, MELITA PICCIOTTO, ATHENA PICCIOTTO, and FOREIGN CENTER, INC., <br>         Plaintiffs <br>         v. <br> CONTINENTAL CASUALTY COMPANY, GREAT NORTHERN INSURANCE COMPANY, HARTFORD INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY, <br>         Defendants | C.A. No. 05 10901 DPW |

## **AMENDED COMPLAINT**

### Parties

1.      Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto

(hereinafter sometimes "the Picciottos") are individuals who reside at 418 Lafayette

Street, Salem, Massachusetts.

2.      Foreign Car Center, Inc. (hereinafter "Foreign Car") is a Massachusetts

corporation that formerly had its principal office at 55 Walnut Street, Peabody,

Massachusetts.

3.      Defendant Continental Casualty Company (hereinafter "Continental") is

an Illinois corporation admitted as an insurance carrier in Massachusetts; and its principal

office is at CNA Plaza, 9th Floor, South Wabash Avenue, Chicago, Illinois 60685.

4.      Defendant Great Northern Insurance Company (hereinafter "Great Northern") is a New Jersey corporation admitted as an insurance carrier in Massachusetts; and its principal office is at 15 Mountain View Road, Warren, New Jersey 08059.

5.      Defendant Hartford Insurance Company (hereinafter "Hartford") is a Connecticut corporation admitted as an insurance carrier in Massachusetts; and its principal office is at Hartford Plaza, Hartford, Connecticut 06115.

6.      Defendant Twin Cities Insurance Company (hereinafter "Twin Cities") is a Connecticut corporation admitted as an insurance carrier in Massachusetts; and its principal office is at Hartford Plaza, Hartford, Connecticut.

Facts

7.      In June of 1998, the Picciottos and Foreign Car entered into a contract for legal representation with a proprietorship/partnership known as Krulewich and Associates, which later came to be known as Krulewich, Casher.

8.      During 1998 and for a substantial time thereafter, the proprietorship/partnership of Krulewich and Associates and Krulewich, Casher operated its business at two offices: one at 50 Staniford Street, Boston, Massachusetts, and the other at 153 Woodchester Drive, Newton, Massachusetts.

9.      The proprietors/partners of Krulewich and Associates and Krulewich, Casher were Leonard M. Krulewich and Helen D. Krulewich.

2

10.     Dana E. Casher of 4 Fawn Circle, Randolph, Massachusetts (hereinafter "Casher"), an attorney licensed to practice law in Massachusetts, was an employee of Krulewich and Associates and Krulewich, Casher in 1998 and thereafter.

11.     In 1998, Continental issued a professional liability policy to Krulewich and Associates.

12.     The term of said policy was from March 12, 1998 to March 12, 1999.

13.     In 1999, Continental issued a professional liability policy to Krulewich, Casher.

14.     The term of said 1999 policy was from March 12, 1999 to March 12, 2000.

15.     The Continental policy that ran from March 12, 1999 to March 12, 2000 carried an endorsement providing coverage for errors or omissions of any predecessor firm (endorsement No. G-118049-A).

16.     Great Northern issued an umbrella insurance policy to Leonard Krulewich and Helen Krulewich for periods when underlying insurance policies were in effect.

17.     Both the Continental insurance policies and the Great Northern insurance policies provided coverage for any harm caused by negligent supervision by Leonard and/or Helen Krulewich of the acts, errors or omissions of employee Casher.

18.     Within a period that commenced in 1975 and extended to 1996, plaintiffs Stefano Picciotto and Judith Picciotto, who are the parents of plaintiffs Melita Picciotto and Athena Picciotto, received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede"). Said factory was located on premises that were

3

adjacent to premises upon which plaintiff Foreign Car, a corporation owned by plaintiff Judith Picciotto and operated by plaintiff Stefano Picciotto, conducted its business.

19.    In 1983, plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

20.    In September of 1993, after a jury trial, a judgment entered in said action against Salem Suede in favor of Stefano Picciotto, Judith Picciotto, Foreign Car, and Juan Nunez (hereinafter "Nunez"). The judgment was upheld on appeal in a decision that was reported in 40 Mass. App. Ct. 15 (1996).

21.    Plaintiffs Melita Picciotto and Athena Picciotto also sustained injuries from exposure to the same toxic chemicals that caused injuries to their parents, and they further suffered harm though loss of parental consortium, affection, and nurture.

22.    In 1994, plaintiffs Melita Picciotto and Athena Picciotto filed an action against Salem Suede seeking to recover for such injuries and other harm that they had suffered. The action was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 94-2155.

23.    In 1996, Salem Suede, facing the judgment that plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and Nunez had obtained against it, and also facing said action that plaintiffs Melita Picciotto and Athena Picciotto had filed against it, filed a petition for bankruptcy in the U.S. Bankruptcy Court entitled *In re Salem Suede,* No. 96-**13184 JNF.**  A related case filed at approximately the same time was *In re Zion Realty Corp.*, No. 96-14692 JNF.

4

24.    At the time of the filing of said petition in bankruptcy, Salem Suede denied that it had any insurance coverage that would allow payment of the judgment that plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car (and Nunez) had obtained against it or that would allow payment of any judgment that plaintiffs Melita Picciotto and Athena Picciotto might obtain against it.

25.    Plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car, Melita Picciotto and Athena Picciotto nonetheless believed, by reason of information that their attorney had obtained, that Salem Suede indeed had insurance coverage with The Travelers Indemnity Company (hereinafter "Travelers") that would allow payment of said judgment and any future judgment; however, Travelers denied that there was any such coverage.

26.    In 1997, plaintiff Melita Picciotto filed an action against the Massachusetts Commissioner of Insurance in an effort to unearth insurance coverage that Salem Suede held with Travelers but that Salem Suede and Travelers had denied possessing, and also to seek an order that would compel the Commissioner of Insurance to hold a hearing regarding Travelers' unfair and deceptive conduct in having denied that it provided such coverage. The action was entitled *Melita Picciotto v. Linda Ruthhardt as Commissioner of Insurance*, Supreme Judicial Court No. 97-0511.

27.    On June 15, 1998, the Picciottos and Foreign Car entered into an agreement with Casher, an attorney-employee of Krulewich and Associates and subsequently a principal in Krulewich Casher and Krulewich, Casher, P.C., who then purported to be acting on behalf of said law proprietorship or partnership and the

members thereof, whereby Casher agreed to represent the Picciottos and Foreign Car in connection with the Salem Suede bankruptcy proceeding.

28.     In or about August of 1998, Casher, without the consent of the Picciottos and Foreign Car, and without the prerequisite "consultation" with them, took on additional representation in the bankruptcy proceedings of Nunez, a former employee of Foreign Car.

29.     After entering into said agreement, plaintiff Melita Picciotto and the other Picciottos continued to represent themselves in said Supreme Judicial Court action No. 97-0511; and, with the help of a nonprofit consumer protection group by the name of United Policy Holders of America, she filed a *pro se* brief in the Massachusetts Supreme Judicial Court on December 24, 1998, whereby she was able to demonstrate that the claims that she, her family and Foreign Car had against Salem Suede were covered by insurance policies that Travelers had issued to Salem Suede.

30.     Immediately thereafter, Travelers, in light of plaintiff Melita Picciotto's having so demonstrated the existence of such insurance coverage, called for a settlement conference to be held with a view towards settling all claims that the Picciottos, Foreign Car and Nunez had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

31.     The Picciottos and Foreign Car requested of Casher that she arrange for the attorneys who previously had represented them regarding claims that they had made against Salem Suede and Travelers to be included in such a settlement conference so that their claims for fees as well as the claims of the Picciottos and Foreign Car against Salem

6

Suede and Travelers all could be resolved at one time; however, Casher refused to make any such arrangement.

32.     A settlement conference with Travelers commenced on January 5, 1999.

33.     At such conference, Casher represented the Picciottos, Foreign Car and Nunez.

34.     Nunez, throughout the settlement negotiations, was accompanied by Carole Bergeron (hereinafter "Bergeron"), his live-in girlfriend.

35.     Bergeron engaged in the negotiations on behalf of Nunez.

36.     On June 2, 1997, Nunez had signed a Proof of Claim that was filed on his behalf in the U. S. Bankruptcy Court stating, under the pains and penalties of perjury, that Salem Suede was indebted to him in the sum of $1,246,720.16.

37.     Casher allowed the negotiations for a settlement to run from approximately 10:00 A.M. on **January** 5, 1999, to 4:00 A.M. on **January** 6, 1999, with only bathroom breaks being taken. In the early morning of January 6, 1999, all of Casher's clients were fatigued, in need of rest, and exhausted.

38.     In said settlement conference, Travelers ultimately offered to pay to the Picciottos, Foreign Car and Nunez the total sum of Nine Million Dollars ($9,000,000) to settle all of their claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

39.     Travelers took the position that it would leave it up to the parties whose claims would be settled by a settlement agreement to determine how to allocate among themselves such sum of Nine Million Dollars ($9,000,000).

40. Nunez and Bergeron made an extremely advantageous settlement agreement on behalf of Nunez.

41. Nunez and Bergeron demanded Three Million Dollars ($3,000,000) of the Nine Million Dollars ($9,000,000) settlement amount, even though Nunez's proof of claim in the U.S. Bankruptcy Court had been only in the amount of $1,246,720.16.

42. Casher, the Picciottos, Foreign Car and Nunez conferred and agreed upon how such sum of Nine Million Dollars ($9,000,000) would be allocated among them should they agree to accept such sum in settlement of their claims. The agreed-upon allocations were:

      (a)    To plaintiff Melita Picciotto, the sum of $1,500,000;

      (b)    To plaintiff AthenaPicciotto, the sum of $500,000;

      (c)    To plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car Center, the sum of $4,000,000; and

      (d)    To Nunez, the sum of $3,000,000.

43. Casher, the Picciottos, Foreign Car and Nunez also agreed at such time that, if they should accept such sum of Nine Million Dollars ($9,000,000) in settlement of their claims, Casher would be paid One Million Dollars ($1,000,000) from such sum out of which she would obtain full compensation for her legal services and would pay to any other attorney who previously had represented the Picciottos, Foreign Car and Nunez with respect to their claims that were being settled such amounts as might be owed to them for their services.

44.    The Picciottos and Foreign Car requested that they be allowed to take home the proposed settlement contract that Travelers was offering in order to be able to think about it after rest and to be able discuss its terms with independent counsel.

45.    Casher refused to allow the Picciottos to leave the settlement conference; and, at approximately 3:00 A.M. on January 6, 1999, Casher instructed the Picciottos and Foreign Car to sign the proposed settlement contract.

46.    Casher at that time claimed that a settlement in the amount of Nine Million Dollars ($9,000,000) was in the best interests of the Picciottos, Foreign Car and Nunez; and she further declared specifically that, if the proposed agreement would be entered into, Salem Suede's bankruptcy plan of reorganization could not be approved without receipt by the Picciottos, Foreign Car and Nunez's of the amounts that they had agreed to allocate among themselves as a condition of the settlement. Casher further stated that, if the Picciottos, Foreign Car and Nunez were to enter into the settlement, they would be furnishing Travelers with a release and an agreement to defend and to indemnify Travelers if any lawsuit should be brought against it by the any of their prior attorneys (hereinafter "the attorney-lienholders"); and, when the bankruptcy proceedings would be dismissed, Travelers would pay over all of the settlement proceeds to Casher, as attorney for the Picciottos, Foreign Car and Nunez.

47.    Casher assured the Picciottos and Foreign Car that their fears of not receiving the settlement funds were wholly unfounded, and she called upon them to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of Nunez.

9

48.     The Picciottos and Foreign Car, in reliance upon the assurances of Casher, and in consideration of the payment to them of the amounts that they had agreed would be allocated to each of them from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement, and, as a consequence, to dismiss, with prejudice, all claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

49.     The Picciottos, Foreign Car and Nunez, all of whom were represented by Casher at said conference, as 4:00 A.M. on January 6, 1999, approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they had allocated among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement.

50.     Casher, in violation of the provisions of Rule 1.8(g) of the Massachusetts Rules of Professional Conduct, did not cause to be placed in the settlement agreement itself the respective allocations of said sum of Nine Million Dollars ($9,000,000.00) that the Picciottos, Foreign Car and Nunez had agreed upon.

51.     The Picciottos, Foreign Car, and Nunez wanted whatever liens were held by the attorney-lienholders to be resolved on January 6, 1999, as part of an overall, global settlement.

52.     Casher assured the Picciottos, Foreign Car, and Nunez that such was not necessary, as she had made arrangements for a reasonable resolution of the claims for fees of the attorney-lienholders.

53.     Further, at the settlement conference, Casher assured the Picciottos, Foreign Car and Nunez that, upon the dismissal of the bankruptcy of Salem Suede, and

upon delivery to Travelers of a release signed by all of those who were settling their claims against Travelers, they would be able to receive the sums that they had agreed would be allocated to each of them when they agreed to settle with Travelers.

54.     On or about January 12, 1999, Casher realized that Travelers was not going to turn over the settlement funds until it received signed releases from each of the attorney-lienholders.

55.     Casher contacted the attorney-lienholders to obtain individual signed releases from them.

56.     The attorney-lienholders refused to execute and deliver releases.

57.     On January 12, 1999, after a conversation with Attorney Michael C. Gilleran and with Attorney Edwin A. McCabe, two of the attorney-lienholders, Casher became aware that she could not deliver on her settlement promises to the Picciottos, Foreign Car and Nunez.

58.     At such time, Casher became aware, through her conversations with Attorney Gilleran and Attorney McCabe, that she had engaged in an act, error, or omission at the settlement conference of January 6, 1999, that could lead to a potential claim.

59.     Casher notified Continental, an insurer with respect to her professional liability, of the conduct of the attorney-lienholders and of the potential claim that could arise against her by her act, error or omission; and Helen Krulewich and Leonard Krulewich notified Great Northern, an insurer of their professional liability, of the claim that could be made against them by reason of an act, error or omission of Casher.

60.     Continental and Great Northern took charge of the claim and, from that
point on, directed the conduct of Casher, Leonard Krulewich, and Helen Krulewich.

61.     On March 9, 1999, Continental, provided loss control guidance to the
Leonard Krulewich, Helen Krulewich and Casher.

62.     Continental sold Full Prior Acts coverage ("FPA") to Casher, Leonard
Krulewich and Helen Krulewich.

63.     Under the direction of Continental and Great Northern, on March 12,
1999, Casher exercised coercive pressure on plaintiff Stefano Picciotto to cause him to
acquiesce to her demand that he sign an amendment to the settlement agreement in order
to release Travelers of its contractual obligation to pay the Picciottos, Foreign Car and
Nunez the respective amounts for which they had settled their claims prior to Travelers'
funding of Salem Suede's bankruptcy plan of reorganization.

64.     The amendment allowed Travelers to avoid making payment of the
settlement sums directly to Casher as attorney for the Picciottos, Foreign Car and Nunez;
and it also allowed Travelers to avoid a claim that the Picciottos and Foreign Car might
have pursued against it for breach of contract, and for violation of the provisions of G.L.
c. 93A, § 9, G. L. c. 176D, § 3(9)(f), and (g), and G. L. c. 175, § 181, by reason of its
refusal to comply with its contractual obligations to make payments in accordance with
the terms of the settlement agreement.

65.     Said amendment allowed Travelers to escape liability to the Picciottos,
Foreign Car and Nunez and file an interpleader action in the Suffolk Superior Court
(Case No. 99-1594, entitled *Albert P. Zabin, et al v. Stefano Picciotto, et a/*) and deposit

12

virtually all of the money of the Picciottos and Foreign Car, as well as all the other
settlement funds, in a court-controlled escrow account.

66.     Under instructions from Continental and Great Northern, Casher
prevented the Picciottos and Foreign Car from seasonally sending a G .L. c. 93A letter of
demand to Travelers in effort to force Travelers to comply with the terms and conditions
of the settlement agreement.

67.     Said G. L. c. 93A demand letter would have exposed Travelers to double
or treble such actual damages, plus attorneys' fees, as were caused to the Picciottos and
Foreign Car by Travelers' failure to make payment to them of the settlement funds.

68.     The settlement reached on *January 6, 1999 settled all claims of the*
Picciottos, Foreign Car and Nunez against Salem Suede, its principals, its attorneys and
Travelers, including the claims of Melita Picciotto and Athena Picciotto that were
pursued in the 1994 Essex Superior Court action, No. 94-2155.

**69.**     Under the direction of Continental and Great Northern, Casher failed to
properly answer the interpleader complaint and spell out all of the claims that had been
settled, including the claims of Melita Picciotto and Athena Picciotto.

70.     Specifically, under the direction of Continental and Great Northern,
Casher, in responding to the interpleader complaint, failed to state that the settlement
agreement had settled said 1994 litigation among other claims.

71.     Under the direction of Continental and Great Northern, Casher also failed
to file the proper crossclaims and counterclaims in said interpleader action.

72.     Continental, Great Northern and Casher knew that the Picciottos and
Foreign Car had valid claims against the attorney-lienholders for their tortious

13

interference with the contract that the Picciottos and Foreign Car had entered into with Travelers (as well as claims against the attorney-lienholders for prior malpractice), but Continental and Great Northern prevented Casher from pleading such claims in the interpleader action.

73.    Some of the attorney-lienholders also were insured by Continental.

74.    Continental, either directly or through its subsidiaries, affiliates or parent company, reinsured the policies that Travelers had issued to Salem Suede.

75.    Great Northern, through the Chubb Group, also reinsured the policies that Travelers issued to Salem Suede.

76.    Twin City insured the negligent acts, errors, or omissions of Attorney Albert P. Zabin (who was an attorney-lienholder) and the firm of Schneider, Reilly, Zabin and Costello (hereinafter "Zabin").

77.    Twin City also insured the negligent acts, errors, omissions of Attorney Michael C. Gilleran, Gilleran and Mortenson, and Pepe & Hazard (hereinafter "Gilleran"), they also being attorney-lienholders.

78.    Twin City and Hartford, either directly or through their subsidiaries, affiliates or parent company, reinsured the policies that Travelers had issued to Salem Suede to the extent of $100,000,000.

79.    First State Management Group, Inc. (hereinafter "First State") is a subsidiary of Twin City and Hartford that acts as the claim management company for Twin City and Hartford.

80.    Twin City, Hartford and First State knew that their insureds had been negligent in handling the claims of the Picciottos and Foreign Car.

14

81.     Twin City, Hartford and First State knew that Zabin had been negligent by having agreed to dismissal of a claim under Mass. G. L. c. 93A that had been set forth in the complaint that had been filed against Salem Suede in the case *of Foreign Car Center, Inc., et al v. Salem Suede Inc.,* (Essex Superior Court No. 83-740) by not advancing the rightful c. 93A claim that the individual plaintiffs had against Salem Suede.

82.     Twin City, Hartford and First State knew that Gilleran had been negligent by refusing to expose the bankruptcy fraud that Salem Suede had engaged in (along with Travelers) and that said refusal had caused the Picciottos and Foreign Car to suffer harm.

83.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders created a Joint Defense Team known as "The Picciotto Defense Group" to work in a "unified fashion with a single strategy" against the Picciottos and Foreign Car in the interpleader action.

84.     Under the direction of Continental and Great Northern, and working with Twin City, Hartford and First State, the attorney-lienholders entered into a formalized Joint Litigation Agreement to assist them in unfair and deceptive strategies against the Picciottos and Foreign Car.

85.     Although pretending to the Suffolk Superior Court and to the Picciottos in the interpleader action that Travelers was a neutral party, the attorneys for Travelers were, behind the scenes, official members of "The Picciotto Defense Group."

86.     Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, the attorney-lienholders agreed to keep the "Joint Litigation Agreement" regarding the "Picciotto Actions" secret and confidential.

**87.** Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders entered into a formal agreement for "Coordinated Litigation Activities" to assist them in their unfair and deceptive strategies against the Picciottos and Foreign Car.

88. Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, one of the unfair litigation strategies was to lay claim to the entire settlement fund as a trial strategy to prevent the Picciottos and Foreign Car from being able to retain independent counsel and be able to properly litigate the unfair fee claims of the attorney-lienholders.

89. Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorneys engaged in extortionate conduct, and knowingly and willfully violated G. L. c. 231, § 38, G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct promulgated by the Supreme Judicial Court.

90. Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, the attorney-lienholders engaged in bad faith conduct that was in violation of G.L. c.. 93A, §§ 2(c), 2(a), and 9, and the Rules and Regulations of the Attorney General promulgated thereunder, more specifically 940 CMR 3.16 (3).

91. Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Zabin and other attorney-lienholders who were procedurally realigned by the Suffolk Superior Court as plaintiffs in said interpleader action (counterclaims for malpractice having been filed against them by the

16

Picciottos, Foreign Car and Nunez), claimed that they held a lien on all of the settlement funds by reason of their previous representation of one or more of the plaintiffs herein and opposed any release to the plaintiffs of their respective settlement funds, including the funds of plaintiffs Melita Picciotto and Athena Picciotto with whom said attorneys had not entered into any representation or fee agreement, on the grounds that the internal unrecorded allocation of the settlement funds was not binding.

92.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders contended that the internal allocation that Travelers had allowed to be made among the beneficiaries of the settlement agreement had been reached in bad faith in order to prevent said attorneys from fully collecting contractual fees that were owed to them by those of the Picciottos, Foreign Car and Nunez with whom they had contingency fee contracts (which did not include plaintiffs Melita Picciotto and Athena Picciotto).

93.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, said attorneys asserted that the monies that each of the Picciottos, Foreign Car and Nunez had agreed to accept in settlement of their respective claims, even those of them who had no contingency fee contract or other contract with said attorneys (Melita Picciotto and Athena Picciotto), actually belonged to those of the Picciottos, Foreign Car and Nunez with whom said attorneys did have such contingent fee contracts.

94.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher, Leonard Krulewich and Helen Krulewich, realizing that they, through Casher, had been negligent in connection with the

representation of the Picciottos and Foreign Car, formed a new firm by the name of "Krulewich Casher, P. C." for the purpose of shielding them from personal liability from potential future claims against them by the Picciottos and Foreign Car; and they purchased a new liability insurance policy from Twin City to distance Continental and Great Northern from liability.

95.    Based on the arguments advanced by the attorney-lienholders, who were working under the direction of Continental and Great Northern and in concert with Twin City, Hartford and First State, the Suffolk Superior Court released to the Picciottos, Foreign Car and Nunez only such sums as said court determined would be needed in order to provide them with a defense in said interpleader action with respect to the claims of said attorneys. The rest of the settlement funds remained held by the court in an escrow account accruing an extremely low rate of interest (even though the attorney-lienholders were asserting that they would be entitled to obtain interest at the rate of 12% per annum with respect to such sums as they could recover from the escrow account).

96.    On February 11, 2000, the Suffolk Superior Court issued an order in said interpleader action specifying that at the close of the discovery period therein:

> . . . the Picciottos must plead with specificity any additional
> subsidiary factual information which does not presently appear
> in support of their claims and their counterclaims. If they do
> not, any additional materials will be barred. And they will have
> 14 days from the close of the fact based discovery in which to
> amend their counter claims and to plead with specificity any
> subsidiary facts.

97.    Casher knew that Melita Picciotto and Athena Picciotto (in fact, all of the Picciottos) had valid claims against the attorney-lienholders for tortious interference with a contract, but under the direction of Continental and Great Northern, and working in

18

concert with Twin City, Hartford and First State, she did not advance such claims or plead the facts with specificity; thus, the claims were barred.

98.     Casher knew that Melita and Athena Picciotto (in fact, all of the Picciottos) had valid claims against the attorney-lienholders for civil conspiracy, but, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, she did not advance such claims or plead the facts with specificity; therefore, such claims were barred.

99.     In late April or early May of 2000, answers and affirmative defenses were due to be filed with respect to the claims of attorney-lienholder Edward H. Greer in said interpleader action; however, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to file an answer, affirmative defenses or a counterclaim.

100.    In October of 2000, Casher, despite her knowledge that plaintiff Melita Picciotto wanted to represent herself in said interpleader action, and without the consent of plaintiff Melita Picciotto, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, informed the Suffolk Superior Court, at a time when plaintiff Melita Picciotto was not present, that she would be representing plaintiff Melita Picciotto thereafter.

101.    Plaintiff Melita Picciotto attempted to represent herself in said interpleader action despite Casher's representation to the court that she was her attorney; and plaintiff Melita Picciotto filed a notice of appearance on her own behalf.

102. The Suffolk Superior Court, in light of Casher's said representation, refused to allow plaintiff Melita Picciotto to represent herself and ordered Casher to represent said plaintiff.

103. The attorney-lienholders called Casher as a witness against the Picciottos and Foreign Car in the trial of the interpleader action in the Suffolk Superior Court interpleader, her testimony being allowed over the Picciottos' and Foreign Car's objections; and, since the court regarded plaintiff Melita Picciotto as being represented by Casher rather than representing herself, plaintiff Melita Picciotto was not allowed an opportunity to cross-examine Casher.

104. Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher refused to allow the Picciottos and Foreign Car to engage the services of another attorney to cross-examine her when she so testified; and, as a result, the Picciottos and Foreign Car were deprived of necessary legal representation during that portion of the trial.

105. Casher should have known that she would so be called as a witness, since a major issue in the interpleader action was what had occurred in the settlement discussions that had been engaged in with Travelers and whether there had been in fact any agreement as to how to allocate the settlement funds between and among the Picciottos, Foreign Car and Nunzez; nonetheless Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, to the detriment of the Picciottos, Foreign Car and Nunez, insisted upon continuing as the attorney for the Picciottos, Foreign Car and Nunez in and with respect to said action.

106.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State in said interpleader action, the attorney-lienholders filed a claim against Melita Picciotto, Athena Picciotto, Stefano Picciotto and Judith Picciotto under the provisions of G. L. c. 93A despite the fact that said plaintiffs never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute, and despite the fact that Melita Picciotto was a minor child who had no legal capacity to engage in trade or commerce.

107.    At the trial of the interpleader action, the Picciottos and Foreign Car learned that Casher (acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State), had filed on their behalf (except for Foreign Car) an "Intentional Infliction of Emotional Distress" claim against the attorney-lienholders instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof and, therefore, preventing the jury from hearing evidence of occasions when the attorney-lienholders had inflicted emotional distress upon said plaintiffs.

108.    At said trial, the Picciottos and Foreign Car asked Casher to attempt to introduce evidence that would support the claims that they had against the attorney-lienholders for having knowingly and wilfully engaged in acts or practices in violation of the provisions of G. L. c. 93A, § 2, or in violation of the rules and regulations issued pursuant thereto, and in violation of G. L. c. 221, § 38, G. L. c. 271, § 39(b), G. L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct.

21

109.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher refused such requests of the Picciottos and Foreign Car, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial in support of a claim under G. L. c. 93A. Casher misinformed the Picciottos and Foreign Car that the trial judge had announced that he would reserve to himself (rather than submitting to the jury) a determination as to whether said statute had been violated constituted a ruling that there would be a second, jury-waived trial or presentation with respect to claims under said statute. When the Picciottos and Foreign Car insisted of Casher that she at least attempt to introduce such evidence and, if the judge would not allow the introduction thereof, to make an offer of proof, Casher's response was to stick her middle finger up towards Melita Picciotto and to tell her to "eat sh-t and die."

110.    On December 10, 2002, the Suffolk Superior Court ruled in the interpleader action that, because Casher (under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State) had not made a claim therein on behalf of plaintiffs Melita Picciotto and Athena Picciotto that they were entitled to obtain some of the funds that were provided through the settlement with Travelers, said plaintiffs could not testify or have argument presented to the jury with respect to a claim that they were entitled to obtain any portion of such funds.

111.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed in said interpleader action:

(a)     To make a claim on behalf of any of the Picciottos, Foreign Car or
        Nunez with respect to the settlement funds that were being held in
        the escrow account;

(b)     To list in the answer or affirmative defenses to Travelers'
        complaint that the claims regarding Essex Superior Court action
        No. 94-2155 also were settled as part of the settlement agreement;

(c)     To elicit testimony from the attorney-lienholders showing that they
        had made settlement with them impossible during the period of
        January 6, 1999 to April of 1999, by reason of their having made
        excessive fee demands (essentially having sought all of the
        settlement funds for themselves);

(d)     To explain to the court that the refusal to pursue the bankruptcy
        fraud of Salem Suede went to the issue of the breach of contract of
        attorney-lienhoders Gilleran and McCabe, and was appropriate
        evidence for the fact finder in order to determine the true reason
        for the breakdown in the attorney-client relationships ( *i.e.*, that the
        clients' requests were reasonable, but that the attorney-lienholders
        wrongly refused to perform on their contracts);

(e)     To explain the value of the discovery by the Picciottos (rather than
        any of the attorney-lienholders) of the joint orchestration between
        Salem Suede and Travelers of a multimillion dollar bankruptcy
        fraud (which discovery suddenly caused Travelers to offer a

settlement of $9,000,000 in order to prevent full disclosure of such fraud in continuing litigation);

(f)     To confront expert witnesses for the attorney-lienholders with evidence that would have exposed their testimony to the jury to be false or erroneous;

(g)     To expose the false testimony of the attorney-lienholders that they had not sought fees and costs that were excessive; and

(h)     To cause to be submitted to the jury, as a jury question, the issue as to who should be responsible for payment of interest as a result of delay in the distribution of the settlement funds.

112.    Prior-to the trial of said interpleader action, Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed properly to move to dismiss the claims against the Picciotttos and Foreign Car that were made by attorney-lienholder Edward H. Greer (hereinafter "Greer") under G. L. c. 221, Section 50, by reason of the fact that Greer never appeared on behalf of any of the Picciottos or Foreign Car with respect to the claims that had been settled with Travelers.

113.    Also with respect to Greer in said interpleader action, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State:

(a)     Failed to seek a ruling that, since the court had ruled that the claims of the Picciottos and Foreign Car against Greer were barred

24

by the statute of limitations, then Greer's claims against them also
were so barred; and

(b)     Refused requests of the Picciottos and Foreign Car that she utilize
evidence that would show that Greer was being untruthful in his
testimony in claiming that the Picciottos and Foreign Car had
induced him into representing them by suggesting that a person
who had furnished information would be a willing witness in a
case that he was pursuing on their behalf when such evidence
showed that he knew that such person would not agree to be a
witness.

114.    As a result of the unfair or deceptive acts and practices of Casher while
working under the direction of Continental and Great Northern, and also working in
concert with Twin City, Hartford and First State, Greer obtained a judgment against the
Picciottos and Foreign Car in said interpleader action based upon such untruthful and
totally unchallenged testimony.

115.    During the trial of said interpleader action, Casher, under the direction of
Continental and Great Northern, and working in concert with Twin City, Hartford and
First State:

(a)     Did not answer with specificity the answers to interrogatories that
the attorney-lienholders had propounded with respect to
anticipated expert testimony; and, therefore, the judge barred
testimony of an expert witness who had been engaged to testify on
behalf of the Picciottos and Foreign Car;

    (b)   Did not present expert testimony concerning certain aspects of malpractice engaged in by some of the attorney-lienholders while they had represented the Picciottos and Foreign Car;

    (c)   Failed property to prepare the expert witnesses who testified on behalf of the Picciottos and Foreign Car with regard to such matters areas as to which he was allowed to testify;

    (d)   Did not present evidence that the breakdown of the relationship between the Picciottos and Foreign Car and the attorney-lienholders had resulted from the failure or refusal of said attorneys to pursue claims for bankruptcy fraud that had been engaged in by Salem Suede and its insurer, Travelers, the eventual uncovering of which by the Picciottos themselves had led to the willingness of Travelers to offer $9,000,000 to settle all claims against Salem Suede and Travelers; and

    (e)   Deliberately and intentionally misled Judith Picciotto regarding the follow-up actions that Casher alleged she was taking to protect her from the oppositions' fraud and misconduct relative to a documents that had been prepared by one Roberta F. White (hereinafter "White").

116.    Plaintiff Judith Picciotto instructed Casher to subpoena White and obtain documents that would expose the fraud with respect to said documents that had been prepared by White.

117.   Casher stated to Judith Picciotto that she was going to subpoena White and was going to get to the bottom of the fraud, she but did not do so.

118.   Casher was instructed by Continental and Great Northern, working in concert with Twin City, Hartford and First State, not to call White to the stand to be questioned about such fraud and misconduct.

119.   After the trial of the interpleader action, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, attempted to argue that the court had barred her from introducing evidence supporting the claims of the Picciottos and Foreign Car under G. L. c. 93A, so the court should accept her post-verdict briefs on the subject. The court responded:

> As to the Picciotto parties' arguments concerning the 93A claim, the court has reserved to itself that issue upon the basis of evidence introduced at the jury trial. The court has not "barred evidence" of the 93A claim (opposition p. 10). The court required all the evidence upon all open claims to come in at the jury trial. It reserved to itself the claims and not the evidence. [Docket entry number 510.0 of 1/17/02 in case No. 99-1594-A, Suffolk Superior Court]

120.   Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to afford the Picciottos and Foreign Car competent and effective legal representation in and with respect to said interpleader action.

121.   After the trial of said interpleader action, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State:

    (a)   Refused to answer questions that the Picciottos and Foreign

27

Car had asked about the case and their claims therein;

(b)     Refused to provide the Picciottos and Foreign Car with
documents pertaining to the case that they were requesting; and

( c)    Claimed that they had not retained the documents (or copies)
that would evidence that Casher allegedly had made offers of proof
at said trial.

122.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,
P.C, acting under the direction of Continental and Great Northern, and working in concert
with Twin City, Hartford and First State, mismanaged the settlement funds of the
Picciottos and Foreign Car that the court in said interpleader action had released to their
custody, care, and control; and they charged the Picciottos and Foreign Car for
disbursements that were not made on their behalf and overcharged them for
disbursements that had been made on their behalf.

123.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,
P.C., under the direction of Continental and Great Northern, and working in concert with
Twin City, Hartford and First State, also embezzled, misappropriated and converted some
of the funds of the Picciottos and Foreign Car that had been so released to their custody,
including, but not limited to diversion of funds into Casher's personal account for her
son's private school tuition and also paying the firm's annual maintenance contract
expenses for its copying machine.

124.    The removal of said funds was done without the knowledge or consent of
the Picciottos and Foreign Car, who only discovered the wrongful actions of Casher,
Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C. in December of 2002

28

after intervention by the Board of Bar Overseers, which ordered Casher and Krulewich, Casher, P .C., to produce to the Picciottos and Foreign Car the financial documents that they were seeking.

125.     The Picciottos and Foreign Car made demand on Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. for return of the wrongfully-removed funds.

126.     Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, in order to prevent the Picciottos and Foreign Car from having any funds available to enable them even to order the trial transcript so that the judgment in said interpleader action could be appealed, refused to comply with the demands of the Picciottos and Foreign Car that the wrongfully-removed funds be returned to the account.

127.     On August 21, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested that Casher file a motion on her behalf in the interpleader action for an emergency release to her of funds from the escrow account because, as she stated therein, "I am in the middle of an immediate and irreversible hardship. I have no money for college. I have no money for therapy, so I've stopped receiving it, and I'm running out of money for my antidepressant medication."

128.     On September 19, 2002, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, sent a letter to the Picciottos and Foreign Car in which she refused to file such emergency motion. In her said letter, Casher, acting under the direction of Continental and Great

Northern, and working in concert with Twin City, Hartford and First State, claimed that "an attorney representing Melita and Athena's interests would quite likely file the motion," but "someone representing" Casher's interests "would oppose it."

129.   Casher knew that the above response was in violation of the provisions of G.L. c. 221, § 38, G.L. c. 221, § 40, the Mass. R. Prof. Conduct, and other principles governing the conduct of attorneys.

130.   Acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher also sent a letter to the Picciottos and Foreign Car on September 30,2002, in which she stated that she could not file the requested motion because it was "directly contrary to [her] own interest."

131.   At the time Casher made those statements, she was the legal representative of Melita Picciotto and Athena Picciotto, pursuant to an Order of the Suffolk Superior Court; and Athena Picciotto was then a minor child.

132.   On October 20, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. maintained on behalf of the Picciottos so that the Picciottos could "buy medicine, pay mortgage, up coming fuel bill, etc."

133.   Thereafter, Casher, Leonard Krulewich; Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to release any funds to plaintiff Melita Picciotto.

134.    The Picciottos requested of Nunez that he call Casher to have such funds released.

135.    At first Nunez agreed to have Bergeron call Casher and have such sum of $5,000 released to Melita Picciotto.

136.    After conferring with Bergeron and Casher, Nunez refused to honor his agreement.

137.    Bergeron stated that having such sums released would be against her and Nunez's financial interests.

138.    In October of 2002, judgment entered against Nunez in said interpleader action, holding him liable for attorneys' fees, interest, and costs, in a sum of over Three Million Dollars.

139.    Also in October of 2002, judgment entered against Melita and Athena Picciotto in said interpleader action, holding them liable to attorney-lienholder Gilleran for the sum of $15,797.30 and jointly and severally liable to attorney-lienholder McCabe for the sum of $68,507.00 (plus interest). Under said judgment, the jury determined that Melita Picciotto and Athena Picciotto did not owe anything to any of the other attorney-lienholders from their settlement amount of Two Million Dollars ($2,000,000).

140.    Nunez and Bergeron, aided and abetted by Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, developed a scheme for Nunez to avoid the Three Million Dollar legal fee judgment by holding Melita and Athena Picciotto liable for the attorney-lienholders'

(Zabin, et al) judgment, plus attorneys's fees and costs that had been paid, and, allegedly, because they were further indebted to Casher.

141.    To accomplish this scheme, Nunez and Bergeron executed the strategies set in place by Continental and Great Northern, working in concert with Twin City, Hartford and First State. Nunez and Bergeron claimed that they were supposed to receive Three Million Dollars net from the settlement funds, regardless of whether the Picciottos and Foreign Car received any settlement funds, and that the Picciottos and Foreign Car had agreed to pay any and all judgments against the Picciottos, Foreign Car and Nunez in the interpleader action, plus all of Casher's and Krulewich, Casher, P.C.'s fees and costs.

142.    The financial benefit to Nunez and Bergeron under this scheme would result in their undue enrichment; the financial benefit to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., resulted from providing them assistance in wrongfully obtaining funds that were rightly due to plaintiffs Melita and Athena Picciotto. The financial benefit to Continental and Great Northern, working in concert with Twin City, Hartford and First State, was that the Picciottos and Foreign Car would be rendered financially unable to pursue their claims against them.

143.    In furtherance of said scheme, Nunez, acting in concert with Bergeron and Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to allow plaintiff Melita Picciotto to obtain $5,000.00 from The Picciotto Family Trust fund for her own medical needs; and they further placed the Picciottos under threat of foreclosure on their family home.

144.    Because Nunez, in concert with Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, had removed substantial funds from the Picciotto Family Trust without the Picciottos' knowledge, authorization, or consent, the Picciottos were rendered unable to order the transcript of the trial in the interpleader action (a necessary condition for pursuing an appeal) for over two years, and plaintiff Melita Picciotto was unable to purchase her prescription medicine, all of which caused additional mental and physical harm.

145.    On October 9, 2002, Melita Picciotto requested that Casher move the court to release to her $350,000.00 of her money so she could go to school, buy medication, resume her therapy, and retain an attorney to protect her property interests.

146.    Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to comply with such request.

147.    On October 9, 2002, the Suffolk Superior Court (Sikora, J.), instructed Casher to order the trial transcript.

148.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to order the trial transcript.

149.    On October 31, 2002, plaintiff Melita Picciotto sent a letter to Leonard Krulewich and Helen Krulewich requesting their intervention and specifically requesting:

       (a)     A release of Five Thousand Dollars ($5,000) so that she could
meet emergency medical expenses;

       (b)     That the motion be filed that Casher earlier had refused to file; and

       (c)     That all the financial records be made available that pertained to
the accounts that Casher, Leonard Krulewich, Helen Krulewich
and Krulewich, Casher, P. C. had maintained on behalf of the
Picciottos and Foreign Car and that Casher had refused to provide
despite requests therefor dating back to June of 2002, in violation
of the attorney-client account rules.

150.    Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C.,
acting under the direction of Continental and Great Northern, and working in concert
with Twin City, Hartford and First State, ignored such requests.

151.    Plaintiffs Melita Picciotto and Stefano Picciotto then turned to the
Massachusetts Board of Bar Overseers for help, but despite assistance provided by said
Board, the Picciottos and Foreign Car have not been able to obtain omplete records from
Casher, Krulewich, Casher, P .C., Helen Krulewich, Leonard Krulewich, who are acting
under the direction of Continental and Great Northern, and working in concert with Twin
City, Hartford and First State.

152.    The documents that have been produced to the Picciottos and Foreign Car
include copies of checks drawn on commingled accounts with the amount and the name
of the payee blacked out, and copies of the corresponding bank statements with the
transaction portions also blacked out.

153.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northert, and working in concert with Twin City, Hartford and First State, refused to present an accounting to plaintiffs Melita Picciotto and Stefano Picciotto in Probate Court Format, as Massachusetts Bar Counsel had requested, Casher stating that she was "unfamiliar with it." Bar Counsel suggested to plaintiffs Melita Picciotto and Stefano Picciotto that they take legal action to enforce their rights.

154.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C. pursued and obtained in the Suffolk Superior Court an attachment on the residence of the Picciottos in a suit that they filed seeking further fees and costs from the Picciottos. While acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, said attorneys and said law firm falsely claimed that they had been absolved of any wrongdoing by the Bar Counsel with respect to their dealings with the Picciottos.

155.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, sought such attachment knowing that plaintiffs Stefano Picciotto and Judith Picciotto were about to refinance the mortgage on their said residence so as to enable them to obtain sufficient funds to appeal the judgment in said interpleader action, both by ordering a transcript of the proceedings and by engaging legal representation.

156.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C., sought and obtained such attachment under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, in effort to, among other things, keep the Picciottos and Foreign Car from being able to have the means to pursue such an appeal and thereby, among other things, expose the misconduct that said attorneys had engaged in while representing the Picciottos and Foreign Car as well as the misconduct of Continental and Great Northern, working in concert with Twin City, Hartford and First State.

157.    Because Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. (acting under the direction and control of Continental and Great Northern, and working in concert with Twin City, Hartford and First State) refused to release to plaintiff Melita Picciotto $5,000 of her own funds for her pressing medical needs, and because they also refused to file a motion on behalf of said plaintiff in order to have some of her funds that are being held in the escrow account released to her, said plaintiff filed a *pro se* motion in the Massachusetts Appeals Court for an emergency release of funds. Krulewich, Casher, P.C. and Casher, acting under the direction of Continental and Great Northern, in concert with Twin City, Hartford and First State, opposed said motion on November 20, 2002.

158.    On November 26, 2002, plaintiffs Melita Picciotto and Athena Picciotto moved the Suffolk Superior Court to have the attorney-lienholders in said interpleader action paid without abridging any party's right to appeal, and to have the remainder of the money released to the Picciottos, Foreign Car and Nunez, pursuant to the jury verdicts and in accordance with their agreed-upon division of the settlement funds.

159.    Nunez, under the direction of Bergeron, Casher, Leonard Krulewich,
Helen Krulewich and Krulewich, Casher, P.C., and working in concert with Continental,
Great Northern, Twin City, Hartford and First State, opposed the obtaining by plaintiffs
Melita Picciotto and Athena Picciotto of the remainder of their Two Million Dollar
settlement amount after paying the amounts that the jury had found that they owed to the
attorney-lienholders in said interpleader action.

160.    Even though the Suffolk Superior Court has ordered Nunez to honor his
contract (*i.e.*, the internal settlement allocation) with plaintiffs Melita Picciotto and
Athena Picciotto, Nunez now is refusing to honor such contract because of the
interference and undue influence of Bergeron, Casher, Leonard Krulewich, Helen
Krulewich and Krulewich, Casher, P.C. (who are acting under the direction of
Continental and Great Northern, and working in concert with Twin City and First State).

161.    When Krulewich, Casher, P .C., and Casher filed their opposition to the
motion of plaintiffs Melita and Athena Picciotto to be allowed to receive their money,
Casher was under court order to represent the financial interests of plaintiff Melita
Picciotto; and she was obligated, pursuant to the requirements of Rule 1.3 of the
Massachusetts Rules of Professional Conduct, to "zealously" represent said plaintiffs'
interests.

162.    The verified opposition to the motion of plaintiff Melita Picciotto that
Casher and Krulewich, Casher, P .C. filed in the Appeals Court (under the direction of
Continental and Great Northern and acting in concert with Twin City, Hartford and First
State) urged the court not to release any funds to said plaintiff; and it contained facts that
Krulewich, Casher, P .C. and Casher knew to be harmful and false (such as that the

Picciottos' mortgage loan on their house had been paid, etc.); however, despite having

such knowledge, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P

.C., acting under the direction of Continental and Great Northern, and working in concert

with Twin City, Hartford and First State, failed zealously ro represent plaintiff Melita

Picciotto' s interests with respect to said motion and the matter that was addressed

therein, in violation of Rule 1..3 of the Massachusetts Rules of Professional

Responsibility.

163.   But for the malpractice of Casher, Leonard Krulewich, Helen Krulewich

and Krulewich, Casher, P.C. in:

(a)   Negligently taking on Nunez as a client without the requisite
consultation";

(b)   Negligently not listing the amounts that each party had agreed to settle for
in the settlement agreement with Travelers;

(c)   Negligently not reducing to writing in the same settlement agreement the
terms and conditions of the internal settlement;

(d)   Negligently refusing to settle the attorney-lienholders' claims at the time
of the settlement with Travelers; and

(e)   Negligently not making a claim on behalf of Melita Picciotto and Athena
Picciotto against the funds that were deposited by Travelers into the
Suffolk Superior Court,

they would not have created an otherwise avoidable conflict of interest.

164.   Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C. had a heightened duty zealously to represent the financial interests of plaintiff Melita

38

Picciotto, who was a minor child throughout their representation, but, at the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, they filed an opposition to Athena Picciotto's receiving her property while they were her legal representatives.

165.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, intended to inflame the court, prejudice plaintiff Melita Picciotto, and coerce Melita Picciotto into acquiescing to their unfair fee demands by acknowledging that she would be financially liable for the legal fees and expenses incurred by the other clients, including Nunez, absent any contractual agreement to such liability. This was done in bad faith so that the Picciottos and Foreign Car would be rendered unable to pursue their claim against Continental and Great Northern.

166.    On November 29,2002, plaintiffs Melita and Athena Picciotto sent a demand letter to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., under the provisions of G. L. c. 93A, § 9, setting forth claims on their behalf for damages of between Five Million Seven Hundred Twenty Thousand Dollars ($5,720,000) and Eight Million Four Hundred Thousand Dollars ($8,400,000).

167.    Plaintiffs Melita Picciotto and Athena Picciotto offered to reduce and settle their claims against Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., for Two Million Dollars ($2,000,000), which the insurer for said defendants has claimed is the limit of coverage under their professional liability insurance policies.

168. On December 28, 2002, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, responded to said demand letter by denying all "allegations of wrongdoing" and by refusing to make any tender of settlement at all.

169. On March 4, 2004, an attorney selected by Leonard Krulewich and Casher to represent Nunez wrote a letter to the Picciottos and Foreign Car in which she demanded that they acquiesce to Nunez's being released an additional One Million Eight Hundred Thousand Dollars ($1,800,000) from the escrowed funds held by the Suffolk Superior Court.

170. When the Picciottos and Foreign Car would not acquiesce to such demand, Nunez and Bergeron, working in concert with Casher, Leonard Krulewich, and Helen Krulewich, who were taking direction from Continental and Great Northern, and working in concert with Twin City, Hartford and First State, took action to inflict additional economic harm on the Picciottos and Foreign Car by seeking in said interpleader action to have Judge Sikora, whom they have admitted under the pains and penalties of perjury is, in their opinion, biased against the Picciottos, release to Nunez funds that they knew rightfully belonged to plaintiffs Melita Picciotto and Athena Picciotto.

171. On March 1, 2001, Casher had her deposition taken in and with respect to said interpleader action in which she represented the Picciottos and Nunez.

172. On March 12, 2001, Krulewich, Casher, P.C., now fully aware that the negligence of Casher and/or Leonard Krulewich, Helen Krulewich or Krulewich, Casher,

P .C. had been exposed, again gave notice of one or more potential malpractice claims to its insurer (which at the time was Twin City).

173.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. knew, or had reason to know, that their insurers Continental and Twin City also provided liability insurance coverage to the attorney-lienholders in said interpleader action.

174.    Neither Casher, Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P .C., nor anyone else on their behalf ever informed the Picciottos and/or Foreign Car that a notice of a potential claim had been given to said insurers.

175.    On October 15, 2002, Casher, although she was then the official record-keeper of Krulewich, Casher, P .C, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, informed plaintiff Melita Picciotto that she had no idea as to the identify of the malpractice insurance carrier for her or for Krulewich, Casher, P.C.

176.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, have denied that either they or anyone on their behalf, ever provided notice of a potential claim to either Twin City or Continental prior to the filing by plaintiff Melita Picciotto of a malpractice claim against Casher, Krulewich, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

177.    On March 12,2001, Krulewich, Casher, P.C. purchased a professional liability policy with Clarendon National Insurance Company (hereinafter "Clarendon").

178.   On March 12, 2002, Krulewich, Casher, P .C. purchased a professional liability policy with TIG Specialty Insurance Solution (hereinafter referred to as "TIG").

179.   Owing to the refusal of Leonard Krulewich, Helen Krulewich, Casher or Krulewich, Casher, P .C. (who were acting under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State) to provide Melita Picciotto and Athena Picciotto with any relief, Melita and Athena Picciotto were forced to send a G.L. c. 93A letter of demand to the forgoing parties.

180.   In November of 2002, in order to shield their liabilities from Continental and Great Northern, Leonard Krulewich, Helen Krulewich, Casher, or Krulewich,Casher, P.C., requested defense from the TIG against the rightful claims of Melita and Athena Picciotto.

181.   At the time they so requested such defense, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C. knew that Continental had the duty to defend and to indemnify the claims of Melita and Athena Picciotto because the claims were first reported to Continental.

182.   Leonard Krulewich, Helen Krulewich, Casher, and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, agreed to hide the true insurance coverage in effort to shield themselves and their insurers.

183.   Leonard Krulewich, Helen Krulewich, Casher, and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working **in** concert with Twin City and First State, have provided periodic reports to their insurers.

184.    The insurers Continental and Twin City, to the detriment of the Picciottos and Foreign Car, used such periodic reports during the interpleader action to afford them an unfair advantage in defending the attorney-lienholders with respect to the claims that the Picciottos and Foreign car had asserted against the attorney-lienholders therein.

185.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to obey an order of the Essex Superior Court to provide Melita Picciotto with (among other documents) all notices of claims, all applications for insurance, and all of the insurance policies that they submitted to, or obtained from, their insurance companies.

186.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, retained Attorney Robert A. Stolzberg (hereinafter "Stolzberg") to be an expert witness in said interpleader action against some of the attorney-lienholders.

187.    Stolzberg, Casher, and Krulewich, Casher, P .C., represented to the Picciottos and Foreign Car that Stolzberg was a Harvard Law School graduate and an expert in contract law and that he would be well able to testify to the malpractice of attorney-lienholders in and with respect to their representation of the Picciottos and Foreign Car.

188.    Stolzberg, Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P .C., worked together in preparing answers to interrogatories that would describe the intended testimony of Stolzberg in said interpleader action.

189.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,
P.C., acting under the direction of Continental and Great Northern, and working in
concert with Twin City, Hartford and First State, failed to prepare (along with Stolzberg)
said answers carefully and with sufficient and complete specificity with respect to the
anticipated testimony of Stolzberg; and, as a result, Stolzberg was barred by the Suffolk
Superior Court in the interpleader action from testifying with respect to several issues
that pertained to the malpractice of the attorney-lienholders.

190.    On December 24, 2001, plaintiff Stefano Picciotto sent a letter to Casher
and Krulewich, Casher, P.C. urging them to make sure that Stolzberg would testify with
regard to the issues that said plaintiff presented in said letter.

191.    On December 26, 2001, acting under the direction of Continental and
Great Northern, and working in concert with Twin City, Hartford and First State, Casher
assured plaintiff Stefano Picciotto that she had faxed a copy of said letter to Stolzberg;
that she and Stolzberg had discussed it at length; that Stolzberg was familiar with the case
law; and that Stolzberg was going to testify in accordance with the information that was
contained in said letter.

192.    On December 27, 2001, Stolzberg testified in said interpleader action; and
while on the stand, he could not remember: (a) any of the facts or law that were described
in said letter of December 24, 2001, or (b) the name of the attorney who had prevailed in
case that pertained to significant issues involved in the interpleader action, such attorney
being the judge who was presiding at the trial of the interpleader action.

193.    Stolzberg left the jury with the clear impression that the Picciottos,
Foreign Car and he simply were there to unfairly malign attorney-lienholder Gilleran and

deceptively prevent him from collecting what would have been a fair fee if he had not been guilty of any malpractice or breach of contract.

194.    Continental knew that Casher had a history of depression and suicidal ideation. Continental also knew that Casher had been hospitalized for attempted suicide, and used this information to unfairly take advantage of the Picciottos and Foreign Car.

195.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, attributed her inability to remember the facts of the case during the trial of the interpleader action to the unethical conduct of the attorney-lienholders, combined with a "crooked" judge, all of whom she claimed were making her feel suicidal, causing her to be emotionally upset, and causing her to be so depressed that she was losing her memory.

196.    Prior to the trial of the interpleader action, Casher never revealed to any of the Picciottos or Foreign Car that she had a mental condition that could materially impair her ability to represent them.

197.    Casher had an obligation to the Picciottos and Foreign Car, pursuant to Rule 1.16(a) (2) of the Mass. Rules of Professional Conduct, to withdraw from representing them and to help them to find another attorney to represent them, but acting under the direction of Continental and Great Northern, working in concert with Twin City, Hartford and First State, failed or refused to do so.

198.    Casher knew that she was a material witness, and as a lawyer, pursuant to Rule 3.7A of the Massachusetts Rules of Professional Conduct, knew that she could not act as an advocate in a trial in which she was a necessary witness; but acting under the

direction of Continental and Great Northern, working in concert with Twin City, Hartford and First State, failed or refused to do so.

199.    After the judgment entered against the Picciottos and Foreign Car in the interpleader action that was filed in the Suffolk Superior Court, the Picciottos and Foreign Car filed a notice of appeal.

200.    The Picciottos and Foreign Car requested of Casher that she or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. order a copy of the transcript of the proceedings. Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, responded that there was no money to order the transcript (an initial deposit in the amount of $25,000 being required in order for preparation thereof to commence) despite the fact that the Suffolk Superior Court had released to her and/or her firm Seven Hundred and Fifty Thousand Dollars ($750,000) in April of 2001.

201.    Acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher, and/or Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in April of 2001, deposited said sum of $750,000 into the operating account for said attorneys, and then a check in the amount of only Five Hundred Fifty Thousand Dollars ($550,000) was made out against such sum in favor of Casher, as Trustee of the Picciotto Family Trust, without obtaining any authorization therefor from the Picciottos and Foreign Car to retain the missing difference (*i.e.*, $200,000.00).

202.    Subsequently, in December of 2001, without the authorization of the Picciottos or Foreign Car, Casher, acting under the direction of Continental and Great

46

Northern, and working in concert with Twin City, Hartford and First State, sent to Bergeron a check payable to Bergeron in the amount of Twenty-five Thousand Dollars ($25,000) against funds held by Casher as Trustee of the Picciotto Family Trust.

203. As a result of the failure of Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, to make money available for the ordering of said transcript from funds belonging to the Picciottos and Foreign Car, they caused a delay of the appeal of the judgment in the Suffolk Superior Court interpleader action, thereby causing the amount of interest accruing with respect to the judgment to increase beyond what should have been necessary; and they have jeopardized the appeal because the Suffolk Superior Court has suggested that the appeal should be dismissed because of the delay in ordering said transcript.

204. The Picciottos and Foreign Car, more than 30 days prior to the date of the filing of this amended complaint, sent demand letters to Continental, Great North, Hartford and Twin City under the provisions of G. L. c. 93A, § 9, in which they made demands for relief against said defendants as provided in said statute.

205. Continental, Great North, Hartford and Twin City have failed to make any tender of settlement to the Picciottos or Foreign Car as provided for in said statute in response to said letters that were sent to them by the Picciottos and Foreign Car.

## Count One

206. The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

47

207.  Continental, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as:

(a)  To cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Leonard Krulewich, Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron; and

(b)  To cause harm to the Picciottos and Foreign Car by the tortious conduct and breaches of contractual obligations of others.

208.  As a result, Continental has become jointly liable to the Picciottos and Foreign Car for all tortious conduct and breaches of contractual obligations with respect to the Picciottos and Foreign Car of those with whom Continental has engaged in such civil conspiracy.

209.  The Picciottos and Foreign Car have been caused to suffer harm, both economic and physical, as a result of the conduct of Continental.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Continental in the amount of their damages, plus interest and costs.

## Count Two

210.  The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

211.  Continental, by its forgoing actions, tortiously interfered with the contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

212.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against

Continental in the amount of their damages, plus interest and costs.

## Count Three

213.    The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

214.    Continental, by its negligence, has caused harm to be incurred by the
Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against
Continental in the amount of their damages, plus interest and costs.

## Count Four

215.    The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

216.    Continental engaged in fraud and deceit against the Picciottos and Foreign
Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to
the attorney-lienholders, Casher, Nunez, and Bergeron.

217.    As a result, the Picciottos and Foreign Car have been caused to suffer
harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against
Continental in the amount of their damages, plus interest and costs.

## Count Five

218.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

219.    Continental engages in trade or commerce within the Commonwealth of Massachusetts.

221.    Continental's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)    Determine that said conduct of Continental represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

(c)    Award the Picciottos and Foreign Car the amount of such damages;

(d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

(e)    Award the Picciottos and Foreign Car against Continental up to three, but not less than two, times the amount of their actual damages;

(f)     Award the Picciottos and Foreign Car against Continental their reasonable
attorney's fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be just and
proper.

## Count Six

222.    The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

223.    Great Northern, by its forgoing actions, engaged in a civil conspiracy
against the Picciottos and Foreign Car so as:

(a)     To cause property of the Picciottos and Foreign Car to be wrongly
transferred to the attorney-lienholders, Casher, Leonard Krulewich,
Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron;
and

(b)     To cause harm to the Picciottos and Foreign Car by the tortious
conduct and breaches of contractual obligations of others.

224.    As a result, Great Northern has become jointly liable to the Picciottos and
Foreign Car for all tortious conduct and breaches of contractual obligations with respect
to the Picciottos and Foreign Car of those with whom Great Northern has engaged in
such civil conspiracy.

225.    The Picciottos and Foreign Car have been caused to suffer harm, both
economic and physical, as a result of the conduct of Great Northern.

WHEREFORE, the Picciottos and Foreign Car demand judgment against

Great Northern in the amount of their damages, plus interest and costs.

## Count Seven

226.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

227.    Great Northern, by its forgoing actions, tortiously interfered with the

contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich,

Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

228.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great

Northern in the amount of their damages, plus interest and costs.

## Count Eight

229.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

230.    Great Northern, by its negligence, has caused harm to be incurred by the

Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great

Northern in the amount of their damages, plus interest and costs.

## Count Nine

231.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

232.    Great Northern, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

233.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great Northern in the amount of their damages, plus interest and costs.

## Count Ten

234.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

235.    Great Northern engages in trade or commerce within the Commonwealth of Massachusetts.

236.    Great Northern's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

53

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)    Determine that said conduct of Great Northern represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

(c)    Award the Picciottos and Foreign Car the amount of such damages;

(d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

(e)    Award the Picciottos and Foreign Car against Great Northern up to three, but not less than two, times the amount of their actual damages;

(f)    Award the Picciottos and Foreign Car against Great Northern their reasonable attorney's fees and costs; and

(g)    Grant such other and further relief as the Court shall deem to be just and proper.

## Count Eleven

237.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

238.   Hartford, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as:

      (a)   To cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Leonard Krulewich, Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron; and

      (b)   To cause harm to the Picciottos and Foreign Car by the tortious conduct and breaches of contractual obligations of others.

239.   As a result, Hartford has become jointly liable to the Picciottos and Foreign Car for all tortious conduct and breaches of contractual obligations with respect to the Picciottos and Foreign Car of those with whom Hartford has engaged in such civil conspiracy.

240.   The Picciottos and Foreign Car have been caused to suffer harm, both economic and physical, as a result of the conduct of Hartford.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford in the amount of their damages, plus interest and costs.

## Count Twelve

241.   The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

242.   Hartford, by its forgoing actions, tortiously interfered with the contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

243.   As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford in the amount of their damages, plus interest and costs.

## Count Thirteen

244.   The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

245.   Hartford, by its negligence, has caused harm to be incurred by the Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford in the amount of their damages, plus interest and costs.

## Count Fourteen

246.   The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

247.   Hartford, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

248.   As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford in the amount of their damages, plus interest and costs.

## Count Fifteen

249.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

250.    Hartford engages in trade or commerce within the Commonwealth of Massachusetts.

251.    Hartford's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)    Determine that said conduct of Hartford represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

(c)    Award the Picciottos and Foreign Car the amount of such damages;

(d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

(e)    Award the Picciottos and Foreign Car against Hartford up to three, but not less than two, times the amount of their actual damages;

(f)    Award the Picciottos and Foreign Car against Hartford their reasonable attorney's fees and costs; and

(g)    Grant such other and further relief as the Court shall deem to be just and proper.

## Count Sixteen

252.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

253.    Twin City, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as:

(a)    To cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Leonard Krulewich, Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron; and

(b)    To cause harm to the Picciottos and Foreign Car by the tortious conduct and breaches of contractual obligations of others.

254.    As a result, Twin City has become jointly liable to the Picciottos and Foreign Car for all tortious conduct and breaches of contractual obligations with respect to the Picciottos and Foreign Car of those with whom Twin City has engaged in such civil conspiracy.

255.    The Picciottos and Foreign Car have been caused to suffer harm, both economic and physical, as a result of the conduct of Twin City.

WHEREFORE, the Picciottos and Foreign Car demand judgment against

Twin City in the amount of their damages, plus interest and costs.

## Count Seventeen

256.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

257.    Twin City, by its forgoing actions, tortiously interfered with the

contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich,

Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

258.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin

City in the amount of their damages, plus interest and costs.

## Count Eighteen

259.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

260.    Twin City, by its negligence, has caused harm to be incurred by the

Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin

City in the amount of their damages, plus interest and costs.

## Count Nineteen

261.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

262.    Twin City, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

263.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin City in the amount of their damages, plus interest and costs.

## Count Twenty

264.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

265.    Twin City engages in trade or commerce within the Commonwealth of Massachusetts.

266.    Hartford's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)     Determine that said conduct of Twin City represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)     Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

(c)     Award the Picciottos and Foreign Car the amount of such damages;

(d)     Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

(e)     Award the Picciottos and Foreign Car against Twin City up to three, but not less than two, times the amount of their actual damages;

(f)     Award the Picciottos and Foreign Car against Twin City their reasonable attorney's fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be just and proper.

## DEMAND FOR JURY TRIAL

The Picciottos and Foreign Car hereby demand a trial by jury with respect to all issues as to which they are entitled to a jury trial.

STEFANO PICCIOTTO
Pro Se


Stefano Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


JUDITH PICIOTTO
Pro Se


Judith Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


MELITA PICCIOTTO
Pro Se


Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


ATHENA PICCIOTTO
Pro Se


Athena Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

62

FOREIGN CAR CENTER, INC.

By its attorney,

_____

James M. Shannon, Jr.
BBO # 453610
418 Rear Lafayette Street
Salem, Massachusetts 01970
(978) 741-0218

Dated: August 18, 2005