UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

STEFANO PICCIOTTO, JUDITH
PICCIOTTTO, MELITA PICCIOTTO,
ATHENA PICCIOTTO and FOREIGN CAR
CENTER, INC.,

          Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,
GREAT NORTHERN INSURANCE
COMPANY, HARTFORD INSURANCE
COMPANY and TWIN CITY FIRE
INSURANCE COMPANY,

          Defendants.

CIVIL ACTION NO. 05-cv-10901 NG

**HARTFORD INSURANCE COMPANY[1] AND TWIN CITY
INSURANCE COMPANY'S MEMORANDUM IN
<u>SUPPORT OF THEIR MOTION TO DISMISS</u>**

**INTRODUCTION**

This case is the latest in a series of increasingly vexatious lawsuits involving the Picciotto

family and their corporation, Foreign Car Center, Inc., (hereinafter collectively "the Picciottos")

brought over the past twenty years. The thrust of the present 63-page Amended Complaint is that

the defendant insurance carriers engaged in a widespread and far-reaching conspiracy with the

Picciottos' former attorney, Dana Casher ("Casher"), wherein Casher agreed to "throw" the

Picciottos' legal malpractice counterclaims brought against six of the Picciottos' former attorneys,

each of whom was suing for unpaid fees in connection with their representation of the Picciottos in

underlying environmental exposure litigation.

---

[1] As set forth below, "Hartford Insurance Company", a non-existent entity, seeks dismissal for
the reason that it is an improper party to the present litigation. The actual name of the entity the
plaintiffs likely intend to name as a defendant is "The Hartford Financial Services Group, Inc."
("Hartford"), which is the parent of "Twin City Fire Insurance Company". There is no legal
entity entitled "Hartford Insurance Company."

The allegations made by the Picciottos in the present action are virtually identical to those made previously against Casher in various other lawsuits pending in Massachusetts Superior Court since 2003.  See *First Amended Verified Complaint* filed in Picciotto v. Casher, et al., Essex Superior Court Civil Action no. 2003-00036, attached hereto as Exhibit A[2]  and the *Answer and Counterclaim of Defendants Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto and Foreign Car Center, Inc.* filed in Krulewich, Casher, P.C. v. Picciotto et al., Suffolk Superior Court Civil Action no. 2003-05378, attached hereto as Exhibit B.

The Picciottos' latest federal lawsuit should be dismissed and/or remanded for at least three independent reasons.  First, this Court lacks diversity jurisdiction because, pursuant to Fed. R. Civ. P. 19, Dana Casher is a "necessary" party to this action who must be joined and she is an "indispensable" party because her presence as a defendant would destroy complete diversity and necessitate dismissal and/or remand to state court.  Second, assuming, *arguendo*, that Casher is not an indispensable party, this Court should in its discretion decline jurisdiction based on the principles of abstention articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and its progeny, specifically, that the present action is duplicative of prior and pending parallel litigation brought by the Picciottos in Massachusetts Superior Court alleging the same operative facts and circumstances as in the case at bar.  Under the circumstances, the principles of judicial economy are best served by dismissal and remand of this action to state court before Judge Burnes, who has presided over these issues in a consolidated action styled Casher, et al v. Picciotto, et al., Suffolk Co. Civil Action no. 2003-05378, for some time.  Third, as set forth more fully in defendant Continental Casualty Company's Motion to Dismiss, there cannot be complete diversity because Continental Casualty Company

---

[2] Melita Picciotto, one of the two Picciotto daughters, filed the first lawsuit against attorney Casher without any involvement of the other Picciotto family members.  Over time, all of the Picciottos have asserted claims against Casher.

("Continental"), Great Northern Insurance Company ("Great Northern") and Twin City Insurance Company ("Twin City"), Casher's alleged insurers, are deemed to be citizens of Massachusetts pursuant to 28 U.S.C. §1332(c).[3]  Finally, and unrelated to the above jurisdictional issues, the defendants move to dismiss "Hartford Insurance Company" from the present action.  As set forth more fully below, "Hartford Insurance Company" is not a proper party to this litigation for the simple reason that "Hartford Insurance Company" is non-existent and therefore a non-viable entity

## RELEVANT BACKGROUND

### A.    The Underlying Environmental Litigation

In 1983, Stefano and Judith Picciotto, Foreign Car Center, Inc., (hereinafter "FCC"), and FCC employee, Juan Nunez ("Nunez"), brought a personal injury action in Essex Superior Court against Salem Suede, Inc. ("Salem Suede") and others for injuries allegedly caused by exposure to toxic emissions from a Salem Suede tannery.  In 1993, after trial, Mr. and Mrs. Picciotto, Nunez and FCC obtained judgment against Salem Suede and others in the amount of approximately $1.8 million.  They thereafter began efforts to collect their judgment form either the defendants or the defendants' insurer.

Thereafter, in 1994, two of the Picciottos' minor daughters, who were not parties to the 1983 action, joined their parents and FCC in a second lawsuit against Salem Suede claiming injuries from further, ongoing, toxic emissions.  This second action never went to trial and was settled as part of the global settlement between the Picciottos and Travelers in 1999.

### B.    The Action for Bad Faith Against Travelers

In March of 1996, the Picciottos sued Travelers Indemnity Corporation ("Travelers"), Salem Suede's insurance carrier, claiming that Travelers engaged in unfair insurance claim

---

[3] Continental has already briefed the 28 U.S.C. 1332(c) issue in its Motion to Dismiss.  Rather than restate the argument herein, Hartford Insurance Company and Twin City incorporate herein the arguments set forth in Continental's filings by reference.

settlement practices and violations of M.G.L. c. 176D and c. 93A by denying coverage and refusing to settle the two prior litigations brought by the Picciottos against Salem Suede. As a result of Salem Suede's petition to file for voluntary bankruptcy, the Picciottos' action against Travelers was transferred to the bankruptcy court.

On January 6, 1999, the Picciottos and Nunez settled all claims against Salem Suede, a related entity, Zion Realty, the Zion family and Travelers for $9 million dollars. On April 7, 1999, at the behest of the Picciottos and Nunez, Travelers filed an interpleader action (the "Interpleader action"), and deposited all settlement monies with the Suffolk Superior Court.[4] As part of the Interpleader action, six of the Picciottos' former attorneys filed claims for unpaid attorneys' fees.

### C.    The Interpleader Action: Claims by the Picciottos' Prior Counsel for Unpaid Fees and Attorney Malpractice Counterclaims

The fee claims filed by counsel resulted in counterclaims by the Picciottos for legal malpractice.[5] Attorney Dana Casher, who was the last in the line of attorneys to represent the Picciottos in the Salem Suede/Travelers bad faith litigation, also represented the Picciottos and

---

[4] The Interpleader action was ultimately styled <u>Zabin, et al. v. Picciotto, et al.</u>, Suffolk Superior Court Civil Action No. 1999-01594.

[5] Additionally, while the interpleader was pending, on November 27, 2000, the Picciottos filed a lawsuit in federal court against some of the Interpleader defendants, one of the Interpleader defendant's counsel, as well as the presiding judge, the Honorable Mitchell Sikora and the Discovery Master appointed by Judge Sikora, retired Superior Court Chief Justice Robert L. Steadman to oversee discovery in the case. That case, styled <u>Picciotto, et al v. Zabin, et al</u>, 1:00-cv-12421-NG, is stayed by Judge Gertner at this time pending final resolution of the Interpleader action.

Nunez in the Interpleader action, affirmatively prosecuting the legal malpractice counterclaims against the Picciottos' former attorneys.[6]

Twin City insured two of the lawyers seeking their fees, and, as a result, provided defenses for Albert P. Zabin and Michael Gilleran in connection with the legal malpractice counterclaims brought by the Picciottos pursuant to the terms of their professional liability insurance policies.

The Interpleader action was tried over the course of sixty three days during the Fall and Winter of 2001. On January 6, 2002, a verdict was returned in favor of each of the attorneys seeking fees and against the Picciottos on their legal malpractice claims. The Interpleader action is currently on appeal.

### D.    Litigation Brought After the Interpleader Now Consolidated in State Court

Since they obtained the adverse verdict in the Interpleader action, the Picciottos have multiple additional lawsuits in Massachusetts Superior Court against Nunez and Casher. By Orders docketed on June 28, 2004, August 24, 2004, February 16, 2005 and April 15, 2005, Judge Burnes of the Superior Court consolidated the various Essex County and Suffolk County lawsuits involving the Picciottos in an action styled Casher, et al v. Picciotto, et al., Suffolk Co. Civil Action no. 2003-05378 ("the consolidated state court action"). See docket attached hereto as Exhibit C. Given the number of prior actions and convoluted procedural history, Judge Burnes was specially assigned to preside over the consolidated matters. See Exhibit C, docket entry #66. The consolidated state court action has been ongoing since 2003 and significant discovery and motion practice have been completed. See generally, Exhibit C.

---

[6] The attorney parties in the Interpleader action were: Thornton, Early & Naumes; Albert Zabin and his firm; Joel Eigerman and his firm; Michael Gilleran and his firm; Edward McCabe and his firm; and Edward Greer.

During discovery in the consolidated state court action, the Picciottos issued subpoenas to Twin City and First State Management Group, Inc., one of Twin City's sister companies, seeking the production of huge categories of documents. Twin City successfully moved to limit the documents to be produced pursuant to the subpoena. See Exhibit C, docket entry #40, #42 and #46. The Picciottos also issued a subpoena to non-party Dr. Roberta White, their doctor in the underlying toxic exposure actions, which Dr. White successfully quashed.[7] See Exhibit C, docket entry #56, #59 and #60.

### E.    Recent Activity in the Consolidated State Court Proceedings

Apparently unhappy with the course of the litigation and discovery in the consolidated state court proceedings, on July 5, 2005, the Picciottos filed a motion asking Judge Burnes to recuse herself. See Exhibit C, docket entry #66.1. The motion was denied by Judge Burnes on July 27, 2005. An amended tracking order was issued by Judge Burnes on September 29, 2005. See Exhibit C, docket entry #83. Pursuant to the amended tracking order, all fact discovery shall be completed by May 31, 2006; experts shall be fully disclosed by July 31, 2006; summary judgment motions shall be filed and argued by October of 2006; and trial of the matter shall take place in January of 2007. See Exhibit C, docket entry #83.

### ARGUMENT

Unhappy with the results to date of their lawsuits in Superior Court and stymied in their efforts to obtain wholly irrelevant and onerous discovery from Casher's purported insurers, the Picciottos filed this action in federal court. The real motivations of this new lawsuit are apparently two-fold: first, to try to obtain discovery that the Superior Court has already

---

[7] It should be noted that Dr. White, who was the Picciottos' doctor in the underlying toxic tort trial, was originally a named defendant in the case at bar but was dropped by the Picciottos in an effort to preserve this Court's diversity jurisdiction. Dr. White's relationship to the case was tenuous at best and her inclusion as a party to the lawsuit appears motivated, in large part, by the Picciottos' desire to obtain discovery from Dr White that they were denied in state court.

determined the Picciottos have no right to receive; and second, to pressure their state court opponents and their opponent's alleged insurers by making the insurers direct defendants in another forum. The Picciottos' brazen attempt to subvert the Superior Court and intimidate their opponent should be dismissed for at least three reasons. First, in an effort to perfect diversity, the Picciottos failed to make Casher a defendant to this action. In Casher's absence, this lawsuit must be dismissed because Casher is both a "necessary" and an "indispensable" party as defined by Rule 19. Second, the Court should, in its discretion, decline jurisdiction as there is pending Massachusetts state court cases that have been consolidated in Suffolk Superior Court and specially assigned to Superior Court Judge Burnes in which the Picciottos and Casher are already parties involving the same underlying conduct. Third, as set forth more fully in the motion to dismiss filed by Continental, Casher's alleged insurers are deemed Massachusetts citizens as a matter of law pursuant to 28 U.S.C. §1332(c) and there is therefore not diversity jurisdiction. Fourth and finally, setting aside the jurisdictional arguments, defendant "Hartford Insurance Company" must be dismissed as there is no such entity.

**I.**     **The action should be dismissed because Dana Casher is an indispensable party pursuant to Fed. R. Civ. P. 19 whose presence as a defendant in this action would defeat diversity jurisdiction.**

Despite the fact that over one hundred paragraphs are devoted to the alleged misdeeds of Dana Casher, the Picciottos failed to name her as a party to this action because she is a resident of Massachusetts and, thus, a non-diverse party pursuant to 28 U.S.C. §1332. Pursuant to Fed. R. Civ. P. 19, this action cannot continue without Casher because she is both a "necessary" party as defined in Rule 19(a) and an "indispensable" party as defined in Rule 19(b). As set forth more fully below, Casher is a "necessary" party because: (1) the outcome of this case could cause the loss of Casher's existing insurance coverage in the Superior Court litigation; and (2) proceeding without Casher could cause the current defendants to incur multiple or inconsistent obligations to the Picciottos. For similar reasons, this Court should find that Casher is an

7

"indispensable" party as defined by Rule 19(b) because Casher's interests, the defendant

insurers' interests and the public interest are all best served by dismissing this case and allowing

the Picciottos to pursue their remedies as part of the ongoing consolidated Superior Court

litigation.

> Rule 19 states, in relevant part:
>
> (a)  PERSONS TO BE JOINED IF FEASIBLE.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been joined, the court shall order that the person be made a party. . . .
>
> (b)  DETERMINATION BY COURT WHETHER JOINDER NOT FEASIBLE.  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a part, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include:  first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;  second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;  third, whether a judgment rendered in the person's absence will be adequate;  fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Fed. R. Civ. P. 19(a)-(b).  "In applying Rule 19--a Rule that comes freighted with history—[the

court] must keep in mind the fact that this Rule seeks to accomplish a practical objective."

Horizon Bank and Trust Co. v. Flaherty, 309 F. Supp. 178, 191 (D.Mass 2004) (citing Pujol v.

Shearson/Am. Exp., Inc., 877 F.2d 132, 134 (1st Cir.1989)).  Rule 19 aims "'to achieve judicial

economies of scale by resolving related issues in a single lawsuit,' while at the same time

preventing 'the single lawsuit from becoming fruitlessly complex or unending.'" <u>Parikh v. Franklin Medical Center Inc.,</u>163 F.R.D. 167 (D.Mass 1995) (<u>quoting</u> <u>Pujol</u>, 877 F.2d at 134). When considering a Rule 19 motion, the Court is faced with a two part inquiry. First, the party in question must be a "necessary" party under Rule 19(a), and then, having been found to be "necessary", the party must be "indispensable" under Rule 19(b). <u>Delgado v. Plaza Las Americas, Inc.</u>, 139 F.3d 1, 3 n.2 (1st Cir.1998).

### a.    Attorney Casher is a "necessary" party.

A party is "necessary" pursuant to Rule 19 if: "1.) in the person's absence complete relief cannot be accorded among those already parties, or 2.) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i.) as a practical matter impair or impede the person's ability to protect that interest <u>**or**</u>; (ii.) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Rule 19(a) (emphasis added).

In this case, Casher is "necessary" <u>both</u> because she has a vital interest in the potential outcome of the action <u>and</u> is so situated that her absence may adversely impact her rights and leave others already party to this litigation with double, multiple and otherwise inconsistent obligations.

### (i)    Casher has a vital interest in the outcome of this action.

First, according to the Picciottos' own pleadings, Casher's role in this matter is pervasive. In their Amended Complaint, the Picciottos detail numerous alleged acts and omissions committed by Casher while she was representing them which they believe evidence her role in the broad conspiracy instituted by defendants Continental and Great Northern, Casher's

insurance carriers.[8]  If the Picciottos were to prove a conspiracy involving Casher, she would be adversely impacted in her Superior Court case.  There mere fact that the ruling would not be binding upon her by the doctrine of collateral estoppel is immaterial.  Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78-79 (1st Cir.1982).  In Acton, the First Circuit affirmed the dismissal of a case for failing to add a non-diverse parent company as a party to a suit brought against the parent's subsidiary.  In so finding, the Acton Court specifically noted that "[e]ven if [the parent] would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken [the parent's] bargaining position for settlement purposes.  In either case, to proceed without [the parent] might 'as a practical matter impair or impede' [the parent's] ability to protect its interest in this matter.  [The parent] is therefore a ['necessary' party]."  Id. (internal citations omitted).  Here, the Picciottos have already asserted legal malpractice claims against Casher.  As such, she will undeniably be adversely impacted should the Picciottos prevail in this action in the same manner as the parent company in Acton.  For this reason alone, Casher is a "necessary" party pursuant to Rule 19(a).

In addition to the above, a finding in the Picciottos' favor would almost certainly put Casher at risk of losing her existing insurance coverage related to the Picciottos' legal malpractice claims currently being litigated in Superior Court.  A key premise of the Picciottos' conspiracy theory is that Casher gave timely notice to Continental and Great Northern during the underlying Interpleader action (Amended Complaint, ¶¶ 59, 172) and that Continental and Great Northern thereafter "took charge" of the claim and directed Casher's subsequent actions (Amended Complaint, ¶ 60-61).  This alleged notice was given to Continental and Great

---

[8] As an aside, it should be noted that the entire premise of the Picciottos' claim is completely illogical as it hard to fathom why an alleged insurer such as Continental or Great Northern would instruct its insured to willingly commit malpractice and thus potentially expose the insurer to an indemnity claim.

Northern well before Casher obtained an insurance policy from TIG Specialty Insurance Solution ("TIG").[9]  The Picciottos similarly allege that Casher gave notice of a claim to Twin City almost a full year before she even obtained the TIG policy and twenty months before she gave TIG notice of a potential claim.  <u>Compare</u> Plaintiffs' Amended Complaint, ¶ 172 with ¶¶ 178-181. TIG is currently providing Casher's defense against the malpractice claims asserted by the Picciottos in Superior Court.  If the Picciottos prove that Casher provided notice of a potential claim before the TIG policy went into effect, Casher would almost certainly lose coverage under the TIG policy because Casher will have been shown to have given notice of a potential claim to some insurers years before notifying TIG of the potential claim.[10]  Moreover, if the Picciottos prove their allegations that Casher's alleged errors and omissions during her representation of the Picciottos were intentional acts committed in the furtherance of a conspiracy, such findings would almost certainly trigger an exclusion in the TIG policy that would also cause Casher to lose coverage and her insurance-paid defense in the Superior Court malpractice case.  In support of this motion, Casher signed an affidavit which stresses her strong objection to the current lawsuit proceeding without her as a party due to the ongoing state court litigation and the potential adverse impact this case could have on her insurance coverage.  <u>See</u> Affidavit of Dana Casher filed concurrently with this motion and memorandum of law.

Where, as here, a lawsuit potentially impacts an insured's coverage, the United States Supreme Court has found the insured to be a "necessary" party pursuant to Rule 19(a).

---

[9] The Picciottos admit in their Amended Complaint that Casher's firm obtained a professional liability policy from TIG on March 12, 2002, well after the alleged notice to the other insurers had been given and after the alleged conspiracy was actively underway.  <u>See</u> Plaintiffs' Amended Complaint, ¶ 178.  Notice of the claim was allegedly not provided to TIG until November of 2002.  Plaintiffs' Amended Complaint, 180.

[10] Casher, Great Northern, Continental and Twin City all deny that Casher provided Continental Great Northern or Twin City with notice of a claim.  <u>See</u> Plaintiff's Amended Complaint, ¶ 176.

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 108, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968) (finding that an insured was a necessary party pursuant to Rule 19(a) where the case involved a claim against the insured's policy).  In this case, the Picciottos' allegations of a conspiracy, if proven, may have the practical effect of relieving TIG of its responsibility to perform under its insurance agreement with Casher.  Thus, Casher would be left without a defense or a right to indemnity from her insurance carrier in the legal malpractice action asserted by the Picciottos in Superior Court.

> **(ii)    Casher is a necessary party because her absence is likely to lead to inconsistent and/or multiple obligations.**

In addition to consideration of the absent party's interests, Rule 19 provides that a party may also be "necessary" where: "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Fed. R. Civ. P. 19(a)(2)(ii). Without Casher as a party, the defendants face a substantial risk of inconsistent and/or multiple obligations related to the ongoing legal malpractice action against Casher in Superior Court.  In that case, the Picciottos allege that Casher's acts and omissions caused them to lose their claims against their former attorneys in the underlying Interpleader action.  They seek as damages, *inter alia*, the amounts they would have recovered form the attorneys in the underlying Interpleader action "but for" Casher's negligence.  In this case, the Picciottos allege that the defendant insurers entered into a conspiracy and directed Casher to intentionally "throw" the Interpleader action.  The Picciottos' damages in this case include the amounts they allegedly should have recovered in the Interpleader action but for the defendant insurers' tortuous interference and their conspiracy with Casher.  In essence, the Picciottos are seeking to recover the same damages in two separate courts.

Allowing the Picciottos to proceed simultaneously on two fronts creates the real possibility that the defendant insurers could be subject to multiple or inconsistent obligations because the Picciottos maintain that the defendants insured Casher and that Casher provided timely notice of the potential claim.  In this "worst case" scenario, the insurers would be directly liable in this action to pay the Picciottos what they would have recovered in the Interpleader action <u>and</u> liable to indemnify Casher for the same damages in the Superior Court action.[11]  The substantial risk of such multiple obligations makes Casher a necessary party pursuant to Fed. R. Civ. P. 19(a)(2)(ii) (a).  <u>See</u> <u>Angst v. Royal Maccabees Life Ins. Co.</u>, 77 F.3d 701, 705-706 (3rd Cir. 1996) (finding that an insurance company was at risk of multiple obligations where receiver and alternate beneficiary competing claimants proceeding in state and federal court and insurer at risk of being asked to deposit same policy proceeds into two different escrow accounts).

### b.    <u>Attorney Casher is an "indispensable" party.</u>

Having established that attorney Casher is a "necessary" party, the focus now turns to whether she is an "indispensable" party.  Although attorney Casher is a necessary party, the case cannot go forward with her in federal court because she is a Massachusetts resident and her presence in the case would destroy diversity.  If, as here, a person is a necessary party, but her joinder is not feasible, the Court must use the four factors listed in Rule 19(b) to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."  The factors to be considered by the Court include:  (1) to what extent a judgment rendered in the person's absence

---

[11] It is important to note that this is not merely a situation where one court may find one joint-tortfeasor liable and another court find a second joint-tortfeasor not liable for the same conduct. Such a situation does not make the absent joint-tortfeasor a necessary party pursuant to Rule 19(a).  <u>See</u> <u>Delgado</u>, 139 F.3d at 3.  Here, if the Picciottos prevail, the insurers have a substantial risk of being both directly liable in the federal action and indirectly liable via alleged insurance coverage in the state action.

might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.  Fed. R. Civ. P. 19(b).

Rule 19(b) is designed to protect four fundamental interests:  (1) the plaintiffs' interest in having a forum; (2) the defendants' interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another; (3) the necessary party that cannot protect its rights; and (4) interests of  the courts and the public in "complete, consistent, and efficient settlement of controversies."  Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968).

Many of the facts that are considered in determining whether a party is "necessary" are also relevant in considering whether the party is "indispensable" pursuant to Rule 19(b).  For many of the reasons that Casher is a "necessary" party, "equity and good conscience" dictate that she is also an "indispensable" party and this matter not go forward without her.  First, for the reasons set forth above,  Casher would be adversely impacted should a judgment be rendered in her absence.  While a finding in this Court that Casher engaged in a conspiracy to "throw" the Interpleader action would not have preclusive effect in the Superior Court action, as a practical matter, the finding would greatly inhibit her ability to defend herself in this action.  See Acton, 668 F.2d at 78-79.  Moreover, TIG would almost certainly reconsider Casher's coverage and perhaps pull its defense of the claims asserted against her by the Picciottos if the Picciottos prove in this case:  (a) that Casher gave her alleged former insurers notice of potential claims years before she notified TIG of the claims; or (b) that Casher's alleged malpractice was actually part of a willful conspiracy.

As set forth in greater detail above, the defendants would similarly be prejudiced should the matter continue without Casher because they could potentially be liable as both direct defendants in this case and insurers in the state court action for precisely the same damages.

In light of these issues, there seems to be little this Court can do to craft a remedy so as to protect the defendants and attorney Casher from prejudice.

Here, the interests of attorney Casher and the defendants clearly favor dismissal. The Picciottos have no compelling interest in this forum because the state court is ready and competent to provide the remedy they seek. Any argument by the Picciottos that the state court is not an adequate forum is belied by the fact that they have filed numerous lawsuits in the Massachusetts Superior Court and several of their lawsuits have been consolidated for fair and efficient disposition by that court.

In this case, the question likely turns on the court's and public's interest in "complete, consistent, and efficient settlement of controversies." The interests of the public and the court system in general are best served by dismissing this federal case so that all of the Picciottos' claims can be resolved fully, consistently and finally in a single forum. This case presents a particularly compelling scenario to foster these objectives. As the First Circuit noted in dismissing a complaint pursuant to Rule 19, "[w]e have no doubt that the [state] court is capable of resolving the entire controversy between the parties . . . the public interest in avoiding piecemeal and inefficient litigation is especially strong . . . where it is evident that the ongoing state court action will adjudicate the entire controversy." H.D. Corp of Puerto Rico v. Ford Motor Co., 791 F.2d at 987, 993 (1st Cir. 1986) (citing Acton, 668 F.2d at 81.)

Here, the state court has taken the unusual step of consolidating a number of outstanding state court suits or originating in different counties in a single action before a specially assigned Superior Court judge. The clear goal of this consolidation is to streamline the a cases and allow for prompt, consistent and final resolution of the various controversies. The state court's efforts

would be thwarted if the Picciottos are permitted to frustrate the process by simply filing new lawsuits regurgitating the same allegations in federal court. Because the state court is currently actively engaged in resolving the underlying controversies at issue, this factor cuts in favor of dismissing the action.

**II.  This Court should decline jurisdiction as there is pending parallel litigation in state court more suited to resolve the dispute.**

As was first established in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in certain exceptional circumstances, a federal court should abstain for accepting jurisdiction in favor of a pending state court case. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The doctrine of abstention first outlined in Colorado River and the factors articulated therein have been applied by the United States Supreme Court and in the First Circuit. See generally Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 14-15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Elmendorf Grafica Inc. v. D.S. America (East), Inc., 48 F.3d 46 (1st Cir.1995); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529 (1st Cir.1991), cert. denied, 503 U.S. 986, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992); Burns v. Walter, 931 F.2d 140, 146 (1st Cir. 1991); Liberty Mutual Ins. Co. v. Foremost McKesson, Inc., 751 F.2d 475 (1st Cir.1985); Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F.Supp.2d 217 (D. Mass. 1999).

The present action fits squarely within the circumstances contemplated in Colorado River. The Colorado River doctrine permits a federal court to abstain from exercising jurisdiction over a case where parallel proceedings are underway in a state forum. The principle underlying Colorado River doctrine is the avoidance of duplicative litigation when concurrent lawsuits involving the same issues are filed in federal and state courts. See Colorado River, 424 U.S. at 817, 96 S.Ct. at 1236. The abstention doctrine is driven by considerations of "wise

16

judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 14-15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting Colorado River, 424 U.S. at 817, 96 S.Ct. 1236). Federal courts, however, have an obligation to exercise the jurisdiction bestowed upon them by the Constitution and Congress and, therefore, surrendering jurisdiction under the Colorado River doctrine is allowed only in "exceptional circumstances." Villa Marina, 947 F.2d at 532  This case presents such exceptional circumstances.

Colorado River, Moses H. Cone and their progeny have established a variety of factors this Court should consider to determine whether "exceptional circumstances" exist which favor the abdication of jurisdiction in favor of parallel state court litigation. Those factors include, but are not limited to: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the plaintiffs' motivations in bringing the federal claim; and (8) respect for the principles underlying removal jurisdiction. Burns, 931 F.2d at 146. This list is by no means exhaustive, nor is any one factor necessarily determinative. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir.1991). Rather, "'a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.'" Id. (quoting Colorado River, 424 U.S. at 818-19, 96 S.Ct. 1236).

In this case, Melita Picciotto first brought a lawsuit in 2003 against Casher in state court alleging the same bad acts and omissions that form the basis of their conspiracy allegations against the defendants in the present action. Several related lawsuits have ensued. The underlying factual underpinnings of the Picciottos' allegations against Casher in state court are identical to the claims asserted against Casher in this action to support the Picciottos' contention

17

that the defendants were engaged in a conspiracy with Casher to injure her clients.[12]  The state

court action has been consolidated with several other lawsuits involving the Picciottos.  The

Superior Court has taken the unusual step of specially assigning a single judge to preside over

the consolidated actions.  Discovery in the consolidated state court action is well-advanced and

an amended tracking order has been issued with firm deadlines in order to bring the various

Picciotto controversies to trial by January of 2007.  For these reasons, discussed in greater depth

below, a balancing of the factors identified by Colorado River and its progeny favor declining to

exercise jurisdiction in light of the ongoing state court actions.

The Court should consider the following in determining whether to accept jurisdiction:

**(1)    Whether either court has assumed jurisdiction over a *res***

This factor is not involved in this case as there is no real property in dispute.

**(2)    Inconvenience of the federal forum**

There is no issue as to the convenience of the forum as both the state and federal actions

are pending in Boston, Massachusetts.

**(3)    Desirability of avoiding piecemeal litigation**

Under the Colorado River doctrine, inefficiency and duplication of effort will not, by

itself, justify the surrender of federal jurisdiction.  Rather, abstention is favored where piecemeal

adjudication gives rise to special complications.  Colorado River, 424 U.S. at 819, 96 S.Ct. at

1236.  Merely that two courts would otherwise be deciding the same or similar issue is

insufficient to warrant a stay or dismissal.  Villa Marina, 915 F.2d at 16 (suggesting that "the

district court must look beyond the routine inefficiency that is the inevitable result of parallel

proceedings to determine whether there is some exceptional basis for requiring the case to

---

[12] There is no need to have complete identity of parties and legal issues in order to perform a
Colorado River analysis. Villa Marina, 915 F.2d at 12.

proceed entirely in [state] court"). Piecemeal litigation results where the potential may exist for harmful inconsistent determinations in the state and federal forums. Id.

The desirability of avoiding piecemeal litigation cuts heavily in favor of declining to accept jurisdiction of the Picciottos' latest lawsuit. The case of Liberty Mutual, 751 F.2d at 477, is instructive. In Liberty Mutual, the First Circuit gave substantial weight to the possibility that the insurance contract might be interpreted differently in the state and federal proceedings, leaving the insured "without sufficient liability insurance coverage from the insurers after years of paying premiums." Id. Similarly, in Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir.1991), in addressing the Colorado River factors, the First Circuit noted the complications for an insurer that might result from inconsistent determinations of liability in the federal suit against alleged tortfeasor and a state suit against the insurance company. The facts of this case present a similar scenario and this Court should weigh this factor heavily in determining whether abstention is appropriate in this instance.

### (4)     The order in which the forums obtained jurisdiction

"[T]he order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the Colorado River balancing is being done." Elmendorf Grafica Inc., 48 F.3d at 52. In Moses H. Cone, the Supreme Court indicated that the order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the Colorado River balancing is being done. See Moses H. Cone, 460 U.S. at 21, 103 S.Ct. 927. Courts are to measure which action--the suit in the federal court or that in the state court--is the more advanced in a "pragmatic, flexible manner, with a view to the realities of the case at hand." Id.

Here, this factor favors abstention. The Picciottos have been party to at least twenty lawsuits in state court over the past twenty years. Currently, several lawsuits involving the

Picciottos, including the underlying lawsuit against attorney Casher, have been consolidated in a single action before a specially assigned Superior Court judge. Those cases have been pending since 2003. As reflected on the Superior Court docket attached hereto as Exhibit A, significant discovery and motion practice has already been completed. By contract, the federal action is still in its initial pleadings phase. Given the progress the consolidated state court action has already made and the presence of a judge specially assigned to shepherd the matter through to trial, there is every reason to believe that the state court action would be resolved ahead of the federal case.

(5)    **Whether state or federal law controls**

This case involves only issues of state law. In Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265 (1st Cir. 1996), the First Circuit dismissed an action where there was an ongoing state court matter under the doctrine of abstention. In its decision, the First Circuit placed great weight upon the fact that complete relief was available in the state court. Moreover, the First Circuit noted that the absence of any direct federal interest or federal issue of law was of "great importance" in their finding that they should abstain pursuant to the Colorado River guidelines. Id.

(6)    **Adequacy of the state forum to protect the parties' interests**

This factor favors abstention. While both the state and the federal court are competent to protect the parties' interests, the state court has the advantage of a past history with the Picciottos' claims and an ongoing case management plan for resolving the Picciottos' various disputes. The various lawsuits have been consolidated for the purpose of encouraging consistency, fairness and finality. Moreover, a special judge has been appointed to bring the consolidated matters to trial. Finally, the state court has been dealing with these underlying facts since at least 2003. In short, the state court is better situated to resolve this controversy.

### (7)    Motivation of the party filing the federal claim

As articulated in <u>Paul Revere Variable Annuity Ins. Co.</u>, 66 F.Supp.2d at 222, courts considering this factor generally look to whether the federal lawsuit is "reactive" or "vexatious". Put another way, the court should examine whether: (1) whether a party files has filed the federal action in reaction to an adverse ruling in state court, <u>see</u> <u>Villa Marina</u>, 915 F.2d at 15; or (2) whether a party has filed a federal action merely to gain a tactical advantage in another lawsuit. With regard to the first consideration, courts express particular displeasure at this kind of forum shopping. <u>Id.</u> The Picciottos' federal lawsuit is actually a hybrid of the two forms of vexatious and contrived lawsuits in that it is both a reaction to unfavorable discovery rulings in the state court <u>and</u> an effort to increase pressure on their opponents in their other lawsuits by suing their opponent's insurers.

The Picciottos appear motivated in part to bring this action in a new forum by a series of unfavorable discovery rulings in the consolidated state court actions. As detailed above, the Picciottos tried, and failed, to obtain huge categories of documents from non-parties, Twin City and Dr. Roberta White. Having failed in this effort, the Picciottos tried, again unsuccessfully, to have the state court judge specially assigned to the case recuse herself. In a last-ditch effort to obtain discovery that they were denied in state court, the Picciottos have come to federal court with a new complaint originally naming Dr. White, and later, Twin City, as parties.[13]

In addition to filing this lawsuit as a reaction to unfavorable state court rulings, the Picciottos may be motivated by a desire to increase the pressure on their opponent and their opponent's insurers. The Picciottos allege that Continental, Great Northern and Twin City insure attorney Casher, their opponent, in the state court action. Similarly, the Picciottos are well aware

---

[13] As previously noted, the Picciottos later dropped Dr. White, a Massachusetts resident, as a defendant in this action in an effort to preserve complete diversity.

that Twin City insures two of their opponents in the Interpleader action, which is still on appeal. By bringing this lawsuit in a new forum, the Picciottos seek to shift focus from their state court matters, which, by any objective analysis, are going poorly for them, and increase the pressure to settle by maximizing litigation costs and attorneys' fees.

In short, the Picciottos' attempt to escape unfavorable discovery rulings in state court, and an allegedly hostile judge and to open a "new front" against their perceived enemies is a classic example to reactive and vexatious litigation. This Court should use its discretion and end the Picciottos' efforts to abuse the court system in this fashion.

**(8)     Respect for the principles underlying removal jurisdiction.**

This consideration is related to considerations involving necessary and indispensable parties. As noted above, there is, at minimum, serious question regarding whether this matter can go forward without attorney Casher as a party. In light of this issue, even if it is determined that Casher is not an "indispensable" party pursuant to Rule 19(b), the issues related to her inclusion as a party to this litigation factor in this Court's consideration of whether to decline jurisdiction and cut heavily in favor of abstention.

**III.     There is not complete diversity in this case pursuant to 28 U.S.C. 1332(c).**

As noted in the introduction, this Court also lacks jurisdiction over this matter because of 28 U.S.C. 1332(c ). Defendant Continental has already fully briefed this issue. Rather than reargue a point already before the Court, these defendants adopt Continental's argument and incorporate it herein by reference.

**IV.     Hartford Insurance Company is an improper party and must be dismissed.**

Plaintiffs allege that the defendant "Hartford Insurance Company, Inc." is a "Connecticut corporation admitted as an insurance carrier in Massachusetts; and its principal office is at Hartford Plaza, Hartford Connecticut 06115." Plaintiffs' Amended Complaint, ¶ 5. In Counts

11 through 15 of the Amended Complaint the Picciottos allege that The Hartford Insurance Company engaged in a civil conspiracy (Count 11), interfered with the Picciottos' contractual relations with Casher (Count 12), was negligent (Count 13), engaged in fraud and deceit (Count 14) and violated G.L. c. 93A (Count 15).

The basis of Hartford Insurance Company's presence in this case appears to be the insurance policy allegedly issued to Casher by Twin City Fire Insurance Company. The Picciottos' claims against Hartford Insurance Company fail for the reason that "Hartford Insurance Company" is not a legal entity, is not incorporated in Connecticut or any other state under that name, nor is it an insurer licensed and authorized to do business within the state of Massachusetts. "The Hartford Insurance Company" did not and could not have issued any policy under which Casher could possibly obtain coverage in Massachusetts,[14] nor could the alleged entity have engaged in any of the alleged conduct cited in the Picciottos' Amended Complaint. As such, "The Hartford Insurance Company" cannot be subject to liability under any theory. In essence, the Picciottos sued a purported corporation that does not exist, while at the same time naming a second corporation, Twin City Fire Insurance Company, which the Picciottos believe issued the insurance policy to Casher. As they have already properly named the entity that allegedly issued the insurance policy, the Picciottos are in no way prejudiced by dismissing the non-entity "Hartford Insurance Company" as they still have alleged claims against Twin City and, as previously noted, logically and legally a non-entity cannot be held liable under any theory. Under the circumstances, counsel for these defendants asks this Honorable Court to dismiss "Hartford Insurance Company" from this action.

---

[14] Indeed, as pled by the plaintiffs in their own Amended Complaint, Twin City, not "Hartford Insurance Company" acted as the insurer to Casher. Amended Complaint ¶ 172.

**CONCLUSION**

For the three jurisdictional reasons articulated herein, this matter should not go forward in federal court. Accordingly, defendants respectfully request that the Picciotto's Amended Complaint be dismissed. Should the Court decide not to dismiss the action in its entirety, "Hartford Insurance Company" should be dismissed as a defendant because it is not a legal entity.

Respectfully submitted,

HARTFORD INSURANCE COMPANY
and TWIN CITY FIRE INSURANCE
COMPANY

By its attorneys,

/s/ Timothy O. Egan
Harvey Weiner, BBO # 519840
Timothy O. Egan, BBO # 637992
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110-3342
(617) 951-2100

DATE: October 17, 2005

**CERTIFICATE OF SERVICE**

I, Timothy O. Egan, hereby certify that a true copy of the above document was served upon the plaintiffs and attorney of record for each other party not identified on the Notice of Electronic Filing as an electronic recipient by mail on October 17, 2005.

/s/ Timothy O. Egan
Timothy O. Egan

624400

24

# EXHIBIT A

# COMMONEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT
CIVIL ACTION
NO.

05-2598

---

MELITA PICCIOTTO,　　　　　　　　　 )
　　　　　　　　　Plaintiff　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　v.　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
DANA CASHER,　　　　　　　　　　　 )
LEONARD KRULEWICH,　　　　　　　 )
HELEN KRULEWICH and　　　　　　　 )
KRULEWICH, CASHER, P.C.,　　　　 )
　　　　　　　　　Defendants　　　 )

---

### FIRST AMENDED
### VERIFIED COMPLAINT

SUFFOLK SUPER...
CIVIL CLERK...
F I L E D
JUN 2 4 2005
MICHAEL JOSEPH DONOVAN
CLERK OF COURT

## Parties

1.　　Plaintiff Melita Picciotto (hereinafter "plaintiff") resides at 418 Lafayette, Street Salem, Massachusetts.

2.　　Defendant Dana Casher (hereinafter "defendant Casher") resides at 4 Fawn Circle, Randolph, Massachusetts, and is an attorney licensed to practice law in the Commonwealth of Massachusetts.

3.　　Defendant Leonard Krulewich resides at 153 Woodchester Drive, Newton, Massachusetts, and is an attorney licensed to practice law in the Commonwealth of Massachusetts.

4.      Defendant Helen Krulewich resides at 153 Woodchester Drive, Newton, Massachusetts, and is an attorney licensed to practice law in the Commonwealth of Massachusetts.

5.      Defendant Krulewich, Casher, P.C., is a Massac~~husetts~~ professional corporation, its principal office being located at 50 Staniford Street, Boston, Massachusetts.

## Facts

6.      Within a period that commenced in 1975 and extended to 1996, the parents of plaintiff, Stefano Picciotto and Judith Picciotto (hereinafter "plaintiff's parents"), received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede"). Said factory was located on premises that were adjacent to premises upon which a corporation owned by plaintiff's parents, Foreign Car Center, Inc., conducted its business.

7.      In 1983, plaintiff's parents and others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

8.      In September of 1993, after a jury trial, a judgment entered in said action against Salem Suede in favor of plaintiff's parents and others.

2

The judgment was upheld on appeal in a decision that was reported in 40
Mass. App. Ct. 15, 660 N.E.2d 687 (1996).

9.    Plaintiff also sustained injuries from exposure to the same toxic
chemicals as caused injuries to her parents, and she further suffered harm
though loss of parental consortium, affection, and nurture.

10.    In 1994, plaintiff filed an action against Salem Suede seeking to
recover for such injuries and other harm that she had suffered. The action
was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al*, Essex Superior
Court No. 94-2155.

11.    In 1996, Salem Suede, facing the judgment that plaintiff's
parents and others had obtained against it and also facing said action that
plaintiff had filed against it, filed a petition for bankruptcy in the U.S.
Bankruptcy Court, *In re Salem Suede*, No. 96-13184JNF. A related case
filed at the same time was *In re Zion Realty Corp.*, No. 96-14692JNF.

12.    In 1997, plaintiff filed an action against the Massachusetts
Commissioner of Insurance in effort to unearth insurance coverage that
Salem Suede held with The Travelers Indemnity Company (hereinafter
"Travelers"), but had denied possessing, and also seeking an order that
would compel the Commissioner to hold a hearing regarding Travelers'
unfair and deceptive conduct in having denied that it provided such

3

coverage. That action was entitled *Melita Picciotto v. Linda Ruthardt as Commissioner of Insurance,* Supreme Judicial Court No. 97-0511.

13.    On June 15, 1998, plaintiff, along with plaintiff's parents, her younger sister Athena Picciotto (through her father), and Foreign Car Center, Inc., entered into an agreement with defendant Casher, who was acting on behalf of a law partnership then known as Krulewich, Casher, whereby defendant Casher and the members of said partnership agreed to represent plaintiff and such other persons in connection with the Salem Suede bankruptcy proceeding. A copy of the agreement that plaintiff and such other persons entered into with defendant Casher and the firm of Krulewich, Casher is attached hereto as "Exhibit A."

14.    After entering into said agreement, plaintiff continued to represent herself pro se in said Supreme Judicial Court action No 97-0511; and, with the help of a nonprofit consumer protection group by the name of United Policy Holders of America, plaintiff filed a brief in the Supreme Judicial Court on December 24, 1998 whereby she was able to demonstrate that the claims that she and her parents had against Salem Suede were covered by insurance policies that Travelers had issued to Salem Suede.

15.    Immediately thereafter, Travelers, in light of plaintiff's having so demonstrated the existence of such insurance coverage, called for a

4

settlement conference to be held with a view towards settling all claims that plaintiff, plaintiff's parents, her younger sister, Foreign Car Center, Inc. and one Juan Nunez, a former employee of Foreign Car Center, Inc., had against Salem Suede.

16.    Such a conference commenced on January 5, 1999.

17.    At such conference, defendant Casher represented plaintiff, plaintiff's parents, plaintiff's younger sister, Foreign Car Center, Inc. and said Juan Nunez.

18.    Defendant Casher allowed the negotiations for a settlement to run from approximately 10:00 A.M. on January 5, 1999, to 4:00 A.M. on January 6, 1999, with only bathroom breaks being taken. In the early morning of January 6, 1999, all of defendant Casher's clients were fatigued, in need of rest, and exhausted.

19.    In said settlement conference, Travelers ultimately offered to pay to plaintiff and such other persons who had claims against Salem Suede and Travelers the total sum of Nine Million Dollars ($9,000,000) to settle all of their claims.

20.    Travelers took the position that it would leave it up to the parties whose claims would be settled by a settlement agreement to

5

determine how to allocate among themselves such sum of Nine Million
Dollars ($9,000,000).

21.    Plaintiff and the other persons whose claims would be settled
by such an agreement conferred and agreed upon how such sum of Nine
Million Dollars ($9,000,000) would be allocated among them if they were to
agree to accept such sum in settlement of their claims. The agreed-upon
allocation to plaintiff was the sum of One Million Five Hundred Thousand
Dollars ($1,500,000).

22.    Plaintiff requested that she and the other claimants be allowed
to take home the proposed settlement contract that Travelers was offering in
order to be able to think about it after rest and to be able discuss its terms
with independent counsel.

23.    Defendant Casher refused to allow plaintiff to leave the
settlement conference; and, at approximately 3:00 A.M. on January 6, 1999,
defendant Casher instructed plaintiff to sign the proposed contract.

24.    Defendant Casher at that time claimed that a settlement in the
amount of Nine Million Dollars ($9,000,000) was in the best interests of
plaintiff and the other persons whom she was representing; and she further
declared specifically that, if the proposed agreement would be entered into,
Salem Suede's bankruptcy plan of reorganization could not be approved

6

without the plaintiff's receiving the sum of One Million Five Hundred Thousand Dollars ($1,500,000) as a condition of the settlement.

25.    Defendant Casher assured plaintiff that plaintiff's fears of not receiving the settlement funds were wholly unfounded, and she called upon plaintiff to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of the other clients.

26.    Plaintiff, in reliance upon the assurances of defendant Casher, and in consideration of the payment to her of the sum of One Million Five Hundred Thousand Dollars ($1,500,000) from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement and, as a consequence, dismiss, with prejudice, all claims that she had against Salem Suede and Travelers.

27.    All of the persons represented by defendant Casher at said conference, as 4:00 A.M. on January 6, 1999 approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they would allocate among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement. A copy of the settlement agreement is attached hereto as "Exhibit B."

28.    A copy of the affidavits and the deposition testimony of Attorney Casher herself, whereby plaintiff, plaintiff's parents, her younger

7

sister, Foreign Car Center, Inc., and said Juan Nunez agreed how said sum of

Nine Million Dollars ($9,000,000) would be allocated among them, with

One Million Five Hundred Thousand Dollars ($1,500,000) thereof to be

allocated to plaintiff, is attached as "Exhibit B" hereto.

29.     Defendant Casher, in violation of the provisions of Rule 1.8 (g)

of the Massachusetts Rules of Professional Conduct, did not cause to be

placed in the settlement agreement itself the respective allocations of said

sum of Nine Million Dollars ($9,000,000.00) that plaintiff and the other

persons whose claims were being settled had agreed upon.

30.     On March 12, 1999, while plaintiff was away and without

plaintiff's knowledge or consent, defendant Casher exercised undue pressure

on plaintiff's father to cause him to acquiesce to her demand that he sign an

amendment to the settlement agreement in order to release Travelers of its

contractual obligation to pay plaintiff (and the other settling parties) the

respective amounts for which they had settled their claims prior to funding

Salem Suede's bankruptcy plan of reorganization.  The amendment allowed

Travelers to file an interpleader action in the Suffolk Superior Court (Case

No. 99-1594, entitled *Albert P. Zabin, et al  v. Stefano Picciotto, et al*), and

deposit all of plaintiff's money as well as all the other settlement funds in a

court-controlled escrow account   A copy of said amendment is attached hereto as "Exhibit D."

31.    Albert P. Zabin and other attorneys, who as plaintiffs in said Suffolk Superior Court interpleader action claimed that they held a lien on the settlement funds, opposed any release to plaintiff of her settlement funds, not on the grounds that they had entered into any contingent fee contract with her or for compensation for work that they had done on her behalf, but on the grounds that the internal unrecorded allocation of the settlement funds was not binding.  Such attorneys contended that the internal allocation that Travelers had allowed to be made among the beneficiaries of the settlement agreement had been reached in bad faith in order to prevent the attorneys from fully collecting contractual fees owed to them by beneficiaries of the settlement agreement other than plaintiff.

32.    Said attorneys asserted that the money that plaintiff had agreed to accept in settlement of her claims actually belonged to the parties with whom, unlike with plaintiff, they did have contingency fee contracts.

33.    Based on this argument, the Suffolk Superior Court released to plaintiff only the amount of One Hundred Fifty Thousand Dollars ($150,000) for the purpose of allowing her to provide a defense in said interpleader action to the claims of said attorneys.  The remainder of

9

plaintiff's agreed-upon settlement amount of One Million Five Hundred Thousand Dollars ($1,500,000) remained held by the court in an escrow account.

34.    Plaintiff began to lose confidence in the ability of defendant Casher to competently represent her interests; and, in February of 2000, plaintiff retained another attorney, James Dilday, to represent her interests.

35.    On September 1, 2000, Attorney Dilday filed a motion to withdraw from representation of plaintiff in said interpleader action on the grounds that defendant Casher had forged his name on legal documents pertaining to the case.

36.    Plaintiff responded by discharging Attorney Dilday because she believed that his motion to withdraw and the accusations contained therein were motivated by her rebuff of his inappropriate behavior; and she filed a motion with the court informing the court that Attorney Dilday had been discharged and that she would thereafter be representing herself. A copy of said motion is attached hereto as "Exhibit E." Copies of said motion were served on all counsel of record, including defendant Casher.

37.    In October of 2000, defendant Casher, despite her knowledge that plaintiff wanted to represent herself, and without plaintiff's consent,

informed the court, at a time when plaintiff was not present, that she would be representing plaintiff thereafter.

38.    Plaintiff attempted to represent herself despite defendant Casher's representation to the court that she was plaintiff's attorney; and plaintiff filed a notice of appearance on her own behalf.

39.    The Suffolk Superior Court, in light of defendant Casher's said representation, refused to allow plaintiff to represent herself and ordered defendant Casher to go on representing plaintiff.

40.    Defendant Casher was called as a witness against plaintiff in the trial of the Suffolk Superior Court action, her testimony being allowed over plaintiff's objection; and, since the court regarded plaintiff as being represented by defendant Casher, rather than representing herself, plaintiff was deprived of an opportunity to cross-examine defendant Casher.

41.    In said interpleader action, the plaintiff attorneys filed a claim against plaintiff under the provisions of G. L. c. 93A despite the fact that plaintiff never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute.

42.    At the trial of the interpleader action, plaintiff learned that defendant Casher had filed on her behalf an "Intentional Infliction of

Emotional Distress" claim against the plaintiff attorneys instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof, and, therefore, preventing the jury from hearing evidence of occasions when the plaintiff attorneys had inflicted emotional distress upon plaintiff.

43.    At said trial, plaintiff asked defendant Casher to attempt to introduce evidence that would support the claims that she had against the plaintiff attorneys in said action for having knowingly and willfully engaged in acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or in violation of the rules and regulations issued pursuant thereto, and in violation of G. L. c. 221 § 38; G. L. c. 271 § 39(b); and the Massachusetts Rules of Professional Conduct.

44.    Defendant Casher refused plaintiff's such request, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial of violations of G. L. c. 93A.  When plaintiff insisted that defendant Casher at least attempt to introduce such evidence, and, if the judge would not allow the introduction thereof, that she make an "offer of proof," defendant Casher's response was to stick her middle finger up towards plaintiff and to tell her to "eat shit and die."

45.    On December 11, 2002, the Suffolk Superior Court ruled in the interpleader action that plaintiff could not argue before the jury that she was entitled to obtain her settlement funds because defendant Casher had not made a claim on plaintiff's behalf with respect to the settlement funds that were being held in the escrow account. *See* "Exhibit F" hereto.

46.    After the trial of the interpleader action, defendant Casher attempted to argue that the court had barred her from introducing evidence supporting plaintiff's and others' claims under G. L. c. 93A so the court must accept her post-verdict briefs on the subject. The court responded:

> As to the Picciotto parties' arguments concerning the 93A claim, the court has reserved to itself that issue upon the basis of evidence introduced at the jury trial. The court has not "barred evidence" of the 93A claim (opposition p. 10). The court required all the evidence upon all open claims to come in at the jury trial. It reserved to itself the claims and not the evidence. (See also docket entry number 510.0 of 1/17/02 in case no. 99-1594-A, Suffolk Superior Court)

47.    On August 21, 2002, plaintiff sent a letter to defendant Casher in which she requested that defendant Casher file a motion on her behalf for an emergency release to her of funds from the escrow account because, as she stated therein, "I am in the middle of an immediate and irreversible hardship. I have no money for college. I have no money for therapy, so I've stopped

receiving it, and I'm running out of money for my antidepressant medication." A copy of said letter is Attachment D of Exhibit A hereto.

48.    On September 19, 2002, defendant Casher sent a letter to plaintiff in which she refused to file such emergency motion. A copy of said letter is attached as "Exhibit H" hereto. Defendant Casher in her said letter claimed that "an attorney representing Melita and Athena's interests would quite likely, file the motion" but "someone representing" defendant Casher's interests "would oppose it."

49.    Defendant Casher also sent a letter to plaintiff on September 20, 2002 in which she stated that she could not file such a motion because it was "directly contrary to [her] own interest." A copy of said letter is attached as "Exhibit I" hereto.

50.    Defendant Casher has claimed that plaintiff is jointly and severally liable for the fees and costs that defendant Casher generated on behalf of her other clients in connection with pursuing their separate and distinct claims in the interpleader action despite the fact that her fee contract contains no such provision.

51.    On October 20, 2002, plaintiff sent a letter to defendant Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that defendant Casher maintained on behalf of plaintiff so that

14

could plaintiff could "buy medicine, pay mortgage, up coming fuel bill, etc." A copy of said letter is Attached as "Exhibit J" hereto.

52.    Thereafter, defendant Casher refused to release any funds to plaintiff.

53.    On October 31, 2002, plaintiff sent a letter to defendants Leonard Krulewich and Helen Krulewich (see "Exhibit K") requesting their intervention and specifically requesting:

> A.    A release of Five Thousand Dollars ($5,000) so that plaintiff could meet emergency expenses.
>
> B.    That the motion be filed that defendant Casher had refused to file.
>
> C.    That all the financial records be made available that pertained to the accounts that defendant Casher had maintained on plaintiff's behalf but which defendant Casher was refusing to provide, despite requests from plaintiff dating back to June of 2002.

A copy of said letter is Attachment 1 of Exhibit A hereto. Both of said defendants ignored plaintiff's requests.

54.    Plaintiff then turned to the Massachusetts Board of Bar Overseers for help, but, despite assistance provided by such board, plaintiff

has only been able to obtain grossly incomplete financial records from defendants Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

55.    The documents that defendants produced include copies of checks with the amount and the name of the payee blackened out, and copies of the corresponding bank statements also have the transaction portions blackened out.

56.    Defendant Casher refused to present an account to plaintiff in Probate Court Format, as Bar Counsel had requested, stating that she was "unfamiliar with it." Bar Counsel suggested legal action should be taken to obtain relief.

57.    Pursuant to the orders of Bar Counsel, defendant Casher produced some of the requested financial records.    Even the incomplete production revealed that defendant Casher has mismanaged and misappropriated plaintiff's and the plaintiff's parents' funds.

58.    Because defendants Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C. (collectively referred to hereinafter as "the defendants") refused to release to plaintiff Five Thousand Dollars ($5,000.00) of her own funds for her pressing medical needs, and because they also refused to file a motion on behalf of plaintiff in order to have some

16

of plaintiff's funds that are being held in the escrow account released to plaintiff, plaintiff filed a pro se motion in the Appeals Court for an emergency release of funds. The defendants opposed said motion on November 20, 2002. A copy of their opposition is attached hereto as "Exhibit L."

59.    When the defendants filed said opposition, defendant Casher was under court order to represent the financial interests of plaintiff and was obligated, pursuant to the requirements of Rule 1.3 of the Massachusetts Rules of Professional Conduct, to "zealously" represent plaintiff's interests.

60.    The verified opposition to plaintiff's motion that the defendants filed in the Appeal's Court urged the court not to release any funds to plaintiff and contained facts that defendant Casher personally knew to be false (see "Exhibit M" hereto); however, despite having such knowledge, defendant Casher failed to zealously represent plaintiff's interests with respect to said motion and the matter that was addressed therein.

61.    The defendants intended to inflame the court, prejudice plaintiff and coerce plaintiff into acquiescing to their unfair fee demands.

62.    On November 29, 2002, plaintiff, along with her younger sister, Athena Picciotto, sent a demand letter under the provisions of G. L. c. 93A, Section 9, to the defendants setting forth claims on their behalf for damages

17

of between Five Million Seven Hundred Twenty Thousand Dollars ($5,720,000) and Eight Million Four Hundred Thousand Dollars ($8,400,000), plaintiff's proportional claim being Four Million, Two Hundred Ninety Thousand Dollars ($4,290,000) to Six Million Three Hundred Thousand Dollars ($6,300,000).

63.    Plaintiff and her sister offered to settle their claims against the defendants for Two Million Dollars ($2,000,000), which the defendants' insurer has claimed is the limit of their professional liability insurance policies. Plaintiff sent several M.G.L. c. 93A letters of demand to encourage settlement, including, but not limited to, those sent November 29, 2002, December 31, 2002, January 22, 2003, and February 5, 2003.

64.    On December 28, 2002, January 30, 2003, February 18, 2003, and March 4, 2003, defendants responded to said demand letters by denying all "allegations of wrong doing" and by refusing to make any reasonable tender of settlement, hence forcing litigation. Copies of the letters that were sent on behalf of the defendants are attached hereto as "Exhibit N."

65.    Defendant Krulewich, Casher, P.C., from and after its organization, assumed the obligations to plaintiff, as the client thereof, that had been taken on by the other defendants Dana Casher, Leonard Kurlewich and Helen Krulewich.

18

## Count One

66.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

67.    The defendants, by their foregoing actions and failures to act, breached their contract with plaintiff whereby they agreed to furnish reasonable, competent, diligent and zealous representation to plaintiff.

68.    As a result, plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C. in the amount of her damages, plus interests and costs.

## Count Two

69.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

70.    The defendants, by their foregoing actions and failures to act, breached the covenant of good faith and fair dealing implied in the client fee agreement that was entered into with the plaintiff.

71.    As a result, plaintiff has been caused to suffer damages.

19

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Three

72.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

73.    The defendants, by their foregoing actions and failures to act, have been negligent in their furnishing of legal representation to plaintiff.

74.    As a result, plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Four

75.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

20

76.     The defendants, by their foregoing actions and failures to act, breached their fiduciary duty to plaintiff.

77.     As a result, plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Five

78.     Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

79.     The defendants, by their foregoing actions and failures to act, intentionally inflicted emotion distress upon plaintiff.

80.     As a result,  plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against Defendants Dana Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Six

81.     Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

21

82.    The defendants, by their foregoing actions and failures to act, negligently inflicted emotional distress on the Plaintiff.

83.    As a result, plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Seven

84.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

85.    Defendants, by their foregoing actions and failures to act, engaged in a civil conspiracy to deprive plaintiff of her personal injury settlement funds and to otherwise harm plaintiff for their own undue self enrichment.

86.    As a result, plaintiff has been caused to suffer damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Eight

87.     Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

88.     The defendants, acting alone or in concert with one another, through the use of threats, intimidation or coercion, have interfered with, or have attempted to interfere with, the exercise or enjoyment of the rights of plaintiff that are secured by the Constitution and laws of the Commonwealth of Massachusetts, namely the right of plaintiff to enjoy the use of her personal property, but also the right of plaintiff to represent herself pro se in defense of her property; and by doing so, the defendants have interfered with plaintiff's civil rights.

89.     As a result, plaintiff has suffered damages.

WHEREFORE, plaintiff demands judgment against defendants Dana Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., under the provisions of M.G.L. c. 12, § 11I, in the amount of her damages, plus interest and costs, and plaintiff further prays that she be awarded her reasonable attorneys' fees.

## Count Nine

90.     Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

23

91.    The defendants acting either alone or in concert with one another, converted to take their own control of the funds owned by the Plaintiff, by refusing to allow the plaintiff access to her funds the Defendants maintained, in various accounts on her behalf.

92.    As a result of said actions of defendants, plaintiff suffered damages.

WHEREFORE, plaintiff demands judgment against Defendants Dana Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in the amount of her damages, plus interest and costs.

## Count Ten

93.    Plaintiff here restates and incorporates by reference the allegations set forth in paragraphs 1 through 65 of the complaint.

94.    The defendants at all times material hereto have been engaged in trade or commerce within the Commonwealth of Massachusetts.

95.    Plaintiff was a consumer of the legal services of the defendants.

96.    The actions of the defendants represent one or more unfair or deceptive act acts or practices that have been declared unlawful by Section 2 of Chapter 93A of the Massachusetts General Laws, or by rule or regulation issued under paragraph (c) thereof, specifically M.G.L. c. 221 § 38; 271 §

39(b); and the Massachusetts Rules of Professional Conduct : 1.1, 1.3,
1.5(a), 1.7(b), 1.8(a), 1.8(g), 1.15(a), 3.3(a) (1), 3.7(a), 5.1(a), 5.1(b), 5.1(c)
(1), 5.1(c) (2), 5.2(a), 8.3(a), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(h).

97.    As a result, plaintiff has suffered damages.

WHEREFORE, plaintiff prays that the Court, pursuant to the
provisions of G. L. c. 93A, Section 9:

(a)    Determine that said actions of defendants Dana Casher,
Leonard Krulewich, Helen Krulewich and Krulewich, Casher,
P. C., constitute one or more unfair of deceptive practices
declared unlawful under the provisions of M.G.L. c. 93A, §
2(a), 2(b), and 2(c);

(b)    Determine the amount of damages that plaintiff has suffered as
a result of said actions of said defendants;

(c)    Award plaintiff the amount of such damages;

(d)    Determine that said actions of said defendants represented a
willful or knowing violation of the provisions of said sections
2(a), 2(b), and 2(c);

(e)    Award plaintiff against said defendants up to three, but not less
than two, times the amount of her actual damages;

(f)     Award plaintiff against said defendants her reasonable

attorney's fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be

just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues as to which she is

entitled to a jury trial.

MELITA PICCIOTTO
Pro Se

Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

### VERIFICATION

I, Melita Picciotto, plaintiff in the above matter, hereby declare under
the pains and penalties of perjury that, based upon my personal knowledge,
the facts stated above are true.

Melita Picciotto

Dated: March 31, 2003

26

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT
CIVIL ACTION
NO. 03-5378

```
                                   )
KRULEWICH, CASHER, P.C.,           )
                       Plaintiff   )
                                   )
          v.                       )
                                   )
STEFANO PICCIOTTO, JUDITH          )
PICCIOTTO, MELITA PICCIOTTO,       )
ATHENA PICCIOTTO, FOREIGN CAR      )
CENTER, INC. and JUAN NUNEZ,       )
                       Defendants  )
                                   )
```

## ANSWER AND COUNTERCLAIM OF DEFENDANTS STEFANO PICCIOTTO, JUDITH PICCIOTTO, MELITA PICCIOTTO, ATHENA PICCIOTTO and FOREIGN CAR CENTER, INC.

### ANSWER

Defendants Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto and Foreign Car Center, Inc. (hereinafter "defendants") answer the allegations set forth in the complaint as follows:

1-5.    Defendants admit the allegations set forth in Paragraphs 1 through 5 of the complaint.

6.    With regard to the allegations set forth in Paragraph 6 of the complaint, defendants admit that they entered into said contract with Leonard M. Krulewich and

Dana E. Casher; however, they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein.

7.    Defendants admit the allegations set forth in Paragraph 7 of the complaint.

8.    With regard to the allegations set forth in Paragraph 8 of the complaint, defendants admit that Attorney Casher provided legal services to them; however, they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein.

9.    Defendants admit the allegations set forth in Paragraph 9 of the complaint except that which claims that the additional legal services were substantial, which allegation defendants deny.

10.    Defendants deny the allegations set forth in Paragraph 10 of the complaint.

11.    Defendants admit the allegations set forth in Paragraph 11 of the complaint.

12.    With regard to the allegations set forth in Paragraph 12 of the complaint, defendants repeat and restate their responses to the allegations set forth in Paragraphs 1 through 11 of the complaint.

13.    Defendants deny the allegations set forth in Paragraph 13 of the complaint.

14-15.    Defendants deny the allegations set forth in Paragraphs 14 and 15 of the complaint.

16.    With regard to the allegations set forth in Paragraph 16 of the complaint, defendants repeat and restate their responses to the allegations set forth in Paragraphs 1 through 11 of the complaint.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the complaint.

18.     Defendants admit the allegations set forth in Paragraph 18 of the complaint.

19.     With regard to the allegations set forth in Paragraph 19 of the complaint, defendants repeat and restate their responses to the allegations set forth in Paragraphs 1 through 11 of the complaint.

20.     Defendants admit the allegations set forth in Paragraph 20 of the complaint.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the complaint.

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims against defendant Melita Picciotto are barred because they were not raised as a compulsory counterclaim in the action entitled *Melita Picciotto v. Krulewich, Casher, P.C.*, Essex Superior Court No. 03-0036A.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against defendant Melita Picciotto may not be pursued herein because of the continuing pendency of a prior action between plaintiff and said defendant, *i.e., Melita Picciotto v. Krulewich, Casher, P.C.*, Essex Superior Court No. 03-0036A.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the statute of frauds.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff and its predecessors breached the contract referred to in the complaint.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff and its predecessors willfully and intentionally violated the terms of the contract referred to in the complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff and its predecessors breached the fiduciary duty that they owed to defendants.

## NINTH AFFIRMATIVE DEFENSE

The conditions precedent to performance of the contract referred to in the complaint have not been fulfilled.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery by reason of plaintiff's fraud or the fraud of its predecessors.

## ELEVENTH AFFIRMATIVE DEFENSE

At the time that the contract referred to in the complaint was entered into, defendant Athena Picciotto was a minor under the age of eighteen.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff by its and its predecessors' acts and conduct is estopped to assert that defendants now owe plaintiff anything.

4

## THIRTEENTH AFFIRMATIVE DEFENSE

If defendants failed to perform any of their obligations under the contract referred to in the complaint, they were excused from the performance thereof.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendants' failure to perform under the contract referred to in the complaint was due to the impossibility of their being able to perform same, and, therefore, there was no breach of said contract by defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendants have paid plaintiff in full and now owe plaintiff nothing.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendants were ready and willing to perform all of their obligations under the contract referred to in the complaint; however, they were obstructed and prevented from doing so by plaintiff and its predecessors.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to equitable relief inasmuch as it has been guilty of inequitable conduct and has failed to come into equity with clean hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

If defendants ever owed plaintiff anything, they are entitled to a credit of set-off of amounts owed by plaintiff or its predecessors to defendants.

## COUNTERCLAIM

1.    Defendants Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto are individuals who reside at 418 Lafayette Street, Salem, Massachusetts.

2.      Defendant Foreign Car Center, Inc. is a Massachusetts corporation that formerly had its principal office at 55 Walnut Street, Peabody, Massachusetts.

3.      Plaintiff Krulewich, Casher, P.C., (hereinafter "plaintiff") is a Massachusetts corporation that has its principal place of business at 50 Staniford Street, Boston, Massachusetts.

4.      Within a period that commenced in 1975 and extended to 1996, defendants Stefano Picciotto and Judith Picciotto, who are the parents of defendants Melita Picciotto and Athena Picciotto, received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede").  Said factory was located on premises that were adjacent to premises upon which defendant Foreign Car Center, Inc., a corporation owned by defendant Judith Picciotto and operated by defendant Stefano Picciotto, conducted its business.

5.      In 1983, defendants Stefano Picciotto, Judith Picciotto and Foreign Car Center, Inc. and others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

6.      In September of 1993, after a jury trial, a judgment entered in said action against Salem Suede in favor of defendants herein Stefano Picciotto, Judith Picciotto, Foreign Car Center, Inc. and defendant Juan Nunez.  The judgment was upheld on appeal in a decision that was reported in 40 Mass. App. Ct. 15, 660 N.E.2d 687 (1996).

7.      Defendants Melita Picciotto and Athena Picciotto also sustained injuries from exposure to the same toxic chemicals that caused injuries to their parents, and they further suffered harm though loss of parental consortium, affection, and nurture.

6

8.    In 1994, defendant Melita Picciotto filed an action against Salem Suede seeking to recover for such injuries and other harm that she had suffered. The action was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 94-2155.

9.    In 1996, Salem Suede, facing the judgment that defendants Stefano Picciotto, Judith Picciotto, Foreign Car Center, Inc. and Juan Nunez had obtained against it and also facing said action that defendant Melita Picciotto had filed against it, filed a petition for bankruptcy in the U.S. Bankruptcy Court, *In re Salem Suede*, No. 96-13184JNF. A related case filed at the same time was *In re Zion Realty Corp.*, No. 96-14692JNF.

10.    In 1997, defendant Melita Picciotto filed an action against the Massachusetts Commissioner of Insurance in effort to unearth insurance coverage that Salem Suede held with The Travelers Indemnity Company (hereinafter "Travelers"), but had denied possessing, and also seeking an order that would compel the Commissioner to hold a hearing regarding Travelers' unfair and deceptive conduct in having denied that it provided such coverage. That action was entitled *Melita Picciotto v. Linda Ruthardt as Commissioner of Insurance,* Supreme Judicial Court No. 97-0511.

11.    On June 15, 1998, defendants Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto (through her father), and Foreign Car Center, Inc. (hereinafter "the Picciotto defendants") entered into an agreement with Dana E. Casher, Esq. (hereinafter "Casher"), an attorney now a principal in plaintiff, who then was acting on behalf of a law partnership known as Krulewich, Casher, whereby Casher and the members of said partnership agreed to represent the Picciotto defendants and defendant

7

Juan Nuzez in connection with the Salem Suede bankruptcy proceeding. A copy of the agreement that the Picciotto defendants entered into with Casher and the firm of Krulewich, Casher is attached to the complaint as "Exhibit A."

12.     After entering into said agreement, defendant Melita Picciotto continued to represent herself pro se in said Supreme Judicial Court action No 97-0511; and, with the help of a nonprofit consumer protection group by the name of United Policy Holders of America, defendant Melita Picciotto filed a brief in the Supreme Judicial Court on December 24, 1998 whereby she was able to demonstrate that the claims that she, her parents and Foreign Car Center, Inc. had against Salem Suede were covered by insurance policies that Travelers had issued to Salem Suede.

13.     Immediately thereafter, Travelers, in light of defendant Melita Picciotto's having so demonstrated the existence of such insurance coverage, called for a settlement conference to be held with a view towards settling all claims that the Picciotto defendants and defendant Juan Nunez, a former employee of Foreign Car Center, Inc., had against Salem Suede.

14.     The Picciotto defendants requested of Casher that she arrange for the attorneys who previously had represented them regarding claims that the Picciotto defendants had made against Salem Suede and Travelers be included in such a settlement conference so that their claims for fees as well as the Picciotto defendants' claims against Salem Suede and Travelers all could be resolved at one time. However, Casher declined to make any such arrangement.

15.     A settlement conference with Travelers commenced on January 5, 1999.

8

16.    At such conference, Casher represented the Picciotto defendants and defendant Juan Nunez.

17.    Casher allowed the negotiations for a settlement to run from approximately 10:00 A.M. on January 5, 1999, to 4:00 A.M. on January 6, 1999, with only bathroom breaks being taken.  In the early morning of January 6, 1999, all of Casher's clients were fatigued, in need of rest, and exhausted.

18.    In said settlement conference, Travelers ultimately offered to pay to the Picciotto defendants and defendant Juan Nunez the total sum of Nine Million Dollars ($9,000,000) to settle all of their claims that they had against Salem Suede and Travelers.

19.    Travelers took the position that it would leave it up to the parties whose claims would be settled by a settlement agreement to determine how to allocate among themselves such sum of Nine Million Dollars ($9,000,000).

20.    Casher, the Picciotto defendants and defendant Juan Nunez conferred and agreed upon how such sum of Nine Million Dollars ($9,000,000) would be allocated among them should they agree to accept such sum in settlement of their claims.  The agreed-upon allocations were:

> (a)    To defendant Melita Picciotto, the sum of One Million Five Hundred Thousand Dollars ($1,500,000);
>
> (b)    To defendant Athena Picciotto, the sum of Five Hundred Thousand Dollars ($500,000);
>
> (c)    To defendants Stefano Picciotto, Judith Picciotto and Foreign Car Center, Inc., the sum of Four Million Dollars ($4,000,000); and

(d)    To defendant Juan Nunez, the sum of Three Million Dollars ($3,000,000).

21.    Casher, the Picciotto defendants and defendant Juan Nunez also agreed at such time that, if the Picciotto defendants and defendant Juan Nunez should accept such sum of Nine Million Dollars ($9,000,000) in settlement of their claims, Casher would be paid One Million Dollars ($1,000,000) from such sum out of which she would obtain full compensation for her legal services and pay to any other attorney who previously had represented the Picciotto defendants and defendant Juan Nunez with respect to their claims that were being settled such amounts as might be owed to them for their services.

22.    The Picciotto defendants requested that they be allowed to take home the proposed settlement contract that Travelers was offering in order to be able to think about it after rest and to be able discuss its terms with independent counsel.

23.    Casher refused to allow the Picciotto defendants to leave the settlement conference; and, at approximately 3:00 A.M. on January 6, 1999, Casher instructed the Picciotto defendants to sign the proposed contract.

24.    Casher at that time claimed that a settlement in the amount of Nine Million Dollars ($9,000,000) was in the best interests of the Picciotto defendants and defendant Juan Nunez, and she further declared specifically that, if the proposed agreement would be entered into, Salem Suede's bankruptcy plan of reorganization could not be approved without the Picciotto defendants and defendant Juan Nunez's receiving the amounts that they had agreed to allocate among themselves as a condition of the settlement.

25.    Casher assured the Picciotto defendants that their fears of not receiving the settlement funds were wholly unfounded, and she called upon the Picciotto defendants to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of defendant Juan Nunez.

26.    The Picciotto defendants, in reliance upon the assurances of Casher, and in consideration of the payment to them of the amounts that they agreed would be allocated to each of them from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement and, as a consequence, dismiss, with prejudice, all claims that they had against Salem Suede and Travelers.

27.    The Picciotto defendants and defendant Juan Nunez, all of whom were represented by Casher at said conference, as 4:00 A.M. on January 6, 1999 approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they would allocate among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement.

28.    Casher, in violation of the provisions of Rule 1.8 (g) of the Massachusetts Rules of Professional Conduct, did not cause to be placed in the settlement agreement itself the respective allocations of said sum of Nine Million Dollars ($9,000,000.00) that the Picciotto defendants and defendant Juan Nunez had agreed upon.

29.    On March 12, 1999, Casher exercised undue pressure on defendant Stefano Picciotto to cause him to acquiesce to her demand that he sign an amendment to the settlement agreement in order to release Travelers of its contractual obligation to pay the Picciotto defendants and defendant Juan Nunez the respective amounts for which they had settled their claims prior to funding Salem Suede's bankruptcy plan of

11

reorganization. The amendment allowed Travelers to file an interpleader action in the
Suffolk Superior Court (Case No. 99-1594, entitled *Albert P. Zabin, et al v. Stefano
Picciotto, et al*), and deposit all of the Picciotto defendants' money as well as all the other
settlement funds in a court-controlled escrow account.

30.    Albert P. Zabin and other attorneys, who as plaintiffs in said Suffolk
Superior Court interpleader action claimed that they held a lien on the settlement funds,
opposed any release to each of the Picciotto defendants of their settlement funds,
including the funds of defendants Melita Picciotto and Athena Picciotto with whom said
attorneys had not entered into any contingency fee agreement, on the grounds that the
internal unrecorded allocation of the settlement funds was not binding. Such attorneys
contended that the internal allocation that Travelers had allowed to be made among the
beneficiaries of the settlement agreement had been reached in bad faith in order to
prevent the attorneys from fully collecting contractual fees owed to them by those of the
Picciotto defendants with whom they had contingency fee contracts.

31.    Said attorneys asserted that the monies that each of the Picciotto
defendants had agreed to accept in settlement of their claims, even those of them who had
no contingency fee contract with them, actually belonged to those of the Picciotto
defendants with whom they did have such fee contracts.

32.    Based on this argument, the Suffolk Superior Court released to the
Picciotto defendants and defendant Juan Nunez only such sums as such court determined
would be needed in order to provide them with a defense in said interpleader action to the
claims of said attorneys. The rest of the settlement funds remained held by the court in
an escrow account.

33.    The Picciotto defendants began to lose confidence in the ability of Casher to competently represent her interests; and, in February of 2000, defendant Melita Picciotto retained another attorney, James Dilday, to represent her interests.

34.    On September 1, 2000, Attorney Dilday filed a motion to withdraw from representation of defendant Melita Picciotto in said interpleader action on the grounds that Casher had forged his name on legal documents pertaining to the case.

35.    Defendant Melita Picciotto responded by discharging Attorney Dilday because she believed that his motion to withdraw and the accusations contained therein were motivated by her rebuff of his inappropriate behavior; and she filed a motion with the court informing the court that Attorney Dilday had been discharged and that she would thereafter be representing herself

36.    In October of 2000, Casher, despite her knowledge that defendant Melita Picciotto wanted to represent herself, and without the consent of defendant Melita Picciotto, informed the court, at a time when defendant Melita Picciotto was not present, that she would be representing defendant Melita Picciotto thereafter.

37.    Defendant Melita Picciotto attempted to represent herself despite Casher's representation to the court that she was her attorney; and defendant Melita Picciotto filed a notice of appearance on her own behalf.

38.    The Suffolk Superior Court, in light of Casher's said representation, refused to allow defendant Melita Picciotto to represent herself and ordered Casher to go on representing said defendant.

39.    Casher was called as a witness against the Picciotto defendants in the trial of the Suffolk Superior Court action, her testimony being allowed over said defendants'

objection; and, since the court regarded defendant Melita Picciotto as being represented by Casher, rather than representing herself, defendant Melita Picciotto was deprived of an opportunity to cross-examine Casher.

40.     Casher refused to allow the Picciotto defendants to engage the services of another attorney to cross-examine her when she so testified; and, as a result, the Picciotto defendants were deprived of necessary legal representation during that portion of the trial.

41.     In said interpleader action, the plaintiff attorneys filed a claim against defendants Melita Picciotto, Athena Picciotto, Stefano Picciotto and Judith Picciotto under the provisions of G. L. c. 93A despite the fact that said defendants never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute.

42.     At the trial of the interpleader action, the Picciotto defendants learned that Casher had filed on their behalf (except for defendant Foreign Car Center, Inc.) an "Intentional Infliction of Emotional Distress" claim against the plaintiff attorneys instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof, and, therefore, preventing the jury from hearing evidence of occasions when the plaintiff attorneys had inflicted emotional distress upon said defendants.

43.     At said trial, the Picciotto defendants asked Casher to attempt to introduce evidence that would support the claims that they had against the plaintiff attorneys in said action for having knowingly and willfully engaged in acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or in violation of the rules and regulations issued

pursuant thereto, and in violation of G. L. c. 221, § 38; G. L. c. 271, § 39(b); and the Massachusetts Rules of Professional Conduct.

44.    Casher refused such requests of the Picciotto defendants, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial of violations of G. L. c. 93A. When the Picciotto defendants insisted that Casher at least attempt to introduce such evidence, and, if the judge would not allow the introduction thereof, that she make an "offer of proof," Casher's response was to stick her middle finger up towards defendant Melita Picciotto and to tell her to "eat sh-t and die."

45.    On December 10, 2002, the Suffolk Superior Court ruled in the interpleader action that defendants Melita Picciotto and Athena Picciotto could not testify or argue before the jury that they were entitled to obtain their settlement funds because Casher had not made a claim on their behalf in said action with respect to the settlement funds that were being held in the escrow account.

46.    Casher, without excuse, failed in said interpleader action to make a claim on behalf of any of the Picciotto defendants with respect to the settlement funds that were being held in the escrow account.

47.    Prior to the trial of said interpleader action, Casher, without excuse, failed to move to dismiss the claims against the Picciotto defendants by plaintiff-attorney Edward Greer (hereinafter "Greer") under G. L. c. 221, Section 50, because Greer never appeared on behalf of any of the Picciotto defendants in the cases that were settled with Travelers.

48.    Also with respect to Greer in said interpleader action:

15

(a)    Casher, without excuse, failed to seek a ruling that, since the court

had ruled that the Picciotto defendants' claims against Greer were

barred by the statute of limitation, then Greer's claims against the

Picciotto defendants also were so barred; and

(b)    During the trial, Casher refused requests of the Picciotto

defendants that she utilize evidence that would show that Greer

was being untruthful in his testimony in claiming that the Picciotto

defendants had induced him into representing them by suggesting

that a person who had furnished information would be a willing

witness when such evidence showed that he knew that such person

would not agree to be a witness.

49.    Said Edward Greer obtained a judgment against the Picciotto defendants

in said interpleader action based upon such untruthful testimony.

50.    During the trial of said interpleader action, Casher, also without excuse:

(a)    Did not present expert testimony concerning certain aspects of

malpractice engaged in by some of the plaintiff-attorneys while

they represented the Picciotto defendants; and

(b)    Failed to prepare properly the expert witnesses that testified on

behalf of the Picciotto defendants; and

(c)    Did not present evidence that the breakdown of the relationship of

the Picciotto defendants and the plaintiff-attorneys had resulted

from the failure or refusal of said attorneys to pursue claims for

bankruptcy fraud engaged in by Salem Suede and its insurer,

Travelers, the eventual uncovering of which by the Picciotto

defendants themselves, led to the willingness of Travelers to offer

Nine Million Dollars ($9,000,000) to settle all claims against

Salem Suede and Travelers.

51.    After the trial of the interpleader action, Casher attempted to argue that the

court had barred her from introducing evidence supporting the Picciotto defendants'

claims under G. L. c. 93A so the court must accept her post-verdict briefs on the subject.

The court responded:

> As to the Picciotto parties' arguments concerning the 93A claim,
> the court has reserved to itself that issue upon the basis of
> evidence introduced at the jury trial. The court has not "barred
> evidence" of the 93A claim (opposition p. 10). The court
> required all the evidence upon all open claims to come in at the
> jury trial. It reserved to itself the claims and not the evidence.
> (See also docket entry number 510.0 of 1/17/02 in case no. 99-
> 1594-A, Suffolk Superior Court)

52.    Casher, and through her plaintiff, failed to afford to the Picciotto defendants

competent and effective legal representation in and with respect to said interpleader

action.

53.    After the trial of said interpleader action, Casher, and through her plaintiff,

refused:

(a)    To answer questions that the Picciotto defendants had about the case and

their claims therein; and

(b)    To provide the Picciotto defendants with documents pertaining to the case

that they were requesting.

54.    Casher, and through her plaintiff, mismanaged funds of the Picciotto

defendants that the court in said interpleader action had released to her custody; and she

charged the Picciotto defendants for disbursements that were not made on their behalf
and overcharged them for disbursements that were made on their behalf.

55.    Casher, and through her plaintiff, also embezzled, misappropriated and
converted some of the funds of the Picciotto defendants that had been so released to her
custody.

56.    On August 21, 2002, defendant Melita Picciotto sent a letter to Casher in
which she requested that Casher file a motion on her behalf for an emergency release to
her of funds from the escrow account because, as she stated therein, "I am in the middle
of an immediate and irreversible hardship. I have no money for college. I have no money
for therapy, so I've stopped receiving it, and I'm running out of money for my
antidepressant medication."

57.    On September 19, 2002, Casher sent a letter to the Picciotto defendants in
which she refused to file such emergency motion.  In her said letter, Casher claimed that
"an attorney representing Melita and Athena's interests would quite likely file the
motion," but "someone representing" Casher's interests "would oppose it."

58.    Casher also sent a letter to the Picciotto defendants on September 30,
2002, in which she stated that she could not file such a motion because it was "directly
contrary to [her] own interest."

59.    Casher has claimed that the Picciotto defendants are jointly and severally
liable for the fees and costs that she generated while pursuing the separate and distinct
claims of said defendants and defendant Juan Nunez in the interpleader action despite the
fact that her fee contract contains no such provision.

18

60. On October 20, 2002, defendant Melita Picciotto sent a letter to Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that defendant Casher maintained on behalf of the Picciotto defendants so that said defendant could "buy medicine, pay mortgage, up coming fuel bill, etc."

61. Thereafter, Casher refused to release any funds to defendant Melita Picciotto.

62. On October 31, 2002, defendant Melita Picciotto sent a letter to Leonard Krulewich and Helen Krulewich requesting their intervention and specifically requesting:

(a) A release of Five Thousand Dollars ($5,000) so that said defendant could meet emergency expenses;

(b) That the motion be filed that Casher had refused to file; and

(c) That all the financial records be made available that pertained to the accounts that Casher had maintained on behalf of the Picciotto defendants but which Casher was refusing to provide despite requests dated back to June of 2002.

Said Leonard Krulewich, Helen Krulewich and plaintiff ignored such requests.

63. Defendants Melita Picciotto and Stefano Picciotto then turned to the Massachusetts Board of Bar Overseers for help; but despite assistance provided by such board, the Picciotto defendants have only been able to obtain incomplete records from plaintiff.

64. The documents that plaintiff produced include copies of checks drawn on wrongly intermingled accounts with the amount and the name of the payee blackened out,

and copies of the corresponding bank statements also have the transaction portions
blackened out.

65.    Casher and plaintiff refused to present an account to defendants Melita
Picciotto and Stefano Picciotto in Probate Court Format, as Bar Counsel had requested,
stating that she was "unfamiliar with it." Bar Counsel suggested to said defendants that
they take legal action to enforce their rights.

66.    Casher and plaintiff subsequently falsely claimed in this action that they
had been absolved of any wrong doing by the Bar Counsel in order to obtain an
attachment on the residence of defendants Stefano Picciotto, Judith Picciotto, Melita
Picciotto and Athena Picciotto.

67.    Plaintiff sought such attachment knowing that defendants Stefano
Picciotto and Judith Picciotto were about to refinance the mortgage on their said
residence so as to enable them to have the funds necessary to appeal the judgment in said
interpleader action both by ordering a transcript of the proceedings and by engaging legal
representation.

68.    Plaintiff acted in obtaining such attachment in effort to, among other
things, keep the Picciotto defendants from being able to have the means to pursue such an
appeal and thereby, among other things, expose the malpractice engaged in by Casher
and plaintiff.

69.    Because Casher, Leonard Krulewich, Helen Krulewich and Krulewich,
Casher, P.C. (collectively referred to hereinafter as "plaintiff") refused to release to
defendant Melita Picciotto Five Thousand Dollars ($5,000) of her own funds for her
pressing medical needs, and because they also refused to file a motion on behalf of said

defendant in order to have some of her funds that are being held in the escrow account released to said defendant, said defendant filed a pro se motion in the Suffolk Superior Court for an emergency release of funds. Plaintiff opposed said motion on November 20, 2002.

70.     When plaintiff filed said opposition, Casher was under court order to represent the financial interests of the Picciotto defendants and was obligated, pursuant to the requirements of Rule 1.3 of the Massachusetts Rules of Professional Conduct, to "zealously" represent the Picciotto defendants' interests.

71.     The verified opposition to the motion of defendant Melita Picciotto that plaintiff filed in the Suffolk Superior Court urged the court not to release any funds to said defendant and contained facts that plaintiff knew to be false; however, despite having such knowledge, plaintiff failed to zealously represent plaintiff's interests with respect to said motion and the matter that was addressed therein.

72.     Plaintiff intended to inflame the court, prejudice defendant Melita Picciotto and coerce said defendant into acquiescing to plaintiff's unfair fee demands.

73.     On November 29, 2002, defendants Melita Picciotto and Athena Picciotto sent a demand letter to plaintiff under the provisions of G. L. c. 93A, Section 9, setting forth claims on their behalf for damages of between Five Million Seven Hundred Twenty Thousand Dollars ($5,720,000) and Eight Million Four Hundred Thousand Dollars ($8,400,000).

74.     Defendants Melita Picciotto and Athena Picciotto offered to settle their claims against plaintiff for Two Million Dollars ($2,000,000), which plaintiff's insurer

21

has claimed is the limit of coverage under plaintiff's professional liability insurance policies.

75.    On December 28, 2002, plaintiff responded to said demand letter by denying all "allegations of wrong doing" and by refusing to make any reasonable tender of settlement.

Count One

76.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

77.    Plaintiff and its predecessors, by their foregoing actions and failures to act, breached their contract with the Picciotto defendants whereby they agreed to furnish reasonable, competent, diligent and zealous representation to the Picciotto defendants.

78.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interests and costs.

Count Two

79.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

80.    Plaintiff and its predecessors, by their foregoing actions and failures to act, breached the covenant of good faith and fair dealing implied in the client fee agreement that was entered into with the Picciotto defendants.

81.    As a result, the Picciotto defendants have been caused to suffer damages.

22

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

## Count Three

82.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

83.    Plaintiff and its predecessors, by their foregoing actions and failures to act, have been negligent in their furnishing of legal representation to the Picciotto defendants.

84.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

## Count Four

85.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

86.    Plaintiff and its predecessors, by their foregoing actions and failures to act, breached their fiduciary duty to the Picciotto defendants.

87.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

23

Count Five

88.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

89.    Plaintiff and its predecessors, by their foregoing actions, converted property of the Picciotto defendants.

90.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

Count Six

91.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

92.    Plaintiff and its predecessors, by their foregoing actions and failures to act in leading the Picciotto defendants to believe, among other things, that: (a) their total liability for legal fees to plaintiff and its predecessors and their prior attorneys would be One Million Dollars ($1,000,000); (b) their funds were being used and administered correctly, (c) their records were been kept correctly; and (d) all available documents of which they had requested copies had been furnished; engaged in fraud and deceit.

93.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

24

## Count Seven

94.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

95.    Plaintiff and its predecessors, by their foregoing actions and failures to act, intentionally inflicted emotion distress upon the Picciotto defendants.

96.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

## Count Eight

97.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

98.    Plaintiff and its predecessors, by their foregoing actions and failures to act, negligently inflicted emotional distress on the Picciotto defendants.

99.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

## Count Nine

100.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

25

101.    Plaintiff and its predecessors, by their foregoing actions and failures to act, engaged in a civil conspiracy to deprive the Picciotto defendants of their settlement funds and to otherwise harm the Picciotto defendants for their own undue self enrichment.

102.    As a result, the Picciotto defendants have been caused to suffer damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff in the amount of their damages, plus interest and costs.

### Count Ten

103.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

104.    Plaintiff and its predecessors, acting alone or in concert with one another, through the use of threats, intimidation or coercion, have interfered with, or have attempted to interfere with, the exercise or enjoyment of the rights of the Picciotto defendants that are secured by the Constitution and laws of the Commonwealth of Massachusetts, namely the right of the Picciotto defendants to enjoy the use of their personal property, but also the right of defendant Melita Picciotto to represent herself pro se in defense of her property.

105.    As a result, the Picciotto defendants have suffered damages.

WHEREFORE, the Picciotto defendants demand judgment against plaintiff, under the provisions of M.G.L. c. 12, § 11I, in the amount of their damages, plus interest and costs, and the Picciotto defendants further pray that they be awarded their reasonable attorneys' fees.

26

<u>Count Eleven</u>

106.    The Picciotto defendants here restate and incorporate by reference the allegations set forth in paragraphs 1 through 75 of the complaint.

107.    Plaintiff and its predecessors at all times material to the issues involved in this action have been engaged in trade or commerce within the Commonwealth of Massachusetts.

108.    The Picciotto defendants were consumers of the legal services of plaintiff and its predecessors.

109.    The actions of the plaintiff and its predecessors represent one or more unfair or deceptive act acts or practices that have been declared unlawful by Section 2 of Chapter 93A of the Massachusetts General Laws, or by rule or regulation issued under paragraph (c) thereof, specifically G.L. c. 221 § 38; 271 § 39(b); and the Massachusetts Rules of Professional Conduct : 1.1, 1.3, 1.5(a), 1.7(b), 1.8(a), 1.8(g), 1.15(a), 3.3(a) (1), 3.7(a), 5.1(a), 5.1(b), 5.1(c) (1), 5.1(c) (2), 5.2(a), 8.3(a), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(h).

110.    As a result, the Picciotto defendants have suffered damages.

WHEREFORE, the Picciotto defendants pray that the Court, pursuant to the provisions of G. L. c. 93A, Section 9:

(a)    Determine that said actions of plaintiff and its predecessors constitute one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, § 2(a), 2(b), and 2(c);

27

(b)     Determine the amount of damages that the Picciotto defendants have

suffered as a result of said actions of plaintiff and its predecessors;

(c)     Award the Picciotto defendants the amount of such damages;

(d)     Determine that said actions of plaintiff and its predecessors represented a

willful or knowing violation of the provisions of said sections 2(a), 2(b),

and 2(c);

(e)     Award the Picciotto defendants against said plaintiff up to three, but not

less than two, times the amount of their actual damages;

(f)     Award the Picciotto defendants against plaintiff their reasonable attorney's

fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be just and

proper.

## DEMAND FOR JURY TRIAL

The Picciotto defendants hereby demand a trial by jury on all issues as to which

they are entitled to a jury trial.


STEFANO PICCIOTTO

Pro Se

Stefano Picciotto
41 Lafayette Street
Salem, MA 01970
(978) 741-0218


28

JUDITH PICIOTTO

Pro Se

Judith Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


MELITA PICCIOTTO

Pro Se

Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


ATHENA PICCIOTTO

Pro Se

Athena Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

29

# EXHIBIT C

# Commonwealth of Massachusetts
## SUFFOLK SUPERIOR COURT
### Case Summary
### Civil Docket

## Krulewich,Casher PC v Picciotto et al

Details for Docket: SUCV2003-05378

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2003-05378 | **Caption:** | Krulewich,Casher PC v Picciotto et al |
| **Filing Date:** | 11/12/2003 | **Case Status:** | Needs status review |
| **Status Date:** | 04/09/2004 | **Session:** | Civil D, 3 Pemberton Square Boston |
| **Lead Case:** | NA | **Case Type:** | Complex |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 02/12/2007 |
| **Service Date:** | 02/10/2004 | **Disposition:** | 12/24/2007 |
| **Rule 15:** | 03/19/2006 | **Rule 12/19/20:** | 04/10/2004 |
| **Final PTC:** | 08/11/2007 | **Rule 56:** | 04/13/2007 |
| **Answer Date:** | 04/10/2004 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2003-05378 | **Caption:** | Krulewich,Casher PC v Picciotto et al |
| **Filing Date:** | 11/12/2003 | **Case Status:** | Needs status review |
| **Status Date:** | 04/09/2004 | **Session:** | Civil D, 3 Pemberton Square Boston |
| **Lead Case:** | NA | **Case Type:** | Reach & apply (214.003) |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 02/12/2007 |
| **Service Date:** | 02/10/2004 | **Disposition:** | 12/24/2007 |
| **Rule 15:** | 03/19/2006 | **Rule 12/19/20:** | 04/10/2004 |
| **Final PTC:** | 08/11/2007 | **Rule 56:** | 04/13/2007 |
| **Answer Date:** | 04/10/2004 | **Jury Trial:** | YES |

## Parties Involved

22 Parties Involved in Docket: SUCV2003-05378

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Foreign Car Center, Inc | **First Name:** | |
| **Address:** | c/o Stefano Picciotto, President | **Address:** | 418 Lafayette Street |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Nunez | **First Name:** | Juan |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Picciotto | **First Name:** | Athena |
| **Address:** | 418 Lafayette St | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-741-0218 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Picciotto | **First Name:** | Judith |
| **Address:** | 418 Lafayette Street | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-741-0218 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Picciotto | **First Name:** | Milita |
| **Address:** | 418 Lafayette St | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-741-0218 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Picciotto | **First Name:** | Stefano |
| **Address:** | 418 Lafayette Street | **Address:** | |
| **City:** | Salem | **State:** | MA |
| **Zip Code:** | 01970 | **Zip Ext:** | |
| **Telephone:** | 978-741-0218 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant/counterclaim |
| **Last Name:** | Krulewich, Casher, PC | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant/intervenor |
| **Last Name:** | Rossman | **First Name:** | Neil |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant/intervenor |
| **Last Name:** | Rossman & Rossman | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Other interested party |
| **Last Name:** | Burke | **First Name:** | Scott D |
| **Address:** | Morrison, Mahoney & Miller | **Address:** | 250 Summer St |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02210 | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Other interested party |
|---|---|---|---|
| **Last Name:** | Cheng | **First Name:** | Edward S |
| **Address:** | Cooke, Colancy & Gruenthal LLP | **Address:** | 150 Federal St |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Other interested party |
|---|---|---|---|
| **Last Name:** | Dacey | **First Name:** | Timothy J |
| **Address:** | Goulston & Storrs | **Address:** | 400 Atlantic Avenue |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Other interested party |
|---|---|---|---|
| **Last Name:** | Gill | **First Name:** | Robert T |
| **Address:** | Peabody & Arnold LLP | **Address:** | 50 Rowes Wharf |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Other interested party |
|---|---|---|---|
| **Last Name:** | Laredo | **First Name:** | Marc C. |
| **Address:** | Laredo & Smith, LLP | **Address:** | 15 Broad St. Suite 600 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Other interested party |
|---|---|---|---|
| **Last Name:** | Mansfield | **First Name:** | Douglas K |
| **Address:** | Casner & Edwards | **Address:** | 303 Congress St. 2nd Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02210 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Other interested party |
| **Last Name:** | Murphy | **First Name:** | Thomas |
| **Address:** | Smith & Duggan LLP | **Address:** | 2 Center Plaza |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02108 | **Zip Ext:** | |
| **Telephone:** | 617-248-1900 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Other interested party |
| **Last Name:** | Renehan | **First Name:** | Richard W. |
| **Address:** | Goulston & Storrs | **Address:** | 400 Atlantic Avenue |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-482-1776 | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Other interested party |
| **Last Name:** | Rossman | **First Name:** | Neil |
| **Address:** | Rossman, Rossman & Eschelbacher | **Address:** | 200 State St |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Other interested party |
| **Last Name:** | Stone | **First Name:** | Michael J. |
| **Address:** | Posternak,Blankstein & Lund LLP | **Address:** | 800 Boylston Street -Suite 320 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02199 | **Zip Ext:** | 8161 |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Out-of-state attorney |
| **Last Name:** | Gallitano | **First Name:** | Thomas J |
| **Address:** | Coinn, Kavanaugh, Rosenthal Peis | **Address:** | 10 Post Office Square |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Krulewich,Casher PC | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Reach & Apply Defendant |
| **Last Name:** | Richardson | **First Name:** | George |
| **Address:** | 25 Pitman Road | **Address:** | |
| **City:** | Swampscott | **State:** | MA |
| **Zip Code:** | 01907 | **Zip Ext:** | |
| **Telephone:** | 781-599-8999 | | |

# Attorneys Involved

9 Attorneys Involved for Docket: SUCV2003-05378

| **Attorney Involved:** | | **Firm Name:** | KRUL01 |
| **Last Name:** | Krulewich | **First Name:** | Leonard M |
| **Address:** | 50 Staniford Street | **Address:** | PO Box 8190 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02114 | **Zip Ext:** | |
| **Telephone:** | 617-367-1200 | **Tel Ext:** | |
| **Fascimile:** | 617-367-6736 | **Representing:** | Krulewich,Casher PC, (Plaintiff |

| **Attorney Involved:** | | **Firm Name:** | ROSS01 |
| **Last Name:** | Denver | **First Name:** | Paul F |
| **Address:** | Marketplace Center - North | **Address:** | 200 State Street |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-439-9559 | **Tel Ext:** | |
| **Fascimile:** | 617-439-4434 | **Representing:** | |

**Attorney**

| **Involved:** | | **Firm Name:** | ERCO01 |
|---|---|---|---|
| **Last Name:** | Lamanna | **First Name:** | Jennifer M |
| **Address:** | 454 Broadway | **Address:** | Suite 306 |
| **City:** | Revere | **State:** | MA |
| **Zip Code:** | 02151 | **Zip Ext:** | |
| **Telephone:** | 781-284-2768 | **Tel Ext:** | |
| **Fascimile:** | 781-284-2817 | **Representing:** | Nunez, Juan (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | ROSS01 |
|---|---|---|---|
| **Last Name:** | Denver | **First Name:** | Paul F |
| **Address:** | Marketplace Center - North | **Address:** | 200 State Street |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-439-9559 | **Tel Ext:** | |
| **Fascimile:** | 617-439-4434 | **Representing:** | Rossman, Neil (Defendant/intervenor) |

| **Attorney Involved:** | | **Firm Name:** | LYNC02 |
|---|---|---|---|
| **Last Name:** | Duggan | **First Name:** | Stephen J |
| **Address:** | 45 Bristol Drive | **Address:** | |
| **City:** | S Easton | **State:** | MA |
| **Zip Code:** | 02375 | **Zip Ext:** | |
| **Telephone:** | 508-230-2500 | **Tel Ext:** | |
| **Fascimile:** | 508-230-2510 | **Representing:** | Krulewich, Casher, PC, (Defendant/counterclaim) |

| **Attorney Involved:** | | **Firm Name:** | LYNC02 |
|---|---|---|---|
| **Last Name:** | Chamberlain Jr | **First Name:** | J William |
| **Address:** | 45 Bristol Drive | **Address:** | |
| **City:** | South Easton | **State:** | MA |
| **Zip Code:** | 02375 | **Zip Ext:** | |
| **Telephone:** | 508-230-2500 | **Tel Ext:** | |
| **Fascimile:** | 508-230-2510 | **Representing:** | Krulewich, Casher, PC, (Defendant/counterclaim) |

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Paolini | **First Name:** | Domenic |

| | | | | |
|---|---|---|---|---|
| **Address:** | Marketplace Center 3 North | | **Address:** | 200 State Street |
| **City:** | Boston | | **State:** | MA |
| **Zip Code:** | 02109 | | **Zip Ext:** | |
| **Telephone:** | 617-951-0300 | | **Tel Ext:** | |
| **Fascimile:** | | | **Representing:** | Nunez, Juan (Defendant) |

| | | | | |
|---|---|---|---|---|
| **Attorney Involved:** | | | **Firm Name:** | BLOO02 |
| **Last Name:** | Haley | | **First Name:** | Richard M |
| **Address:** | 1340 Soldiers Field Road | | **Address:** | Suite 2 |
| **City:** | Boston | | **State:** | MA |
| **Zip Code:** | 02135 | | **Zip Ext:** | 1020 |
| **Telephone:** | 617-254-4400 | | **Tel Ext:** | |
| **Fascimile:** | 617-254-7610 | | **Representing:** | Nunez, Juan (Defendant) |

| | | | | |
|---|---|---|---|---|
| **Attorney Involved:** | | | **Firm Name:** | DEBE01 |
| **Last Name:** | deBenedictis | | **First Name:** | Danielle E |
| **Address:** | 68 Commercial Wharf | | **Address:** | |
| **City:** | Boston | | **State:** | MA |
| **Zip Code:** | 02110 | | **Zip Ext:** | |
| **Telephone:** | 617-367-8585 | | **Tel Ext:** | |
| **Fascimile:** | 617-367-0650 | | **Representing:** | Picciotto, Athena (Defendant) |

# Calendar Events

18 Calendar Events for Docket: SUCV2003-05378

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 11/18/2003 | 14:00 | Motion/Hearing: order of notice | B | Event held as scheduled |
| 2 | 11/24/2003 | 14:00 | Motion/Hearing: prel inj | H | Event held as scheduled |
| 3 | 12/12/2003 | 14:00 | Motion/Hearing: miscellaneous | H | Event held as scheduled |
| 4 | 04/30/2004 | 09:00 | Motion/Hearing: miscellaneous | H | Event held as scheduled |
| 5 | 04/30/2004 | 09:00 | Motion/Hearing: Rule12 to Dismiss | H | Event held as scheduled |
| 6 | 04/30/2004 | 14:00 | Motion/Hearing: miscellaneous | H | Event canceled not re-scheduled |
| 7 | 07/27/2004 | 14:00 | Motion/Hearing: Rule12 to Dismiss | H | Event not reached by Court |

| 8 | 08/04/2004 | 14:00 | Motion/Hearing: Rule12 to Dismiss | H | Event held as scheduled |
| 9 | 09/01/2004 | 14:00 | Motion/Hearing: miscellaneous | G | Event held as scheduled |
| 10 | 09/01/2004 | 14:00 | Motion/Hearing: miscellaneous | G | Event held as scheduled |
| 11 | 09/01/2004 | 14:00 | Motion/Hearing: miscellaneous | G | Event held as scheduled |
| 12 | 02/07/2005 | 14:30 | Motion/Hearing: Consolidate | BLS2 | Event held as scheduled |
| 13 | 02/07/2005 | 14:30 | Motion/Hearing: Compel | BLS2 | Event canceled not re-scheduled |
| 14 | 03/30/2005 | 14:00 | Motion/Hearing: Compel | BLS2 | Event held as scheduled |
| 15 | 03/30/2005 | 14:00 | Conf: review status | BLS2 | Event held as scheduled |
| 16 | 07/21/2005 | 14:00 | Motion/Hearing: miscellaneous | D | Event not held-req of Defendant |
| 17 | 07/27/2005 | 14:00 | Motion/Hearing: miscellaneous | D | Event held as scheduled |
| 18 | 08/23/2005 | 14:00 | Motion/Hearing: miscellaneous | D | Event held--Under Adviseme |

## Full Docket Entries

365 Docket Entries for Docket: SUCV2003-05378

| Entry Date: | Paper No: | Docket Entry: |
| --- | --- | --- |
| 11/12/2003 | 1 | Complaint filed |
| 11/12/2003 | | Origin 1, Type D02, Track F. |
| 11/12/2003 | 2 | Civil action cover sheet filed |
| 11/12/2003 | | Summons and order of notice issued; returnable,Tuesday, in Ctrm |
| 11/12/2003 | | 5,12th Flr on November 18,2003 at 2:00pm to show cause why a TRO |
| 11/12/2003 | | should not be granted (Macleod ,J) Summons & order of notice issued |
| 11/12/2003 | | See P#1 |
| 11/12/2003 | 3 | Motion of plff for ex parte real estate attachment, filed & allowed |
| 11/12/2003 | 3 | (Macleod,J) |
| 11/12/2003 | 4 | Findings and Ex Parte Order for Approval of Attachment as to |
| 11/12/2003 | 4 | defendants in the amount of $1,000,000. (Macleod,J) |
| 11/12/2003 | 5 | Affidavit of Dana E Casher in support of ex parte motion for real |
| 11/12/2003 | 5 | estate attachment |
| 11/20/2003 | | Upon payment of $90.00, TRO to issue as ordered, returnable on |
| 11/20/2003 | | Monday, November 24,2003 at 2:00pm in Ctrm 16, 9th Flr with TRO & |
| 11/20/2003 | | Order of notice (White,J) See P#1 |
| 11/20/2003 | | TEMPORARY RESTRAINING ORDER issued; $90.00 fee received, returnable |
| 11/20/2003 | | 11/24/03 at 2:00pm in Ctrm 16,9th Flr Summons,order of notice & TRO |
| 11/20/2003 | | issued |
| 11/21/2003 | 6 | Motion of Richard W Renehan to quash subpoena & assented to (w/o |

| 11/21/2003 | 6 | opposition) |
| 11/21/2003 | 7 | Motion of defts Stefano Picciotto & Judith Picciotto to dissolve ex |
| 11/21/2003 | 7 | parte attachment (w/o opposition) |
| 11/24/2003 | 8 | Opposition of defts Stefano Picciotto, Judith Picciotto, Melita |
| 11/24/2003 | 8 | Picciotto & Athena Picciotto to plff's prayer for issuance of a PI |
| 11/24/2003 | 9 | Affidavit of Attorney James Menzies Shannon |
| 11/24/2003 | 10 | Second affidavit of Stefano Picciotto |
| 11/24/2003 | | Complaint (P#1) After hearing a TRO is entered as to P4only pending a |
| 11/24/2003 | | hearing on whether any preliminary injunctive relief is in order and |
| 11/24/2003 | | on the Motin to Dissolve attachment Order as to p3 is vacated pending |
| 11/24/2003 | | hearing (MacLeod, J.).Notice sent 11/26/03 |
| 11/24/2003 | 11 | Opposition to plaintiff's request for a Preliminary Injunction filed |
| 11/24/2003 | 11 | by Juan Nunez |
| 11/24/2003 | 12 | Opposition to to plaintiff'sprayer for issuance of a prelimiinary |
| 11/24/2003 | 12 | injunction filed by Stefano Picciotto, Judith Picciotto, Milita |
| 11/24/2003 | 12 | Picciotto, Athena Picciotto |
| 11/24/2003 | 13 | Opposition to to plaintiff's prayer for issuance of a preliminary |
| 11/24/2003 | 13 | injunction against him filed by George Richardson |
| 11/24/2003 | 14 | Affidavit of Attorney James Menzies Shannon |
| 11/24/2003 | 15 | Affidavit of Stefano Picciotto |
| 11/24/2003 | 16 | Second Affidavit of Stefano Picciotto |
| 11/24/2003 | 17 | Affidavit of Reach and Apply defendant George E. Richardson |
| 11/25/2003 | | MOTION (P#6) ALLOWED (Bonnie H MacLeod, Justice) Notices mailed |
| 11/25/2003 | | November 26, 2003 |
| 11/25/2003 | 18 | Emergency Motion of Smith & Duggan LLPto Quash Subpoena Duces Tecum |
| 11/25/2003 | 18 | Allowed (MacLeod, J.). Notice sent 11/26/03 |
| 11/25/2003 | 19 | Motion of Rossman & Rossman and Neil Rossman to Intervene Allowed for |
| 11/25/2003 | 19 | the limited purpose of hearing (MacLeod, J.). Notice sent 11/26/03 |
| 11/28/2003 | 20 | Motion of defts Stefano Picciotto, Judith Picciotto, Melita |
| 11/28/2003 | 20 | Picciotto, Athena Picciotto and Foreign Car Center Inc for an |
| 11/28/2003 | 20 | extension of time to file a responsive pleading to Jan 25, 2004 (w/o |
| 11/28/2003 | 20 | opposition) |
| 12/05/2003 | | MOTION (P#20) ALLOWED (Bonnie H MacLeod, Justice) Notices mailed |
| 12/05/2003 | | December 03, 2003 (entered 12/3/03) |
| 12/12/2003 | 21 | ANSWER, COUNTERCLAIM & Jury demand: Defendant Juan Nunez (all issues) |
| 12/30/2003 | 22 | Motion to dismiss of reach & apply deft George E Richardson (w/o |
| 12/30/2003 | 22 | opposition) |
| 01/08/2004 | | MOTION (P#22) ALLOWED (Bonnie H MacLeod, Justice) Notices mailed |
| 01/08/2004 | | January 06, 2004 (entered 1/2/04) |
| 01/26/2004 | 24 | ANSWER by Krulewich,Casher PC to COUNTERCLAIM of Juan Nunez & Jury |
| 01/26/2004 | 24 | Demand (all issues) |

| | | |
|---|---|---|
| 02/09/2004 | | MOTION (P#7) After full consideration of all the submissions, the |
| 02/09/2004 | | within Motion is DENIED; the attachment amount is, however, is |
| 02/09/2004 | | reduced to $500,000 (Bonnie H MacLeod, Justice) (Dated 1/27/04) |
| 02/09/2004 | | Notices mailed January 29, 2004 |
| 02/09/2004 | 23 | Findings and Order for Approval of attachment as modfied after Motion |
| 02/09/2004 | 23 | to Dissolve - Therefore, the court hereby reduces the attachment to |
| 02/09/2004 | 23 | the amount of $500,000 (MacLeod,J) (Dated 1/27/04) notice sent 1/29/04 |
| 02/10/2004 | 25 | Motion of plff to dismiss (w/opposition) |
| 02/10/2004 | 26 | Affidavit of deft Melita Picciotto in support of her motion to |
| 02/10/2004 | 26 | dismiss |
| 02/10/2004 | 27 | Motion to dismiss of defts Stefano Picciotto Judith Picciotto |
| 02/10/2004 | 27 | Foreign Car Center Inc Melita Picciotto and Athena Picciotto |
| 02/10/2004 | 27 | (w/opposition) |
| 02/10/2004 | 28 | Affidavit of Stefano Picciotto to correct the false statements in |
| 02/10/2004 | 28 | the plff's motions to dismiss dated February 4, 2004 |
| 04/09/2004 | | Case status changed to 'Needs status review' at service deadline |
| 04/09/2004 | | review |
| 04/14/2004 | 29 | Moton of deft Stefano Picciott for authorization to conduct |
| 04/14/2004 | 29 | discovery (w/opposition) |
| 04/21/2004 | | MOTION (P#29) Denied Disposition discovery stayed pending |
| 04/21/2004 | | deft 's motion to dismiss which will be heard at 2 P M on 4/30/04 |
| 04/21/2004 | | (Fahey,J) Notice Sent 4/20/04 (entered 4//16/04) |
| 04/30/2004 | 30 | Emergency Motion to Dismiss Plaintiffs Complaint (w/o opposition) |
| 05/03/2004 | | MOTION (P#25) Denied (Fahey,J) Notice Sent 5/3/04 |
| 05/03/2004 | | MOTION (P#27) Denied (Fahey,J) Notice Sent 5/13/04 |
| 05/03/2004 | | MOTION (P#[30) Denied (Fahey,J) Notice Sent 5/3/04 |
| 05/14/2004 | 31 | ANSWER: Stefano Picciotto, Judith Picciotto, Milita Picciotto, Athena |
| 05/14/2004 | 31 | Picciotto, Foreign Car Center, Inc (Jury demand) all issues |
| 06/28/2004 | | MOTION (P#14 in case #04-0289) This Motion is DENIED however I ORDER |
| 06/28/2004 | | that the case filed in the H Session #03-5378H shall be Consolidated |
| 06/28/2004 | | in the G Session with this case (Carol S. Ball, Justice) Notices |
| 06/28/2004 | | mailed June 25, 2004 dated 6/24/04 |
| 08/03/2004 | | Amended Answer counterclaim and third party complaint of defts |
| 08/03/2004 | | Stefanco Picciotto Judith Picciotto Melita Picciotto Athena |
| 08/03/2004 | | Picciotto and Foreign Car Center Inc & jury demand (all issues) |
| 08/03/2004 | | (See P#20 in docket #04-289) |
| 08/16/2004 | 32 | Plaintiff Krulewich,Casher PC's MOTION for Clarification as to |
| 08/16/2004 | 32 | consolidation order w/opposition |
| 08/16/2004 | 33 | Affidavit of Stefano Picciotto |
| 08/16/2004 | 34 | Request for hearing filed by Stefano Picciotto |
| 08/17/2004 | 35 | Emergency Motion of Non-Party Witness First State Management Group |

| 08/17/2004 | 35 | INc. to Quash Subpoena |
| 08/23/2004 | 36 | Emergency motin of non-party witness Twin City Ins Co to quash |
| 08/23/2004 | 36 | supboena (w/o opposition) |
| 08/24/2004 | | MOTION (P#32) By way of clarification, the order of consolidation |
| 08/24/2004 | | means that the cases are to be consolidated as the mainly party stays |
| 08/24/2004 | | here, to avoid "compliating rulings, scheduling issues, etc." This |
| 08/24/2004 | | means that they indeed, consolidate for all pruposes at this stage. |
| 08/24/2004 | | They remain seperate cases but will be treated by the court as one |
| 08/24/2004 | | when scheduling hearings. The parties in either case may conduct |
| 08/24/2004 | | seperate discovery but cannot notify non-identical parties in the |
| 08/24/2004 | | other suit. As for disposition motions, they only apply to the case |
| 08/24/2004 | | in which they are filed but non-identicl parties in the othr suite |
| 08/24/2004 | | may be heard. As for trials, severance issues may be addressed as |
| 08/24/2004 | | trial approaches Since I have , in effect, issued on this motion as |
| 08/24/2004 | | the Picciotto defendants have requested, I decline to schedule the |
| 08/24/2004 | | motion for hearing (Ball,J) (Dated 8/19/04) notice sent 8/23/04 |
| 09/01/2004 | 37 | Opposition to Non-Party witness Twin City Insurance Co. to Quash |
| 09/01/2004 | 37 | Subpoena and CROSS MOTION to compel Twin City Insurance Co. to |
| 09/01/2004 | 37 | produce the documents The Picciotto parties are Seeking filed by |
| 09/01/2004 | 37 | Stefano Picciotto, Judith Picciotto, Milita Picciotto, Athena |
| 09/01/2004 | 37 | Picciotto |
| 09/08/2004 | 38 | Emergency Motion for Protective Order as to Keeper of the Records |
| 09/08/2004 | 38 | Depositions of Krulewich, Casher, P.C. Krulewich, Casher and Leonard |
| 09/08/2004 | 38 | Krulewich and Associates - This motion is ALLOWED as described in an |
| 09/08/2004 | 38 | order issued this day (Ball,J) (Dated 9/2/04) notice sent 9/2/04 |
| 09/08/2004 | 39 | Gilleran Parties Emergency Motion to Quash the Subpoenas Served Upon |
| 09/08/2004 | 39 | Twin City Insurance Company and First State Management Group, Inc - |
| 09/08/2004 | 39 | This motion was filed in open court on 9/1/04, it may be docketed. |
| 09/08/2004 | 39 | It is allowed in part and DENIED in part, consistent with this courts |
| 09/08/2004 | 39 | decision of Papers No. 36 and 35 (Ball,J) (Dated 9/2/04) notice sent |
| 09/08/2004 | 39 | 9/2/04 |
| 09/08/2004 | 40 | Order on Non-Party Witnesses Twin City Insurance Co's First State |
| 09/08/2004 | 40 | Management Group, Inc's and the Gilleran Parties' Motions to Quash |
| 09/08/2004 | 40 | Subpooenas (Pleadings 35 and 36) - The Motios to Quash (Pleadings 35 |
| 09/08/2004 | 40 | and 36 are ALLOWED IN PART and DENIED IN PART; specifically, the |
| 09/08/2004 | 40 | subpoenaed entities must produce the Krulewich, Caher correspondence |
| 09/08/2004 | 40 | referenced above only. (Ball,J) (Dated 9/2/04) see Paper No. 40 for |
| 09/08/2004 | 40 | complete Order) notice sent 9/2/04 |
| 09/08/2004 | 41 | Order on the Krulewich, Casher Defendants Motion for Protective Order |
| 09/08/2004 | 41 | (Ball,J) (Dated 9/2/04) notice sent 9/2/04 |
| 09/28/2004 | 42 | Defendant/plff. in Counterclaims and Third party plaintiff Stefano |

| 09/28/2004 | 42 | Picciotto's emergency MOTION to for clarification and/or Modification |
| 09/28/2004 | 42 | of The order on Non-party witnesses Twin City Insurance Co's First |
| 09/28/2004 | 42 | State Management Group, Inc's and The Gilleran Parties Motion to |
| 09/28/2004 | 42 | Quash Subpoena's (Pleadings 35 and 36) w/o opposition |
| 09/28/2004 | 43 | Defendant/plaintiff in counterclaim and Third party plff Stefano |
| 09/28/2004 | 43 | Picciotto's emergency MOTION to for Clarification and/or Modification |
| 09/28/2004 | 43 | of The order on the Krulewich, Casher Defendants Motion for |
| 09/28/2004 | 43 | Protective order w/o opposition |
| 09/28/2004 | 44 | Defendants/plaintiffs in counterclaim and Third Party plffs Stefano |
| 09/28/2004 | 44 | Picciotto Judith Picciotto Melita Picciotto and Athena Picciotto and |
| 09/28/2004 | 44 | Foreign Car Center emergency MOTION to accept the already filed Third |
| 09/28/2004 | 44 | Party Complaint w/o opposition |
| 09/28/2004 | 45 | Affidavit of Stefano Picciotto in support of the Emergency Motion to |
| 09/28/2004 | 45 | accept the already filed Third Party Complaint |
| 10/04/2004 | 46 | Memorandum & order on pending motions Order: (1) The third party |
| 10/04/2004 | 46 | deft Carole Bergeron motion to dismiss amended third party |
| 10/04/2004 | 46 | complaint (#24) is Allowed (2) The motion to dismiss amended |
| 10/04/2004 | 46 | third party complaint of the Casher-Krulewich parties (#25) is |
| 10/04/2004 | 46 | Allowed and (3) emergency motion to accept the already filed third |
| 10/04/2004 | 46 | party complaint is Denied (Billings,J) Notice Sent 10/1/04 |
| 10/04/2004 | 46 | (entered 9/30/04) |
| 10/04/2004 | | MOTION (P44) Denied see memorandum and order (Billings,j) Notice |
| 10/04/2004 | | Sent (entered 9/30/04) |
| 10/05/2004 | | MOTION (P#42) DENIED (Ball, J) Notices mailed October 06, 2004 to all |
| 10/05/2004 | | parties of record |
| 10/05/2004 | | MOTION (P#43) This motion is ALLOWED as follows: given Attorney |
| 10/05/2004 | | Duggan's reported suspension of Mr. Nunez's deposition to same |
| 10/05/2004 | | unspecified future date, Mr. Picciotto may take a separate deposition |
| 10/05/2004 | | of Mr. Nunez. The first day of that deposition may take place at the |
| 10/05/2004 | | defendant's office space. If the deposition extends beyond one day, |
| 10/05/2004 | | it shall be continued in a location of Mr. Nunez's counsel's |
| 10/05/2004 | | choosing. ALL counsel may and shall have the right to attend the |
| 10/05/2004 | | deposition and scheduling shall accomodate that right. (Ball, J). |
| 10/05/2004 | | Notices mailed October 06, 2004 to all parties of record. |
| 11/30/2004 | | Affidavit of Juan Nunez (See Paper #27 in Docket No. 04-0289) |
| 01/07/2005 | 47 | Defendant in Counterclaim Krulewich,Casher PC's MOTION to |
| 01/07/2005 | 47 | consolidate with Essex Superior Court # 2003-00036 & Assented to by |
| 01/07/2005 | 47 | Plaintiff |
| 01/07/2005 | 48 | Opposition to Motion of Krulewich, Casher P.C. to consolidate filed |
| 01/07/2005 | 48 | by deft/plff in counterclaim Milita Picciotto |
| 01/31/2005 | 49 | Plaintiff Krulewich,Casher PC's MOTION to compel production of |

| 01/31/2005 | 49 | documents w/opposition |
| 01/31/2005 | 51 | Plaintiff Krulewich,Casher PC's notice of filing withdrawal of motion |
| 01/31/2005 | 51 | to compel as to Foreign Car Center Inc. Only and opposition to |
| 01/31/2005 | 51 | Cross-Motion for fees |
| 01/31/2005 | 50 | Opposition to Plaintiff's Motion to Compel production of documents |
| 01/31/2005 | 50 | and Cross Motion for Payment of Legal Fees to oppose this Motion |
| 01/31/2005 | 50 | filed by Foreign Car Center, Inc |
| 01/31/2005 | 52 | Request for hearing filed by Stefano Picciotto, Judith Picciotto, |
| 01/31/2005 | 52 | Milita Picciotto, Athena Picciotto |
| 02/16/2005 | 53 | MEMORANDUM OF DECISION AND ORDER on motion to consolidate: The Court |
| 02/16/2005 | 53 | orders that the case of PICCIOTTO v CASHER, ET AL CA No. 03-0036, new |
| 02/16/2005 | 53 | pending in Essex County, be consolidated with Suffolk CA. No |
| 02/16/2005 | 53 | 03-5378. The Clerk in Essex County is ordered to transmit the file in |
| 02/16/2005 | 53 | CA 03-0036 to the clerk in Suffolk County and all papers in CA. No. |
| 02/16/2005 | 53 | 03-0036 will henceforth be filed with the clerk in Suffolk County. |
| 02/16/2005 | 53 | (Nonnie S Burnes, Justice). Copies mailed 2/15/05 (entered 2/14/05) |
| 02/23/2005 | 54 | Emergency motion to stay consolidation order of February 14, 2005 for |
| 02/23/2005 | 54 | the limited purpose to have the Essex Court (Lowey, J.) rule on the |
| 02/23/2005 | 54 | complaint for contempt that Melita Picciotto will be filing relative |
| 02/23/2005 | 54 | to the defendant's non compliance with Judge Lowey's Orders and the |
| 02/23/2005 | 54 | defendants' alternation of documents without court aproval |
| 03/02/2005 | 55 | Opposition of Krulewich, Casher, PC to emergency motion to stay |
| 03/02/2005 | 55 | consolidation order |
| 03/03/2005 |  | MOTION (P#54) DENIED. This motion is not an emergency. In addition, |
| 03/03/2005 |  | if the defendants in the Essex case are not properly responding to |
| 03/03/2005 |  | discovery, than can be heard here just as easily as in Essex Court to |
| 03/03/2005 |  | the Suffolk Superior Court is the same department of the trial court |
| 03/03/2005 |  | as is Essex Superior Court and in any case, contempt in a discovery |
| 03/03/2005 |  | dispute is unlikely to be criminal (Nonnie S Burnes, Justice) (Dated |
| 03/03/2005 |  | 2/25/05) Notices mailed 2/28/05 |
| 03/31/2005 | 56 | Motion of Non-party Roberta F. white Ph.S. to Quash subpoena |
| 03/31/2005 | 56 | w/opposition |
| 04/14/2005 |  | MOTION (P#56) After review the court ALLOWS this motion. The |
| 04/14/2005 |  | information sought in the deposition of Dr. White and documents from |
| 04/14/2005 |  | her are either irrelevant to his action for Attorneys fees (and |
| 04/14/2005 |  | counterclaims for legal malpractice) or may be required from the |
| 04/14/2005 |  | current parties especially Mrs Cashner (Nonnie S Burnes, Justice) |
| 04/14/2005 |  | Notices mailed April 14, 2005 dated 4/13/05 |
| 04/15/2005 | 57 | Order to Consolidate Additional Cases - Order - The court orders that |
| 04/15/2005 | 57 | the cases of Picciotto et al v Bergeron et al C.A. N. 04-2340 and |
| 04/15/2005 | 57 | Nunez v Casher Individually et al., C.A. No. 05-0012, now pending in |

| | | |
|---|---|---|
| 04/15/2005 | 57 | Essex County, by consolidated with Suffolk C.A. No. 03-5378. The |
| 04/15/2005 | 57 | clerk in Essex County is ordered to transmit the files in C.A. No. |
| 04/15/2005 | 57 | 04-2340 and C.A. No. 05--0012 to the clerk in Suffolk County and all |
| 04/15/2005 | 57 | papers in these cases shall henceforth be filed with the clerk in |
| 04/15/2005 | 57 | Suffolk County (Burnes,J) (Dated 4/11/05) notice sent 4/12/05 |
| 04/15/2005 | 58 | Memorandum of Decision and Order on Motion to Compel - Order - The |
| 04/15/2005 | 58 | Court orders that all documents required to be produced by this order |
| 04/15/2005 | 58 | be produced to plaintiff on or before 10:00 a.m. May 13, 2005 at the |
| 04/15/2005 | 58 | offices of Krulewich, Casher P.C. organized and labeled so as to |
| 04/15/2005 | 58 | correspond to the specific requests to which they are responsive. |
| 04/15/2005 | 58 | Any document that is responsive to these requests and which is not |
| 04/15/2005 | 58 | timely produced as set out in this order will not be admitted at any |
| 04/15/2005 | 58 | trial of this matter (Burnes,J) (Dated 4/11/05) notice sent 4/12/05 |
| 04/19/2005 | 59 | Motion of defts Stefano Picciotto & Judith Picciotto for |
| 04/19/2005 | 59 | reconsideration of the denial of the defts opposition to motion to |
| 04/19/2005 | 59 | quash subpoena of Roberta White, Ph.D. (w/o opposition) |
| 04/25/2005 | 60 | ORDER on Motion to reconsider Allowance of Motion to Quash Deposition |
| 04/25/2005 | 60 | Subpoena to Robert A White Ph D (Nonnie S Burnes, Justice) (entered |
| 04/25/2005 | 60 | 4/21/05) notice sent 4/22/05 |
| 04/28/2005 | 61 | Defendant Juan Nunez's MOTION for Temporary Restraining order and |
| 04/28/2005 | 61 | Preliminary Injunction w/opposition |
| 04/28/2005 | 62 | Joinder of Krulewich, Casher P.C. in motion fo Juan Nunez for TRO and |
| 04/28/2005 | 62 | Preliminary Injunctiion |
| 04/28/2005 | 63 | Request for hearing filed by Stefano Picciotto, Judith Picciotto, |
| 04/28/2005 | 63 | Milita Picciotto, Athena Picciotto wutg a Stenographic record |
| 05/12/2005 | 64 | Court received Letter to Chief Justice Rouse re: all parties submit |
| 05/12/2005 | 64 | to Mediation Decline to act. This case is specially assigned to |
| 05/12/2005 | 64 | Judge Burnes and all motions should be filed in accordance with the |
| 05/12/2005 | 64 | Rules of Civil Procedure (Rouse, C.J.). Notice sent 5/12/05 dated |
| 05/12/2005 | 64 | 5/9/05 |
| 05/26/2005 | 65 | Carole Bergeron's motion for sanctions and costs under rule 11 |
| 05/26/2005 | 65 | (w/opposition) |
| 06/23/2005 | 66 | AMENDED ORDER ON CONSOLIDATION There are four cases which have been |
| 06/23/2005 | 66 | consolidated under the lead case, Suffolk C. A. 03-5378. One of these |
| 06/23/2005 | 66 | is a Suffolk County case C.A. No. 04-0289. Three are cases commenced |
| 06/23/2005 | 66 | in Essex County. There cases are: Picciotto v. Casher et al Essex |
| 06/23/2005 | 66 | C.A. No. 03-0036 Picciotto et al V. Bergeron et al Essex C. A. No. |
| 06/23/2005 | 66 | 04-2340 Nunez V. Casher Individually et al Essex C.A. No. 05-0012 The |
| 06/23/2005 | 66 | Essex cases have been consolidated with the Suffolk cases and |
| 06/23/2005 | 66 | transferred to Suffolk for all purposes. To clarify for the parties |
| 06/23/2005 | 66 | and the clerks" offices in Essex and Suffolk Counties: the court |

| 06/23/2005 | 66 | orders that all papers for all cases be filed and docketed in Suffolk |
| 06/23/2005 | 66 | County. Counsel and the parties appearing pro se are to include in |
| 06/23/2005 | 66 | the caption of their filings the notation in bold type as follows: |
| 06/23/2005 | 66 | CASE SPECIALLY ASSIGNED TO JUDGE BURNES The court will be scheduling |
| 06/23/2005 | 66 | a hearing in July to hear all pending motions. The parties will be |
| 06/23/2005 | 66 | notified of the time and place. (Nonnie S Burnes, Justice) Noitce |
| 06/23/2005 | 66 | sent 6/23/05 |
| 07/05/2005 | 66 | Motiion of Deft. stefano Piccfiotto to recuse Directyed the the |
| 07/05/2005 | 66 | Honorable Nonnie Burnes w/opposition |
| 07/20/2005 | 67 | Defendant Stefano Picciotto's MOTION to strike the opposition of Juan |
| 07/20/2005 | 67 | Nunez, and Carole Bergeron to theMotin to recuse directed to the |
| 07/20/2005 | 67 | Honorable sdNonnie Burnes and request that this court and its |
| 07/20/2005 | 67 | officers comply with the mandates of title II of the ADA |
| 07/20/2005 | 68 | Opposition of Juan Nunez and Carole Bergeron to Motion to strike the |
| 07/20/2005 | 68 | opposition of Juan Nunez and Carole Bergeron to the Motion to recuse |
| 07/20/2005 | 68 | directed to the Honorable Nonnie Burns and request that this court |
| 07/20/2005 | 68 | and its officers conply with the mandates of title II of the ADA and |
| 07/20/2005 | 68 | MOTION for Appoointment of Guardian Ad Litem for Stefano Picciotto |
| 07/20/2005 | 68 | w/opposition |
| 07/20/2005 | 69 | Request for hearing filed by Stefano Picciotto with a Stenographic |
| 07/20/2005 | 69 | Record |
| 07/21/2005 |    | Rule 9E Notice of motion to dismiss (see P#34 in docket #04-289) |
| 07/25/2005 | 70 | Emergency Motion of Non-party Continental Casualty Company to file |
| 07/25/2005 | 70 | supplemental Memorandum based upon events occurring since April 28, |
| 07/25/2005 | 70 | 2005 |
| 07/25/2005 | 71 | Joinder of Stefano Picciotto, Judith Picciotto & Athena Picciotta to |
| 07/25/2005 | 71 | all motions and oppositions of Melita Picciotto which were filed in |
| 07/25/2005 | 71 | case no. 03-0036A, Essex Superior Court that are to be heard by this |
| 07/25/2005 | 71 | Court (w/o opposition) |
| 07/27/2005 |    | MOTION (P#66.1) Denied after hearing no adequate grounds stated. I |
| 07/27/2005 |    | believe I can be fair and reasonable with this case after searching |
| 07/27/2005 |    | my conscience (Burnes, J.). Notices mailed July 28, 2005 |
| 07/27/2005 | 72 | Opposition of Stefano Picciotto, Judith Picciotto, Melita Picciotto, |
| 07/27/2005 | 72 | Athena Picciotto & Foreign Car Center, Inc to the emergency motion of |
| 07/27/2005 | 72 | non-party Continental Casualty Co to file Supplemental Memorandum |
| 07/27/2005 | 72 | based on events occurring since April 28, 2005 |
| 07/28/2005 |    | MOTION (P#68) Denied as to Motion for appointment of GAL Motion may |
| 07/28/2005 |    | be reviewed if necessary (Burnes, J.). Notice sent 7/28/05 |
| 07/28/2005 |    | MOTION (P#71) Joinder allowed (Burnes, J.). Notice sent 7/28/05 |
| 07/28/2005 | 73 | [choice:party role:Plaintiff:Defendant] [party]'s MOTION to strike |
| 07/28/2005 | 73 | [text] (ERROR S.D. |

| | | |
|---|---|---|
| 07/28/2005 | | Defendant Dana E Casher, Leonard Krulewich, Helen Krulewich's MOTION |
| 07/28/2005 | | to strike paragraphs 173 and 174 of the Amended Complaint |
| 07/28/2005 | | w/opposition ALLOWED These facts may be pertinent to the case at |
| 07/28/2005 | | trial but are not necessary for pleadni g the claim (Burnes, J.). |
| 07/28/2005 | | Notice sent 7/28/05 (seeP#18 in case #05-2597) |
| 07/29/2005 | | Court received Letter to Judge Burnes re: Service List and |
| 07/29/2005 | | certificate of service |
| 08/01/2005 | | Court received Letter to Honorable Judge Burnes re: Mr. Picciotto's |
| 08/01/2005 | | Letter dated 7/28/05 |
| 08/03/2005 | 74 | Emergency motion of Stefao Picciotto for leave to file a response to |
| 08/03/2005 | 74 | the letter of Dominic Paolini to this court dated July 29, 2005 (w/o |
| 08/03/2005 | 74 | opposition) |
| 08/05/2005 | 75 | Opposition of Juan Nunez and Carole Bergeron to emergency motion of |
| 08/05/2005 | 75 | Stefano Picciotto for leave to file a response to the letter of |
| 08/05/2005 | 75 | Paolini to this Court dated July 29, 2005 (w/o opposition) |
| 08/10/2005 | | MOTION (P#[66A) Denied (Burnes,J) Notice sent 7/28/05 (entered |
| 08/10/2005 | | 7/27/05) |
| 08/10/2005 | | MOTION (P#68) Denied (Burns,J) Notice Sent 7/28/05 (entered 7/27/05) |
| 08/10/2005 | | MOTION (P#71) Allowed (Burnes,J) Notice sent 7/28/05 (entered 7/28/05) |
| 08/10/2005 | 76 | Memorandum: of Decision and order on motion for recusal & order I I |
| 08/10/2005 | 76 | DENY the motion of the Picciotto Parties that I recuse myself |
| 08/10/2005 | 76 | (Burnes,J) Notice snet 8/8/05 (entered 8/4/05) |
| 08/23/2005 | 77 | Request of deft Robert Stolzberg for leave to file a 9A (a)(3) reply |
| 08/23/2005 | 77 | to plffs memorandum in opposition to deft's motion to dismiss & |
| 08/23/2005 | 77 | Allowed (Burnes,J) (entered 8/15/05) |
| 08/29/2005 | 78 | Motion of deft Stefano Picciotto to refer question of law the denial |
| 08/29/2005 | 78 | of the motion to recuse directed to the Honorable Nonnie Burnes to |
| 08/29/2005 | 78 | the SJC (with opposition & request for monetary sanctions) |
| 08/29/2005 | 79 | Court received Defts' response to plffs' application for default |
| 09/08/2005 | | MOTION (P#78) DENIED (Burnes, J.. Notices mailed September 06, 2005 |
| 09/08/2005 | | dated 9/1/05 |
| 09/08/2005 | 80 | MEMORANDUM AND ORDER ON DEFENDANT CAROLE BERGERON'S MOTIIONTO DISMISS |
| 09/08/2005 | 80 | ORDER The defendant Carole Bergeron's Motion to Dismiss is ALLOWED |
| 09/08/2005 | 80 | with regards to Counts Six, Seven, Ten and Eleven of the Picciottos' |
| 09/08/2005 | 80 | Amended Complaint (Burnes, J.). Notice sent 9/6/05 dated 8/31/05 |
| 09/12/2005 | 81 | Defendant Carole Bergeron's MOTION for Sanctions and costs, filed & |
| 09/12/2005 | 81 | DENIED on 8/31/05 as to the pre-se plffs & ALLOWED against attorney |
| 09/12/2005 | 81 | Shannon personally. It is black letter law (plus common sense) thast |
| 09/12/2005 | 81 | a corporation cannot suffer immotional distress. Attorney Shannon |
| 09/12/2005 | 81 | shall pay to Ms. Bigeron's attorneys $1,000.00 in good funds on or |

| 09/12/2005 | 81 | before 9/21/05 (Nonnie Burnes, Justice) notice sent 9/6/05 |
| 09/21/2005 | 82 | Proposed Tracking order Motions under MRCP 15 3/19/06 Discovery |
| 09/21/2005 | 82 | 2/12/07 Motions under 56 4/13/07 Final pre trial conference 8/11/07 |
| 09/21/2005 | 82 | Case disposed `12/24/07 |
| 09/23/2005 | 83 | AMENDED TRACKING ORDER FOR ALL CASES Completion of all fact discovery |
| 09/23/2005 | 83 | May 31, 2006, Disclosure of expert witnesses by all plaintiffs and |
| 09/23/2005 | 83 | plaintiffs in counterclaim as required by Mass.R. Civ.P. 26(b)(4)(A) |
| 09/23/2005 | 83 | and Amended standing order 1-88 Appendix A, Item 6 June 30, 2006 |
| 09/23/2005 | 83 | Disclosure of expert witnesses by all defendants and defendants in |
| 09/23/2005 | 83 | counterclaim as required by Mass.R.Civ.OP. 26(b)(4)(A) and Amended |
| 09/23/2005 | 83 | standing Order 1-88 Appendix A, Item 6 July 31, 2006 Service of Rule |
| 09/23/2005 | 83 | 56 motions no later that September 15, 2006 Heaing on Rule 56 motions |
| 09/23/2005 | 83 | October 2006Final pretrial conference with joint memorandum as |
| 09/23/2005 | 83 | required by Amended Standing Order 1-88 Appendix A December 2006 |
| 09/23/2005 | 83 | Trial January 2007 (Burnes, J.). dated 9/19/05 Notice sent 9/23/05 |
| 09/23/2005 | 84 | ANSWER (amended complaint): Richard Stolzbert (jury reqstd) |
| 09/29/2005 | | MOTION (P#82) a revised tracking order has been issued (Burnes, J.). |
| 09/29/2005 | | Notice sent 9/29/05 dated 9/23/05 |