UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 NOV -4  P 3:36

U.S. DISTRICT COURT
DISTRICT OF MASS.

STEFANO PICCIOTTO, JUDITH PICCIOTTO, )
MELITA PICCIOTTO, ATHENA PICCIOTTO, )
AND FOREIGN CAR CENTER, INC. )
)
Plaintiffs )
)
v. ) C.A. No. 05-10901-NG
)
CONTINENTAL CASUALTY COMPANY, )
GREAT NORTHERN INSURANCE COMPANY, )
HARTFORD INSURANCE COMPANY and )
TWIN CITY FIRE INSURANCE COMPANY )
)
Defendants )

**AFFIDAVIT OF STEFANO PICCIOTTO IN SUPPORT OF OPPOSITION TO THE HARTFORD INSURANCE COMPANY'S AND TWIN CITY INSURANCE COMPANY'S MOTION TO DISMISS**

I, Stefano Picciotto, hereby depose and state:

1. I am a party to this litigation.

2. I, other members of my family, our business, and employees received injuries and property damage from exposure to toxic chemicals emitted by a leather finishing company named Salem Suede, Inc. (hereinafter "Salem Suede") that abutted my place of business located in Peabody, Massachusetts.

3. In 1983, I, my wife, our business, and former employees initiated a complaint in the Essex Superior Court to recover for said injuries.

4. After a trial by jury in 1993, we prevailed.

5. In 1994, my daughters, Melita and Athena Picciotto, initiated their own lawsuit against Salem Suede in Essex Superior Court to recover for the injuries they received. The caption of the case was *Melita Picciotto and others v. Salem Suede and others*, case no. 94-2155.

6. Salem Suede appealed, and the Appeals Court upheld the decision of the lower court.

7. The case was reported as *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et als*, 40 Mass. App. Ct. 15, 660 N.E.2d 687 (1996).

8. In April of 1996, instead of paying the judgment, Salem Suede hid the insurance policies in place with the Travelers Indemnity Company (hereinafter "Travelers"), claimed that there was no insurance to cover the judgment, and committed a multimillion dollar bankruptcy fraud in an attempt to flee from paying the judgment (Attachment A).

9. Although Travelers had insured Salem Suede for ten years, Travelers claimed that it had never insured Salem Suede. After that lie was exposed, Travelers claimed to have been prejudiced due to lack of notice. After that lie was exposed, Travelers claimed that the policies that it issued to Salem Suede did not offer coverage for the injuries I had received.

10. In December of 1998, the chapter 11 trustee that I had elected finally exposed the bankruptcy fraud (Attachment A). After that occurred, Travelers offered to settle my claims against it, its insured, and other parties in exchange for a release from me and the other settlors.

11. January 6, 1999, I, together with Judith Picciotto, Melita Picciotto, Athena Picciotto, Foreign Car Center, Inc., and Juan Nunez (hereafter "the Settlors") entered into a settlement agreement with Travelers for the sum of Nine Million Dollars.

12. After the Settlors entered into a settlement agreement, highly-placed insiders of the Massachusetts legal system and their law firms demanded the entire Nine Million Dollar settlement. (See the May 10, 2002, Affidavit of Attorney Dana E. Casher, attached hereto as Attachment B).

13. That has also been averred through an affidavit signed by Attorney Casher dated November 13, 2003, which states at item 11: "That lawsuit resulted from the Defendants' dispute with the attorneys who had represented them prior to the Plaintiff seeking to take the entire nine million dollar settlement that the Plaintiff had negotiated on the Defendants' behalf in payment of those prior attorneys' fees." (Attachment C). (The Defendants in that lawsuit are the Picciotto parties, and the Plaintiff is Krulewich, Casher, P.C.)

2

14. Attorney Casher has also averred, under the pains and penalties of perjury, that every statement she had made in a public letter which was published April 1, 2002, in *Lawyer's Weekly*, is factually true. In the last paragraph of said letter, Attorney Casher stated, "The Picciottos never refused to pay their former attorneys a fair fee for the services rendered. It was the attorneys' rapacious demands that led to the lawsuit and trial." Attorney Casher further stated that the conduct of the attorney lienholders was "a sad example of greed and avarice run amuk" that " . . . was a shame on the legal profession." (Attachment D).

15. Attorney James Dilday, who served as counsel for Melita and Athena Picciotto in the interpleader action, also averred under the pains and penalties of perjury that the attorney lienholders sought to take the entire 9 million dollar settlement (see lines 15-19 on page 45 of Attachment E).

16. As a result of the demands of the attorney parties, Travelers refused to honor the contract with the Settlors, claiming to fear multiple liabilities

17. April 12, 1999, Travelers filed an interpleader action, and through that action, it deposited virtually the entire settlement amount into the Suffolk Superior Court in an interpleader action captioned as *Travelers Indemnity Company v. Stefano Picciotto et al*, Suffolk Superior Court, case No. 99-1594-A.

18. The attorney lienholders not only laid claim to the entire 9 million dollar settlement, but, even though I was a consumer of their services, rather than the reverse, they asserted claims against me under the consumer protection statute M.G.L. c. 93A, § 11, alleging that I engaged in "unfair or deceptive" trade practices by refusing to acquiesce to giving up the entire 9 million dollar settlement. The attorney lienholders went so far as to assert a M.G.L. c. 93A § 11 claim against my injured fourteen-year-old minor child (Athena Picciotto) whom they knew had never even held a job (see item 8 of Attachment F).

19. The only thing I did was attempt to defend my property, as the United States Constitution allows me to do.

20. However, according to Attorney Casher, the state provided me with a tribunal that was tainted by "corruption" (see lines 10 -12 of page 87 of the October 26, 2004, deposition testimony of Attorney Casher as Attachment G).

21. November 13, 2003, Attorney Casher and Attorney Krulewich initiated a lawsuit against me and the rest of my family. In said lawsuit the Krulewich, Casher parties are seeking an additional $1.5 million dollars (lines 10-11on page 116 Attachment H) in payment of legal fees for the representation they provided in standing up to the so-called "rapacious fee demands" of the prior attorneys.

3

22. Attorney Casher admits that she has already received approximately 2 million dollars in payment of legal fees and expenses (line 6 of page 94 in Attachment I). Nevertheless, she is seeking an additional $1.5 million dollars. for a total of $3.5 million dollars.

23. January 23, 2004, Mr. Nunez, one of the settlors in the original settlement agreement with the Travelers, also brought an action for declaratory relief against me and other members of my family seeking virtually all the money that remained on deposit with the Suffolk Superior Court. That action is called *Juan Nunez v. Stefano Picciotto and others, Suffolk Superior Court*, case no. 04-0289G.

24. I have read the Hartford Insurance Company's and Twin City Fire Insurance Company's Motion to Dismiss, and the Affidavit of Dana Casher, Esquire, dated October 14, 2005.

25. As a primary matter, at item 6 of Attorney Casher's affidavit, she claims that the federal action could adversely impact her and her insurance coverage. That is misleading and false. Attorney Casher is presently being defended in the counterclaims that I brought against her, her partners, and their firm by TIG Speciality Insurance Solutions ("TIG"). Should TIG decide not to defend or indemnify because of prior notice to a different carrier, then Attorney Casher and her partners can seek coverage through the tail policy they purchased from Continental Casualty Company ("CNA") called Full Prior Acts Coverage ("FPA").

26. Said "FPA" coverage with CNA was obtained by the Krulewich, Casher parties prior to March of 2000, and prior to obtaining insurance coverage with Twin City or TIG (Attachment J).

27. Therefore, this action does <u>not</u> prejudice Attorney Casher or Attorney Leonard Krulewich.

28. Furthermore, one of the parties to this action, Great Northern Insurance Company ("Great Northern"), has answered the complaint, and has accepted jurisdiction by this Court.

29. On the other hand, I and the other plaintiffs will be severely prejudiced should this action be dismissed, because in the fall of 2002, I became aware that Krulewich, Casher, P.C., had provided notice of a claim or potential claim to Twin City Fire Insurance relative to her acts, errors, or omissions associated with the representation of me and others in the interpleader action. The claim no. is 3051892, with the date of loss of March 12, 2001. (See Attachment K).

4

30. Should this action be dismissed, that discovery date may bar me from refiling, my rightful claim against Twin City and Hartford due to the statute of limitations. Therefore, a dismissal of this action would cause me and the other plaintiffs severe prejudice and irreversible harm.

31. Moreover, both Krulewich, Casher, P.C., and Continental Casualty Company have requested that the Superior Court enjoin me from filing any lawsuits against any other parties (Attachments L and M) (meaning specifically, Continental Casualty Company, Twin City, Hartford and Great Northern Insurance companies).

32. Even through the motion to enjoin me from asserting my rights against Continental, Twin City, Hartford, and Great Northern was filed as far back as April of 2005, it has not been ruled on. Should it eventually be ruled on favorably, it would cause severe prejudice and irreversible harm to me and the other plaintiffs to this action.

33. September 2, 2004, the Superior Court (Ball, J.) ruled that the documents I was seeking from Twin City and its agent, First State Management Group, were "irrelevant to the fee dispute" between me and the Krulewich, Casher parties that is proceeding in the Superior Court. (See line six on page two of Attachment N).

34. April 21, 2005, the Superior Court (Burnes, N.) also ruled that the documents I was seeking from Dr. White were "irrelevant to th[e] action for attorneys fees and for legal malpractice" that is proceeding in the Superior Court. (See hand written ruling in Attachment O).

35. It is clear from the ruling of two judges of the Massachusetts Superior Court that the state court considers the actions pending before them to be separate and independent (even "irrelevant") from the tortious interference claim against the insurers for their separate conduct, which is pending before this Court.

36. For the reasons stated above, the defendants Twin City and Hartford's motion to dismiss should be denied.

Signed under the pains and penalties of perjury this ___ day of November 2005.

Stefano Picciotto

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.