UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 NOV -4  P 3: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| STEFANO PICCIOTTO, JUDITH PICCIOTTO, MELITA PICCIOTTO, ATHENA PICCIOTTO, and FOREIGN CENTER, INC., <br><br>      Plaintiffs <br><br>      v. <br><br>CONTINENTAL CASUALTY COMPANY, GREAT NORTHERN INSURANCE COMPANY, HARTFORD INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY, <br><br>      Defendants | C.A. No. 05 10901 NG |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS THE HARTFORD INSURANCE COMPANY AND TWIN CITY INSURANCE COMPANY

I.    NATURE OF CLAIM

In their amended complaint, plaintiffs Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto and Foreign Car Center, Inc. ("plaintiffs") have alleged that defendants Continental Casualty Company ("Continental"), Great Northern Insurance Company ("Great Northern"), Hartford Insurance Company ("Hartford")[1] and Twin City Fire Insurance Company ("Twin City"), all of which are incorporated and headquartered

---

[1]    Said defendant was accidentally named in the complaint as Hartford Insurance Company. The correct name is Hartford Accident and Indemnity Company, and service was properly made by the Massachusetts Commissioner of Insurance on Hartford Accident and Indemnity Company (Exhibit A). Plaintiffs will be moving to amend their complaint to correct the misstatement of Hartford's name.

in states other than Massachusetts, have caused plaintiffs harm through tortious actions or unfair or deceptive acts or practices directly engaged in by said defendants.

Plaintiffs have alleged that Continental, Great Northern, Hartford and Twin City:

1.      Engaged in a civil conspiracy against plaintiffs (*see* Counts One, Six, Eleven and Sixteen);

2.      Interfered with contractual relationships between plaintiffs and others (*see* Counts Two, Seven, Twelve and Seventeen);

3.      Are liable to plaintiffs for negligence (*see* Counts Three, Eight, Thirteen and Eighteen);

4.      Are liable to plaintiffs for fraud or deceit (*see* Counts Four, Nine, Fourteen and Nineteen); and

5.      Engaged in one or more unfair and deceptive acts and practices in the business of insurance in violation of the provisions of Mass. G. L. c. 176D and Mass. G. L. c. 93A (*see* Counts Five, Ten, Fifteen and Twenty).

## II.     NATURE OF THE MOTION TO DISMISS OF DEFENDANTS HARTFORD AND TWIN CITY

Hartford and Twin City (together referred to herein as "defendants") have moved to dismiss the amended complaint on the grounds that:

1.      An attorney by the name of Dana Casher is a necessary or indispensable party;

2.      There is a prior action pending in the Massachusetts Superior Court that involves the same underlying facts, thereby calling into play the abstention doctrine; and

2

3.      Under 28 U.S.C. § 1332(c), defendants should be regarded as citizens of

Massachusetts, and, therefore, there is no diversity jurisdiction.

III.    DEFENDANTS' CHARACTERIZATION OF PLAINTIFFS

In their memorandum in support of their motion to dismiss ("defendants'

memorandum"), defendants have contended, without any support therefor in the record,

that:

> [t]his case is the latest in a series of increasingly vexatious lawsuits
> involving the Picciotto family and their corporation, Foreign Car
> Center, Inc., ... brought over the past twenty years.

Defendants' memorandum at 1.

One of the definitions of "vexatious" in *The American Heritage Dictionary of The*

*English Language* is

> Law. Instituted without sufficient grounds, to serve solely as an
> annoyance to a defendant. Said of legal actions.

A definition of the noun form of vexatious, *i.e.* "vexatiousness," as described in

the case of *Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F.Supp.2d 217, 222 (D.

Mass. 1999) that has been cited in defendants' memorandum at 21, is

> ... a situation where one party files a federal action merely to
> cause a delay or to force the other side to incur the additional costs
> associated with litigating the same issue in two separate courts.

Neither of said definitions applies to the prior actions that plaintiffs have filed.

Furthermore, defendants have contended, again without support in the record,

that:

1.      Since a verdict entered in the interpleader action entitled *Zabin, et al v.*

3

> *Picciotto, et al*, "the Picciottos have [filed] multiple additional lawsuits in
> Massachusetts Superior Court against [Juan] Nunez and Casher." (*See*
> defendants' memorandum at 5.); and

2.     "The Picciottos have been party to at least twenty lawsuits in state court
       over the past twenty years." (*See* defendants' memorandum at 19.)

These contentions are false.

Plaintiffs request of the Court that it not allow defendants to malign them as they
have by making such unfounded charges. If the Court should allow assertions that are
not supported by the record to be made, plaintiffs would like to take the opportunity to
declare that the sufficiency of the grounds for the lawsuits that they brought prior to said
interpleader action should be established by the fact that said lawsuits resulted in their
(along with one other person, Juan Nunez) having been granted a settlement award of
$9,000,000. Plaintiffs' problem, which has led to other lawsuits, has been in collecting
their fair share of such settlement amount after their former attorneys laid claims to the
entire amount for satisfaction of their fees.

Plaintiffs' claims in this action arise out of their assertion that defendants, among
others, in various ways, have acted in effort to deny plaintiffs the opportunity to collect
their fair share of said settlement amount.

IV.     ARGUMENT

A.      Contrary To Defendants' Contention, The Allegations Made By Plaintiffs
        In This Action Are Not Virtually Identical To The Claims Made Against
        Dana Casher In Pending Actions In The Massachusetts Superior Court.

Defendants have contended that the allegations made by the plaintiffs herein are
"virtually identical to those made previously" against Dana Casher in suits that one or
more of them have brought in the Massachusetts Superior Court since 2003. *See*

4

defendants' memorandum at 2. Defendants further have contended that plaintiffs' claims in said state court "involv[e] the same underlying conduct." *See* defendants' memorandum at 7. Additionally, defendants have contended that plaintiffs have claimed herein that defendants have engaged in a conspiracy with said Dana Casher. *See* defendants' memorandum at 1. These contentions are incorrect, and the readily-ascertainable facts that can confirm the incorrectness thereof should alert the Court to be wary of other assertions that defendants have made in their motion and in their said memorandum.

In the suits identified by defendants, Essex Superior Court No. 2003-00036 and Suffolk Superior Court No. 2003-05378, claims were set forth as follows:

1.    In the first action, plaintiff Melita Picciotto sought relief against Dana Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., for breach of contract, negligence, breach of a fiduciary duty, intentional or negligent infliction of emotional distress, civil conspiracy (with each other), violation of civil rights, conversion, and violations of Mass. G. L. c. 93A;

2.    In the second action, via a counterclaim in a suit brought against them by Krulewich, Casher, P.C., plaintiffs other than Melita Picciotto sought relief against Krulewich, Casher, P.C. for breach of contract, negligence, breach of fiduciary duty, intentional or negligent infliction of emotional distress, civil conspiracy (with Dana Casher, Leonard Krulewich and Helen Krulewich), violation of civil rights and violation of Mass. G. L. c. 93A.

5

In this action, as described above at 1, plaintiffs have claimed that defendants, by their own actions and not vicariously through actions of said Dana Casher or any of the other parties to said two state actions, are liable to plaintiffs for civil conspiracy (among themselves), interference with contractual relations, negligence, fraud/deceit and violations of Mass. G. L. c. 176D and G. L. c. 93A. Although, in order to provide background for their claims, plaintiffs' complaint recited facts that also were stated in the state court pleadings, their claims in this action are not based directly upon such facts, but upon additional facts involving defendants that have been newly pleaded herein. Aside from plaintiffs, none of the parties in the state and federal actions are identical. Plaintiffs have not sought in this action any relief that duplicates the relief that they have sought in said two state court actions. Indeed, in this action plaintiffs are pursuing claims for conduct that only subsequent to the filing of said actions they came to appreciate had been undertaken in order to frustrate their earlier efforts to benefit to the extent appropriate from said settlement amount of $9,000,000.

B.    Defendants Have Mischaracterized Plaintiffs' Claims In this Action.

Plaintiffs have not claimed, as defendants have contended (*see* defendants' memorandum at 1, 12 and 14), that Dana Casher agreed to "throw" the counterclaims that they brought against their prior attorneys who sought to obtain the entire $9,000,000 amount of said settlement. Plaintiffs have claimed that defendants advised Dana Casher to act in such a way as to protect their interests (and purportedly hers) that as a consequence caused harm to plaintiffs. Plaintiffs have not alleged that Dana Casher was part of a conspiracy among the defendants herein whereby it was determined how to advise her to act in a way that would protect their interests while harming plaintiffs'

6

interests as well as those, as it developed, of Ms. Casher. It is important that the Court

should understand this because such an understanding makes clear that defendants'

assertion that plaintiffs have alleged that Dana Casher was involved in a civil conspiracy

with defendants, and therefore, is a necessary party (*see* defendants' memorandum at 2

and 7), is unfounded. Nonetheless, as is explained below (*see infra* at 8-10), if Dana

Casher should be deemed to be a necessary party, she could be added as a defendant

without destroying diversity jurisdiction under 28 U.S.C. § 1332.

> C.     If The Adding Of Dana Casher As A Party Would Destroy Diversity
>        Jurisdiction, She Could Not Be Deemed To Be A Necessary Party Under
>        Fed. R. Civ. 19 (a).

Dana Casher could not be determined to be a necessary party under subsection (a)

of Rule 19 if this would cause there no longer to be diversity jurisdiction under 28

U.S.C. § 1332.

Subsection (a) of Fed. R. Civ. P. 19 provides in relevant part as follows:

> (a) PERSONS TO BE JOINED IF FEASIBLE. A person who is
> subject to service of process and whose joinder will not deprive the
> court of jurisdiction over the subject matter of the action shall be
> joined as a party in the action if . . . .

Defendants have asserted that, should Dana Casher be joined as a party, the

diversity jurisdiction of the Court would be destroyed and the case would have to be

dismissed on the grounds of such lack of jurisdiction. *See* defendants' memorandum at 7

and 13. If this assertion were correct, which it is not (*see* Section D *infra*), then Dana

Casher could not be made a party under said subsection (a) because her joinder would

"deprive the court of jurisdiction over the subject matter of the action . . . ."

7

D.    Dana Casher Could Be Joined As A Necessary-Party Defendant And The
Court Would Still Retain Jurisdiction Under 28 U.S.C. § 1367, Which
Provides Supplemental Jurisdiction.

Section 1367 of 28 U.S.C. provides in relevant part as follows:

§ 1367. **Supplemental jurisdiction**

(a)    Except as provided in subsections (b) and (c) or as expressly
provided otherwise by Federal statute, in any civil action of which
the district court has original jurisdiction, the district courts shall
have supplemental jurisdiction over all other claims that are so
related to claims in the action within such original jurisdiction that
they form part of the same case or controversy under Article III of
the United States Constitution. *Such supplemental jurisdiction
shall include claims that involve the joinder or intervention of
additional parties.*

(b)    In any civil action of which the district courts have original
jurisdiction founded solely on section 1332 of this title, the district
courts shall not have supplemental jurisdiction under subsection
(a) over claims by plaintiffs against persons made parties under
Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, *or
over claims by persons proposed to be joined as plaintiffs under
Rule 19 of such rules*, or seeking to intervene as plaintiffs under
Rule 24 of such rules, when exercising supplemental jurisdiction
over such claims would be inconsistent with the jurisdictional
requirements of section 1332.

*            *            *

(Emphasis added.)

It appears that defendants are unaware of the supplemental jurisdiction that is

provided by 28 U.S.C. § 1367.

This statute allows one who is a resident of the same state as a plaintiff in a

diversity action to be joined as a defendant (but not a plaintiff) without destroying the

jurisdiction of the Court in such action under 28 U.S.C. § 1332, although the plaintiff

may not pursue a claim against the joined defendant.

As is stated in 4 *Moore's Federal Practice*, § 19.4[1][b] (Matthew Bender 3d ed.):

. . . [N]othing in the supplemental jurdisdiction statute's exceptions

8

> clause bars supplemental jurisdiction for joinder of a necessary
> party as a *defendant*. Some commentators hailed this feature of the
> statute as having expanded supplemental jurisdiction by allowing
> joinder of nondiverse necessary parties as defendants. [Footnote
> omitted.] The benefit of such joinder is not immediately clear,
> however, since the exceptions clause expressly provides that there
> can be no supplemental jurisdiction over claims *by a plaintiff
> against someone joined under the compulsory joinder rule*.
> [Footnote omitted.] Accordingly, although the absentee can be
> joined as a defendant even though joinder destroys diversity of
> citizenship, the plaintiff cannot assert a claim against it. Because
> supplemental jurisdiction is intended to support claims, not parties,
> it is not clear what such joinder accomplishes.
>
>    *    *    *

(Emphasis in original.)

  The purported lack of clarity as to what the drafters of the supplemental

jurisdiction statute intended has been explained. In Thomas Rowe, Stephen Burbank &

Thomas Mengler, *Compounding Confusion and Hampering Diversity? A Reply to

Professor Freer*, 40 Emory L.J. 943, 955-959, and 966-978 (1991), the drafters state that

what may appear to be an anomaly was intended to keep a plaintiff in a diversity action

from acting in a way that would induce a non-diverse party to be added to the action

under Rule 19 and then file a claim against such party. The statute now allows a

nondiverse person to be added as a defendant without destroying diversity jurisdiction so

that such added person can protect his or her interests (*i.e.*, interests that might be

impaired or impeded in such person's absence) without subjecting such person to having

the complaint amended to state a claim against him or her.

9

Therefore, if the Court were to determine that Dana Casher should be added as a

defendant in this action,[2] she could be added for the purpose of fulfilling all of the goals

of Rule 19 without destroying the Court's jurisdiction to hear this action.

    E.    <u>Dana Casher Is Not A Necessary Or Indispensable Party Under Rule 19</u>.

As was stated in the case of *Horizon Bank and Trust Co. v. Flaherty*, 309

F.Supp.2d 178, 191 (D. Mass. 2004):

    *       *       *

> The Rule 19 inquiry is . . . a pragmatic, case-specific examination of whether resolution of a case in the absence of a particular party comports with the Federal Rules' twin goals of fairness and efficiency. [Citation omitted.] This is a two prong inquiry. First, the Court must determine whether the parties to be joined are necessary and whether their joinder is feasible. Fed. R. Civ. P. 19(a). Rule 19(a) requires the Court to join a person [footnote omitted] in a legal proceeding if:
>
>> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring inconsistent obligations by reason of the claimed interest.

*Id.*

>     Then, if a person is a necessary party, but her joinder is not feasible, the Court must use the four "gestalt" factors listed in Rule 19(b) to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as *indispensable*." *Id.* at 19(b) (emphasis added). The factors to be considered by the Court are:
>
>> [f]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of

---

2    In light of defendants' contentions as to the nexus of the interests of Dana Casher and those of their own, it would seem to be logical, if she were added as a party, to align her as a defendant rather than as a plaintiff.

> relief, or other measures, the prejudice can be lessened or
> avoided; third, whether a judgment rendered in the
> person's absence will be adequate; fourth, whether the
> plaintiff will have an adequate remedy if the action is
> dismissed for nonjoinder.

*Id.*

         *        *        *

Dana Casher is not a necessary party as defined in subsection (a) of Rule 19.

First, with respect to the claims made against defendants in this action, complete

relief can be accorded among those that already are parties herein. The complete relief

prescribed in Rule 19 only relates to those persons already party to the action; it does not

concern any subsequent relief that could be obtained from the absent party. *General*

*Council of Assemblies of God v. Fiadah*, 382 F.Supp.2d 315, 320 (D. Puerto Rico 2005).

Completeness is determined on the basis of those persons who are already parties, and

not as between a party and the absent person whose joinder is sought. *Angst v. Royal*

*Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3rd Cir. 1996). The purpose of the "complete

relief" clause is to avoid duplicative litigation. *Friends of East Lake Sam. v. City of*

*Sammamish*, 361 F.Supp.2d 1260, 1271 (W.D. Wash. 2005). It is to be interpreted

narrowly, which is to say that the concern is in rendering complete relief among those

already joined, not in finding an absentee is necessary simply to avoid multiple litigation.

*Id. See also The Restaurant Hospitality Ass'n of Indiana v. American United Life Ins.*

*Co.*, 2005 U.S. Dist. LEXIS 10020 (N.D.Ind.) at 4-5.

The joinder of Dana Casher is not necessary in order for the Court to determine

whether, as plaintiffs have claimed, defendants, by their own conduct, caused harm to

plaintiffs.[3] *See* the nature of plaintiffs' claims against defendants as described *supra* at 1-

---

[3]      A party is not necessary for Rule 19 purposes merely because the plaintiff needs to obtain
evidence from the party; in fact, a party is not necessary even if the defendant would have to defend the

2. The Court can determine whether defendants (a) engaged in a civil conspiracy among themselves (not with Dana Casher); (b) interfered with contractual relationships between plaintiffs and others, including Dana Casher;[4] (c) negligently caused harm to them; (d) engaged in fraud or deceit; or (e) engaged in one or more unfair and deceptive acts and practices in the business of insurance in violation of Mass. G. L. c. 176D and Mass. G. L. c. 93A.

Second, the only interest herein that Dana Casher has claimed she needs to protect and that purportedly could be impaired or impeded in her absence is her current insurance coverage. [5] *See* the Affidavit of Dana Casher, Esquire.[6] *See also* defendants' memorandum at 9-12. Presumably, this claim is based upon a belief that, if (as plaintiffs have claimed) Ms. Casher, while representing plaintiffs in the Suffolk Superior Court interpleader action, notified her insurance carrier(s) of a potential claim against her for malpractice, her current insurer could disclaim coverage because she fraudulently failed

---

absent party's actions at trial. *Giaguara S.P.A. v. Amiglio*, 257 F.Supp.2d 529, 541 (E.D.N.Y. 2003). Furthermore, the mere fact that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party. *Pujol v. Shearson American Exp., Inc.,* 877 F.2d 132, 136 (1st Cir. 1989). Moreover, even when an absentee may be a joint tortfeasor, which is not the case with respect to Dana Casher, such absentee is not a necessary party. "[I]f one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, [citation omitted], a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party, subject to joinder under Rule 20." *Id.*

[4] When plaintiff A claims that defendant B has wrongfully interfered with a contract that existed between A and C, it is not necessary, and hardly ever done, for C to be joined as a party. It is instructive that defendants have not contended that the other persons who plaintiffs have claimed had a contractual relationship with them that was interfered with by defendants are necessary parties.

[5] In order for disposition of an action to impair or impede a nonparty's ability to protect his interest in the litigation, the federal judgment must have a "direct and immediate" effect on the state court proceedings. *Angst v. Royal Maccabees Life Ins. Co.,* 77 F.3d 701, 705 (3rd Cir. 1996). It must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments. *Id.*

[6] The proponent of a Rule 12(b)(7) motion to dismiss has the burden or producing evidence which shows the nature of the absent party's interest and that protection of that interest will be impaired or impeded by the absence. *Taylor v. Chater*, 907 F. Supp. 306, 309 (N.D.Ind. 1995).

to notify such insurer of such potential claim.[7] There is no support in Ms. Casher's affidavit for a proposition that she so deceived her current insurer. Furthermore, plaintiffs have discovered and declared in their complaint that, in addition to the liability insurance coverage that Ms. Casher has with Specialty Insurance Solution ("TIG") *(see* Ms. Casher's affidavit), she also has "full prior acts" coverage with defendant Continental. *See* paragraph 62 of plaintiffs' amended complaint. *See also* paragraph 26 and Attachment J of the Affidavit of Stefano Picciotto. Therefore, even if Ms. Casher were to lose her coverage with TIG, she would continue to have insurance coverage. Furthermore, she would have coverage with a party to this action, which party should be regarded as being well situated to protect her interests as well as its own. Finally, this is not a case, as suggested by defendants, where plaintiffs are pursuing a claim against Ms. Casher's insurance policy, which would make her a necessary party. *See* defendants' memorandum at 12. Plaintiffs are not pursuing such a claim; they are seeking recovery against defendants for their own wrongful conduct.

Third, without Dana Casher as a party, defendants will not be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of Ms. Casher's claimed interest of there being a potential for her to lose her insurance coverage with her current insurer. The nature of "inconsistent obligations" was well explained in the case of *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) as follows:

---

[7]     Defendants also have contended that Dana Casher could lose her insurance coverage with Specialty Insurance Solution ("TIG") if found herein to have engaged in intentional acts committed in the furtherance of a conspiracy. *See* defendants' memorandum at 11. However, plaintiffs have not claimed herein that Ms. Casher was engaged in a conspiracy, and no judgment could enter that would conclusively establish that she, as a nonparty, had engaged in such a conspiracy. Defendants have conceded that "a finding in this Court that Casher engaged in a conspiracy to 'throw' the Interpleader action would not have preclusive effect in the Superior Court action . . . ." *See* defendants' memorandum at 14.

> "Inconsistent obligations" are not, however, the same as
> inconsistent adjudications or results. [Citations omitted.]
> Inconsistent obligations occur when a party is unable to comply
> with one court's order without breaching another court's order
> concerning the same incident. [Citation omitted.] Inconsistent
> adjudications or results, by contrast, occur when a defendant
> successfully defends a claim in one forum, yet loses on another
> claim arising from the same incident in another forum. [Citations
> omitted.] Unlike a risk of inconsistent obligations, a risk that a
> defendant who has successfully defended against a party may be
> found liable to another party in a subsequent action arising from the
> same incident -- i.e., a risk of inconsistent adjudications or results --
> does not necessitate joinder of all of the parties into one action
> pursuant to Fed.R.Civ.P. 19(a). [Citation omitted.] Moreover,
> where two suits arising from the same incident involve different
> causes of action, defendants are not faced with the potential for
> double liability because separate suits have different consequences
> and different measures of damages. . . .

Defendants cannot be subject to multiple or inconsistent obligations if Dana

Casher should lose her insurance coverage with TIG as a result of facts that might be

proven in this action. Actually, defendant Continental, as an insurer of Dana Casher, is in

an optimum position to protect her interests as well as its own. As an insurer for Dana

Casher, Continental has common interests with her; and there is no reason to join her in

light of the fact that there is no indication that Continental would litigate this case with

any less vigor in her absence. *Cf. Giaguara S.P.A. v. Amiglio,* 257 F.Supp.2d 529, 541

(E.D.N.Y. 2003). *Compare Pujol v. Shearson American Exp. Inc.,* 877 F.2d 132, 135 (1st

Cir. 1989) (Parent company should be expect to defend its absent subsidiary's interests as

well as its own).

Defendants have suggested that they face a substantial risk of incurring multiple

or inconsistent obligations because plaintiffs potentially could recover damages for the

same losses in two separate courts. *See* defendants' memorandum at 12-13 and 15.

However, this suggestion does not withstand scrutiny. Plaintiffs could not recover their

14

damages twice. If they were to recover their damages in one suit, they would not be able to prove any damages in a second suit.

In any event, if the Court should determine that Dana Casher is a necessary party under subsection (a) of Rule 19, she must be joined as a party if such is feasible (*see* Rule 19(a)); and there would be no need to consider whether, under subsection (b) of said rule, she is an indispensable party. *See Horizon Bank and Trust Co. v. Flaherty, supra*, at 191, and *Giaguaro S.P.A. v. Amiglio, supra*, at 540 ("Only if a party qualifies as necessary under Rule 19(a) does a court need to determine *whether the party's absence* validates dismissal under Rule 19(b)"). (Emphasis added.)[8]

There is no basis for the Court to determine that joinder of Dana Casher as a party would not be feasible; and, therefore, Ms. Casher cannot be determined to be an indispensable party.

Nonetheless, even if an inquiry into the issue of whether Dana Casher is an indispensable party were to be appropriate, which it is not, there is an insufficient basis for determining that she is an indispensable party. Defendants, who have the burden of presenting evidence that demonstrates that Dana Casher is a necessary or indispensable party,[9] have failed to fulfill this burden.

There is no basis for the Court to find that:

1.    A judgment rendered against defendants in the absence of Dana Casher might be prejudicial to her or to them;

---

[8]    Only when it is determined that an absentee is necessary and that joinder is not feasible must a court proceed to determine whether the absentee is indispensable under Rule 19(b). *See* 4 *Moore's Federal Practice, supra*, at § 19..02[3][b] and [c].

[9]    *See* footnote 6 *supra*.

2.    The Court could not fashion protective provisions in any judgment, or
shape the relief granted, or take other measures that would lessen or avoid
any prejudice;

3.    A judgment rendered in Dana Casher's absence would be inadequate; or

4.    Plaintiffs will have an adequate remedy if this action should be dismissed
for nonjoinder.

*See* Fed.R.Civ.P. 19(b).

Even if Dana Casher were to be a necessary party whose joinder would not be
feasible, she could not be determined, based upon the evidence now before the Court, that
she would be an indispensable party so that her nonjoinder would require dismissal of
this action.

F.    The Court Should Not Surrender Its Jurisdiction Over This Action.

Defendants have asserted that the Court should invoke the abstention doctrine and
thereby decline to accept jurisdiction in this action in favor of a pending state court case.
*See* defendants' memorandum at 16-22. Defendants have made such assertion in the face
of the fact that, notwithstanding the cases supporting abstention, a federal court should
decline to invoke such doctrine and instead assert federal jurisdiction almost all the time.
*See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("[W]hether wise
or not, the lesson of the abstention cases is, of course, that federal jurisdiction should be
asserted almost all the time.")

The Supreme Court in the case of *Colorado River Water Conservation Dist. v.
United States*, 424 U.S. 800, 818 (1976), established a narrow basis for district courts to
stay or dismiss federal lawsuits in deference to parallel state proceedings. *Elmendorf*

16

*Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 50 (1st Cir. 1995). The Court held

that in "exceptional" circumstances, a federal court should decline jurisdiction based on

considerations of wise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation. *Id.*. Furthermore, to ensure that

only exceptional cases are dismissed from the federal court, the district court must

approach its decision with the balance weighted heavily in favor of the exercise of

jurisdiction. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991).

　　　The Supreme Court emphasized that the stay or dismissal authorized there should

be used sparingly.  424 U.S. at 818.  The Court spoke of the:

> "virtually unflagging obligation of the federal courts to exercise the
> jurisdiction given them, 424 U.S. at 817, 96 S.Ct. at 1246, and
> cautioned that "[o]nly the clearest of justifications will warrant
> dismissal," *id.* at 819, 96 S. Ct.　　　at 1247.  The weight a court
> should give any single factor may vary greatly depending on the
> case, and "[n]o one　　factor is necessarily determinative; a
> carefully considered judgment taking into account both the
> obligation to exercise jurisdiction and the combination of factors
> counseling against that exercise is required," *id.* at 818-819, 96
> S.Ct. at 1246-47.  The district court must weigh the important
> factors "with the balance heavily weighed in favor of the exercise
> of jurisdiction. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

*Id.*

　　　The Supreme Court acknowledged in the case of *County of Allegheny v. Frank*

*Mashuda Co.*, 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063 (1959) that:

> The doctrine of abstention, under which a District Court may
> decline to exercise or postpone the exercise of its jurisdiction, is
> an extraordinary and narrow exception to the duty of a District
> Court to adjudicate a controversy properly before it.  Abdication of
> the obligation to decide cases can be justified under this doctrine
> only in the exceptional circumstances where the order to the parties
> to repair to the state court would clearly serve an important
> countervailing interest.

As has been well compiled in the case of *KPS & Associates, Inc. v. Designs By*

*FMC, Inc.*, 318 F.3d 1, 10-11 (1ˢᵗ Cir. 2003):

> Drawing on *Colorado River* and its progeny, courts look to a
> variety of factors to determine whether "exceptional circumstances"
> exist which counsel the abdication of jurisdiction in favor of
> parallel state court litigation. Always keeping in mind the "heavy
> presumption favoring the exercise of jurisdiction," *Villa Marina*
> *Yacht Sales, Inc. v.Hatteras Yachts*, 915 F.2d 7, 13 (1ˢᵗ Cir. 1990),
> a court may consider: (1) whether either court has assumed
> jurisdiction over a *res*; (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation; and (4) the
> order in which the forums obtained jurisdiction; (5) whether state or
> federal law controls; (6) the adequacy of the state forum to protect
> the parties' interests; (7) the vexatious or contrived nature of the
> federal claim; and (8) respect for the principles underlying removal
> jurisdiction. *Burns v. Watler*, 931 F.2d 140, 146 (1ˢᵗ Cir. 1991).
> This list is by no means exhaustive, nor is any one factor
> necessarily determinative. *Villa Marina*, 915 F.2d at 12. Rather,
> "'a carefully considered judgment taking into account both the
> obligation to exercise jurisdiction and the combination of factors
> counseling against the exercise is required.'" *Id.* (quoting *Colo.*
> *River*, 424 U.S. at 818-19, 96 S.Ct. 1236).
>
>      *         *         *
>
>     As for the concern about piecemeal litigation, "[d]ismissal
> is not warranted simply because related issues otherwise would be
> decided by different courts, or even because two courts otherwise
> would be deciding the same issues." *Id.* at 16. Rather, concerns
> about piecemeal litigation "should focus on the implications and
> practical effects of litigating suits deriving from the same
> transaction in two separate fora," *Gonzalez v. Cruz*, 926 F.2d 1, 4
> (1ˢᵗ Cir. 1991), and weigh in favor of dismissal only if there is some
> "exceptional basis" for dismissing one action in favor of the other.
> *Burns*, 931 F.2d at 146; *see, e.g., Colo. River*, 424 U.S. at 819-20,
> 96 S.Ct. 1236 (finding that "clear federal policy [against piecemeal
> litigation] evinced in legislation" weighed in favor of dismissal);
> *Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475,
> 477 (1ˢᵗ Cir. 1985) (finding exceptional circumstances when there
> was "real possibility" that insurance policy might be interpreted
> differently in each forum, leaving insured with insufficient
> coverage after years of paying premiums).
>
>      *         *         *
>
> [T]he presence of state law issues weighs in favor of dismissal in
> only rare circumstances – namely, "when a case presents 'complex
> questions of state law that would best be resolved by a state court.'"

*Villa Marina*, 915 F.2d at 15 (quoting *Am. Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990)); *see, e.g., Currie*, 290 F.3d at 11 (staying federal proceeding when "state law question [was] not clear" and court unsure "how the state ultimately would balance the important policy interests")

*See also Currie v. Group Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir. 2003) (There must

be some extraordinary circumstances for a federal court to shrink from the virtually

unflagging obligation of the federal courts to exercise the jurisdiction given them.); and

*Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005)

(Unless a case falls within one of the exceptions identified by the Supreme Court, federal

courts have a virtually unflagging obligation to exercise the jurisdiction given them.)

In the *Moses H. Cone* case, the Supreme Court emphasized the limits of the

district court's discretion by stating:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

460 U.S. at 28, 103 S.Ct. at 943, cited in *Elmendorf, supra*, at 50-51.

Defendants have conceded that of the eight factors to be considered under the

*Colorado River* case and its progeny (*see supra* at 17-18), two of them are not here

applicable, *i.e.,* (1) whether either court has assumed jurisdiction over a *res*; and (2)

whether the federal forum would be inconvenient. *See* defendants' memorandum at 18.

Defendants have contended that the other six factors do here apply. *See*

defendants' memorandum at 18-22.

Plaintiffs shall address each of such six factors in turn.

1.    *Desirability Of Avoiding Piecemeal Litigation.*

Defendants have conceded that:

> Under the *Colorado River* doctrine, inefficiency and
> duplication of effort will not, by itself, justify the surrender of
> federal jurisdiction. Rather, abstention is favored where piecemeal
> adjudication gives rise to special complications. *Colorado River*,
> 424 U.S. at 819, 96 S.Ct. at 1236. Merely that two courts would
> otherwise be deciding the same or similar issue is insufficient to
> warrant a stay or dismissal. *Villa Marina*, 915 F.2d at 16
> (suggesting that "the district court must look beyond the routine
> efficiency that is the inevitable result of parallel proceedings to
> determine whether there is some exceptional basis for requiring the
> case to proceed entirely in [state] court. Piecemeal litigation results
> where the potential may exist for harmful inconsistent
> determinations in the state and federal forums. *Id.*

Defendants' memorandum at 18-19.

Defendants then proceeded in their memorandum to contend, nonetheless, that
the piecemeal litigation justification for abstention should here apply because something
analogous to one of the following situations where abstention has been found to be
appropriate could occur: (a) a possibility that an insurance contract might be interpreted
differently in the state and federal proceedings; or (b) complications could be caused to
them that might result from inconsistent determinations of liability in the federal and state
suits. *See* defendants' memorandum at 19.

The rationale for abstention where there is a concern for piecemeal litigation has
been described in the quotation from the case of *KPS & Associates, Inc. v. Designs By
FMC, Inc.*, 318 F.3d 1, 10-11 (1st Cir. 2003) that is set forth *supra* at 18. That rationale
does not apply to this case. Plaintiffs have not filed state and federal actions that
"[derive] from the same transaction," and there is no exceptional basis for dismissing this
action in favor of the others. *See KPS & Associates, supra*, at 10-11.

Defendants also have observed that, "the principle underlying *Colorado River*
doctrine is the avoidance of duplicative litigation when concurrent lawsuits involving the
same issues are filed in federal and state courts." Defendants' memorandum at 16. [10]
Since the same issues are not involved in this action and the pending state action, the
*Colorado River* doctrine should not here apply. Defendants are wrong in having stated
that:

> ... Melita Picciotto first brought a lawsuit in 2003 against Casher
> in state court alleging the same bad acts and omissions that form
> the basis of their conspiracy allegations. Several related lawsuits
> have ensued. The underlying factual underpinnings of the
> Picciottos' allegations against Casher in state court are identical to
> the claims asserted against Casher in this action to support the
> Picciottos' contention that the defendants are engaged in a
> conspiracy with Casher to injure her clients. ...

*See* defendants' memorandum at 17-18.

Plaintiffs have not alleged in the pending state action the same bad acts and
omissions that form the basis of their conspiracy claims in this action; and they have not
asserted any claims against Dana Casher in this action.

Nonetheless, a federal lawsuit should not be dismissed in deference to state
litigation simply because the two courts would be deciding the same issue. *Paul Revere
Variable Annuity Ins. Co. v. Thomas*, 66 F.Supp.2d 217, 223 (D. Mass. 1999). "Instead,
'the district court must look beyond the routine inefficiency that is the inevitable result of
parallel proceedings to determine whether there is some exceptional basis for requiring
the case to proceed entirely in the Commonwealth court.'" *Id.*, quoting from *Villa
Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1991). The rule that

---

[10]     Concern for piecemeal litigation should focus on the implications and practical effects of litigating
suits deriving from the same transaction in two separate fora, not on the mere possibility of duplication.
*Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991). Furthermore, the narrow exception with respect to

permits simultaneous litigation in state and federal court of overlapping and even
identical cases is deeply rooted in our system. *Noel v. Hall*, 341 F.3d 1148, 1159 (9ᵗʰ Cir.
2003).

    2.    *Order In Which Forums Obtained Jurisdiction.*

    Defendants have tried to lay a foundation for their argument with respect to this
factor by falsely stating that "The Picciottos have been a party to at least twenty lawsuits
in state court over the past twenty years." *See* defendants' memorandum at 19. When a
party has to support his or her argument by making false representations, the weakness of
such argument should be understood.

    It is true that the pending state action, which is a consolidated action, has
proceeded to a further extent than has this action. However, substantially different issues
and parties are involved; and the balancing required by the *Colorado River* case as to
which of the cases is more advanced in a "pragmatic, flexible manner, with a view to the
realities of the case at hand" (*Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927) does not
militate for abstention in this case.

    Furthermore, one of the defendants in this action, Continental, as a nonparty in the
state action, has filed therein a memorandum joining in a motion seeking to prevent
plaintiffs from, among other things, a restraining order and preliminary injunction from
filing suit against it and such other insurance companies in the state court action. *See*
paragraph 31 and Attachment M to the Affidavit of Stefano Picciotto and Exhibit C to
defendants' memorandum. The Krulewich, Casher parties have also joined in that
request. See paragraph 31, and Attachment L of the Affidavit of Stefano Picciotto.

---

piecemeal litigation exists only where piecemeal adjudication gives rise to special complications. *Rojas-Hernandez v. Puerto Rico Electric Power Authority*, 925 F.2d 492, 496 (1ˢᵗ Cir. 1991).

Although that motion has not yet been acted upon (*see* Exhibit C to defendants'
memorandum), the allowance thereof would preclude plaintiffs from pursuing in a
Massachusetts court the claims asserted against the defendants herein under Mass. G. L.
c. 93A and Mass. G. L. c. 176D, which would include the other claims asserted herein for
wrongful conduct that provide a basis for said c. 93A and c. 176D claims.

Moreover, and of paramount significance, since tort claims in Massachusetts must
be filed within three years after the cause of action accrues (*see* Mass. G. L. c. 260,
§ 2A),[11] plaintiffs would be barred from pursuing in a Massachusetts court the tort claims
that are being pursued herein if the Court were to surrender its jurisdiction over the
claims that now are pending herein. Plaintiffs have claimed that defendants commenced
their wrongful conduct after having been notified by Dana Casher of a potential
malpractice claim against her on March 12, 2001. *See* Paragraph 150 and subsequent
paragraphs of the Amended Complaint. Plaintiffs became aware of such notification in
the fall of 2002. *See* Paragraph 29 of the Affidavit of Stefano Picciotto. Therefore, since
plaintiffs could not now pursue their tort claims in a Massachusetts court, it cannot be
determined that they could be afforded the relief that they have sought herein if the Court
were to abdicate its jurisdiction by invoking the abstention doctrine.[12] There is no
assurance that relief, if available at all, is fully available in the state court. *Contrast
Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272 (1st Cir. 1996). Abdication of the
obligation to decide cases can be justified under the abstention doctrine only in the
exceptional circumstances where the order to the parties to repair to the state court would

---

[11]     Claims under Mass. G. L. c. 93A and c. 176D must be filed within four years. *See* G. L. 260, § 5.
[12]     If the Massachusetts Superior Court should continue to obstruct plaintiffs' efforts to lay the
foundation for the filing of claims against defendants under G.L. c. 93A and c. 176D, plaintiffs would not
be able to seek relief under said statues in a Massachusetts court.

23

clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063 (1959). No important countervailing interest would be served by such an order herein.

Additionally, the sixth factor that must be assessed in considering whether to invoke the abstention doctrine, *i.e.,* the adequacy of the state forum to protect the parties' interests (*see KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10-11 (1st Cir. 2003), *supra*) could not allow fulfillment of its purpose if such doctrine were to be invoked. Since plaintiffs could not pursue in a state court some of the claims that they have pursued in this action, it is incontrovertible that a state court forum would not be adequate to protect their interests.

Finally, defendants have made no credible argument that would suggest that the current level of discovery in the state court should tip the scales towards a stay or dismissal; and, for that reason as well, the Court should not invoke the abstention doctrine. *See MMI Products Inc. v. Liberty Mutual Ins. Co.*, 39 F.Supp.2d 135, 138 (D. Puerto Rico 1999).

3.     *Which Law Controls.*

The mere fact that the outcome of the case is governed by state law does not warrant dismissal; to hold otherwise would undermine the purpose and reach of federal diversity jurisdiction. *Gonzalez v. Cruz*, 926 F.2d 1, 5 (1st Cir. 1991). Federal courts are used to researching and analyzing the law of different jurisdictions. *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995). Only in rare circumstances will the presence of state-law issues weight in favor of surrender of federal jurisdiction. *See Moses H. Cone, supra*, 460 U.S. at 26, 103 S.Ct. 927. Courts have

generally agreed that rare circumstances exist only when a case presents complex issues

of state law that would best be resolved by a state court. *Villa Marina Yacht Sales, Inc. v.*

*Hatteras Yachts*, 915 F.2d 7, 16  (1st Cir.1990).

Not only is there an absence of a complex issue of state law in this action, but also

it appears, in light of the statute of limitations (*see supra* at 22-23), all the issues involved

herein could not be resolved in the state court.

    4.   *State Forum.*

Defendants have argued that the state court and the federal court are both

competent to protect the parties' interests; however, the state court has the advantage of a

past history with plaintiffs' claims and an ongoing case management plan, with a

specially-appointed judge, for resolving plaintiffs' various disputes. *See* defendants'

memorandum at 20. However, as has been stated *supra* at 22-23, the statute of

limitations would preclude plaintiffs from pursuing some of the claims set forth herein in

a Massachusetts court if the Court were to surrender jurisdiction. Therefore, the state

court is not competent to protect plaintiffs' interests with respect to the claims made in

this action.

Moreover, under the *Colorado River* doctrine, a determination that the state court

and federal court have equal adequacy for deciding the congruent issues does not provide

a comparable policy reason for a federal court to abstain. *See Paul Revere Variable*

*Annuity Ins. Co. v. Thomas*, 66 F.Supp.2d 217, 222  (D. Mass. 1999) ("Where, as here,

the adequacy of the forums is not a concern, this factor is neutral in the *Colorado River*

analysis.) Therefore, even if the statute of limitations issue were not to be considered,

defendants would not have succeeded in establishing that the state court is the proper

25

forum for deciding the issues in this action. Furthermore, since defendant Great Northern
Insurance Company already has filed an answer herein, and has accepted the Court's
jurisdiction, this court is the appropriate forum for resolving plaintiffs' claims against it..
Plaintiffs submit that this court should not entertain invoking the abstention doctrine
when there is one defendant that has acquiesced to have the claims against it resolved in
this forum.

   5.      *The Adequacy Of The State Forum To Protect The Parties' Interests.*

   As plaintiffs have pointed out *supra* at 22-25, the state court could not protect
plaintiffs' interests in pursuing their tort claims against defendants because such claims
would be barred by the applicable statutes of limitations. Therefore, no determination
can be made that the state forum would be adequate to protect plaintiffs' interests.

   6.      *Motivation For Filing Of The Federal Action.*

   Defendants have contended that this action represents either a "reactive" or a
"vexatious" action, which would make it disfavored in the context of consideration and
application of the abstention doctrine. *See* defendants' memorandum at 21-22.

   "Reactiveness" describes a situation where one party files a federal action in
reaction to an adverse state court ruling. *Paul Revere Variable Annuity Ins. Co. v.
Thomas*, 66 F.Supp.2d 217 (D. Mass. 1999). Courts express particular displeasure at this
kind of forum shopping. *Id., citing Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,
supra*, at 15. The second concept, "vexatiousness," odinarily refers to a situation where
one party files a federal action merely to cause a delay or to force the other side to incur a
delay or to force the other side to incur the additional costs associated with litigating the
same issue in two separate courts. *Paul Revere Variable Annuity Ins. Co., supra*, at 222.

Defendants contend that plaintiffs "appear to be motivated in part to bring this action in a new forum by a series of unfavorable discovery rulings in the consolidated state court actions." *See* defendants' memorandum at 21. However, as defendants have acknowledged in their description of such unsuccessful discovery efforts, they were undertaken with respect to nonparties to the state court action, Twin City and State Street Management Group, Inc. (one of Twin City's sister companies) and a Dr. Roberta White. *See* defendants' memorandum at 6 and 21. Twin City argued that the discovery sought by the plaintiffs was irrelevant to the fee claim of the Krulewich, Casher parties. The state court (Ball, J.) agreed with Twin City. See paragraph 33 of Affidavit of Stefano Picciotto and Attachment N thereto. The doctrine of *judicial estoppel* should prevent Twin City from taking a different postion in this action. Moreover, the state court ruled on two separate occasions, via two different judges, that the matters as to which plaintiffs sought discovery from said three nonparties were "irrelevant" to the issues involved in that action. *See* paragraphs 33 and 34 and Attachments N and O to the Affidavit of Stefano Picciotto. These rulings should serve to confirm that the issues involved in this action are not duplicative of the issues involved in the state action. If one is unsuccessful in obtaining discovery in an action because the information sought therein is deemed to be irrelevant, then it is natural and wise for him or her to seek such discovery in an action where the information would be relevant. This is not "reactiveness" such as would be disfavored by a court.

The paradigm case of reactiveness involves a situation similar to the one presented in *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir. 1991), where a plaintiff filed a motion for a preliminary injunction in federal court after

losing the identical motion in state court. *Paul Revere Variable Annuity Ins. Co. v. Thomas, supra*, at 222. That paradigm is not mirrored in this action.

In this case, as in the case of *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991), plaintiffs' claims in the federal suit are not, facially at least, duplicative of the claims in the commonwealth suit; the defendants are different in each. Therefore, as in said *Gonzalez* case, it is not reactive.

Defendants contend that this action may be vexatious because plaintiffs "may be motivated by a desire to increase the pressure on their opponent [*i.e.*, Dana Casher] and their opponent's insurers." *See* defendants' memorandum at 21-22. This represents mere speculation, and it does not satisfy defendants' burden to show that this is indeed a vexatious action. Plaintiffs submit that the reasons for the filing of this action that have been described above are sufficient to establish that there is a good and valid basis for such filing; and, therefore, it should not be determined to be either reactive or vexatious.

7.    *Respect for The Principles Underlying Removal Jurisdiction.*

The removal statute seems to reflect a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claims against *a particular defendant. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 14 (1st Cir. 1990), citing *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1261 (9th Cir. 1988). (Emphasis added.) As in said *Villa Marina* case, plaintiffs' federal suit does not duplicate the claims that they filed in the state court, and the defendants in each suit also are different. *See* 915 F.2d at 14. Therefore, it would not be disrespectful to the principles underlying removal jurisdiction for the Court to retain jurisdiction in this case.

G.    The Provisions of 28 U.S.C. § 1332(c) Do Not Cause Diversity Jurisdiction In This Action To Be Defeated.

28

Plaintiffs have previously shown that the contention of Continental that the provisions of U.S.C. § 1332(c) cause there to be no diversity jurisdiction in this action is without merit. *See* Plaintiffs' Memorandum In Response To The Motion Of Defendant Continental Casualty Company For Leave To Reply To Plaintiffs' Response To The Motion Of Said Defendant To Dismiss Under Rule 12(b)(1).

Continental undertook to deceive the Court through the memorandum it filed in support of its said motion by misrepresenting the case law that has interpreted said statute; and Hartford and Twin City, by themselves adopting Continental's argument made therein, are joining in such deception.

Said contention as to the applicability of said statute continues to be unfounded.

H.    *Hartford Is Not An Improper Party To This Action.*

As plaintiffs have explained in footnote 1, *supra*, they intended to file suit against Hartford Accident and Casualty Company; and they made proper service upon said entity (Exhibit A), which is a subsidiary of The Hartford Financial Services Group, Inc. The filing of the subject motion substantiates that there is a proper party to this action having the name of Hartford, but that such party was simply misdescribed in the complaint. Plaintiffs will file a motion seeking to rectify the clerical error of the inadvertent misnaming of Hartford in the complaint.

The action should not be dismissed against Hartford because, as has been claimed, there is no such entity. *See* defendants' memorandum at 22-23.

V.    CONCLUSION

For the reasons stated above, defendants' motion to dismiss should be denied.

29

STEFANO PICCIOTTO
Pro Se

Stefano Picciotto
418 Lafayette Street
Salem, MA 0170
(978) 741-0218

JUDITH PICCIOTTO
Pro Se

418 Lafayette Street
Salem, MA 01970
(978) 741-0218

MELITA PICCIOTTO and
ATHENA PICCIOTTO

By their attorney,

Danielle deBenedictis
BBO No. 117440
deBenedictis, Miller & Blum, P.A.
67 Commercial Wharf
Boston, MA 02110
(617) 367-8585

FOREIGN CAR CENTER, INC.
By its attorney,

James M. Shannon, Jr.
BBO No. 453610
418 Rear Lafayette Street
Salem, MA 01970
(978) 741-0218

Dated: November 4, 2005

## CERTIFICATE OF SERVICE

I, Stefano Picciotto, hereby certify that on this day I served the foregoing document by
sending a copy thereof by first class mail, postage prepaid, or in hand to all attorneys
and pro se parties of record.

Signed this ____ day of November 2005

Stefano Picciotto

30

# EXHIBIT

# A



## COMMONWEALTH OF MASSACHUSETTS
### Office of Consumer Affairs and Business Regulation
DIVISION OF INSURANCE

One South Station • Boston, MA 02110-2208
617-521-7794• FAX (617) 521-7475
Springfield Office (413) 785-5526
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

BETH LINDSTROM
DIRECTOR, CONSUMER AFFAIRS
AND BUSINESS REGULATION

JULIANNE M. BOWLER
COMMISSIONER OF INSURANCE

```
*****************************************
STEFANO PICCIOTTO et. al.              *
            Plaintiff(s)               *
v.                                     *
                                       *
CONTINENTAL CASUALTY COMPANY,          *
GREAT NORTHERN INSURANCE CO.,          *
HARTFORD INSURANCE COMPANY             *
AND TWIN CITY FIRE INSURANCE CO.       *
                                       *
         Defendant(s)                  *
*****************************************
```

### AFFIDAVIT

The undersigned Yvonne K. Torres, an appointee for Service of Process for the Commonwealth of Massachusetts, Division of Insurance does hereby certify that the records kept in her office in the usual course of business indicate that duplicate copies of the Complaint for Hartford Accident and Indemnity Company in the above-captioned matter were received by the Commissioner of Insurance on August 30, 2005 and further, that on the same day, one of the duplicate copies of the legal process was mailed postage prepaid to the following address:

HARTFORD ACCIDENT AND INDEMNITY COMPANY
Attn: Mark Hennessey
CT Corporation System
101 Federal Street, Suite 300
Boston, MA 02110

Signed under pains and penalties of perjury.

Yvonne K. Torres
Administrative Assistant
Legal Division

Dated: October 26, 2005