UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

---

STEFANO PICCIOTTO, JUDITH
PICCIOTTTO, MELITA PICCIOTTO,
ATHENA PICCIOTTO and FOREIGN CAR
CENTER, INC.,

             Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,
GREAT NORTHERN INSURANCE
COMPANY, HARTFORD INSURANCE
COMPANY and TWIN CITY FIRE
INSURANCE COMPANY,

             Defendants.

CIVIL ACTION NO. 05-cv-10901 NG

---

## HARTFORD INSURANCE COMPANY[1] AND TWIN CITY INSURANCE COMPANY'S [PROPOSED] REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Hartford and Twin City hereby submit this memorandum in response to the written opposition submitted by the Picciotto family and their company, Foreign Car Center, Inc. (collectively "the Picciottos"), in opposition to Hartford and Twin City's motion to dismiss. While most of the arguments asserted by the Picciottos are adequately addressed in the papers previously filed by the defendants in this case, two points raised by the Picciottos require rebuttal. First, contrary to their contention, the underlying facts asserted as the basis for this lawsuit are virtually word-for-word restatements of the Picciottos' allegations in the pending state court lawsuit against their former attorney, Dana Casher, and others. Second, the Picciottos' reliance on supplementary jurisdiction pursuant to 28 U.S.C. § 1367 is misplaced.

---

[1] As set forth in their motion, "Hartford Insurance Company", a non-existent entity, seeks dismissal for the reason that it is an improper party to the present litigation. The actual name of the entity the plaintiffs likely intend to name as a defendant is "The Hartford Financial Services Group, Inc." ("Hartford"), which is the parent of "Twin City Fire Insurance Company" ("Twin City"). There is no legal entity entitled "Hartford Insurance Company."

**ARGUMENT**

1.    **This case is almost a carbon copy of the Picciottos' allegations in a lawsuit already pending in the Massachusetts Superior Court.**

As grounds for their motion to dismiss, the defendants point out that the Picciottos have already asserted the exact same factual allegations against Casher and others in series of lawsuits consolidated in Massachusetts Superior Court. In their opposition, the Picciottos deny this allegation. The Picciottos suggest that the defendants' alleged misrepresentations regarding the nature of their claims should cause the Court to "be wary" of other assertions made by the defendants in their motion. See Picciottos' Opposition at 5. In fact, the Picciottos' amended complaint in this case is nearly identical to the amended complaint filed in the pending state court lawsuit against Casher.

In an effort to highlight the differences between this lawsuit and the claims asserted in pending lawsuits in state court, the Picciottos cite <u>Melita Picciotto v. Casher, et al.</u>, Essex Superior Court No. 2003-00036 and <u>Casher v. Picciotto, et al.</u>, Suffolk Superior Court No.2003-05378. Picciottos conveniently fail to mention their amended complaint against Casher and others in a matter styled <u>Picciotto, et al. v. Casher, et al.</u>, Essex Superior Court No. 2004-02340A, which is also consolidated with the other cases in Suffolk. A copy of the amended complaint in that action is attached hereto as Exhibit A. The Picciottos' amended complaint in that case is almost identical to the amended complaint filed in this case. A copy of the amended complaint filed in this case is attached hereto as Exhibit B. Far from constituting new and independent claims, a comparison of the two complaints shows that rather than articulating fresh allegations of the insurer defendants' misconduct, the Picciottos simply regurgitate the same allegations previously raised against Casher. Of the 206 factual allegations contained in the Amended Complaint filed in this case, at least 150 are identical or nearly identical to allegations

made in the Casher lawsuit.  A chart comparing the two amended complaints is attached hereto as Exhibit C.

While the Picciottos claim in their opposition that they do not allege Casher and the defendants in this case engaged in a civil conspiracy, the two amended complaints make clear that the gravamen of the Picciottos' claims in this case is that Casher's alleged misconduct was directed and controlled by the defendant insurers.  In fact, forty-three (43) of the paragraphs asserted by the Picciottos in the amended complaint filed in this action are simply copies of paragraphs previously asserted against Casher in state court including taglines such as "under the direction of" the defendants in this case.  For example, in their amended complaint filed in state court the Picciottos allege:

```
78.  Casher refused to allow the Picciottos and Foreign Car
to engage the services of another attorney to cross-examine
her when she so testified; and, as a result, the Picciottos
and Foreign Car were deprived of necessary legal
representation during that portion of the trial.
```

For the purposes of their "new" lawsuit against the insurance defendants, the Picciottos allege:

```
104. Under the direction of Continental and Great Northern,
and working in conjunction with Twin City, Hartford and
First State, Casher refused to allow the Picciottos and
Foreign Car to engage the services of another attorney to
cross-examine her when she so testified; and, as a result,
the Picciottos and Foreign Car were deprived of necessary
legal representation during that portion of the trial.
```

This pattern is repeated approximately <u>forty times</u> throughout the Picciottos' amended complaint in this action.

As set forth in greater detail in Hartford and Twin City's memorandum of law in support of their motion, the fact that the Picciottos have already brought a lawsuit alleging essentially the same underlying misconduct in state court is critical in assessing both whether Casher is an indispensable party pursuant to Fed. R. Civ. P. 19 and, if she is not, whether this Court should still decline jurisdiction pursuant to the abstention doctrine first articulated in <u>Colorado River</u>

Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). As a comparison makes clear that the underlying allegations in the parallel state and federal cases are identical, for the reasons already articulated in the papers previously submitted by the defendants, the Picciottos' federal case should be dismissed.

**2.      28 U.S.C. § 1367 cannot serve as a basis to preserve this Court's jurisdiction over the Picciottos' claim.**

As set forth in the memorandum, Casher is an indispensable party in that she is a necessary party pursuant to Fed. R. Civ. P. 19(a) and, because she is a non-diverse party, an indispensable party because her presence in this case divests this Court of original jurisdiction pursuant to 28 U.S.C. § 1332. The Picciottos argue that Casher is not an indispensable party because even though her presence as a party would destroy complete diversity, the claim may remain in district court by virtue of this Court's supplemental jurisdiction afforded by 28 U.S.C. § 1367. Contrary to the Picciottos' claim, § 1367 does not apply in this situation as a matter of law.

It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded. Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001) ("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case"). In this case, the sole basis for the district court's jurisdiction over this claim is diversity of citizenship as established in 28 U.S.C. § 1332. The Picciottos claim that even if Casher, a Massachusetts citizen, is added as a party, this Court may retain jurisdiction despite the absence of complete diversity by operation of 28 U.S.C. §1367. Supplemental jurisdiction is not appropriate in this case because (1) supplemental jurisdiction does not apply where the district court does not possess original jurisdiction; and (2) even if

supplemental jurisdiction were theoretically available, it is a matter of wide discretion and there is ample reason for this Court to refrain from taking jurisdiction over this matter.

a. Supplemental jurisdiction does not apply where there is no original jurisdiction.

Pursuant to 28 U.S.C. §1367, supplemental jurisdiction is potentially available "in any civil action of which the district court has **original jurisdiction**." 28 U.S.C. §1367(a) (emphasis added). Original jurisdiction in this case is predicated upon diversity of citizenship, 28 U.S.C. § 1332. "Under §1332 . . . joinder and aggregation questions can actually *determine* whether the district court has "original jurisdiction through the complete diversity rule of Strawbridge v. Curtiss [7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)]." Ortega v. Star-Kist Foods, Inc., 370 F.3d 124 (1st Cir. 2004) (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed. 364 (1998) ("The presence of [a] non-diverse party automatically destroys original jurisdiction . . . .")). In Ortega, the First Circuit analyzed the scope and § 1367 at length in the context of determining over whether § 1367 allows parties who cannot themselves satisfy > § 1332's amount-in-controversy requirement to sue in federal court by joining forces with a plaintiff who can under Fed. R. Civ. P. 20. In deciding Ortega, the First Circuit concluded:

> Thus, Congress preserved both [Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939)] and Strawbridge by providing that, before supplemental jurisdiction can attach, the district court must first have "original jurisdiction" over the action. See Pfander, *Supplemental Jurisdiction and Section 1367*: *The Case for a Sympathetic Textualism*, 148 U. Pa. L.Rev. 109, 148-49 (1999). In a diversity case, if the Clark rule is not met, or if the parties are not completely diverse, then the "original jurisdiction" requirement in § 1367(a) is not satisfied and supplemental jurisdiction will not attach. On the other hand, if the parties are completely diverse and each plaintiff separately meets the amount-in-controversy requirement, then § 1332 is satisfied and the "original jurisdiction" requirement is met. If so, § 1367 will support any transactionally related claims that the plaintiffs may wish to bring--but only so long as § 1367(b) is satisfied, and only as long as original jurisdiction is not destroyed.

Id. at 136.

The First Circuit's ruling in <u>Ortega</u> is consistent with the text of § 1367(a) which states that the district court "shall not have supplemental jurisdiction ... over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure ... **when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332**." (emphasis added)  Under the Picciottos' strained reading of § 1367, a plaintiff could always escape the diversity requirements of § 1332 by intentionally not suing necessary, but non-diverse, parties with the knowledge and expectation that those necessary parties could be added later via Rule 19 without destroying complete diversity under § 1332.  This is precisely what the Picciottos seek to do in this case.  Although almost all of the factual allegations in their complaint concern the alleged misconduct of Casher, she has not been named as a party because her presence in this case would destroy complete diversity.  The Picciottos now seek to use supplementary jurisdiction to preserve a claim that would have failed if Casher was initially named as a defendant.  As courts of other jurisdictions have succinctly noted, "Supplemental jurisdiction was not intended by be a crutch for lawsuits that cannot stand on their own feet; rather, it was intended only to *supplement – i.e.*, to allow the addition of parties or claims to an existing lawsuit so that complete relief could be fashioned and scare judicial resources could be conserved." <u>ZB Holdings, inc. v. White</u>, 144 F.R.D. 42, 47-48 (S.D.N.Y., 1992) (emphasis is on the original) (holding that supplemental jurisdiction not available for want of original jurisdiction where plaintiff failed to sue non-diverse, indispensable party).

### b. Even if § 1367 applies, this Court has wide discretion and ample grounds to decline to exercise supplemental jurisdiction.

The decision of whether to exercise supplemental jurisdiction "is left to the broad discretion of the district court." <u>Vera-Lozano v. International Broadcasting</u>, 50 F.3d 67, 70 (1st Cir.1995) (finding no abuse of such broad discretion in court's refusal to dismiss state law claims

under § 1367(c)(1)); <u>Penobscot Indian Nation v. Key Bank of Maine</u>, 112 F.3d 538, 564 (1st Cir.) ("decision to retain or disclaim jurisdiction ... lies in the broad discretion of the district court"), <u>cert.</u> <u>denied</u>, 522 U.S. 913, 118 S.Ct. 297 (1997).  Section 1367(c) lists the circumstances wherein the district court may exercise that discretion and decline supplemental jurisdiction over the state law claims.   Section 1367(c) states:  "The district courts may decline to exercise supplemental jurisdiction over a claim ... if  (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  Each of these considerations favors declining to exercise jurisdiction.

With regard to the first and second considerations, while there is no novel or complex issue of state law, there is absolutely no issue of federal law for this Court to decide.  As such, there is no federal question to predominate over state law issues.  The lack of any federal claim is precisely the reason this Court considers whether any federal claims remain in assessing whether to retain jurisdiction.  The First Circuit has ruled that the "unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."  <u>Rodriguez v. Doral Mortg. Corp.,</u> 57 F.3d 1168, 1177 (1st Cir.1995).  Here, there was never a federal question to consider and, as discussed above, the original basis for this Court's jurisdiction vanishes once Casher is made a party.  Finally there are other extraordinary circumstances that favor declining jurisdiction over this lawsuit.  Most compellingly, as set forth above and in the defendants' other papers, the Picciottos have already brought an almost identical lawsuit against related parties in state court.  Whether this Court examine the facts under the federal abstention doctrine originally set forth in  <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 96 S.Ct.

1236, 47 L.Ed.2d 483 (1976)( <u>see</u> defendants' memorandum in support, pp. 16-22), the indispensable party doctrine as articulated in Fed. R. Civ. P. 19 or subsection c of § 1367, the result is the same: the Picciottos can, and should, proceed with this lawsuit as part of the prior pending state court action.

## CONCLUSION

For the reasons articulated herein and in the defendant's prior submissions, this matter should not go forward in federal court.  Accordingly, defendants respectfully request that the Picciotto's amended complaint be dismissed.

Respectfully submitted,

HARTFORD INSURANCE COMPANY
and TWIN CITY FIRE INSURANCE
COMPANY

By its attorneys,

/s/ Timothy O. Egan
Harvey Weiner, BBO # 519840
Timothy O. Egan, BBO # 637992
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110-3342
(617) 951-2100

DATE:  December 22, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy O. Egan, hereby certify that a true copy of the above document was served upon the plaintiffs and attorney of record for each other party not identified on the Notice of Electronic Filing as an electronic recipient by mail on December 22, 2005.

/s/ Timothy O. Egan
Timothy O. Egan

PABOS2:TEGAN:628780_1
7409-91379

COMMONWEALTH OF MASSACHUSETTS

ESSEX ss.

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT
CIVIL ACTION
NO. 04-2340A

)
STEFANO PICCIOTTO, JUDITH )
PICCIOTTO, MELITA PICCIOTTO, )
ATHENA PICCIOTTO, and FOREIGN )
CENTER, INC., )
                    Plaintiffs )
        v. )
)
CAROLE BERGERON, DANA CASHER, )
LEONARD KRULEWICH,  HELEN )
KRULEWICH, ROBERT A. )
STOLZBERG and JAMES S. DILDAY, )
                Defendants )
)

## AMENDED COMPLAINT

1.      Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto

(hereinafter sometimes "the Picciottos") are individuals who reside at 418 Lafayette

Street, Salem, Massachusetts.

2.      Foreign Car Center, Inc. (hereinafter "Foreign Car") is a Massachusetts

corporation that formerly had its principal office at 55 Walnut Street, Peabody,

Massachusetts.

3.      Defendant Carole Bergeron (hereinafter "Bergeron") is an individual who

resides at 3 Water Street, Peabody, Essex County, Massachusetts.

4.      Defendant Dana E. Casher (hereinafter "Casher") is an individual and

1

attorney who resides at 4 Fawn Circle, Randolph, Norfolk County, Massachusetts, and has engaged in trade or commerce through the practice of law under the name of "Krulewich and Associates" and "Krulewich, Casher.'

5.    Defendant Casher was insured from March 12, 1998, to March 12, 2000, by Continental Casualty Company (herein after "Continental"), for any acts, errors, or omissions arising from the representation of the plaintiffs.

6.    Defendant Casher purchased Full Prior Acts coverage ("FPA") from Continental, prior to changing insurers March 13, 2000.

7.    Defendant Leonard Krulewich is an individual and attorney who resides at 153 Woodchester Drive, Newton, Middlesex County, Massachusetts, and has engaged in trade or commerce through the practice of law under the name of "Krulewich and Associates" and "Krulewich, Casher."

8.    Defendant Leonard Krulewich was insured from March 12, 1998, to March 12, 2000, by Continental Casualty Company (hereafter "Continental"), for any acts, errors, or omissions arising from the representation of the plaintiffs.

9.    Defendant Leonard Krulewich purchased Full Prior Acts coverage from Continental, prior to changing insurers March 13, 2000.

10.    Defendant Helen Krulewich is an individual and attorney who resides at 153 Woodchester Drive, Newton, Middlesex County, Massachusetts, and has engaged in trade or commerce through the practice of law under the name of "Krulewich and Associates" and "Krulewich, Casher."

11.    Defendant Helen Krulewich was insured from March 12, 1998, to March 12, 2000, by Continental Casualty Company (herein after "Continental"), for any acts,

errors, or omissions arising from the representation of the plaintiffs.

12.    Defendant Helen Krulewich purchased Full Prior Acts coverage from Continental prior to changing insurers March 13, 2000.

13.    Defendant Robert A. Stolzberg (hereinafter "Stoltzberg") is an individual and attorney who resides at 105 Willard Road, Brookline, Massachusetts.

14.    Defendant James S. Dilday (hereinafter "Dilday") is an individual and attorney who resides at 9 Larchmont Street in the Dorchester District of Boston, Massachusetts.

15.    Within a period that commenced in 1975 and extended to 1996, plaintiffs Stefano Picciotto and Judith Picciotto, who are the parents of plaintiffs Melita Picciotto and Athena Picciotto, received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede"). Said factory was located on premises that were adjacent to premises upon which Foreign Car Center, Inc. (hereinafter "Foreign Car"), a corporation owned by plaintiff Judith Picciotto and operated by plaintiff Stefano Picciotto, conducted its business.

16.    In 1983, Plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v. Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

17.    In September of 1993, after a jury trial, a judgment entered in said action against Salem Suede in favor of the Stefano Picciotto, Judith Picciotto, Foreign Car, and Juan Nunez (hereinafter referred to as "Nunez"). The judgment was upheld on appeal in a decision that was reported in 40 Mass. App. Ct. 15 (1996).

3

18.    Plaintiffs Melita Picciotto and Athena Picciotto also sustained injuries from exposure to the same toxic chemicals that caused injuries to their parents, and they further suffered harm though loss of parental consortium, affection, and nurture.

19.    In 1994, plaintiffs Melita Picciotto and Athena Picciotto filed an action against Salem Suede seeking to recover for such injuries and other harm that they had suffered. The action was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al* Essex Superior Court No. 94-2155.

20.    In 1996, Salem Suede, facing the judgment that plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and Nunez had obtained against it, and also facing said action that plaintiffs Melita Picciotto and Athena Picciotto had filed against it, filed a petition for bankruptcy in the U.S. Bankruptcy Court entitled *In re Salem Suede*, No. 96-13184 JNF.   A related case filed at the same time was *In re Zion Realty Corp.*, No. 96-14692 JNF.

21.    In 1997, plaintiff Melita Picciotto (together with the other Picciottos) filed an action against the Massachusetts Commissioner of Insurance in an effort to unearth insurance coverage that Salem Suede held with The Travelers Indemnity Company (hereinafter "Travelers") but that Salem Suede and Travelers denied possessing, and also to seek an order that would compel the Commissioner to hold a hearing regarding Travelers' unfair and deceptive conduct in having denied that it provided such coverage. That action was entitled *Melita Picciotto v. Linda Ruthardt as Commissioner of Insurance,* Supreme Judicial Court No. 97-0511.

22.    On June 15, 1998, the Picciottos and Foreign Car entered into an agreement with Casher, an attorney now a principal in Krulewich, Casher, P.C., who then

4

purported to be acting on behalf of a law partnership or proprietorship known as Krulewich, Casher, whereby Casher and the members of said partnership (defendant Leonard Krulewich, defendant Helen Krulewich and Casher) agreed to represent the Picciottos and Foreign Car in connection with the Salem Suede bankruptcy proceeding.

23.    In October of 1998, Casher, without the consent of the Picciottos and Foreign Car, and without the prerequisite "consultation" with them, took on the additional representation in the bankruptcy proceedings of Juan Nunez (hereinafter "Nunez"), a former employee of Foreign Car.

24.    After entering into said agreement, plaintiff Melita Picciotto and the other Picciottos continued to represent themselves in said Supreme Judicial Court action No 97-0511; and, with the help of a nonprofit consumer protection group by the name of United Policy Holders of America, she filed a *pro se* brief in the Supreme Judicial Court on December 24, 1998, whereby she was able to demonstrate that the claims that she, her family, and Foreign Car had against Salem Suede were covered by insurance policies that Travelers had issued to Salem Suede.

25.    Immediately thereafter, Travelers, in light of plaintiff Melita Picciotto's having so demonstrated the existence of such insurance coverage, called for a settlement conference to be held with a view towards settling all claims that the Picciottos, Foreign Car and Nunez had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

26.    The Picciottos and Foreign Car requested of Casher that she arrange for the attorneys who previously had represented them regarding claims that they had made against Salem Suede and Travelers to be included in such a settlement conference so that

their claims for fees as well as the claims of the Picciottos and Foreign Car against Salem

Suede and Travelers all could be resolved at one time. However, Casher refused to make

any such arrangement.

27.     A settlement conference with Travelers commenced on January 5, 1999.

28.     At such conference, Casher represented the Picciottos, Foreign Car and

Nunez.

29.     Nunez, throughout the settlement negotiations, was accompanied by

Bergeron, his live-in girlfriend.

30.     Bergeron engaged in the negotiations on behalf of Nunez.

31.     On June 2, 1997, Nunez had signed a Proof of Claim that was filed on his

behalf in the U.S. Bankruptcy Court stating, under the pains and penalties of perjury, that

he was entitled only to the sum of $1,246,720.16.

32.     Casher allowed the negotiations for a settlement to run from

approximately 10:00 A.M. on January 5, 1999, to 4:00 A.M. on January 6, 1999, with

only bathroom breaks being taken. In the early morning of January 6, 1999, all of

Casher's clients were fatigued, in need of rest, and exhausted.

33.     In said settlement conference, Travelers ultimately offered to pay to the

Picciottos, Foreign Car and Nunez the total sum of Nine Million Dollars ($9,000,000) to

settle all of their claims that they had against Travelers, Salem Suede, its principals, other

related parties, and their attorneys.

34.     Travelers took the position that it would leave it up to the parties whose

claims would be settled by a settlement agreement to determine how to allocate among

themselves such sum of Nine Million Dollars ($9,000,000).

35.    Nunez and Bergeron made an extremely advantageous settlement agreement on behalf of Nunez.

36.    Nunez and Bergeron demanded Three Million Dollars ($3,000,000) of the Nine Million Dollars ($9,000,000) settlement amount, even though Nunez's proof of claim in the bankruptcy court had been only in the sum of $1,246,720.16.

37.    Casher, the Picciottos, Foreign Car and Nunez conferred and agreed upon how such sum of Nine Million Dollars ($9,000,000) would be allocated among them should they agree to accept such sum in settlement of their claims.  The agreed-upon allocations were:

(a)    To  plaintiff Melita Picciotto, the sum of One Million Five Hundred Thousand Dollars ($1,500,000);

(b)    To  plaintiff Athena Picciotto, the sum of Five Hundred Thousand Dollars ($500,000);

(c)    To plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car Center, the sum of Four Million Dollars ($4,000,000); and

(d)    To Nunez, the sum of Three Million Dollars ($3,000,000).

38.    Casher, the Picciottos, Foreign Car and Nunez also agreed at such time that, if they should accept such sum of Nine Million Dollars ($9,000,000) in settlement of their claims, Casher would be paid One Million Dollars ($1,000,000) from such sum out of which she would obtain full compensation for her legal services and pay to any other attorney who previously had represented the Picciottos, Foreign Car and Nunez with respect to their claims that were being settled such amounts as might be owed to them for their services.

7

39.     The Picciottos and Foreign Car requested that they be allowed to take home the proposed settlement contract that Travelers was offering in order to be able to think about it after rest and to be able discuss its terms with independent counsel.

40.     Casher refused to allow the Picciottos to leave the settlement conference; and, at approximately 3:00 A.M. on January 6, 1999, Casher instructed the Picciottos and Foreign Car to sign the proposed contract.

41.     Casher at that time claimed that a settlement in the amount of Nine Million Dollars ($9,000,000) was in the best interests of the Picciottos, Foreign Car and Nunez; and she further declared specifically that, if the proposed agreement would be entered into, Salem Suede's bankruptcy plan of reorganization could not be approved without the Picciottos, Foreign Car and Nunez's receiving the amounts that they had agreed to allocate among themselves as a condition of the settlement. Casher further stated that, if the Picciottos, Foreign Car and Nunez were to enter into the settlement, they would furnish Travelers with a release and an agreement to defend and to indemnify Travelers if any lawsuit should be brought against it; and, when the bankruptcy proceedings would be dismissed, Travelers would pay over all of the settlement proceeds to Casher, as attorney for the Picciottos, Foreign Car and Nunez.

42.     Casher assured the Picciottos and Foreign Car that their fears of not receiving the settlement funds were wholly unfounded, and she called upon them to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of Nunez.

43.     The Picciottos and Foreign Car, in reliance upon the assurances of

8

Casher, and in consideration of the payment to them of the amounts that they had agreed would be allocated to each of them from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement, and, as a consequence, to dismiss, with prejudice, all claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

44. The Picciottos, Foreign Car and Nunez, all of whom were represented by Casher at said conference, as 4:00 A.M. on January 6, 1999, approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they had allocated among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement.

45. Casher, in violation of the provisions of Rule 1.8 (g) of the Massachusetts Rules of Professional Conduct, did not cause to be placed in the settlement agreement itself the respective allocations of said sum of Nine Million Dollars ($9,000,000.00) that the Picciottos, Foreign Car and Nunez had agreed upon.

46. The Picciottos, Foreign Car, and Mr. Nunez wanted the attorney liens resolved on January 6, 1999, as a global settlement.

47. Casher assured the Picciottos, Foreign Car, and Mr. Nunez that it was not necessary, as she had made arrangements for a reasonable resolution of the previous attorneys fees.

48. Further, at the settlement conference, Casher assured the plaintiffs that upon the bankruptcy of Salem Suede being dismissed, and upon delivering a release signed by all of the settlors to the Travelers, they would be able to receive the sums that they had settled for.

49.    On or about January 12, 1999, Casher realized that Travelers was not going to turn over the settlement funds until it received signed releases from each attorney lienholder.

50.    Casher contacted the attorney lienholders to obtain individual signed releases.

51.    The attorney lienholders refused.

52.    January 12, 1999, after a conversation with Attorney Gilleran and with Attorney McCabe, Casher became aware that she could not deliver on her settlement promises to the clients.

53.    January 12, 1999, Casher became aware through her conversations with Attorney Gilleran and Attorney McCabe, that she had engaged in an act, error, or omission, at the settlement of January 6, 1999, that could lead to a potential claim.

54.    Casher notified Continental of the unreasonable conduct of the attorney lienholders, and of the potential claim.

55.    Continental took charge of the claim and, from that point on, directed the conduct of Casher, Leonard Krulewich, and Helen Krulewich.

56.    Continental sold Full Prior Acts coverage "FPA" to Casher, Leonard Krulewich, and Helen Krulewich.

57.    Continental, on March 9, 1999, provided loss control guidance to the Krulewiches and to Casher.

58.    On March 12, 1999, Casher exercised undue pressure on plaintiff Stefano Picciotto to cause him to acquiesce to her demand that he sign an amendment to the settlement agreement in order to release Travelers of its contractual obligation to pay the

Picciottos, Foreign Car and Nunez the respective amounts for which they had settled their claims prior to funding Salem Suede's bankruptcy plan of reorganization. The amendment allowed Travelers to avoid paying the Picciottos, Foreign Car and Nunez. The amendment also allowed Travelers to avoid a claim that the Picciottos and Foreign Car could have pursued against it for breach of contract, and for violation of the provisions of G.L. c. 93A, § 9, G. L. c. 176D, §3(9)(f), and G. L. c. 175, §181 by reason of Travelers' refusal to comply with its contractual obligations to pay in accordance with the settlement agreement. The amendment allowed Travelers to escape liability and file an interpleader action in the Suffolk Superior Court (Case No. 99-1594, entitled *Albert P. Zabin, et al v. Stefano Picciotto, et al*) and deposit virtually all of the money of the Picciottos and Foreign Car, as well as all the other settlement funds, in a court-controlled escrow account.

59.     The January 6, 1999, settlement settled all claims of the plaintiffs, Mr. Nunez, and Foreign Car Center, Inc., against Salem Suede, its principals, its attorneys and the Travelers, including the claims of Melita and Athena Picciotto that were engendered by the 1994 Essex Action, case no. 94-2155.

60.     Casher failed to properly answer the interpleader complaint and spell out all the claims that were settled, including the claims of Melita and Athena Picciotto.

61.     Specifically, Casher failed to state that the settlement agreement settled the 1994 litigation.

62.     Casher also failed to file the proper cross claims.

63.     Albert P. Zabin and other attorneys, who were procedurally realigned by the Suffolk Superior Court as plaintiffs in said Suffolk Superior Court interpleader action

(counterclaims for malpractice having been filed against them by the Picciottos, Foreign Car and Nunez), claimed that they held a lien on all the settlement funds by reason of their previous representation of one or more of the plaintiffs herein and opposed any release to the plaintiffs of their respective settlement funds, including the funds of plaintiffs Melita Picciotto and Athena Picciotto with whom said attorneys had not entered into any contingency fee agreement, on the grounds that the internal unrecorded allocation of the settlement funds was not binding. Said attorneys contended that the internal allocation that Travelers had allowed to be made among the beneficiaries of the settlement agreement had been reached in bad faith in order to prevent said attorneys from fully collecting contractual fees owed to them by those of the Picciottos, Foreign Car and Nunez with whom they had contingency fee contracts.

64. Said attorneys asserted that the monies that each of the Picciottos, Foreign Car and Nunez had agreed to accept in settlement of their claims, even those of them who had no contingency fee contract with said attorneys (Melita and Athena Picciotto), actually belonged to those of the Picciottos, Foreign Car and Nunez with whom said attorneys did have such contingent fee contracts.

65. Casher, Leonard Krulewich and Helen Krulewich, realizing that they, through Casher, had been negligent in connection with the representation of the Picciottos and Foreign Car, formed a new firm by the name of "Krulewich Casher, P.C.," for the purpose of shielding them from liability from potential future claims against them by the Picciottos and Foreign Car; and they purchased a new liability insurance policy from Twin City Fire Insurance Company.

66.    Based on the arguments of said attorneys, the Suffolk Superior Court released to the Picciottos, Foreign Car and Nunez only such sums as said court determined would be needed in order to provide them with a defense in said interpleader action with respect to the claims of said attorneys.  The rest of the settlement funds remained held by the court in an escrow account accruing an extremely low rate of interest.

67.    The  Picciottos and Foreign Car began to lose confidence in the ability of Casher and her partners to represent their interests competently; and, in February of 2000, plaintiffs Melita Picciotto and Athena Picciotto retained an additional attorney, Dilday, to represent their interests.

68.    February 11, 2000, the Suffolk Superior Court issued an order in said interpleader action specifying that at the close of the fact discovery, " . . . the Picciottos must plead with specificity any additional subsidiary factual information which does not presently appear in support of their claims and their counterclaims.   If they do not, any additional materials will be barred.  And they will have  14 days from the close of the fact based discovery in which to amend their counter claims and to plead with specificity any subsidiary facts."

69.    Casher and Dilday knew that Melita and Athena  Picciotto (in fact,  all of the Picciottos) had valid claims for tortious interference with a contract, but they did not advance such claims or plead the facts with specificity; thus, the claims were barred.

70.    Casher and Dilday knew that Melita and Athena Picciotto (in fact, all of the Picciottos) had valid claims for civil conspiracy, but they did not advance such claims or plead the facts with specificity; therefore, such claims were barred.

13

71.    In late April or early May of 2000, answers and affirmative defenses were due to be filed with respect to the claims of Attorney Edward Greer in said interpleader action; however, Casher and Dilday, without excuse, failed to file an answer or affirmative defenses.

72.    On September 1, 2000, Dilday filed a motion to withdraw from representation of plaintiff Melita Picciotto in said interpleader action, on the grounds that Casher had forged his name on legal documents pertaining to the case.

73.    Plaintiff Melita Picciotto responded by undertaking to discharge Dilday because she believed that his motion to withdraw and the accusations contained therein were motivated by her rebuff of his inappropriate behavior; and she filed a motion with the Suffolk Superior Court informing the court that Dilday had been discharged and that she would thereafter be representing herself.

74.    In October of 2000, Casher, despite her knowledge that plaintiff Melita Picciotto wanted to represent herself in said interpleader action, and without the consent of plaintiff Melita Picciotto, informed the Suffolk Superior Court, at a time when plaintiff Melita Picciotto was not present, that she would be representing plaintiff Melita Picciotto thereafter.

75.    Plaintiff Melita Picciotto attempted to represent herself in said interpleader action despite Casher's representation to the court that she was her attorney; and plaintiff Melita Picciotto filed a notice of appearance on her own behalf.

76.    The Suffolk Superior Court, in light of Casher's said representation, refused to allow plaintiff Melita Picciotto to represent herself and ordered Casher to continue representing said plaintiff.

77.    Casher was called as a witness against the Picciottos and Foreign Car in the trial of the Suffolk Superior Court interpleader action, her testimony being allowed over the Picciottos' and Foreign Car's objections; and, since the court regarded plaintiff Melita Picciotto as being represented by Casher rather than representing herself, plaintiff Melita Picciotto was deprived of an opportunity to cross-examine Casher.

78.    Casher refused to allow the Picciottos and Foreign Car to engage the services of another attorney to cross-examine her when she so testified; and, as a result, the Picciottos and Foreign Car were deprived of necessary legal representation during that portion of the trial.

79.    In said interpleader action, the plaintiff attorneys (Zabin, et al.) filed a claim against plaintiffs Melita Picciotto, Athena Picciotto, Stefano Picciotto and Judith Picciotto under the provisions of G. L. c. 93A despite the fact that said plaintiffs never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute.

80.    At the trial of the interpleader action, the Picciottos and Foreign Car learned that Casher had filed on their behalf (except for Foreign Car) an "Intentional Infliction of Emotional Distress" claim against the plaintiff attorneys instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof, and, therefore, preventing the jury from hearing evidence of occasions when the plaintiff attorneys had inflicted emotional distress upon said plaintiffs.

81.    At said trial, the Picciottos and Foreign Car asked Casher to attempt to introduce evidence that would support the claims that they had against the plaintiff attorneys in said action for having knowingly and willfully engaged in acts or practices in

violation of the provisions of G. L. c. 93A, Section 2, or in violation of the rules and regulations issued pursuant thereto, and in violation of G. L. c. 221, § 38; G. L. c. 271, § 39(b); G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct, promulgated thereunder by the SJC pursuant to its statutory authority under G.L. c. 211, § 3 C; see *In the Matter of DeSaulnier*, Jr., 360 Mass. 757 (1971).

82.    Casher refused such requests of the Picciottos and Foreign Car, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial of violations of G. L. c. 93A. When the Picciottos and Foreign Car insisted that Casher at least attempt to introduce such evidence, and, if the judge would not allow the introduction thereof, that she make an "offer of proof," Casher's response was to stick her middle finger up towards Plaintiff Melita Picciotto and to tell her to "eat sh-t and die."

83.    On December 10, 2002, the Suffolk Superior Court ruled in the interpleader action that plaintiffs Melita Picciotto and Athena Picciotto could not testify or argue before the jury that they were entitled to obtain their settlement funds because Casher had not made a claim on their behalf in said action with respect to the settlement funds that were being held in the escrow account.

84.    Casher, without excuse, failed in said interpleader action:

(a)    To make a claim on behalf of any of the Picciottos, Foreign Car or Nunez with respect to the settlement funds that were being held in the escrow account;

(b)    To list in the answer or affirmative defenses to Travelers' complaint that the claims regarding Essex Superior Court action No. 94-2155 also were settled as part of the settlement agreement with Travelers;

(c)    Elicit testimony from the attorney lienholders showing that they had been the parties who made any settlement impossible during the period of January 6, 1999 to April of 1999, by making excessive fee demands;

(d)    To explain to the court that the refusal to pursue the bankruptcy fraud of Salem Suede went to the issue of the breach of contract of Attorney Gilleran and Attorney McCabe, and was appropriate evidence for the fact finder in order to determine the true reason for the breakdown in the attorney-client relationships ( i.e., that the clients' requests were reasonable, but that the attorney lienholders wrongly refused to perform on their contracts);

(e)    To explain the value of the discovery of Salem Suede and the Travelers' joint orchestration of a multimillion dollar bankruptcy fraud;

(f)    To confront the oppositions' experts with the evidence that would expose their sworn testimony to the jury to be false or erroneous;

(g)    To expose the false testimony of the attorney lienholders to the jury, in order to gain excessive fees and costs; and

(d)    Submit to the jury, as a jury question, the issue of interest, to determine who should be responsible for it (the plaintiff or the attorney lienholders).

85.    Dilday, while he was representing plaintiffs Melita Picciotto and Athena Picciotto, failed, without excuse, to cause claims to be made on their behalf with respect to the settlement funds that were being held in the escrow account and also failed to cause other claims that said plaintiffs could have pursued in said interpleader action to be pursued.

86.    Prior to the trial of said interpleader action, Casher, without excuse, failed to *properly* move to dismiss the claims against the Picciottos and Foreign Car by plaintiff-attorney Edward Greer (hereinafter "Greer") under G. L. c. 221, Section 50, because Greer never appeared on behalf of any of the Picciottos or Foreign Car in the cases that were settled with Travelers.

87.    Also with respect to Greer in said interpleader action:

    (a)    Casher, without excuse, failed to seek a ruling that, since the court had ruled that the claims of the Picciottos and Foreign Car against Greer were barred by the statute of limitations, then Greer's claims against them also were so barred; and

    (b)    During the trial, Casher refused requests of the Picciottos and Foreign Car that she utilize evidence that would show that Greer was being untruthful in his testimony in claiming that the Picciottos and Foreign Car had induced him into representing them by suggesting that a person who had furnished information would be a willing witness when such evidence showed that he knew that such person would not agree to be a witness.

88.    Greer obtained a judgment against the Picciottos and Foreign Car in said interpleader action based upon such untruthful testimony.

89.    During the trial of said interpleader action, Casher, also without excuse:

    (a)    Did not present expert testimony concerning certain aspects of malpractice engaged in by some of the plaintiff-attorneys while they had represented the Picciottos and Foreign Car;

    (b)    Failed to prepare properly the expert witnesses who testified on behalf of the Picciottos and Foreign Car;

    (c)    Did not present evidence that the breakdown of the relationship between the Picciottos and Foreign Car and the plaintiff-attorneys had resulted from the failure or refusal of said attorneys to pursue claims for bankruptcy fraud engaged in by Salem Suede and its insurer, Travelers, the eventual uncovering of which by the Picciottos, themselves, led to the willingness of Travelers to offer Nine Million Dollars ($9,000,000) to settle all claims against Salem Suede and Travelers; and

    (d)    Deliberately and intentionally misled Judith Picciotto regarding the follow-up actions Casher alleged to be taking to protect her from the oppositions' fraud and misconduct relative to Roberta White.

90.    After the trial of the interpleader action, Casher attempted to argue that the court had barred her from introducing evidence supporting the claims of the Picciottos and Foreign Car under G. L. c. 93A, so the court should accept her post-verdict briefs on the subject. The court responded:

As to the Picciotto parties' arguments concerning the 93A claim, the court has reserved to itself that issue upon the basis of evidence introduced at the jury trial. The court has not "barred evidence" of the 93A claim (opposition p. 10). The court required all the evidence upon all open claims to come in at the jury trial. It reserved to itself the claims and not the evidence. (See also docket entry number 510.0 of 1/17/02 in case no. 99-1594-A, Suffolk Superior Court)

91.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., failed to afford to the Picciottos and Foreign Car competent and effective legal representation in and with respect to said interpleader action.

92.    Dilday failed to afford to plaintiffs Melita Picciotto and Athena Picciotto competent and effective legal representation in and with respect to said interpleader action.

93.    After the trial of said interpleader action, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.:

(a)    Refused to answer questions that the Picciottos and Foreign Car had about the case and their claims therein;

(b)    Refused to provide the Picciottos and Foreign Car with documents pertaining to the case that they were requesting; and

(c)    Claimed that they had not retained the documents (or copies) through which Casher allegedly had made offers of proof.

94.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., mismanaged the settlement funds of the Picciottos and Foreign Car that the court in said interpleader action had released to their custody, care, and control, and they charged

the Picciottos and Foreign Car for disbursements that were not made on their behalf and overcharged them for disbursements that were made on their behalf.

95.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., also embezzled, misappropriated and converted some of the funds of the Picciottos and Foreign Car that had been so released to their custody, including, but not limited to diversion of funds into Casher's personal account for her son's private school tuition and paying the firm's annual maintenance contract expenses for its photocopying machine.

96.    Nunez and Bergeron caused money slated to pay legal fees and costs in case no. 99-1594-A (the interpleader action), to pay legal fees and expenses to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., for representation in other actions that Nunez and Bergeron were involved in, and for the benefit of Sunset Auto Repair, to wit:  (a) *Nunez v. Enrico Tassinari et als*, Essex Superior Court, and (b) *Metaxas v. Nunez*, Salem District Court.

97.    Other than one single authorized withdrawal for those legal fees and costs, the removal of said funds was done without the knowledge or consent of the Picciottos and Foreign Car, who only discovered the wrongful actions of Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in December of 2002, after the intervention of the Board of Bar Overseers, which ordered Casher and Krulewich, Casher, P.C., to produce to the Picciottos and Foreign Car the financial documents that they were seeking.

98.    The Picciottos and Foreign Car made demand on Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., for return of the wrongfully-removed funds.

21

99. Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., refused to comply with the demands of the Picciottos and Foreign Car that the wrongfully-removed funds be returned to the account.

100. Nunez and Bergeron caused Casher to write checks over and above the sum of $25,000.00 to Bergeron from the Picciotto Family Trust fund that was in the control or Casher and/or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C., without the required consent of the Picciottos.

101. On or about April 15, 2001, Nunez and Bergeron caused Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., to take $200,000.00 from the sum of $750,000.00 that was released by the Suffolk Superior Court from the escrowed funds, and did so without the required knowledge or consent of the Picciottos and Foreign Car.

102. Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P.C., released to Nunez and Bergeron monies over and above Nunez's allotted proportion of the released funds without the knowledge or consent of the Picciottos and Foreign Car, and their action(s) constituted a civil fraud against the Picciottos and Foreign Car.

103. Nunez has used over and above the Three Million Dollars ($3,000,000) of his contractually agreed-upon settlement portion by:

   (a) Entering into a secret agreement with attorney Michael C. Gilleran (one of the plaintiff-attorneys in the interpleader action) via which he had the Suffolk Superior Court release $1,800,000 to Attorney Gilleran in exchange for a secret kickback;

(b)    Causing Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., to be released approximately $2,000,000 in legal fees and expenses for representation of Nunez;

(c)    Directly receiving approximately $1,050,000.00 in disbursements from Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., and the Suffolk Superior Court;

(d)    Causing payment to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., for legal fees and expenses for cases not related to the interpleader action, i.e., *Nunez v. Enrico Tassinari, et als*, Essex Superior Court; *Metaxas v. Nunez*, Salem District Court;

(e)    Causing Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., to purchase on his behalf, with monies released by the Suffolk Superior Court, real estate located in Salem, Massachusetts; and

(f)    Causing Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. to release over and above the sum of $25,000.00 to Nunez's girlfriend, Bergeron, from The Picciotto Family Trust fund without the Picciottos' consent.

104.    August 21, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested that Casher file a motion on her behalf in the interpleader action for an emergency release to her of funds from the escrow account because, as she stated therein, "I am in the middle of an immediate and irreversible hardship. I have no money for

college. I have no money for therapy, so I've stopped receiving it, and I'm running out of money for my antidepressant medication."

105.    On September 19, 2002, Casher sent a letter to the Picciottos and Foreign Car in which she refused to file such emergency motion. In her said letter, Casher claimed that "an attorney representing Melita and Athena's interests would quite likely file the motion," but "someone representing" Casher's interests "would oppose it."

106.    Casher knew that the above response was in violation of G.L. c. 221, § 38, G.L. c. 221, § 40, the Mass. R. Prof. Conduct, and other principles governing the conduct of attorneys.

107.    Casher also sent a letter to the Picciottos and Foreign Car on September 30, 2002, in which she stated that she could not file such a motion because it was "directly contrary to [her] own interest."

108.    At the time Casher made those statements, she was the legal representative of Melita Picciotto and Athena Picciotto, pursuant to an Order from the Suffolk Superior Court; and Athena Picciotto was then a minor.

109.    Casher and Bergeron are claiming that the Picciottos and Foreign Car are jointly and severally liable for the fees and costs that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. generated while pursuing the separate and distinct claims of Nunez in the interpleader action, despite the fact that their fee contract contains no such provision.

110.    On October 20, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

24

P.C. maintained on behalf of the Picciottos so that the Picciottos could "buy medicine, pay mortgage, up coming fuel bill, etc."

111.    Thereafter, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. refused to release any funds to plaintiff Melita Picciotto.

112.    The Picciottos requested of Nunez that he call Casher to have the funds released.

113.    At first Nunez agreed to have Bergeron call Casher and have those sums released to Melita Picciotto.

114.    After conferring with Bergeron and Casher, Nunez refused to honor his agreement.

115.    Bergeron stated that having such sums released would be against her and Nunez's financial interests.

116.    In October of 2002, judgment entered against Nunez in said interpleader action, holding him liable for attorneys' fees, interest, and costs, in a sum of over Three Million Dollars.

117.    In October of 2002, judgment was entered against Melita and Athena Picciotto in said interpleader action, holding them liable to attorney Michael C. Gilleran for the sum of $15,797.30 and jointly and severally liable to Attorney Edward McCabe for the sum of $68,507.00 (plus interest).  Under said judgment, Melita and Athena Picciotto were determined not to owe anything to any of the other attorney-plaintiffs in said action from their settlement amount of Two Million Dollars $2,000,000.

118.    Nunez and Bergeron, aided and abetted by Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., developed a scheme for Nunez to avoid

the Three Million Dollar legal fee judgment by holding Melita and Athena Picciotto liable for the attorney lienholders' (Zabin, et al) judgment, plus the attorneys' fees and costs that had been paid, and, allegedly, because they were further indebted to Casher.

119.    To accomplish this scheme, Nunez and Bergeron claimed that they were supposed to receive Three Million Dollars net, regardless of whether the Picciottos and Foreign Car received any settlement funds, and that the Picciottos and Foreign Car had agreed to pay any and all judgments against the Picciottos, Foreign Car and Nunez in the interpleader action, plus all of Casher's and Krulewich, Casher, P.C.'s fees and costs.

120.    The financial benefit to Nunez and Bergeron under this scheme amounted to their undue enrichment; the financial benefit to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., was to afford them assistance in wrongfully obtaining funds that were rightly due to plaintiffs Melita and Athena Picciotto.

121.    In furtherance of their scheme, Nunez, acting in concert with Bergeron and Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., refused to allow plaintiff Melita Picciotto to obtain $5,000.00 from The Picciotto Family Trust fund for her own medical needs; and they further placed the Picciottos under threat of foreclosure on their family home.

122.    Because Nunez, in concert with Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., had removed substantial funds from the Picciotto Family Trust without the Picciottos' knowledge, authorization, or consent, the Picciottos also were rendered unable to order the transcript of the trial in the interpleader action (a necessary condition for pursuing an appeal) for over two years, and plaintiff

Melita Picciotto was unable to purchase her prescription medicine, all of which caused additional mental and physical harm.

123.    October 9, 2002, Melita Picciotto requested that Casher move the court to to release to her $350,000.00 of her money so she could go to school. buy medication, resume her therapy, and retain an attorney to protect her property interests.

124.    Casher, without excuse, refused to do that.

125.    October 9, 2002, the Suffolk Superior Court (Sikora, J.), instructed Casher to order the trial transcript.

126.    Casher, without excuse, refused to do that.

127.    On October 31, 2002, plaintiff Melita Picciotto sent a letter to Leonard Krulewich and Helen Krulewich requesting their intervention and specifically requesting:

(a)    A release of Five Thousand Dollars ($5,000) so that she could meet emergency medical expenses;

(b)    That the motion be filed that Casher earlier had refused to file; and

(c)    That all the financial records be made available that pertained to the accounts that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. had maintained on behalf of the Picciottos and Foreign Car and that Casher had refused to provide despite requests dating back to June of 2002, in violation of the attorney-client account rules. Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., ignored such requests.

128. Plaintiffs Melita Picciotto and Stefano Picciotto then turned to the Massachusetts Board of Bar Overseers for help, but despite assistance provided by said Board, the Picciottos and Foreign Car have been able to obtain only incomplete records from Krulewich, Casher, P.C., Helen Krulewich, Leonard Krulewich, and Casher.

129. The documents that have been produced include copies of checks drawn on commingled accounts with the amount and the name of the payee blacked out, and copies of the corresponding bank statements with the transaction portions also blacked out.

130. Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., refused to present an account to plaintiffs Melita Picciotto and Stefano Picciotto in Probate Court Format, as Bar Counsel had requested, Casher stating that she was "unfamiliar with it." Bar Counsel suggested to plaintiffs Melita Picciotto and Stefano Picciotto that they take legal action to enforce their rights.

131. Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., when they pursued and obtained in the Suffolk Superior Court an attachment on the residence of the Picciottos in a suit that they filed seeking further fees and costs from the Picciottos, falsely claimed that they had been absolved of any wrongdoing by the Bar Counsel with respect to their dealings with the Picciottos.

132. Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., sought such attachment knowing that plaintiffs Stefano Picciotto and Judith Picciotto were about to refinance the mortgage on their said residence so as to enable them to have the funds necessary to appeal the judgment in said interpleader action both by ordering a transcript of the proceedings and by engaging legal representation.

28

133.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., sought and obtained such attachment in effort to, among other things, keep the Picciottos and Foreign Car from being able to have the means to pursue such an appeal and thereby, among other things, expose the malpractice that they had engaged in while representing the Picciottos and Foreign Car.

134.    Because Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., refused to release to plaintiff Melita Picciotto Five Thousand Dollars ($5,000) of her own funds for her pressing medical needs, and because they also refused to file a motion on behalf of said plaintiff in order to have some of her funds that are being held in the escrow account released to said plaintiff, said plaintiff filed a pro se motion in the Appeals Court for an emergency release of funds.  Krulewich, Casher, P.C., and Casher opposed said motion on November 20, 2002.

135.    On November 26, 2002, plaintiffs Melita and Athena Picciotto moved the Suffolk Superior Court to have the attorney-plaintiffs in said interpleader action paid without abridging any party's right to appeal, and to have the remainder of the money released to the Picciottos, Foreign Car and Nunez, pursuant to the jury verdicts and in accordance with their agreed-upon division of the settlement funds.

136.    Nunez, under the direction of Bergeron and Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., opposed receipt by plaintiffs Melita and Athena Picciotto of the remainder of their Two Million Dollar settlement amount after paying the amounts that the jury had found that they owed to the plaintiff-attorneys in said interpleader action.

137.    Even though the Suffolk Superior Court has ordered Nunez

29

to honor his contract (internal settlement allotments) with plaintiffs Melita Picciotto and Athena Picciotto, Nunez now is refusing to honor his contract because of the interference and undue influence of Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

138.     On October 17, 2002, Nunez pretended to agree to be financially liable for the alleged legal fees and expenses charged by Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C.; however, he now has refused to accept financial responsibility by not paying such legal fees and expenses from funds released to him by the Suffolk Superior Court in April of 2004.  Nunez now asserts that  he was only liable for $130,000.00, and he has paid it.

139.     When Krulewich, Casher, P.C., and Casher filed their opposition to the motion of plaintiffs Melita and Athena Picciotto to be allowed to receive their money, Casher was under court order to represent the financial interests of plaintiff Melita Picciotto; and she was obligated, pursuant to the requirements of Rule 1.3 of the Massachusetts Rules of Professional Conduct, to "zealously" represent said plaintiffs' interests.

140.     The verified opposition to the motion of plaintiff Melita Picciotto that Casher and Krulewich, Casher, P.C. filed in the Appeals Court urged the court not to release any funds to said plaintiff; and it contained facts that Krulewich, Casher, P.C., and Casher knew to be harmful and false (such as that the Picciottos' mortgage loan on their house had been paid, etc.); however, despite having such knowledge, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., failed to zealously represent plaintiff Melita Picciotto's interests with respect to said

motion and the matter that was addressed therein, in violation of Rule 1.3 of the Mass. R. Prof. C..

141.    But for the malpractice of Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P.C., in:

(a)  Negligently taking on Nunez as a client without the perquisite "consultation";

(b)  Negligently not listing the amounts that each party was settling for in the settlement agreement with Travelers;

(c)  Negligently not reducing to writing in the same settlement agreement the terms and conditions of the internal settlement agreement; and

(d)  Negligently not making a claim on behalf of Melita and Athena Picciotto against the fund that was deposited by Travelers into the Suffolk Superior court.  Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. would not have created an otherwise avoidable conflict of interest.

142.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P.C., had a heightened duty to zealously represent the financial interests of plaintiff Athena Picciotto, who was a minor throughout their representation, but they filed an opposition to Athena Picciotto's receiving her property while they were her legal representatives.

143.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., intended to inflame the court, prejudice plaintiff Melita Picciotto, and coerce her into acquiescing to their unfair fee demands that she be financially liable for the legal

fees and expenses incurred by the other clients, including Nunez, absent any contractual

agreement to such liability.

144.    On November 29, 2002, plaintiffs Melita and Athena Picciotto sent a

demand letter to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C., under the provisions of G. L. c. 93A, § 9, setting forth claims on their behalf for

damages of between Five Million Seven Hundred Twenty Thousand Dollars

($5,720,000) and Eight Million Four Hundred Thousand Dollars ($8,400,000).

145.    Plaintiffs Melita Picciotto and Athena Picciotto offered to reduce and

settle their claims against Casher, Leonard Krulewich, Helen Krulewich and Krulewich,

Casher, P.C., for Two Million Dollars ($2,000,000), which the insurer for said defendants

has claimed is the limit of coverage under their professional liability insurance policies.

146.    On December 28, 2002, Casher, Leonard Krulewich, Helen Krulewich and

Krulewich, Casher, P.C., responded to said demand letter by denying all "allegations of

wrongdoing" and by refusing to make any tender of settlement at all.

147.    On March 4, 2004, an attorney engaged by Nunez, through Bergeron,

wrote a letter to the Picciottos and Foreign Car in which she demanded that they

acquiesce to Nunez's being released an additional One Million Eight Hundred Thousand

Dollars ($1,800,000) from the escrow fund held by the Suffolk Superior Court.

148.    When the Picciottos and Foreign Car would not acquiesce to such

demand, Nunez and Bergeron. working in concert with each another, took action to

inflict additional economic harm on the Picciottos and Foreign Car by seeking in said

interpleader action to have Judge Sikora, whom they have admitted under the pains and

penalties of perjury of having a bias against the Picciottos, release to Nunez funds that

they knew rightfully belonged to plaintiffs Melita Picciotto and Athena Picciotto.

149.    On March 1, 2001, Casher had her deposition taken in and with respect to said interpleader action, in which she represented the Picciottos and Nunez.

150.    On March 12, 2001, Krulewich, Casher, P.C., now fully aware that the negligence of Casher and/or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. had been exposed, gave notice of a potential malpractice claim to its insurer (which at the time was Twin City Fire Insurance Company).

151.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. knew, or had reason to know, that their insurers Continental and Twin City also provided liability insurance coverage to the plaintiff-attorneys in said interpleader action.

152.    Neither Casher, Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C., nor anyone else on their behalf, ever informed the Picciottos and/or Foreign Car that a notice of a potential claim had been provided to said insurers.

153.    On October 15, 2002, Casher, even though she is the official record-keeper of Krulewich, Casher, P.C., informed plaintiff Melita Picciotto that she had no idea as to who the malpractice insurance carrier was for her or Krulewich, Casher, P.C.

154.    Casher, Leonard Krulewich, and Helen Krulewich have denied that either they or Krulewich, Casher, P.C., or anyone on its behalf, ever provided notice of a potential claim to either Twin City or Continental prior to the filing by plaintiff Melita Picciotto of a malpractice claim against Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

155.    On March 12, 2001, Krulewich, Casher, P.C. purchased a professional liability policy with Clarendon National Insurance Company (hereinafter "Clarendon").

156.    March 12, 2002, Krulewich, Casher, P.C. purchased a professional liability policy with TIG Specialty Insurance Solution (hereinafter referred to as "TIG").

157.    Due to the refusal of Leonard Krulewich, Helen Krulewich, Dana E. Casher, or Krulewich, Casher, P.C., to provide Melita and Athena Picciotto with any relief, Melita and Athena Picciotto were forced to send a G.L. c. 93A letter of demand to the forgoing parties.

158.    In November of 2002, Leonard Krulewich, Helen Krulewich, Dana E. Casher, or Krulewich, Casher, P.C., requested defense against the rightful claims of Melita and Athena Picciotto from TIG.

159.    At the time they did that, Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., knew that Continental had the duty to defend and indemnify the claims of Melita and Athena Picciotto because the claim was first reported to Continental.

160.    Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., agreed to hide the true insurance coverage for ulterior motives.

161.    Leonard Krulewich, Helen Krulewich, Dana E. Casher, and Krulewich, Casher, P.C., have provided periodic reports to the insurers.

162.    The insurers Continental and Twin City used the periodic reports during the interpleader action to their unfair advantage in defending the attorney lienholders to the unfair detriment of the plaintiffs.

163.    Leonard Krulewich, Helen Krulewich, Dane E. Casher, and Krulewich,

Casher, P.C., knew that Continental insured the McCabe Group, and was working in concert with Twin City to shed the liability created by the tortious conduct of their insured McCabe, while working in concert with the other attorney lienholders.

164.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. have refused to obey an order of the Essex Superior Court to provide Melita Picciotto with (among other things) all notices of claims, all applications for insurance, and all of the insurance policies that they submitted to, or obtained from, their insurance companies.

165.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., retained Stolzberg to be an expert witness in said interpleader action against Attorney Michael Gilleran, who was one of the plaintiff-attorneys therein, and the other attorney lienholders.

166.    Stolzberg, Casher, and Krulewich, Casher, P.C., represented to the Picciottos and Foreign Car that Stolzberg was a Harvard Law School graduate and an expert in contract law and that he would be well able to testify to the malpractice of Attorney Gilleran in and with respect to his representation of the Picciottos and Foreign Car.

167.    Stolzberg, Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P.C., worked together in preparing answers to interrogatories that would describe the intended testimony of Stolzberg in said interpleader action.

168.    Stolzberg, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.. failed to prepare said answers carefully with sufficient and complete specificity as to the anticipated testimony of Stolzberg; and, as a result, Stolzberg was

barred from testifying with respect to several issues that pertained to the malpractice of Attorney Gilleran. Attorney Zabin, Attorney Eigerman, and Attorney McCabe.

169.    December 24, 2001, plaintiff Stefano Picciotto sent a letter to Casher and Krulewich, Casher, P.C., urging them to make sure that Stolzberg would testify with regard to the issues that said plaintiff presented in said letter (a copy of which is attached hereto as Exhibit A).

170.    December 26, 2001, Casher assured plaintiff Stefano Picciotto that she had faxed a copy of said letter to Stolzberg, and she and Stolzberg had discussed it at length, and that Stolzberg was familiar with the case law, and that Stolzberg was going to testify in accordance with the information contained in said letter.

171.    On December 27, 2001, Stolzberg testified in said interpleader action; and while on the stand, he could not remember: (a) any of the facts or law that were described in said letter of December 24, 2001, or (b) the name of the judge who had made the case law with respect to one of the significant issues discussed therein.

172.    Stolzberg left the jury with the clear impression that the Picciottos, Foreign Car and he were simply there to unfairly malign Attorney Gilleran and deceptively prevent him from collecting what would have been a fair fee if he had not been guilty of any malpractice

173.    Casher has a history of depression and suicidal ideation.

174.    Casher has been hospitalized for attempted suicide.

175.    Casher attributed her inability to remember the facts of the case during the trial of the interpleader action to the unethical conduct of the plaintiff-attorneys, combined with a "crooked" judge, all of whom she claimed were making her

feel suicidal, causing her to be emotionally upset, and causing her to be so depressed that she was losing her memory.

176.    Prior to the trial of the interpleader action, Casher never revealed to any of the Picciottos or Foreign Car that she had a mental condition that could materially impair her ability to represent them.

177.    A.    Casher had an obligation to the Picciottos and Foreign Car, pursuant to Rule 1.16(a) (2) of the Mass. R. Prof C., to withdraw from representing them and to help them to find another attorney to represent them.

177.    B.    Casher  knew that she was a material witness, and as a lawyer, pursuant to Rule 3.7A of the Massachusetts Rules of Professional Conduct, knew that she could not act as an advocate in a trial in which she was a necessary witness.

178.    After the judgment entered against the Picciottos and Foreign Car in the interpleader action that was filed in the Suffolk Superior Court, the Picciottos and Foreign Car filed a notice of appeal.

179.    The Picciottos and Foreign Car requested of Casher that she or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. order a copy of the transcript of the proceedings.  Casher responded that there was no money to order the transcript (an initial deposit in the amount of $25,000 being required in order for preparation thereof to commence) despite the fact that the Suffolk Superior Court had released to her and/or her firm Seven Hundred and Fifty Thousand Dollars ($750,000) in April of 2001.

37

180.   After said sum had been released to Casher and/or Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., said sum was deposited in the operating account for said attorneys in April of 2001, and then a check in the amount of only Five Hundred Fifty Thousand Dollars ($550,000) was made out against such sum in favor of Casher, as Trustee of the Picciotto Family Trust, without obtaining any authorization therefor from the Picciottos and Foreign Car to retain the missing difference (i.e., $200,000.00).

181.   Subsequently, in December of 2001, without the authorization of the Picciottos or Foreign Car, Casher sent to Bergeron a check payable to Bergeron in the amount of Twenty-five Thousand Dollars ($25,000) against funds held by Casher as Trustee of the Picciotto Family Trust.

182.   As a result of the failure of Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. to make money available for the ordering of said transcript from funds belonging to the Picciottos and Foreign Car, they have caused a delay of the appeal of the judgment in the Suffolk Superior Court interpleader action, thereby causing the amount of interest accruing with respect to the judgment to increase beyond what should have been necessary; and they have jeopardized the appeal because the Suffolk Superior Court has suggested that the appeal should be dismissed because of the delay in ordering said transcript.

<u>Count One</u>

183.   The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

184.   Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. and their predecessors (hereinafter "the Krulewich, Casher Parties"), by their foregoing actions and failures to act, breached their obligations under the attorney-client fee agreement that they entered into with the Picciottos and Foreign Car whereby they had agreed to furnish reasonable, competent, diligent and zealous representation to the Picciottos and Foreign Car.

185.   As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

Count Two

186.   The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

187.   The Krulewich, Casher Parties, by their foregoing actions and failures to act, breached the covenant of good faith and fair dealing implied in the client fee agreement that they entered into with the Plaintiffs.

188.   As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

Count Three

189.   The Plaintiffs here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

190.    The Krulewich, Casher Parties, by their foregoing actions and failures to act, have been negligent in their furnishing of legal representation to the Picciottos and Foreign Car.

191.    As a result, the Picciottos have been caused harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

### Count Four

192.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

193.    The Krulewich, Casher Parties, by their foregoing actions and failures to act, breached the fiduciary duties that they owed to the Picciottos and Foreign Car as attorneys for the Picciottos and Foreign Car.

194.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

### Count Five

195.    The Plaintiffs here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

196.    The Krulewich, Casher Parties, by their foregoing actions, and/or failures to act, converted property of the Picciottos and Foreign Car.

40

197.    As a result, the Plaintiffs have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

### Count Six

198.    The Plaintiffs here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

199.    Bergeron, Nunez and the Krulewich, Casher parties engaged in a civil conspiracy against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be given to Bergeron and Nunez and then converted by them.

200.    As a result, the Picciottos have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties and Bergeron in the amount of Plaintiffs' damages, plus interest and costs.

### Count Seven

201.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

202.    Bergeron and Nunez, through their foregoing actions, have conspired and interfered with the contract entered into between the Picciottos and Foreign Car and the Krulewich, Casher parties with the intent to deprive plaintiffs Melita Picciotto and Athena Picciotto of their settlement funds.

203.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Bergeron in the amount of their damages, plus interest and costs.

<u>Count Eight</u>

204.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

205.    The Krulewich, Casher Parties, by their foregoing actions and failures to Act, engaged in a continuing pattern of fraud and deceit:

    (a) By leading the Picciottos and Foreign Car to believe that their total liability for legal fees to the Krulewich, Casher Parties and their prior attorneys would be absolutely capped at One Million Dollars ($1,000,000);

    (b) By leading the Picciottos and Foreign Car to believe that their funds were being used and administered correctly and in full accordance with the Mass. R. Prof C., and in the manner and specifications that the Picciottos had requested;

    (c) By leading the Picciottos and Foreign Car to believe that all available documents of which they had requested copies had been furnished to them;

    (d) By leading the Picciottos and Foreign Car to believe that Casher's mental condition would not impede her representation of them as their attorney;

(e) By leading the Picciottos and Foreign Car to believe that they were not insured by the same malpractice insurer that insured Attorneys Albert P. Zabin and Michael C. Gilleran; and

(f) By not informing the Picciottos and Foreign Car that they had notified said insurer of a potential claim and providing said insurer and/or the agents thereof with periodic reports that contained information that the Krulewich, Casher Parties knew or had reason to know could be used to the detriment of the Picciottos and Foreign Car.

206.    As a result, Plaintiffs have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

### Count Nine

207.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

208.    The Krulewich, Casher Parties, acting alone or in concert with one another, through the use of threats, intimidation or coercion, have interfered with, or have attempted to interfere with, the exercise or enjoyment of the rights of the Picciottos and Foreign Car that are secured by the U. S. Constitution and the Constitution and laws of the Commonwealth of Massachusetts, mainly their right to enjoy the use of their personal property, but also the right of plaintiff Melita Picciotto to represent herself pro se in defense of her property.

43

209.    As a result, the Picciottos and Foreign Car have suffered harm, both economic and physical.

WHEREFORE, the Plaintiffs demand judgment against the Krulewich, Casher parties in the amount of their damages, plus interest and costs and their reasonable attorney's fees.

### Count Ten

210.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

211.    The Krulewich, Casher parties and Bergeron, by their foregoing actions and failures to act, intentionally or negligently inflicted emotional distress upon the Picciottos and Foreign Car.

212.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties and Bergeron in the amount of their damages, plus interest and costs.

### Count Eleven

213.    The Plaintiffs here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

214.    The Krulewich, Casher Parties and Bergeron, by their foregoing actions and failures to act, engaged in a civil conspiracy to deprive the Picciotto Parties and

Foreign Car of their rightful settlement funds, convert them, and otherwise to harm the Picciotto Parties and Foreign Car for their own undue self enrichment.

215.    As a result, the Picciottos and Foreign Car have been caused to suffer damages.

WHEREFORE, the Picciottos and Foreign Car demand judgment against the Krulewich, Casher Parties and Bergeron in the amount of their damages, plus interest and costs.

Count Twelve

216.    The Picciottos here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

217.    The Krulewich, Casher Parties, by their foregoing actions or failures to act, have:

> (a) Interfered with the contract between the Picciottos and Foreign Car and Nunez, with intent to deprive the Picciottos and Foreign Car of their funds for their own undue enrichment.; and
>
> (b) Interfered with the contract that plaintiffs Judith Picciotto and Stefano Picciotto had in place with a mortgage lender from whom they would have been receiving a reduced rate of interest with respect to a refinancing of the mortgage on the Picciottos' home.

218.    As a result, the Picciottos have suffered harm, both economic and physical.

WHEREFORE, the Picciottos demand judgment against the Krulewich, Casher Parties in the amount of their damages, plus interest and costs.

45

<u>Count Thirteen</u>

219.    Plaintiffs Melita and Athena Picciotto here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

220.    The Krulewich, Casher Parties at all times material to the issues involved in this action have been engaged in trade or commerce within the Commonwealth of Massachusetts.

221.    Melita and Athena Picciotto were consumers of the legal services of the Krulewich, Casher Parties.

222.    The conduct of the Krulewich, Casher Parties as described above represent the use or employment of one or more unfair or deceptive act acts or practices that have been declared unlawful by Section 2 of Chapter 93A of the Massachusetts General Laws, or by rule or regulation issued under paragraph (c) thereof, specifically G.L. c. 221 § 38; G.L. c. 271 § 39(b); G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct promulgated thereunder, more specifically Rules 1.1, 1.3, 1.5(a), 1.7(b), 1.8(a), 1.8(g), 1.15(a), 1.16(a)(2), 3.3(a) (1), 3.7(a), 5.1(a), 5.1(b), 5.1(c) (1), 5.1(c) (2), 5.2(a), 8.3(a), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(h).

197.    As a result, the Picciottos and Foreign Car have suffered harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, Section 9:

(a)    Determine that said actions of the Krulewich, Casher Parties constitute the use or employment of one or more unfair of deceptive practices declared unlawful under the provisions of

M.G.L. c. 93A, § 2(a), 2(b), and 2(c), and the Attorney General's Rules and Regulations promulgated thereunder, specifically, 940 CMR 3.16 (3).

(b)    Determine the amount of damages that they have suffered as a result of said actions of the Krulewich, Casher Parties;

(c)    Award them the amount of such damages;

(d)    Determine that said actions of the Krulewich, Casher Parties represented a willful or knowing violation of the provisions of said sections 2(a), 2(b), and 2(c), and the Attorney General's Rules and Regulations promulgated thereunder, specifically, 940 CMR 3.16 (3).

(e)    Award them the Krulewich, Casher Parties up to three, but not less than two, times the amount of their actual damages;

(f)    Award them against the Krulewich, Casher Parties their reasonable attorney's fees and costs; and

(g)    Grant such other and further relief as the Court shall deem to be just and proper.

<u>Count Fourteen</u>

213.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

214.    Stolzberg, by his conduct in acting as an attorney and an expert witness for the Picciottos and Foreign Car in and with respect to said interpleader action, breached his obligations under the contract that he entered into with the Picciottos and

Foreign Car whereby he had agreed to furnish reasonable, competent, diligent and zealous representation to and testimony for the Picciottos and Foreign Car.

215.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Stolzberg in the amount of their damages, plus interest and costs.

### Count Fifteen

216.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 200 of the complaint.

217.    Stolzberg, by his conduct in acting as an attorney and an expert witness for the Picciottos and Foreign Car in and with respect to said interpleader action, breached the covenant of good faith and fair dealing implied in the contract that they entered into with the Picciottos and Foreign Car.

218.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Stolzberg in the amount of their damages, plus interest and costs.

### Count Sixteen

219.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 218 of the complaint.

220.    Stolzberg, by his conduct in acting as an attorney and an expert witness for the Picciottos and Foreign Car in and with respect to said interpleader action, was

negligent in his furnishing of expert legal services and testimony on behalf of the Picciottos and Foreign Car.

221.    As a result, the Picciottos have been caused harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Stolzberg in the amount of their damages, plus interest and costs.

<u>Count Seventeen</u>

222.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 221 of the complaint.

223.    Stolzberg, by his conduct in acting as an attorney and an expert witness for the Picciottos and Foreign Car in and with respect to said interpleader action, breached the fiduciary duties that they owed to the Picciottos and Foreign Car as attorney for the Picciottos and Foreign Car.

224.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Stolzberg in the amount of their damages, plus interest and costs.

<u>Count Eighteen</u>

225.    Plaintiffs Melita Picciotto and Athena Picciotto here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

226.    Dilday, by his failure to take appropriate actions on behalf of plaintiffs Melita Picciotto and Athena Picciotto while he was representing them and thereby by his

failure to represent their interests properly, breached the contract that he entered into with said plaintiffs for the provision to them of legal services.

227.    As a result, plaintiffs Melita Picciotto and Athena Picciotto have been caused to suffer harm, both economic and physical.

WHEREFORE, plaintiffs Melita Picciotto and Athena Picciotto demand judgment against Dilday in the amount of their damages, plus interest and costs.

## Count Nineteen

228.    Plaintiffs Melita Picciotto and Athena Picciotto here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

229.    Dilday, by his foregoing actions and failures to act, breached the covenant of good faith and fair dealing implied in his contract with plaintiffs Melita Picciotto and Athena Picciotto for the provision to them of legal services.

230.    As a result, plaintiffs Melita Picciotto and Athena Picciotto have been caused to suffer harm, both economic and physical.

WHEREFORE, plaintiffs Melita Picciotto and Athena Picciotto demand judgment against Dilday in the amount of their damages, plus interest and costs.

## Count Twenty

231.    Plaintiffs Melita Picciotto and Athena Picciotto here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

232.    Dilday, by his foregoing actions and failures to act, was negligent in his furnishing of legal representation to plaintiffs Melita Picciotto and Athena Picciotto.

233.   As a result, plaintiffs Melita Picciotto and Athena Picciotto have been caused harm, both economic and physical.

## Count Twenty-one

234.   Plaintiffs Melita Picciotto and Athena Picciotto here restate and incorporate by reference the allegations set forth in paragraphs 1 through 182 of the complaint.

235.   Dilday, by his foregoing actions and failures to act, breached his fiduciary duties that he owed in furnishing of legal representation to plaintiffs Melita Picciotto and Athena Picciotto.

236.   As a result, plaintiffs Melita Picciotto and Athena Picciotto have been caused harm, both economic and physical.

WHEREFORE, plaintiffs Melita Picciotto and Athena Picciotto demand judgment against Dilday in the amount of their damages, plus interest and costs.

## DEMAND FOR JURY TRIAL

The Picciottos and Foreign Car hereby demand a trial by jury with respect to all issues as to which they are entitled to a jury trial.

STEFANO PICCIOTTO
Pro Se

Stefano Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

51

JUDITH Picciotto
Pro Se

_____
Judith Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

MELITA PICCIOTTO
Pro Se

_____
Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

ATHENA PICCIOTTO
Pro Se

_____
Athena Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218

FOREIGN CAR CENTER, INC.
By its attorney,

_____
James M. Shannon
BBO # 453610
418 Rear Lafayette Street
Salem, Massachusetts 01970
(978) 741-0218

Dated:  March 18, 2005

# EXHIBIT

# A

EXHIBIT
# 6
11·24·04
PENGAD-Bayonne, N.J.

### 418 Lafayette Street
Salem, MA 01970-5347

December 24, 2001

<u>BY FAX: (617) 367-1200</u>

Dana Casher, Esq.
50 Staniford Street
P.O. Box 8190
Boston, MA 02114

Dear Dana:

As I have told you before, I am not a pessimist, in fact, I am an optimist, but I have to be a realist. When Marshall Harmon messed up the Kalimlin case, I knew it, I tried to prevent it, but I was not successful because of his stubborn indifference to my request. I was not being a pessimist then, and I am not being a pessimist now. We have no grounds for collectibility because Sikora has barred any evidence of collectibility of this claim. End of the story.   This jury cannot do anything for us.

There is, however, a remote possibility that you can cure this problem against all odds. I have gone back to look at Stolzberg's expert interrogatories.  No. 8 states that Stolzberg may testify as to Mike's deficiencies in::

8)      **failing to refer the question of the applicability of the personal injury coverage to a non-landlord/tenant relationship to the Supreme Judicial Court as requested by the client after comment from the Bankruptcy Court ("in the absence of a clear signal from the Massachusetts court . . .") regarding the lack of state court guidance;**

What that means to me is that Stolzberg can say to the jury exactly what no. 8 says, and that he bases his opinion on the fact that a question of law can be easily submitted to the Massachusetts SJC, pursuant to Rule 1:03 of the SJC;  (<u>Colonial Tavern, Inc., and Another v. Boston Licensing Board and Others</u>, 384 Mass. 372 (1981), and one should have been submitted by Gilleran regarding the Personal Injury coverage, since a question of law can be invoked *"upon the motion of any party to the cause."*  Sikora himself was involved with this case.  The reason this was a <u>reasonable request</u>

to Mike, and something that Mike should have done, is because Feeney stated in her October 10, 1997 decision at page 80 that: The Court finds that the personal injury endorsement is unambiguous." thus, she denied coverage under the personal injury endorsement.

## Case Law on the Personal Injury Coverage

Judge Sterns, ruling under Massachusetts' law, in the case of *High Voltage Engineering v. Liberty Mutual*, civil action no. 90-0566 Norfolk superior Court (Jan. 24, 1992), held that wrongful entry includes a claim arising from toxic contamination. Other jurisdictions have come to the same conclusion; (see *Great Northern Nekoosa Corporation et als, V. Aetna Casualty, et als*, 921 F. Supp. 401, N.D. Miss. (1996): Court determined that damages for injuries to possessory interests under nuisance and trespass theories are covered "Occurrences" under a CGL policy); *Titan Holding Syndicate, Inc. v. City of Keene*, 898 F. 2d 265 (1st Cir. 1990); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F. 2d 1037 (7th Cir., 1992); *Scottish Guarantee Ins. Co.. Ltd. v. Dwyer*, 19 F. 3d 307 (7th Cir. 1994) ("wrongful entry" includes unintentional trespass); *Hirschberg v. Lumbermens Mutual Casualty*, 798 F. Supp. 600 (N.D.Cal. 1992) ("invasion of the right of private occupancy" provides coverage for "interference with possession and enjoyment . . . "); Gould, Inc. v. Arkwright Mt. Ins. Co., 829 F. supp. 722, 729 (M.D. Pa. 1993) (ambiguity in personal injury endorsement interpreted in favor of insured); *Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liab. Ins. Co.*, 856 F. Supp. 584, 590 (D. Colo. 1994) (claims of trespass and public and private nuisance by downstream property owners fall within personal injury endorsement; "wrongful entry and eviction" do not require dispossession); *Harvard Indus. v. Aetna Casualty & Sur. Co.. 273, N.J. Super.* 467, 642, A. 2d 438, 444 (1993) (trespass or unauthorized entry satisfies definition of personal injury); *City of Edgerton v. General Cas. Co.*, 172 Wis. 2d 518, 493 N.W. 2d 768, 780-81 (App 1992) (pollution damage to property can constitute invasion of private use and enjoyment); *Martin Marietta Corp. v. Insurance Comp. of North America*, 40 Cal App. 4th 1113, 47 Cal. Rptr. 2d 670 (1995) ("The conclusion that `wrongful entry' encompasses trespass and may encompass nuisance seems to us to be a straightforward one."); and *Summet Corporation of America v. The Travelers Companies* (Indiana case no. 49D02-9509-CP-1378, (1997) ("The personal injury provision in Travelers . . . policy provides coverage for environmental . . . claims" (see section (5) of Order on page 32. This coverage in the CGL policy at issue contains no limitation in coverage for pollution of any kind. Gilleran stated that in his brief to the U.S. Bankruptcy court, and Feeney did no overrule him, so that is the law of the case right now. *There is no pollution exclusion on the personal injury coverage*. End of story.

## Judge Feeney's Reasoning

Judge Feeney, in denying that coverage stated, "Under Massachusetts law, then, the phrase `other invasion of the right of private occupancy' would mean `other invasion of the [tenant's] right of private occupancy, **since an actionable `wrongful entry or eviction' claim under Massachusetts law, may be brought only by a tenant against its landlord**." (bold added; see pages 79 and 80 of October 10, 1997 U.S. Bankruptcy Court decision.). The policy language states

2

that Travelers will afford coverage for "wrongful entry or eviction or other invasion of the right of private occupancy". Travelers has created Liability Coverage Manuals (which are in your possession) state that, according to the Travelers itself, are intended ". . . to provide technical information to liability unit people to help them process claims" in order to establish if the claim is covered. Section 7 of Travelers' own Liability Coverage Manual states that "The tort contemplated by the right of private occupancy was intrusion upon the physical solitude or seclusion of the plaintiffs by invading his or her home or other quarters." Travelers goes on to state that what is required for this coverage to trigger is "some intrusion". Travelers does not limit this coverage to landlord-tenant torts. We had a judgment in place for "negligence" and "nuisance". "[T]respass is an invasion of the Plaintiffs' interest in the exclusive possession of its land, while `nuisance' is an interference with its use and enjoyment of it." (Prosser and Keeton (5th ed.) s. 87, p. 622.) Massachusetts law has repeatedly held that a trespass and a nuisance does not require a commercial relationship of any kind. (See *John F. Fenton & another v. Quaboag Country Club, Inc.* 353 Mass 534, 539 (1967) In that case golf balls were trespassing and/or causing a continuing nuisance by virtue of accidentally crossing a property line, and caused a "disturbance of the plaintiffs' `peace and comfort'." Also see *Edith A. Stevens and other v. Rockport Granite Company*, 216 Mass 486, 495 (1913). In that case the Court found that the defendant created a nuisance because they operated machinery "in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by the Plaintiffs." *United Electric Light Company v. The Deliso Construction Company, Inc.*, 315, 323 (1943). In this case a trespass and a nuisance was deemed to have been created because grout was negligently forced from a tunnel into the adjacent manholes and conduits owned by the electric company. Under Mississippi law, as in Massachusetts, trespass can be a negligent tort. Wrongful entry is just another way of saying "trespass." (See decision of *Great Northern Nekoosa Corp. v. Aetna Casualty et al*, 921 F. supp. 401 420 (1996). The Massachusetts SJC, in the case of *DeSanctis v. Lynn Water and Sewer Commission*, 423 Mass. 112, 118, 888 N.E. 2nd 1292, 1297 (1996) held that a plaintiff may recover for a defendant's "negligent entry onto the plaintiffs land" where such entry caused the plaintiff harm. Id at 118. Judge Feeney, **based on the unchallenged misrepresentation of the Travelers**, relied on *Dryden Oil v. Travelers*, 91 F. 3d 278 (1st Cir. 1996) to deny coverage, but the insurance policy issued to Dryden had a different CGL contract. It was a policy that was issued after 1985. It contained a pollution exclusion absolute. This exclusion applied to the entire CGL, and therefore, defeated coverage under the personal injury endorsement. Secondly, the Drydon Oil case was pursuant to an action brought by a landlord against a tenant. There can be no actionable claim for "trespass" . . . "or other invasion of the right of private occupancy" by a tenant on leased or rented premises, by virtue of the contract that allows the tenant to rightfully occupy the premises. Clearly, the tenant's permission to occupy the premises had been officially granted by an existing contract; therefore, no "wrongful entry" by the tenant could occur.

## What We Wanted Mike to Argue

The common thread regarding this particular coverage is that "reasonably intelligent persons" (judges) differ in interpretation. Therefore, the term must be ambiguous. In *Quincy Mountain Fire Insurance Company, v. Abernathy*, 393 Mass. 81, 83, 469 N.E. 2d 797 (1984), the Massachusetts

SJC stated that "Exclusion from insurance coverage are to be strictly construed . . . and [any ambiguities in insurance contracts are to be resolved against the insurer." Under Massachusetts law, "a term is ambiguous only if it is susceptible of more than one meaning, and reasonably intelligent persons would differ as to which meaning is the proper one." *Jefferson Insurance Company v. Holyoke*, 23 Mass App. Ct. 472, 475 (1987), citing *Ober v. National Cas. Co.*, 318 Mass. 27, 30 (1945). As stated earlier, any ambiguity in an insurance policy is strictly construed against the insurer. Tha is also supported by the following cases: *Allstate Insurance Company v. Quinn Construction Company*, 713 F. Supp. 35, 40 (D. Mass. 1989), citing *Vappi & Co., Inc. v. Aetna Casualty and Surety Co.*, 348 Mass. 427, 431 (1965). Existing Massachusetts case law, even though only from the Mass appeals court in the case of *Donley v. Hammond*, Mass. (copy enclosed). Brings the tort of trespass and wrongful entry to the same level. In that case, if you remember, by digging the dirt of a grave that did not belong to the defendant, the defendant committed a torte of trespass and wrongful entry. The emissions form Salem Suede, by crossing property line, trespassed. Since there was no permission to have these raw materials on our property, that constituted a wrongful entry into our land. The judgement that we had in place for nuisance should have covered that conduct if Mike had pled it properly.

Mike claims before this jury that he did all the work on the insurance, yet he left all of this out. Melita picked it up in her SJC Writ. I believe that Melita is right: you are a material witness to the things that Mike left undone (or briefed improperly). **If they can use you against us in favor of Mike, we should be able to cross examine you to get this information out of you. Not allowing this is fundamental "unequal treatment under the law," which is unconstitutional.** <u>**Someone someday will listen to this point**</u>. <u>**I only need to have the record properly preserved.**</u>

Since one would think that judges are persons of reasonably intelligent minds, and judges throughout the country differ on the meaning of this coverage, then the term must be ambiguous, and in Massachusetts, "any ambiguity must be construed in favor of the insured." Mike filed no motion to obtain this coverage, despite our request. He should have submitted this information to Feeney instead of moving for interlocutory relief. Perhaps Feeney would have reversed herself, or submitted the question to the SJC. The bankruptcy court cannot make or expand the existing Massachusetts law. It can only interpret the existing laws. I had explained this in detail to Alan Dambrov, but apparently he was not allowed to testify on this insurance issue.

But, if you can get Stolzberg to testify to this, it will leave the door wide open as to whether there may be coverage under the policy or not. I don't think that Sikora can then shut that door. There are two factual elements that must be obtained from Melita, or you will have to recall me:

1)    The first is that what we intended to accomplish with this request for the submission of a question of law to the SJC;

2)    The second is on the plan filed by Gilleran we intended to cause Salem Suede and Zion Realty corp. to pay for our judgement, while we continued litigating against Travelers (which, under the March 18, 1998 decision of Feeney we had an absolute right to do) and why did that plan fail?  The answer to that is Mike refused to inform the Judge that Travelers had offered to fund any plan that would take the debtor out of bankruptcy. The funding was not limited to the plan that Salem Suede was advancing. This is what we discussed with Gilleran. We are not giving legal opinions.  Mike agreed that it was do-able and then he did not do it. That is a reason for our becoming angry with him and telling him that he breached his fiduciary duty and committed negligence. We became even angrier after he said to us that he could not obtain the documents that we were requesting because six attorneys would go to jail and he still had to practice law in Boston.

All these issues are pertinent to the reasonableness of his withdrawing form the case, if he was pushed off the contract or if he abandoned it. If Sikora will to let you do this, please put in place the appropriate offers of proof.

Stolzberg is in a position to pull us out of Sikora's insurance trap.  Given the provisions of item 8, we are fully entitled.  Without it, as you know, Sikora intends to declare any judgment in our favor uncollectible and all our hard efforts (and those of the jury) are lost..

Sincerely,

Stefano Picciotto

Enclosure: Copy of Sikora's critcal ruling on item 8

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEFANO PICCIOTTO, JUDITH PICCIOTTO, MELITA PICCIOTTO, ATHENA PICCIOTTO, and FOREIGN CENTER, INC., <br>         Plaintiffs <br>      v. <br> CONTINENTAL CASUALTY COMPANY, GREAT NORTHERN INSURANCE COMPANY, HARTFORD INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY, <br>         Defendants | C.A. No. 05 10901 DPW |

## AMENDED COMPLAINT

### Parties

1.     Stefano Picciotto, Judith Picciotto, Melita Picciotto and Athena Picciotto (hereinafter sometimes "the Picciottos") are individuals who reside at 418 Lafayette Street, Salem, Massachusetts.

2.     Foreign Car Center, Inc. (hereinafter "Foreign Car") is a Massachusetts corporation that formerly had its principal office at 55 Walnut Street, Peabody, Massachusetts.

3.     Defendant Continental Casualty Company (hereinafter "Continental") is an Illinois corporation admitted as an insurance carrier in Massachusetts; and its principal office is at CNA Plaza, 9th Floor, South Wabash Avenue, Chicago, Illinois 60685.

4.      Defendant Great Northern Insurance Company (hereinafter "Great Northern") is a New Jersey corporation admitted as an insurance carrier in Massachusetts; and its principal office is at 15 Mountain View Road, Warren, New Jersey 08059.

5.      Defendant Hartford Insurance Company (hereinafter "Hartford") is a Connecticut corporation admitted as an insurance carrier in Massachusetts; and its principal office is at Hartford Plaza, Hartford, Connecticut 06115.

6.      Defendant Twin Cities Insurance Company (hereinafter "Twin Cities") is a Connecticut corporation admitted as an insurance carrier in Massachusetts; and its principal office is at Hartford Plaza, Hartford, Connecticut.

Facts

7.      In June of 1998, the Picciottos and Foreign Car entered into a contract for legal representation with a proprietorship/partnership known as Krulewich and Associates, which later came to be known as Krulewich, Casher.

8.      During 1998 and for a substantial time thereafter, the proprietorship/partnership of Krulewich and Associates and Krulewich, Casher operated its business at two offices: one at 50 Staniford Street, Boston, Massachusetts, and the other at 153 Woodchester Drive, Newton, Massachusetts.

9.      The proprietors/partners of Krulewich and Associates and Krulewich, Casher were Leonard M. Krulewich and Helen D. Krulewich.

10.     Dana E. Casher of 4 Fawn Circle, Randolph, Massachusetts (hereinafter "Casher"), an attorney licensed to practice law in Massachusetts, was an employee of Krulewich and Associates and Krulewich, Casher in 1998 and thereafter.

11.     In 1998, Continental issued a professional liability policy to Krulewich and Associates.

12.     The term of said policy was from March 12, 1998 to March 12, 1999.

13.     In 1999, Continental issued a professional liability policy to Krulewich, Casher.

14.     The term of said 1999 policy was from March 12, 1999 to March 12, 2000.

15.     The Continental policy that ran from March 12, 1999 to March 12, 2000 carried an endorsement providing coverage for errors or omissions of any predecessor firm (endorsement No. G-118049-A).

16.     Great Northern issued an umbrella insurance policy to Leonard Krulewich and Helen Krulewich for periods when underlying insurance policies were in effect.

17.     Both the Continental insurance policies and the Great Northern insurance policies provided coverage for any harm caused by negligent supervision by Leonard and/or Helen Krulewich of the acts, errors or omissions of employee Casher.

18.     Within a period that commenced in 1975 and extended to 1996, plaintiffs Stefano Picciotto and Judith Picciotto, who are the parents of plaintiffs Melita Picciotto and Athena Picciotto, received injuries from exposure to toxic chemicals that were released from a factory that was operated in Peabody, Massachusetts, by Salem Suede, Inc. (hereinafter "Salem Suede").  Said factory was located on premises that were

3

adjacent to premises upon which plaintiff Foreign Car, a corporation owned by plaintiff
Judith Picciotto and operated by plaintiff Stefano Picciotto, conducted its business.

19.     In 1983, plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car and
others filed an action against Salem Suede entitled *Foreign Car Center, Inc., et al v.*
*Salem Suede, Inc., et al*, Essex Superior Court No. 83-740.

20.     In September of 1993, after a jury trial, a judgment entered in said action
against Salem Suede in favor of Stefano Picciotto, Judith Picciotto, Foreign Car, and Juan
Nunez (hereinafter "Nunez"). The judgment was upheld on appeal in a decision that was
reported in 40 Mass. App. Ct. 15 (1996).

21.     Plaintiffs Melita Picciotto and Athena Picciotto also sustained injuries
from exposure to the same toxic chemicals that caused injuries to their parents, and they
further suffered harm though loss of parental consortium, affection, and nurture.

22.     In 1994, plaintiffs Melita Picciotto and Athena Picciotto filed an action
against Salem Suede seeking to recover for such injuries and other harm that they had
suffered. The action was entitled *Melita Picciotto, et al v. Salem Suede, Inc., et al*, Essex
Superior Court No. 94-2155.

23.     In 1996, Salem Suede, facing the judgment that plaintiffs Stefano
Picciotto, Judith Picciotto, Foreign Car and Nunez had obtained against it, and also facing
said action that plaintiffs Melita Picciotto and Athena Picciotto had filed against it, filed a
petition for bankruptcy in the U.S. Bankruptcy Court entitled *In re Salem Suede,* No. 96-
**13184 JNF.**   A related case filed at approximately the same time was *In re Zion Realty*
*Corp.*, No. 96-14692 JNF.

4

24.     At the time of the filing of said petition in bankruptcy, Salem Suede denied that it had any insurance coverage that would allow payment of the judgment that plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car (and Nunez) had obtained against it or that would allow payment of any judgment that plaintiffs Melita Picciotto and Athena Picciotto might obtain against it.

25.     Plaintiffs Stefano Picciotto, Judith Picciotto, Foreign Car, Melita Picciotto and Athena Picciotto nonetheless believed, by reason of information that their attorney had obtained, that Salem Suede indeed had insurance coverage with The Travelers Indemnity Company (hereinafter "Travelers") that would allow payment of said judgment and any future judgment; however, Travelers denied that there was any such coverage.

26.     In 1997, plaintiff Melita Picciotto filed an action against the Massachusetts Commissioner of Insurance in an effort to unearth insurance coverage that Salem Suede held with Travelers but that Salem Suede and Travelers had denied possessing, and also to seek an order that would compel the Commissioner of Insurance to hold a hearing regarding Travelers' unfair and deceptive conduct in having denied that it provided such coverage.  The action was entitled *Melita Picciotto v. Linda Ruthhardt as Commissioner of Insurance*, Supreme Judicial Court No. 97-0511.

27.     On June 15, 1998, the Picciottos and Foreign Car entered into an agreement with Casher, an attorney-employee of Krulewich and Associates and subsequently a principal in Krulewich Casher and Krulewich, Casher, P.C., who then purported to be acting on behalf of said law proprietorship or partnership and the

members thereof, whereby Casher agreed to represent the Picciottos and Foreign Car in

connection with the Salem Suede bankruptcy proceeding.

28.     In or about August of 1998, Casher, without the consent of the Picciottos

and Foreign Car, and without the prerequisite "consultation" with them, took on

additional representation in the bankruptcy proceedings of Nunez, a former employee of

Foreign Car.

29.     After entering into said agreement, plaintiff Melita Picciotto and the other

Picciottos continued to represent themselves in said Supreme Judicial Court action No.

97-0511; and, with the help of a nonprofit consumer protection group by the name of

United Policy Holders of America, she filed a *pro se* brief in the Massachusetts Supreme

Judicial Court on December 24, 1998, whereby she was able to demonstrate that the

claims that she, her family and Foreign Car had against Salem Suede were covered by

insurance policies that Travelers had issued to Salem Suede.

30.     Immediately thereafter, Travelers, in light of plaintiff Melita Picciotto's

having so demonstrated the existence of such insurance coverage, called for a settlement

conference to be held with a view towards settling all claims that the Picciottos, Foreign

Car and Nunez had against Travelers, Salem Suede, its principals, other related parties,

and their attorneys.

31.     The Picciottos and Foreign Car requested of Casher that she arrange for

the attorneys who previously had represented them regarding claims that they had made

against Salem Suede and Travelers to be included in such a settlement conference so that

their claims for fees as well as the claims of the Picciottos and Foreign Car against Salem

Suede and Travelers all could be resolved at one time; however, Casher refused to make any such arrangement.

32.    A settlement conference with Travelers commenced on January 5, 1999.

33.    At such conference, Casher represented the Picciottos, Foreign Car and Nunez.

34.    Nunez, throughout the settlement negotiations, was accompanied by Carole Bergeron (hereinafter "Bergeron"), his live-in girlfriend.

35.    Bergeron engaged in the negotiations on behalf of Nunez.

36.    On June 2, 1997, Nunez had signed a Proof of Claim that was filed on his behalf in the U. S. Bankruptcy Court stating, under the pains and penalties of perjury, that Salem Suede was indebted to him in the sum of $1,246,720.16.

37.    Casher allowed the negotiations for a settlement to run from approximately 10:00 A.M. on **January** 5, 1999, to 4:00 A.M. on **January** 6, 1999, with only bathroom breaks being taken.  In the early morning of January 6, 1999, all of Casher's clients were fatigued, in need of rest, and exhausted.

38.    In said settlement conference, Travelers ultimately offered to pay to the Picciottos, Foreign Car and Nunez the total sum of Nine Million Dollars ($9,000,000) to settle all of their claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

39.    Travelers took the position that it would leave it up to the parties whose claims would be settled by a settlement agreement to determine how to allocate among themselves such sum of Nine Million Dollars ($9,000,000).

40.     Nunez and Bergeron made an extremely advantageous settlement agreement on behalf of Nunez.

41.     Nunez and Bergeron demanded Three Million Dollars ($3,000,000) of the Nine Million Dollars ($9,000,000) settlement amount, even though Nunez's proof of claim in the U.S. Bankruptcy Court had been only in the amount of $1,246,720.16.

42.     Casher, the Picciottos, Foreign Car and Nunez conferred and agreed upon how such sum of Nine Million Dollars ($9,000,000) would be allocated among them should they agree to accept such sum in settlement of their claims.   The agreed-upon allocations were:

    (a)     To plaintiff Melita Picciotto, the sum of $1,500,000;

    (b)     To plaintiff AthenaPicciotto, the sum of $500,000;

    (c)     To plaintiffs Stefano Picciotto, Judith Picciotto and Foreign Car Center, the sum of $4,000,000; and

    (d)     To Nunez, the sum of $3,000,000.

43.     Casher, the Picciottos, Foreign Car and Nunez also agreed at such time that, if they should accept such sum of Nine Million Dollars ($9,000,000) in settlement of their claims, Casher would be paid One Million Dollars ($1,000,000) from such sum out of which she would obtain full compensation for her legal services and would pay to any other attorney who previously had represented the Picciottos, Foreign Car and Nunez with respect to their claims that were being settled such amounts as might be owed to them for their services.

44.     The Picciottos and Foreign Car requested that they be allowed to take home the proposed settlement contract that Travelers was offering in order to be able to think about it after rest and to be able discuss its terms with independent counsel.

45.     Casher refused to allow the Picciottos to leave the settlement conference; and, at approximately 3:00 A.M. on January 6, 1999, Casher instructed the Picciottos and Foreign Car to sign the proposed settlement contract.

46.     Casher at that time claimed that a settlement in the amount of Nine Million Dollars ($9,000,000) was in the best interests of the Picciottos, Foreign Car and Nunez; and she further declared specifically that, if the proposed agreement would be entered into, Salem Suede's bankruptcy plan of reorganization could not be approved without receipt by the Picciottos, Foreign Car and Nunez's of the amounts that they had agreed to allocate among themselves as a condition of the settlement. Casher further stated that, if the Picciottos, Foreign Car and Nunez were to enter into the settlement, they would be furnishing Travelers with a release and an agreement to defend and to indemnify Travelers if any lawsuit should be brought against it by the any of their prior attorneys (hereinafter "the attorney-lienholders"); and, when the bankruptcy proceedings would be dismissed, Travelers would pay over all of the settlement proceeds to Casher, as attorney for the Picciottos, Foreign Car and Nunez.

47.     Casher assured the Picciottos and Foreign Car that their fears of not receiving the settlement funds were wholly unfounded, and she called upon them to be "realistic" and not be "litigious" and "greedy" to the point of "endangering the settlement" of Nunez.

9

48.    The Picciottos and Foreign Car, in reliance upon the assurances of Casher, and in consideration of the payment to them of the amounts that they had agreed would be allocated to each of them from the total settlement sum of Nine Million Dollars ($9,000,000), agreed to enter into the proposed settlement agreement, and, as a consequence, to dismiss, with prejudice, all claims that they had against Travelers, Salem Suede, its principals, other related parties, and their attorneys.

49.    The Picciottos, Foreign Car and Nunez, all of whom were represented by Casher at said conference, as 4:00 A.M. on January 6, 1999, approached, agreed to enter into the proposed settlement agreement with Travelers whereby Travelers would pay to them, as they had allocated among themselves, the sum of Nine Million Dollars ($9,000,000); and they then executed such agreement.

50.    Casher, in violation of the provisions of Rule 1.8(g) of the Massachusetts Rules of Professional Conduct, did not cause to be placed in the settlement agreement itself the respective allocations of said sum of Nine Million Dollars ($9,000,000.00) that the Picciottos, Foreign Car and Nunez had agreed upon.

51.    The Picciottos, Foreign Car, and Nunez wanted whatever liens were held by the attorney-lienholders to be resolved on January 6, 1999, as part of an overall, global settlement.

52.    Casher assured the Picciottos, Foreign Car, and Nunez that such was not necessary, as she had made arrangements for a reasonable resolution of the claims for fees of the attorney-lienholders.

53.    Further, at the settlement conference, Casher assured the Picciottos, Foreign Car and Nunez that, upon the dismissal of the bankruptcy of Salem Suede, and

upon delivery to Travelers of a release signed by all of those who were settling their claims against Travelers, they would be able to receive the sums that they had agreed would be allocated to each of them when they agreed to settle with Travelers.

54.    On or about January 12, 1999, Casher realized that Travelers was not going to turn over the settlement funds until it received signed releases from each of the attorney-lienholders.

55.    Casher contacted the attorney-lienholders to obtain individual signed releases from them.

56.    The attorney-lienholders refused to execute and deliver releases.

57.    On January 12, 1999, after a conversation with Attorney Michael C. Gilleran and with Attorney Edwin A. McCabe, two of the attorney-lienholders, Casher became aware that she could not deliver on her settlement promises to the Picciottos, Foreign Car and Nunez.

58.    At such time, Casher became aware, through her conversations with Attorney Gilleran and Attorney McCabe, that she had engaged in an act, error, or omission at the settlement conference of January 6, 1999, that could lead to a potential claim.

59.    Casher notified Continental, an insurer with respect to her professional liability, of the conduct of the attorney-lienholders and of the potential claim that could arise against her by her act, error or omission; and Helen Krulewich and Leonard Krulewich notified Great Northern, an insurer of their professional liability, of the claim that could be made against them by reason of an act, error or omission of Casher.

60.    Continental and Great Northern took charge of the claim and, from that point on, directed the conduct of Casher, Leonard Krulewich, and Helen Krulewich.

61.    On March 9, 1999, Continental, provided loss control guidance to the Leonard Krulewich, Helen Krulewich and Casher.

62.    Continental sold Full Prior Acts coverage ("FPA") to Casher, Leonard Krulewich and Helen Krulewich.

63.    Under the direction of Continental and Great Northern, on March 12, 1999, Casher exercised coercive pressure on plaintiff Stefano Picciotto to cause him to acquiesce to her demand that he sign an amendment to the settlement agreement in order to release Travelers of its contractual obligation to pay the Picciottos, Foreign Car and Nunez the respective amounts for which they had settled their claims prior to Travelers' funding of Salem Suede's bankruptcy plan of reorganization.

64.    The amendment allowed Travelers to avoid making payment of the settlement sums directly to Casher as attorney for the Picciottos, Foreign Car and Nunez; and it also allowed Travelers to avoid a claim that the Picciottos and Foreign Car might have pursued against it for breach of contract, and for violation of the provisions of G.L. c. 93A, § 9, G. L. c. 176D, § 3(9)(f), and (g), and G. L. c. 175, § 181, by reason of its refusal to comply with its contractual obligations to make payments in accordance with the terms of the settlement agreement.

65.    Said amendment allowed Travelers to escape liability to the Picciottos, Foreign Car and Nunez and file an interpleader action in the Suffolk Superior Court (Case No. 99-1594, entitled *Albert P. Zabin, et al v. Stefano Picciotto, et a/*) and deposit

virtually all of the money of the Picciottos and Foreign Car, as well as all the other settlement funds, in a court-controlled escrow account.

66.    Under instructions from Continental and Great Northern, Casher prevented the Picciottos and Foreign Car from seasonally sending a G .L. c. 93A letter of demand to Travelers in effort to force Travelers to comply with the terms and conditions of the settlement agreement.

67.    Said G. L. c. 93A demand letter would have exposed Travelers to double or treble such actual damages, plus attorneys' fees, as were caused to the Picciottos and Foreign Car by Travelers' failure to make payment to them of the settlement funds.

68.    The settlement reached on *January 6, 1999 settled all claims of the* Picciottos, Foreign Car and Nunez against Salem Suede, its principals, its attorneys and Travelers, including the claims of Melita Picciotto and Athena Picciotto that were pursued in the 1994 Essex Superior Court action, No. 94-2155.

69.    Under the direction of Continental and Great Northern, Casher failed to properly answer the interpleader complaint and spell out all of the claims that had been settled, including the claims of Melita Picciotto and Athena Picciotto.

70.    Specifically, under the direction of Continental and Great Northern, Casher, in responding to the interpleader complaint, failed to state that the settlement agreement had settled said 1994 litigation among other claims.

71.    Under the direction of Continental and Great Northern, Casher also failed to file the proper crossclaims and counterclaims in said interpleader action.

72.    Continental, Great Northern and Casher knew that the Picciottos and Foreign Car had valid claims against the attorney-lienholders for their tortious

interference with the contract that the Picciottos and Foreign Car had entered into with Travelers (as well as claims against the attorney-lienholders for prior malpractice), but Continental and Great Northern prevented Casher from pleading such claims in the interpleader action.

73.    Some of the attorney-lienholders also were insured by Continental.

74.    Continental, either directly or through its subsidiaries, affiliates or parent company, reinsured the policies that Travelers had issued to Salem Suede.

75.    Great Northern, through the Chubb Group, also reinsured the policies that Travelers issued to Salem Suede.

76.    Twin City insured the negligent acts, errors, or omissions of Attorney Albert P. Zabin (who was an attorney-lienholder) and the firm of Schneider, Reilly, Zabin and Costello (hereinafter "Zabin").

77.    Twin City also insured the negligent acts, errors, omissions of Attorney Michael C. Gilleran, Gilleran and Mortenson, and Pepe & Hazard (hereinafter "Gilleran"), they also being attorney-lienholders.

78.    Twin City and Hartford, either directly or through their subsidiaries, affiliates or parent company, reinsured the policies that Travelers had issued to Salem Suede to the extent of $100,000,000.

79.    First State Management Group, Inc. (hereinafter "First State") is a subsidiary of Twin City and Hartford that acts as the claim management company for Twin City and Hartford.

80.    Twin City, Hartford and First State knew that their insureds had been negligent in handling the claims of the Picciottos and Foreign Car.

81.     Twin City, Hartford and First State knew that Zabin had been negligent by having agreed to dismissal of a claim under Mass. G. L. c. 93A that had been set forth in the complaint that had been filed against Salem Suede in the case of *Foreign Car Center, Inc., et al v. Salem Suede Inc.,* (Essex Superior Court No. 83-740) by not advancing the rightful c. 93A claim that the individual plaintiffs had against Salem Suede.

82.     Twin City, Hartford and First State knew that Gilleran had been negligent by refusing to expose the bankruptcy fraud that Salem Suede had engaged in (along with Travelers) and that said refusal had caused the Picciottos and Foreign Car to suffer harm.

83.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders created a Joint Defense Team known as "The Picciotto Defense Group" to work in a "unified fashion with a single strategy" against the Picciottos and Foreign Car in the interpleader action.

84.     Under the direction of Continental and Great Northern, and working with Twin City, Hartford and First State, the attorney-lienholders entered into a formalized Joint Litigation Agreement to assist them in unfair and deceptive strategies against the Picciottos and Foreign Car.

85.     Although pretending to the Suffolk Superior Court and to the Picciottos in the interpleader action that Travelers was a neutral party, the attorneys for Travelers were, behind the scenes, official members of "The Picciotto Defense Group."

86.     Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, the attorney-lienholders agreed to keep the "Joint Litigation Agreement" regarding the "Picciotto Actions" secret and confidential.

87.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders entered into a formal agreement for "Coordinated Litigation Activities" to assist them in their unfair and deceptive strategies against the Picciottos and Foreign Car.

88.    Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, one of the unfair litigation strategies was to lay claim to the entire settlement fund as a trial strategy to prevent the Picciottos and Foreign Car from being able to retain independent counsel and be able to properly litigate the unfair fee claims of the attorney-lienholders.

89.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorneys engaged in extortionate conduct, and knowingly and willfully violated G. L. c. 231, § 38, G.L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct promulgated by the Supreme Judicial Court.

90.    Under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State, the attorney-lienholders engaged in bad faith conduct that was in violation of G.L. c.. 93A, §§ 2(c), 2(a), and 9, and the Rules and Regulations of the Attorney General promulgated thereunder, more specifically 940 CMR 3.16 (3).

91.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Zabin and other attorney-lienholders who were procedurally realigned by the Suffolk Superior Court as plaintiffs in said interpleader action (counterclaims for malpractice having been filed against them by the

Picciottos, Foreign Car and Nunez), claimed that they held a lien on all of the settlement funds by reason of their previous representation of one or more of the plaintiffs herein and opposed any release to the plaintiffs of their respective settlement funds, including the funds of plaintiffs Melita Picciotto and Athena Picciotto with whom said attorneys had not entered into any representation or fee agreement, on the grounds that the internal unrecorded allocation of the settlement funds was not binding.

92.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, the attorney-lienholders contended that the internal allocation that Travelers had allowed to be made among the beneficiaries of the settlement agreement had been reached in bad faith in order to prevent said attorneys from fully collecting contractual fees that were owed to them by those of the Picciottos, Foreign Car and Nunez with whom they had contingency fee contracts (which did not include plaintiffs Melita Picciotto and Athena Picciotto).

93.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, said attorneys asserted that the monies that each of the Picciottos, Foreign Car and Nunez had agreed to accept in settlement of their respective claims, even those of them who had no contingency fee contract or other contract with said attorneys (Melita Picciotto and Athena Picciotto), actually belonged to those of the Picciottos, Foreign Car and Nunez with whom said attorneys did have such contingent fee contracts.

94.     Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher, Leonard Krulewich and Helen Krulewich, realizing that they, through Casher, had been negligent in connection with the

representation of the Picciottos and Foreign Car, formed a new firm by the name of

"Krulewich Casher, P. C." for the purpose of shielding them from personal liability from

potential future claims against them by the Picciottos and Foreign Car; and they

purchased a new liability insurance policy from Twin City to distance Continental and

Great Northern from liability.

     95.    Based on the arguments advanced by the attorney-lienholders, who were

working under the direction of Continental and Great Northern and in concert with Twin

City, Hartford and First State, the Suffolk Superior Court released to the Picciottos,

Foreign Car and Nunez only such sums as said court determined would be needed in

order to provide them with a defense in said interpleader action with respect to the claims

of said attorneys. The rest of the settlement funds remained held by the court in an

escrow account accruing an extremely low rate of interest (even though the attorney-

lienholders were asserting that they would be entitled to obtain interest at the rate of 12%

per annum with respect to such sums as they could recover from the escrow account).

     96.    On February 11, 2000, the Suffolk Superior Court issued an order in said

interpleader action specifying that at the close of the discovery period therein:

> . . . the Picciottos must plead with specificity any additional
> subsidiary factual information which does not presently appear
> in support of their claims and their counterclaims.  If they do
> not, any additional materials will be barred. And they will have
> 14 days from the close of the fact based discovery in which to
> amend their counter claims and to plead with specificity any
> subsidiary facts.

     97.    Casher knew that Melita Picciotto and Athena Picciotto (in fact, all of the

Picciottos) had valid claims against the attorney-lienholders for tortious interference with

a contract, but under the direction of Continental and Great Northern, and working in

concert with Twin City, Hartford and First State, she did not advance such claims or plead the facts with specificity; thus, the claims were barred.

98.    Casher knew that Melita and Athena Picciotto (in fact, all of the Picciottos) had valid claims against the attorney-lienholders for civil conspiracy, but, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, she did not advance such claims or plead the facts with specificity; therefore, such claims were barred.

99.    In late April or early May of 2000, answers and affirmative defenses were due to be filed with respect to the claims of attorney-lienholder Edward H. Greer in said interpleader action; however, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to file an answer, affirmative defenses or a counterclaim.

100.    In October of 2000, Casher, despite her knowledge that plaintiff Melita Picciotto wanted to represent herself in said interpleader action, and without the consent of plaintiff Melita Picciotto, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, informed the Suffolk Superior Court, at a time when plaintiff Melita Picciotto was not present, that she would be representing plaintiff Melita Picciotto thereafter.

101.    Plaintiff Melita Picciotto attempted to represent herself in said interpleader action despite Casher's representation to the court that she was her attorney; and plaintiff Melita Picciotto filed a notice of appearance on her own behalf.

102. The Suffolk Superior Court, in light of Casher's said representation, refused to allow plaintiff Melita Picciotto to represent herself and ordered Casher to represent said plaintiff.

103. The attorney-lienholders called Casher as a witness against the Picciottos and Foreign Car in the trial of the interpleader action in the Suffolk Superior Court interpleader, her testimony being allowed over the Picciottos' and Foreign Car's objections; and, since the court regarded plaintiff Melita Picciotto as being represented by Casher rather than representing herself, plaintiff Melita Picciotto was not allowed an opportunity to cross-examine Casher.

104. Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher refused to allow the Picciottos and Foreign Car to engage the services of another attorney to cross-examine her when she so testified; and, as a result, the Picciottos and Foreign Car were deprived of necessary legal representation during that portion of the trial.

105. Casher should have known that she would so be called as a witness, since a major issue in the interpleader action was what had occurred in the settlement discussions that had been engaged in with Travelers and whether there had been in fact any agreement as to how to allocate the settlement funds between and among the Picciottos, Foreign Car and Nunez; nonetheless Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, to the detriment of the Picciottos, Foreign Car and Nunez, insisted upon continuing as the attorney for the Picciottos, Foreign Car and Nunez in and with respect to said action.

20

106.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State in said interpleader action, the attorney-lienholders filed a claim against Melita Picciotto, Athena Picciotto, Stefano Picciotto and Judith Picciotto under the provisions of G. L. c. 93A despite the fact that said plaintiffs never had engaged in trade or commerce in the Commonwealth of Massachusetts, a prerequisite for one to be charged with having violated said statute, and despite the fact that Melita Picciotto was a minor child who had no legal capacity to engage in trade or commerce.

107.    At the trial of the interpleader action, the Picciottos and Foreign Car learned that Casher (acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State), had filed on their behalf (except for Foreign Car) an "Intentional Infliction of Emotional Distress" claim against the attorney-lienholders instead of filing a "Negligent Infliction of Emotional Distress" claim, thereby unnecessarily raising the burden of proof and, therefore, preventing the jury from hearing evidence of occasions when the attorney-lienholders had inflicted emotional distress upon said plaintiffs.

108.    At said trial, the Picciottos and Foreign Car asked Casher to attempt to introduce evidence that would support the claims that they had against the attorney-lienholders for having knowingly and wilfully engaged in acts or practices in violation of the provisions of G. L. c. 93A, § 2, or in violation of the rules and regulations issued pursuant thereto, and in violation of G. L. c. 221, § 38, G. L. c. 271, § 39(b), G. L. c. 221, § 40, and the Massachusetts Rules of Professional Conduct.

109.    Under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher refused such requests of the Picciottos and Foreign Car, claiming wrongly that the judge had issued an order barring her from introducing any evidence at trial in support of a claim under G. L. c. 93A. Casher misinformed the Picciottos and Foreign Car that the trial judge had announced that he would reserve to himself (rather than submitting to the jury) a determination as to whether said statute had been violated constituted a ruling that there would be a second, jury-waived trial or presentation with respect to claims under said statute. When the Picciottos and Foreign Car insisted of Casher that she at least attempt to introduce such evidence and, if the judge would not allow the introduction thereof, to make an offer of proof, Casher's response was to stick her middle finger up towards Melita Picciotto and to tell her to "eat sh-t and die."

110.    On December 10, 2002, the Suffolk Superior Court ruled in the interpleader action that, because Casher (under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State) had not made a claim therein on behalf of plaintiffs Melita Picciotto and Athena Picciotto that they were entitled to obtain some of the funds that were provided through the settlement with Travelers, said plaintiffs could not testify or have argument presented to the jury with respect to a claim that they were entitled to obtain any portion of such funds.

111.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed in said interpleader action:

22

(a)    To make a claim on behalf of any of the Picciottos, Foreign Car or
        Nunez with respect to the settlement funds that were being held in
        the escrow account;

(b)    To list in the answer or affirmative defenses to Travelers'
        complaint that the claims regarding Essex Superior Court action
        No. 94-2155 also were settled as part of the settlement agreement;

(c)    To elicit testimony from the attorney-lienholders showing that they
        had made settlement with them impossible during the period of
        January 6, 1999 to April of 1999, by reason of their having made
        excessive fee demands (essentially having sought all of the
        settlement funds for themselves);

(d)    To explain to the court that the refusal to pursue the bankruptcy
        fraud of Salem Suede went to the issue of the breach of contract of
        attorney-lienhoders Gilleran and McCabe, and was appropriate
        evidence for the fact finder in order to determine the true reason
        for the breakdown in the attorney-client relationships ( *i.e.*, that the
        clients' requests were reasonable, but that the attorney-lienholders
        wrongly refused to perform on their contracts);

(e)    To explain the value of the discovery by the Picciottos (rather than
        any of the attorney-lienholders) of the joint orchestration between
        Salem Suede and Travelers of a multimillion dollar bankruptcy
        fraud (which discovery suddenly caused Travelers to offer a

settlement of $9,000,000 in order to prevent full disclosure of such

fraud in continuing litigation);

(f)     To confront expert witnesses for the attorney-lienholders with

evidence that would have exposed their testimony to the jury to be

false or erroneous;

(g)     To expose the false testimony of the attorney-lienholders that they

had not sought fees and costs that were excessive; and

(h)     To cause to be submitted to the jury, as a jury question, the issue as

to who should be responsible for payment of interest as a result of

delay in the distribution of the settlement funds.

112.    Prior-to the trial of said interpleader action, Casher, under the direction of

Continental and Great Northern, and working in concert with Twin City, Hartford and

First State, failed properly to move to dismiss the claims against the Picciotttos and

Foreign Car that were made by attorney-lienholder Edward H. Greer (hereinafter

"Greer") under G. L. c. 221, Section 50, by reason of the fact that Greer never appeared

on behalf of any of the Picciottos or Foreign Car with respect to the claims that had been

settled with Travelers.

113.    Also with respect to Greer in said interpleader action, Casher, acting under

the direction of Continental and Great Northern, and working in concert with Twin City,

Hartford and First State:

(a)     Failed to seek a ruling that, since the court had ruled that the

claims of the Picciottos and Foreign Car against Greer were barred

by the statute of limitations, then Greer's claims against them also were so barred; and

(b)     Refused requests of the Picciottos and Foreign Car that she utilize evidence that would show that Greer was being untruthful in his testimony in claiming that the Picciottos and Foreign Car had induced him into representing them by suggesting that a person who had furnished information would be a willing witness in a case that he was pursuing on their behalf when such evidence showed that he knew that such person would not agree to be a witness.

114.     As a result of the unfair or deceptive acts and practices of Casher while working under the direction of Continental and Great Northern, and also working in concert with Twin City, Hartford and First State, Greer obtained a judgment against the Picciottos and Foreign Car in said interpleader action based upon such untruthful and totally unchallenged testimony.

115.     During the trial of said interpleader action, Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State:

(a)     Did not answer with specificity the answers to interrogatories that the attorney-lienholders had propounded with respect to anticipated expert testimony; and, therefore, the judge barred testimony of an expert witness who had been engaged to testify on behalf of the Picciottos and Foreign Car;

(b)     Did not present expert testimony concerning certain aspects of

malpractice engaged in by some of the attorney-lienholders while

they had represented the Picciottos and Foreign Car;

(c)     Failed property to prepare the expert witnesses who testified on

behalf of the Picciottos and Foreign Car with regard to such

matters areas as to which he was allowed to testify;

(d)     Did not present evidence that the breakdown of the relationship

between the Picciottos and Foreign Car and the attorney-

lienholders had resulted from the failure or refusal of said attorneys

to pursue claims for bankruptcy fraud that had been engaged in by

Salem Suede and its insurer, Travelers, the eventual uncovering of

which by the Picciottos themselves had led to the willingness of

Travelers to offer $9,000,000 to settle all claims against Salem

Suede and Travelers; and

(e)     Deliberately and intentionally misled Judith Picciotto regarding the

follow-up actions that Casher alleged she was taking to protect her

from the oppositions' fraud and misconduct relative to a documents

that had been prepared by one Roberta F. White (hereinafter

"White").

116.     Plaintiff Judith Picciotto instructed Casher to subpoena White and obtain

documents that would expose the fraud with respect to said documents that had been

prepared by White.

117.    Casher stated to Judith Picciotto that she was going to subpoena White and was going to get to the bottom of the fraud, she but did not do so.

118.    Casher was instructed by Continental and Great Northern, working in concert with Twin City, Hartford and First State, not to call White to the stand to be questioned about such fraud and misconduct.

119.    After the trial of the interpleader action, Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, attempted to argue that the court had barred her from introducing evidence supporting the claims of the Picciottos and Foreign Car under G. L. c. 93A, so the court should accept her post-verdict briefs on the subject. The court responded:

> As to the Picciotto parties' arguments concerning the 93A claim, the court has reserved to itself that issue upon the basis of evidence introduced at the jury trial. The court has not "barred evidence" of the 93A claim (opposition p. 10). The court required all the evidence upon all open claims to come in at the jury trial. It reserved to itself the claims and not the evidence. [Docket entry number 510.0 of 1/17/02 in case No. 99-1594-A, Suffolk Superior Court]

120.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to afford the Picciottos and Foreign Car competent and effective legal representation in and with respect to said interpleader action.

121.    After the trial of said interpleader action, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State:

(a)    Refused to answer questions that the Picciottos and Foreign

27

Car had asked about the case and their claims therein;

(b)    Refused to provide the Picciottos and Foreign Car with

documents pertaining to the case that they were requesting; and

( c)    Claimed that they had not retained the documents (or copies)

that would evidence that Casher allegedly had made offers of proof

at said trial.

122.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C, acting under the direction of Continental and Great Northern, and working in concert

with Twin City, Hartford and First State, mismanaged the settlement funds of the

Picciottos and Foreign Car that the court in said interpleader action had released to their

custody, care, and control; and they charged the Picciottos and Foreign Car for

disbursements that were not made on their behalf and overcharged them for

disbursements that had been made on their behalf.

123.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C., under the direction of Continental and Great Northern, and working in concert with

Twin City, Hartford and First State, also embezzled, misappropriated and converted some

of the funds of the Picciottos and Foreign Car that had been so released to their custody,

including, but not limited to diversion of funds into Casher's personal account for her

son's private school tuition and also paying the firm's annual maintenance contract

expenses for its copying machine.

124.    The removal of said funds was done without the knowledge or consent of

the Picciottos and Foreign Car, who only discovered the wrongful actions of Casher,

Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C. in December of 2002

after intervention by the Board of Bar Overseers, which ordered Casher and Krulewich,

Casher, P .C., to produce to the Picciottos and Foreign Car the financial documents that

they were seeking.

125.   The Picciottos and Foreign Car made demand on Casher, Leonard

Krulewich, Helen Krulewich and Krulewich, Casher, P. C. for return of the wrongfully-

removed funds.

126.   Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P .C., acting under the direction of Continental and Great Northern, and working in

concert with Twin City, Hartford and First State, in order to prevent the Picciottos and

Foreign Car from having any funds available to enable them even to order the trial

transcript so that the judgment in said interpleader action could be appealed, refused to

comply with the demands of the Picciottos and Foreign Car that the wrongfully-removed

funds be returned to the account.

127.   On August 21, 2002, plaintiff Melita Picciotto sent a letter to Casher in

which she requested that Casher file a motion on her behalf in the interpleader action for

an emergency release to her of funds from the escrow account because, as she stated

therein, "I am in the middle of an immediate and irreversible hardship. I have no money

for college. I have no money for therapy, so I've stopped receiving it, and I'm running out

of money for my antidepressant medication."

128.   On September 19, 2002, Casher, acting under the direction of Continental

and Great Northern, and working in concert with Twin City, Hartford and First State, sent

a letter to the Picciottos and Foreign Car in which she refused to file such emergency

motion.  In her said letter, Casher, acting under the direction of Continental and Great

29

Northern, and working in concert with Twin City, Hartford and First State, claimed that "an attorney representing Melita and Athena's interests would quite likely file the motion," but "someone representing" Casher's interests "would oppose it."

129.    Casher knew that the above response was in violation of the provisions of G.L. c. 221, § 38, G.L. c. 221, § 40, the Mass. R. Prof. Conduct, and other principles governing the conduct of attorneys.

130.    Acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher also sent a letter to the Picciottos and Foreign Car on September 30, 2002, in which she stated that she could not file the requested motion because it was "directly contrary to [her] own interest."

131.    At the time Casher made those statements, she was the legal representative of Melita Picciotto and Athena Picciotto, pursuant to an Order of the Suffolk Superior Court; and Athena Picciotto was then a minor child.

132.    On October 20, 2002, plaintiff Melita Picciotto sent a letter to Casher in which she requested a release of Five Thousand Dollars ($5,000) from the clients' fund that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. maintained on behalf of the Picciottos so that the Picciottos could "buy medicine, pay mortgage, up coming fuel bill, etc."

133.    Thereafter, Casher, Leonard Krulewich; Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to release any funds to plaintiff Melita Picciotto.

134.    The Picciottos requested of Nunez that he call Casher to have such funds released.

135.    At first Nunez agreed to have Bergeron call Casher and have such sum of $5,000 released to Melita Picciotto.

136.    After conferring with Bergeron and Casher, Nunez refused to honor his agreement.

137.    Bergeron stated that having such sums released would be against her and Nunez's financial interests.

138.    In October of 2002, judgment entered against Nunez in said interpleader action, holding him liable for attorneys' fees, interest, and costs, in a sum of over Three Million Dollars.

139.    Also in October of 2002, judgment entered against Melita and Athena Picciotto in said interpleader action, holding them liable to attorney-lienholder Gilleran for the sum of $15,797.30 and jointly and severally liable to attorney-lienholder McCabe for the sum of $68,507.00 (plus interest).  Under said judgment, the jury determined that Melita Picciotto and Athena Picciotto did not owe anything to any of the other attorney-lienholders from their settlement amount of Two Million Dollars ($2,000,000).

140.    Nunez and Bergeron, aided and abetted by Casher, Leonard Krulewich, Helen Krulewich and Krulewich Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, developed a scheme for Nunez to avoid the Three Million Dollar legal fee judgment by holding Melita and Athena Picciotto liable for the attorney-lienholders'

31

(Zabin, et al) judgment, plus attorneys's fees and costs that had been paid, and, allegedly, because they were further indebted to Casher.

141.   To accomplish this scheme, Nunez and Bergeron executed the strategies set in place by Continental and Great Northern, working in concert with Twin City, Hartford and First State.  Nunez and Bergeron claimed that they were supposed to receive Three Million Dollars net from the settlement funds, regardless of whether the Picciottos and Foreign Car received any settlement funds, and that the Picciottos and Foreign Car had agreed to pay any and all judgments against the Picciottos, Foreign Car and Nunez in the interpleader action, plus all of Casher's and Krulewich, Casher, P.C.'s fees and costs.

142.   The financial benefit to Nunez and Bergeron under this scheme would result in their undue enrichment; the financial benefit to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., resulted from providing them assistance in wrongfully obtaining funds that were rightly due to plaintiffs Melita and Athena Picciotto. The financial benefit to Continental and Great Northern, working in concert with Twin City, Hartford and First State, was that the Picciottos and Foreign Car would be rendered financially unable to pursue their claims against them.

143.   In furtherance of said scheme, Nunez, acting in concert with Bergeron and Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to allow plaintiff Melita Picciotto to obtain $5,000.00 from The Picciotto Family Trust fund for her own medical needs; and they further placed the Picciottos under threat of foreclosure on their family home.

144.    Because Nunez, in concert with Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., who were acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, had removed substantial funds from the Picciotto Family Trust without the Picciottos' knowledge, authorization, or consent, the Picciottos were rendered unable to order the transcript of the trial in the interpleader action (a necessary condition for pursuing an appeal) for over two years, and plaintiff Melita Picciotto was unable to purchase her prescription medicine, all of which caused additional mental and physical harm.

145.    On October 9, 2002, Melita Picciotto requested that Casher move the court to release to her $350,000.00 of her money so she could go to school, buy medication, resume her therapy, and retain an attorney to protect her property interests.

146.    Casher, under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to comply with such request.

147.    On October 9, 2002, the Suffolk Superior Court (Sikora, J.), instructed Casher to order the trial transcript.

148.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to order the trial transcript.

149.    On October 31, 2002, plaintiff Melita Picciotto sent a letter to Leonard Krulewich and Helen Krulewich requesting their intervention and specifically requesting:

33

      (a)    A release of Five Thousand Dollars ($5,000) so that she could meet emergency medical expenses;

      (b)    That the motion be filed that Casher earlier had refused to file; and

      (c)    That all the financial records be made available that pertained to the accounts that Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. had maintained on behalf of the Picciottos and Foreign Car and that Casher had refused to provide despite requests therefor dating back to June of 2002, in violation of the attorney-client account rules.

150.    Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, ignored such requests.

151.    Plaintiffs Melita Picciotto and Stefano Picciotto then turned to the Massachusetts Board of Bar Overseers for help, but despite assistance provided by said Board, the Picciottos and Foreign Car have not been able to obtain omplete records from Casher, Krulewich, Casher, P .C., Helen Krulewich, Leonard Krulewich, who are acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State.

152.    The documents that have been produced to the Picciottos and Foreign Car include copies of checks drawn on commingled accounts with the amount and the name of the payee blacked out, and copies of the corresponding bank statements with the transaction portions also blacked out.

153.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northert, and working in concert with Twin City, Hartford and First State, refused to present an accounting to plaintiffs Melita Picciotto and Stefano Picciotto in Probate Court Format, as Massachusetts Bar Counsel had requested, Casher stating that she was "unfamiliar with it." Bar Counsel suggested to plaintiffs Melita Picciotto and Stefano Picciotto that they take legal action to enforce their rights.

154.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. pursued and obtained in the Suffolk Superior Court an attachment on the residence of the Picciottos in a suit that they filed seeking further fees and costs from the Picciottos. While acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, said attorneys and said law firm falsely claimed that they had been absolved of any wrongdoing by the Bar Counsel with respect to their dealings with the Picciottos.

155.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, sought such attachment knowing that plaintiffs Stefano Picciotto and Judith Picciotto were about to refinance the mortgage on their said residence so as to enable them to obtain sufficient funds to appeal the judgment in said interpleader action, both by ordering a transcript of the proceedings and by engaging legal representation.

156.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P .C., sought and obtained such attachment under the direction of Continental and Great

Northern, and working in concert with Twin City, Hartford and First State, in effort to,

among other things, keep the Picciottos and Foreign Car from being able to have the

means to pursue such an appeal and thereby, among other things, expose the misconduct

that said attorneys had engaged in while representing the Picciottos and Foreign Car as

well as the misconduct of Continental and Great Northern, working in concert with Twin

City, Hartford and First State.

157.    Because Casher, Leonard Krulewich, Helen Krulewich and Krulewich,

Casher, P.C. (acting under the direction and control of Continental and Great Northern,

and working in concert with Twin City, Hartford and First State) refused to release to

plaintiff Melita Picciotto $5,000 of her own funds for her pressing medical needs, and

because they also refused to file a motion on behalf of said plaintiff in order to have some

of her funds that are being held in the escrow account released to her, said plaintiff filed a

*pro se* motion in the Massachusetts Appeals Court for an emergency release of funds.

Krulewich, Casher, P.C. and Casher, acting under the direction of Continental and Great

Northern, in concert with Twin City, Hartford and First State, opposed said motion on

November 20, 2002.

158.    On November 26, 2002, plaintiffs Melita Picciotto and Athena Picciotto

moved the Suffolk Superior Court to have the attorney-lienholders in said interpleader

action paid without abridging any party's right to appeal, and to have the remainder of the

money released to the Picciottos, Foreign Car and Nunez, pursuant to the jury verdicts

and in accordance with their agreed-upon division of the settlement funds.

36

159.    Nunez, under the direction of Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., and working in concert with Continental, Great Northern, Twin City, Hartford and First State, opposed the obtaining by plaintiffs Melita Picciotto and Athena Picciotto of the remainder of their Two Million Dollar settlement amount after paying the amounts that the jury had found that they owed to the attorney-lienholders in said interpleader action.

160.    Even though the Suffolk Superior Court has ordered Nunez to honor his contract (*i.e.*, the internal settlement allocation) with plaintiffs Melita Picciotto and Athena Picciotto, Nunez now is refusing to honor such contract because of the interference and undue influence of Bergeron, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C. (who are acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State).

161.    When Krulewich, Casher, P.C., and Casher filed their opposition to the motion of plaintiffs Melita and Athena Picciotto to be allowed to receive their money, Casher was under court order to represent the financial interests of plaintiff Melita Picciotto; and she was obligated, pursuant to the requirements of Rule 1.3 of the Massachusetts Rules of Professional Conduct, to "zealously" represent said plaintiffs' interests.

162.    The verified opposition to the motion of plaintiff Melita Picciotto that Casher and Krulewich, Casher, P.C. filed in the Appeals Court (under the direction of Continental and Great Northern and acting in concert with Twin City, Hartford and First State) urged the court not to release any funds to said plaintiff; and it contained facts that Krulewich, Casher, P.C. and Casher knew to be harmful and false (such as that the

Picciottos' mortgage loan on their house had been paid, etc.); however, despite having

such knowledge, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P

.C., acting under the direction of Continental and Great Northern, and working in concert

with Twin City, Hartford and First State, failed zealously ro represent plaintiff Melita

Picciotto' s interests with respect to said motion and the matter that was addressed

therein, in violation of Rule 1..3 of the Massachusetts Rules of Professional

Responsibility.

163.    But for the malpractice of Casher, Leonard Krulewich, Helen Krulewich

and Krulewich, Casher, P.C.  in:

(a)    Negligently taking on Nunez as a client without the requisite

consultation";

(b)    Negligently not listing the amounts that each party had agreed to settle for

in the settlement agreement with Travelers;

(c)    Negligently not reducing to writing in the same settlement agreement the

terms and conditions of the internal settlement;

(d)    Negligently refusing to settle the attorney-lienholders' claims at the time

of the settlement with Travelers; and

(e)    Negligently not making a claim on behalf of Melita Picciotto and Athena

Picciotto against the funds that were deposited by Travelers into the

Suffolk Superior Court,

they would not have created an otherwise avoidable conflict of interest.

164.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C. had a heightened duty zealously to represent the financial interests of plaintiff Melita

38

Picciotto, who was a minor child throughout their representation, but, at the direction of

Continental and Great Northern, and working in concert with Twin City, Hartford and

First State, they filed an opposition to Athena Picciotto's receiving her property while

they were her legal representatives.

165.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C., acting under the direction of Continental and Great Northern, and working in

concert with Twin City, Hartford and First State, intended to inflame the court, prejudice

plaintiff Melita Picciotto, and coerce Melita Picciotto into acquiescing to their unfair fee

demands by acknowledging that she would be financially liable for the legal fees and

expenses incurred by the other clients, including Nunez, absent any contractual

agreement to such liability.  This was done in bad faith so that the Picciottos and Foreign

Car would be rendered unable to pursue their claim against Continental and Great

Northern.

166.    On November 29, 2002, plaintiffs Melita and Athena Picciotto sent a

demand letter to Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher,

P.C., under the provisions of G. L. c. 93A, § 9, setting forth claims on their behalf for

damages of between Five Million Seven Hundred Twenty Thousand Dollars ($5,720,000)

and Eight Million Four Hundred Thousand Dollars ($8,400,000).

167.    Plaintiffs Melita Picciotto and Athena Picciotto offered to reduce and

settle their claims against Casher, Leonard Krulewich, Helen Krulewich and Krulewich,

Casher, P .C., for Two Million Dollars ($2,000,000), which the insurer for said

defendants has claimed is the limit of coverage under their professional liability insurance

policies.

168.    On December 28, 2002, Casher, Leonard Krulewich, Helen Krulewich and

Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern,

and working in concert with Twin City, Hartford and First State, responded to said

demand letter by denying all "allegations of wrongdoing" and by refusing to make any

tender of settlement at all.

169.    On March 4, 2004, an attorney selected by Leonard Krulewich and Casher

to represent Nunez wrote a letter to the Picciottos and Foreign Car in which she

demanded that they acquiesce to Nunez's being released an additional One Million Eight

Hundred Thousand Dollars ($1,800,000) from the escrowed funds held by the Suffolk

Superior Court.

170.    When the Picciottos and Foreign Car would not acquiesce to such demand,

Nunez and Bergeron, working in concert with Casher, Leonard Krulewich, and Helen

Krulewich, who were taking direction from Continental and Great Northern, and working

in concert with Twin City, Hartford and First State, took action to inflict additional

economic harm on the Picciottos and Foreign Car by seeking in said interpleader action

to have Judge Sikora, whom they have admitted under the pains and penalties of perjury

is, in their opinion, biased against the Picciottos, release to Nunez funds that they knew

rightfully belonged to plaintiffs Melita Picciotto and Athena Picciotto.

171.    On March 1, 2001, Casher had her deposition taken in and with respect to

said interpleader action in which she represented the Picciottos and Nunez.

172.    On March 12, 2001, Krulewich, Casher, P.C., now fully aware that the

negligence of Casher and/or Leonard Krulewich, Helen Krulewich or Krulewich, Casher,

P .C. had been exposed, again gave notice of one or more potential malpractice claims to its insurer (which at the time was Twin City).

173.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P. C. knew, or had reason to know, that their insurers Continental and Twin City also provided liability insurance coverage to the attorney-lienholders in said interpleader action.

174.    Neither Casher, Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P .C., nor anyone else on their behalf ever informed the Picciottos and/or Foreign Car that a notice of a potential claim had been given to said insurers.

175.    On October 15, 2002, Casher, although she was then the official record-keeper of Krulewich, Casher, P .C, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, informed plaintiff Melita Picciotto that she had no idea as to the identify of the malpractice insurance carrier for her or for Krulewich, Casher, P.C.

176.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, have denied that either they or anyone on their behalf, ever provided notice of a potential claim to either Twin City or Continental prior to the filing by plaintiff Melita Picciotto of a malpractice claim against Casher, Krulewich, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

177.    On March 12,2001, Krulewich, Casher, P.C. purchased a professional liability policy with Clarendon National Insurance Company (hereinafter "Clarendon").

178.    On March 12, 2002, Krulewich, Casher, P .C. purchased a professional liability policy with TIG Specialty Insurance Solution (hereinafter referred to as "TIG").

179.    Owing to the refusal of Leonard Krulewich, Helen Krulewich, Casher or Krulewich, Casher, P .C. (who were acting under the direction of Continental and Great Northern and working in concert with Twin City, Hartford and First State) to provide Melita Picciotto and Athena Picciotto with any relief, Melita and Athena Picciotto were forced to send a G.L. c. 93A letter of demand to the forgoing parties.

180.    In November of 2002, in order to shield their liabilities from Continental and Great Northern, Leonard Krulewich, Helen Krulewich, Casher, or Krulewich,Casher, P.C., requested defense from the TIG against the rightful claims of Melita and Athena Picciotto.

181.    At the time they so requested such defense, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C. knew that Continental had the duty to defend and to indemnify the claims of Melita and Athena Picciotto because the claims were first reported to Continental.

182.    Leonard Krulewich, Helen Krulewich, Casher, and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, agreed to hide the true insurance coverage in effort to shield themselves and their insurers.

183.    Leonard Krulewich, Helen Krulewich, Casher, and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City and First State, have provided periodic reports to their insurers.

184.    The insurers Continental and Twin City, to the detriment of the Picciottos and Foreign Car, used such periodic reports during the interpleader action to afford them an unfair advantage in defending the attorney-lienholders with respect to the claims that the Picciottos and Foreign car had asserted against the attorney-lienholders therein.

185.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, refused to obey an order of the Essex Superior Court to provide Melita Picciotto with (among other documents) all notices of claims, all applications for insurance, and all of the insurance policies that they submitted to, or obtained from, their insurance companies.

186.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P .C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, retained Attorney Robert A. Stolzberg (hereinafter "Stolzberg") to be an expert witness in said interpleader action against some of the attorney-lienholders.

187.    Stolzberg, Casher, and Krulewich, Casher, P .C., represented to the Picciottos and Foreign Car that Stolzberg was a Harvard Law School graduate and an expert in contract law and that he would be well able to testify to the malpractice of attorney-lienholders in and with respect to their representation of the Picciottos and Foreign Car.

188.    Stolzberg, Casher, Leonard Krulewich, Helen Krulewich, and Krulewich, Casher, P .C., worked together in preparing answers to interrogatories that would describe the intended testimony of Stolzberg in said interpleader action.

189.    Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to prepare (along with Stolzberg) said answers carefully and with sufficient and complete specificity with respect to the anticipated testimony of Stolzberg; and, as a result, Stolzberg was barred by the Suffolk Superior Court in the interpleader action from testifying with respect to several issues that pertained to the malpractice of the attorney-lienholders.

190.    On December 24, 2001, plaintiff Stefano Picciotto sent a letter to Casher and Krulewich, Casher, P.C. urging them to make sure that Stolzberg would testify with regard to the issues that said plaintiff presented in said letter.

191.    On December 26, 2001, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher assured plaintiff Stefano Picciotto that she had faxed a copy of said letter to Stolzberg; that she and Stolzberg had discussed it at length; that Stolzberg was familiar with the case law; and that Stolzberg was going to testify in accordance with the information that was contained in said letter.

192.    On December 27, 2001, Stolzberg testified in said interpleader action; and while on the stand, he could not remember: (a) any of the facts or law that were described in said letter of December 24, 2001, or (b) the name of the attorney who had prevailed in case that pertained to significant issues involved in the interpleader action, such attorney being the judge who was presiding at the trial of the interpleader action.

193.    Stolzberg left the jury with the clear impression that the Picciottos, Foreign Car and he simply were there to unfairly malign attorney-lienholder Gilleran and

44

deceptively prevent him from collecting what would have been a fair fee if he had not been guilty of any malpractice or breach of contract.

194.    Continental knew that Casher had a history of depression and suicidal ideation.  Continental also knew that Casher had been hospitalized for attempted suicide, and used this information to unfairly take advantage of the Picciottos and Foreign Car.

195.    Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, attributed her inability to remember the facts of the case during the trial of the interpleader action to the unethical conduct of the attorney-lienholders, combined with a "crooked" judge, all of whom she claimed were making her feel suicidal, causing her to be emotionally upset, and causing her to be so depressed that she was losing her memory.

196.    Prior to the trial of the interpleader action, Casher never revealed to any of the Picciottos or Foreign Car that she had a mental condition that could materially impair her ability to represent them.

197.    Casher had an obligation to the Picciottos and Foreign Car, pursuant to Rule 1.16(a) (2) of the Mass. Rules of Professional Conduct, to withdraw from representing them and to help them to find another attorney to represent them, but acting under the direction of Continental and Great Northern, working in concert with Twin City, Hartford and First State, failed or refused to do so.

198.    Casher knew that she was a material witness, and as a lawyer, pursuant to Rule 3.7A of the Massachusetts Rules of Professional Conduct, knew that she could not act as an advocate in a trial in which she was a necessary witness; but acting under the

direction of Continental and Great Northern, working in concert with Twin City, Hartford and First State, failed or refused to do so.

199.    After the judgment entered against the Picciottos and Foreign Car in the interpleader action that was filed in the Suffolk Superior Court, the Picciottos and Foreign Car filed a notice of appeal.

200.    The Picciottos and Foreign Car requested of Casher that she or Leonard Krulewich, Helen Krulewich or Krulewich, Casher, P.C. order a copy of the transcript of the proceedings.  Casher, acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, responded that there was no money to order the transcript (an initial deposit in the amount of $25,000 being required in order for preparation thereof to commence) despite the fact that the Suffolk Superior Court had released to her and/or her firm Seven Hundred and Fifty Thousand Dollars ($750,000) in April of 2001.

201.    Acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, Casher, and/or Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C., in April of 2001, deposited said sum of $750,000 into the operating account for said attorneys, and then a check in the amount of only Five Hundred Fifty Thousand Dollars ($550,000) was made out against such sum in favor of Casher, as Trustee of the Picciotto Family Trust, without obtaining any authorization therefor from the Picciottos and Foreign Car to retain the missing difference (*i.e.*, $200,000.00).

202.    Subsequently, in December of 2001, without the authorization of the Picciottos or Foreign Car, Casher, acting under the direction of Continental and Great

Northern, and working in concert with Twin City, Hartford and First State, sent to

Bergeron a check payable to Bergeron in the amount of Twenty-five Thousand Dollars

($25,000) against funds held by Casher as Trustee of the Picciotto Family Trust.

203.    As a result of the failure of Casher, Leonard Krulewich, Helen Krulewich

and Krulewich, Casher, P .C., acting under the direction of Continental and Great

Northern, and working in concert with Twin City, Hartford and First State, to make

money available for the ordering of said transcript from funds belonging to the Picciottos

and Foreign Car, they caused a delay of the appeal of the judgment in the Suffolk

Superior Court interpleader action, thereby causing the amount of interest accruing with

respect to the judgment to increase beyond what should have been necessary; and they

have jeopardized the appeal because the Suffolk Superior Court has suggested that the

appeal should be dismissed because of the delay in ordering said transcript.

204.    The Picciottos and Foreign Car, more than 30 days prior to the date of the

filing of this amended complaint, sent demand letters to Continental, Great North,

Hartford and Twin City under the provisions of G. L. c. 93A, § 9, in which they made

demands for relief against said defendants as provided in said statute.

205.    Continental, Great North, Hartford and Twin City have failed to make any

tender of settlement to the Picciottos or Foreign Car as provided for in said statute in

response to said letters that were sent to them by the Picciottos and Foreign Car.

### Count One

206.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

207.     Continental, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as:

      (a)    To cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Leonard Krulewich, Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron; and

      (b)    To cause harm to the Picciottos and Foreign Car by the tortious conduct and breaches of contractual obligations of others.

208.     As a result, Continental has become jointly liable to the Picciottos and Foreign Car for all tortious conduct and breaches of contractual obligations with respect to the Picciottos and Foreign Car of those with whom Continental has engaged in such civil conspiracy.

209.     The Picciottos and Foreign Car have been caused to suffer harm, both economic and physical, as a result of the conduct of Continental.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Continental in the amount of their damages, plus interest and costs.

## Count Two

210.     The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

211.     Continental, by its forgoing actions, tortiously interfered with the contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

48

212.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Continental in the amount of their damages, plus interest and costs.

### Count Three

213.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

214.    Continental, by its negligence, has caused harm to be incurred by the Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Continental in the amount of their damages, plus interest and costs.

### Count Four

215.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

216.    Continental engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

217.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Continental in the amount of their damages, plus interest and costs.

## Count Five

218.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

219.    Continental engages in trade or commerce within the Commonwealth of Massachusetts.

221.    Continental's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)    Determine that said conduct of Continental represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

(c)    Award the Picciottos and Foreign Car the amount of such damages;

(d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

(e)    Award the Picciottos and Foreign Car against Continental up to three, but not less than two, times the amount of their actual damages;

(f)     Award the Picciottos and Foreign Car against Continental their reasonable
attorney's fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be just and
proper.


## Count Six

222.     The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

223.     Great Northern, by its forgoing actions, engaged in a civil conspiracy
against the Picciottos and Foreign Car so as:

(a)     To cause property of the Picciottos and Foreign Car to be wrongly
transferred to the attorney-lienholders, Casher, Leonard Krulewich,
Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron;
and

(b)     To cause harm to the Picciottos and Foreign Car by the tortious
conduct and breaches of contractual obligations of others.

224.     As a result, Great Northern has become jointly liable to the Picciottos and
Foreign Car for all tortious conduct and breaches of contractual obligations with respect
to the Picciottos and Foreign Car of those with whom Great Northern has engaged in
such civil conspiracy.

225.     The Picciottos and Foreign Car have been caused to suffer harm, both
economic and physical, as a result of the conduct of Great Northern.

51

WHEREFORE, the Picciottos and Foreign Car demand judgment against
Great Northern in the amount of their damages, plus interest and costs.

## Count Seven

226.    The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

227.    Great Northern, by its forgoing actions, tortiously interfered with the
contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich,
Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

228.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great
Northern in the amount of their damages, plus interest and costs.

## Count Eight

229.    The Picciottos and Foreign Car here restate and incorporate by reference
the allegations set forth in paragraphs 1 through 205 of the complaint.

230.    Great Northern, by its negligence, has caused harm to be incurred by the
Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great
Northern in the amount of their damages, plus interest and costs.

<u>Count Nine</u>

231.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

232.    Great Northern, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

233.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Great Northern in the amount of their damages, plus interest and costs.

<u>Count Ten</u>

234.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

235.    Great Northern engages in trade or commerce within the Commonwealth of Massachusetts.

236.    Great Northern's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

    (a)    Determine that said conduct of Great Northern represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

    (b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

    (c)    Award the Picciottos and Foreign Car the amount of such damages;

    (d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

    (e)    Award the Picciottos and Foreign Car against Great Northern up to three, but not less than two, times the amount of their actual damages;

    (f)    Award the Picciottos and Foreign Car against Great Northern their reasonable attorney's fees and costs; and

    (g)    Grant such other and further relief as the Court shall deem to be just and proper.

<u>Count Eleven</u>

237.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

238.    Hartford, by its forgoing actions, engaged in a civil conspiracy against the Picciottos and Foreign Car so as:

    (a)    To cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Leonard Krulewich, Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron; and

    (b)    To cause harm to the Picciottos and Foreign Car by the tortious conduct and breaches of contractual obligations of others.

239.    As a result, Hartford has become jointly liable to the Picciottos and Foreign Car for all tortious conduct and breaches of contractual obligations with respect to the Picciottos and Foreign Car of those with whom Hartford has engaged in such civil conspiracy.

240.    The Picciottos and Foreign Car have been caused to suffer harm, both economic and physical, as a result of the conduct of Hartford.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford in the amount of their damages, plus interest and costs.

## Count Twelve

241.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

242.    Hartford, by its forgoing actions, tortiously interfered with the contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

243.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford

in the amount of their damages, plus interest and costs.

<u>Count Thirteen</u>

244.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

245.    Hartford, by its negligence, has caused harm to be incurred by the

Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford

in the amount of their damages, plus interest and costs.

<u>Count Fourteen</u>

246.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

247.    Hartford, by its forgoing actions, engaged in fraud and deceit against the

Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be

wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

248.    As a result, the Picciottos and Foreign Car have been caused to suffer

harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Hartford

in the amount of their damages, plus interest and costs.

<u>Count Fifteen</u>

249.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

250.    Hartford engages in trade or commerce within the Commonwealth of Massachusetts.

251.    Hartford's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

    (a)    Determine that said conduct of Hartford represents one or more unfair of deceptive practices declared unlawful under the provisions of M.G.L. c. 93A, Section 2 or the rules and regulations issued pursuant thereto;

    (b)    Determine the amount of damages that the Picciottos and Foreign Car have suffered as a result of said conduct;

    (c)    Award the Picciottos and Foreign Car the amount of such damages;

    (d)    Determine that said conduct represented a willful or knowing violation of the provisions of said Section 2;

    (e)    Award the Picciottos and Foreign Car against Hartford up to three, but not less than two, times the amount of their actual damages;

(f)     Award the Picciottos and Foreign Car against Hartford their reasonable

attorney's fees and costs; and

(g)     Grant such other and further relief as the Court shall deem to be just and

proper.


Count Sixteen


252.    The Picciottos and Foreign Car here restate and incorporate by reference

the allegations set forth in paragraphs 1 through 205 of the complaint.

253.    Twin City, by its forgoing actions, engaged in a civil conspiracy against

the Picciottos and Foreign Car so as:

(a)     To cause property of the Picciottos and Foreign Car to be wrongly

transferred to the attorney-lienholders, Casher, Leonard Krulewich,

Helen Krulewich, Krulewich, Casher, P.C., Nunez, and Bergeron;

and

(b)     To cause harm to the Picciottos and Foreign Car by the tortious

conduct and breaches of contractual obligations of others.

254.    As a result, Twin City has become jointly liable to the Picciottos and

Foreign Car for all tortious conduct and breaches of contractual obligations with respect

to the Picciottos and Foreign Car of those with whom Twin City has engaged in such

civil conspiracy.

255.    The Picciottos and Foreign Car have been caused to suffer harm, both

economic and physical, as a result of the conduct of Twin City.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin City in the amount of their damages, plus interest and costs.

### Count Seventeen

256.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

257.    Twin City, by its forgoing actions, tortiously interfered with the contractual relationships between the Picciottos and Foreign Car and Casher, Krulewich, Casher, Leonard Krulewich, Helen Krulewich and Krulewich, Casher, P.C.

258.    As a result, the Picciottos and Foreign Car were caused to suffer harm.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin City in the amount of their damages, plus interest and costs.

### Count Eighteen

259.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

260.    Twin City, by its negligence, has caused harm to be incurred by the Picciottos and Foreign Car.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin City in the amount of their damages, plus interest and costs.

## Count Nineteen

261.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

262.    Twin City, by its forgoing actions, engaged in fraud and deceit against the Picciottos and Foreign Car so as to cause property of the Picciottos and Foreign Car to be wrongly transferred to the attorney-lienholders, Casher, Nunez, and Bergeron.

263.    As a result, the Picciottos and Foreign Car have been caused to suffer harm, both economic and physical.

WHEREFORE, the Picciottos and Foreign Car demand judgment against Twin City in the amount of their damages, plus interest and costs.

## Count Twenty

264.    The Picciottos and Foreign Car here restate and incorporate by reference the allegations set forth in paragraphs 1 through 205 of the complaint.

265.    Twin City engages in trade or commerce within the Commonwealth of Massachusetts.

266.    Hartford's conduct with respect to the Picciottos and Foreign Car constitutes the use or employment of one or more unfair or deceptive acts or practices in violation of the provisions of G. L. c. 93A, Section 2, or the rules and regulations issued pursuant thereto.

WHEREFORE, the Picciottos and Foreign Car pray that the Court, pursuant to the provisions of G. L. c. 93A, §§ 9 and 11:

(a)    Determine that said conduct of Twin City represents one or more unfair of

deceptive practices declared unlawful under the provisions of M.G.L. c.

93A, Section 2 or the rules and regulations issued pursuant thereto;

(b)    Determine the amount of damages that the Picciottos and Foreign Car

have suffered as a result of said conduct;

(c)    Award the Picciottos and Foreign Car the amount of such damages;

(d)    Determine that said conduct represented a willful or knowing violation of

the provisions of said Section 2;

(e)    Award the Picciottos and Foreign Car against Twin City up to three, but

not less than two, times the amount of their actual damages;

(f)    Award the Picciottos and Foreign Car against Twin City their reasonable

attorney's fees and costs; and

(g)    Grant such other and further relief as the Court shall deem to be just and

proper.

## DEMAND FOR JURY TRIAL

The Picciottos and Foreign Car hereby demand a trial by jury with respect to all

issues as to which they are entitled to a jury trial.

STEFANO PICCIOTTO
Pro Se


Stefano Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


JUDITH PICIOTTO
Pro Se


Judith Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


MELITA PICCIOTTO
Pro Se


Melita Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


ATHENA PICCIOTTO
Pro Se


Athena Picciotto
418 Lafayette Street
Salem, MA 01970
(978) 741-0218


62

FOREIGN CAR CENTER, INC.

By its attorney,

James M. Shannon, Jr.
BBO # 453610
418 Rear Lafayette Street
Salem, Massachusetts 01970
(978) 741-0218

Dated:  August 18, 2005

## COMPARISON OF PICCIOTTO COMPLAINTS

The factual allegations in the Amended Complaint filed in this action are nearly identical to the allegations made in the Amended Complaint the Picciottos filed against Dana Casher and other in Picciotto et. .al. v. Casher, et al., Essex Sup. Ct. No. 04-2340A.

The table below will assist the Court in comparing the two complaint. . Of the 206 factual allegations contained in the Amended Complaint filed in this case, at least 150 are identical or nearly identical to allegations made in the Casher lawsuit. In at least forty-three (43) instances, the Picciottos have added a tagline such as "working in concert with Twin City, Hartford and First State" in order to expand the allegations against Casher to the defendants in this action. Paragraphs that employ this tactic are displayed on the table in **bold**.

| Current Case Paragraph | Casher Case Paragraph | Current Case Paragraph | Casher Case Paragraph | Current Case Paragraph | Casher Case Paragraph | Current Case Paragraph | Casher Case Paragraph |
|---|---|---|---|---|---|---|---|
| 1 | 1 | 35 | 30 | 52 | 47 | **121** | **93** |
| 2 | 2 | 36 | 31 | 53 | 48 | **122** | **94** |
| 18 | 15 | 37 | 32 | 54 | 49 | **123** | **95** |
| 19 | 16 | 38 | 33 | 55 | 50 | 124 | 97 |
| 20 | 17 | 39 | 34 | 56 | 51 | 125 | 98 |
| 21 | 18 | 40 | 35 | 57 | 52 | 126 | 99 |
| 22 | 19 | 41 | 36 | 58 | 53 | 127 | 104 |
| 23 | 20 | 42 | 37 | 59 | 54 | 128 | 105 |
| 26 | 21 | 43 | 38 | 60 | 55 | 129 | 106 |
| 27 | 22 | 44 | 39 | 61 | 57 | **130** | **107** |
| 28 | 23 | 45 | 40 | 62 | 56 | 131 | 108 |
| 29 | 24 | 46 | 41 | **63-65** | **58** | 132 | 110 |
| 30 | 25 | 47 | 42 | 68 | 59 | **133** | **111** |
| 31 | 26 | 48 | 43 | **69** | **60** | 134 | 112 |
| 32 | 27 | 49 | 44 | **70** | **61** | 135 | 113 |
| 33 | 28 | 50 | 45 | **71** | **62** | 136 | 114 |
| 34 | 29 | 51 | 46 | **97** | **65** | 137 | 115 |

| Current Case Paragraph | Casher Case Paragraph |
|---|---|
| 100 | 74 |
| 101 | 75 |
| 102 | 76 |
| 103 | 77 |
| **104** | **78** |
| **106** | **79** |
| **107** | **80** |
| 108 | 81 |
| **109** | **82** |
| **110** | **83** |
| **111** | **84** |
| **112** | **86** |
| **113** | **87** |
| **114** | **88** |
| **115** | **89** |
| **119** | **90** |
| **120** | **91** |

| Current Case Paragraph | Casher Case Paragraph |
|---|---|
| 138 | 116 |
| 139 | 117 |
| **140** | **118** |
| **141** | **119** |
| **142** | **120** |
| **143** | **121** |
| **144** | **122** |
| 145 | 123 |
| **146** | **124** |
| 147 | 125 |
| **148** | **126** |
| 149 | 127 |
| **150** | **127** |
| **151** | **128** |
| 152 | 129 |
| **153** | **130** |
| **154** | **131** |

| Current Case Paragraph | Casher Case Paragraph |
|---|---|
| **155** | **132** |
| **156** | **133** |
| **157** | **134** |
| 158 | 135 |
| **159** | **136** |
| 160 | 137 |
| 161 | 139 |
| **162** | **140** |
| 163 | 141 |
| **164** | **142** |
| **165** | **143** |
| 166 | 144 |
| 167 | 145 |
| **168** | **146** |
| 169 | 147 |
| **170** | **148** |
| 171 | 149 |

| Current Case Paragraph | Casher Case Paragraph |
|---|---|
| 172 | 150 |
| 173 | 151 |
| 174 | 152 |
| **175** | **153** |
| **176** | **154** |
| 177 | 155 |
| 178 | 156 |
| **179** | **157** |
| 180 | 158 |
| 181 | 159 |
| **182** | **160** |
| **183** | **161** |
| **184** | **162** |
| **185** | **164** |
| **186** | **165** |
| 187 | 166 |
| 188 | 167 |

| Current Case Paragraph | Casher Case Paragraph |
|---|---|
| **189** | **168** |
| 190 | 169 |
| **191** | **170** |
| 192 | 171 |
| 193 | 172 |
| **195** | **175** |
| 196 | 176 |
| 197 | 177 A |
| **198** | **177 B** |
| 199 | 178 |
| **200** | **179** |
| **201** | **180** |
| **202** | **181** |
| **203** | **182** |