UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

| | |
|---|---|
| STEPHANO PICCIOTTO, JUDITH | ) |
| PICCIOTTO, ATHENA PICCIOTTO, | ) |
| MELITA PICCIOTTO, and FOREIGN | ) |
| CAR CENTER INC., | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )    C.A. No. 05-10901-NG |
| | ) |
| CONTINENTAL CASUALTY CO., GREAT | ) |
| NORTHERN INSURANCE CO., HARTFORD | ) |
| INSURANCE CO., and TWIN CITY | ) |
| INSURANCE CO., | ) |
|    Defendants. | ) |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS
### September 29, 2006

## I.    INTRODUCTION

The Picciotto family ("the Picciottos") has been involved in a long series of cases in this Court, as well as the Massachusetts state court, stemming from a single toxic tort case the Picciottos originally brought against Salem Suede, Inc. for toxic harms. The family alleges that their lawyer Dana Casher ("Casher"), committed malpractice, undermining a Nine Million Dollar settlement with Travelers Indemnity Company ("Travelers"), Salem Suede's insurer, by failing to secure releases from the Picciottos' previous attorneys, among other things. The Picciottos' previous attorneys then filed a substantial lien on the Salem Suede recovery in an interpleader action brought by Travelers in state court. In the instant case, plaintiffs seek

to recover from four insurance companies, each of which is related to the previous and pending state litigation in various ways, having either insured Casher, her firm, the attorney-lienholders, or "reinsured" the policy that Travelers had issued to Salem Suede.  The plaintiffs allege:

> Under the direction of Continental and Great Northern, and working in concert with Twin City [and] Hartford . . . the attorney-leinholders created a Joint Defense Team known as the 'Picciotto Defense Group' to work in a "unified fashion with a single strategy" against the Picciottos and Foreign Car in the interpleader action.

Am. Compl. ¶ 83.  The plaintiffs further allege that the defendants, acting as the "Picciotto Defense Group," specifically directed Casher to act in a way that denied the plaintiffs competent and effective legal representation in the state interpleader action.  Am. Compl. ¶ 120.

While the case against the attorney lien-holders and Casher proceeds in state court, the Picciottos bring this action in federal court, but notably without Casher, whose presence would destroy diversity.

Defendants Twin City Insurance Company and Hartford Insurance Company have filed a motion to dismiss on three grounds: 1) non-joinder of an indispensable non-diverse party,

namely Casher, 2) "Colorado River" abstention,[1] and 3) lack of diversity.  In addition, Hartford argues that the complaint should be dismissed because the party named in the complaint, "Hartford Insurance Company" is not a legal entity.

For the reasons discussed below, plaintiffs' complaint is **DISMISSED** for failure to join an indispensable party.  Since I dismiss the case on joinder grounds, I decline to address the defendants' other claims.[2]

## II.  FACTUAL BACKGROUND

Plaintiffs Stefano and Judith Picciotto[3] brought suit in 1983 against Salem Suede on behalf of themselves and their company, Foreign Car Center.  Foreign Car is also a plaintiff in the current action.[4]  In their initial tort suit, the Picciottos alleged that Salem Suede, whose factory neighbored Foreign Car, had committed a toxic tort, namely release of "toxic emissions." Def. Opp. at 3.  Plaintiffs won this action in a 1993 jury trial,

---

[1] "Colorado River" abstention refers to the doctrine first articulated in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

[2] Plaintiffs' motion to amend the name of Hartford Insurance Company is therefore **MOOT**. [Docket entry #45]

[3] Their children, Athena and Melita, were not parties to the first suit. Rather, they brought their own suit against Salem Suede in 1994, Melita Picciotto v. Salem Suede.  Am. Compl. ¶ 22.  That case was dismissed with prejudice as part of the 1999 settlement with Travelers.  Am. Compl. ¶ 68.

[4] For simplicity, I will refer to all plaintiffs (the Picciottos and Foreign Car) collectively as "the Picciottos" or "plaintiffs."

but Salem Suede subsequently went into bankruptcy. Am. Compl. ¶¶ 19-23.

In the bankruptcy proceedings, Dana Casher ("Casher"), of Krulewich Associates (later Krulewich, Casher) represented the Picciottos and Foreign Car Center.  Plaintiffs allege that without their consent, Casher also took on the representation of Nunez, a former Foreign Car employee, in the bankruptcy proceedings.

In 1998-1999, plaintiffs engaged in settlement negotiations with Salem Suede's insurer, Travelers.  Plaintiffs critique Casher's role in this negotiation, noting that she "allowed" the negotiations to run until 4:00 a.m. and that she "refused" to allow them to leave the conference to consider the settlement agreement overnight before signing.  Am. Compl. ¶37, 45. Travelers agreed to pay the Picciottos, Foreign Car, and Nunez a combined total of $9 million to settle all of their claims.

Following the settlement, the Picciottos' prior counsel sought attorneys' fees from the settlement money.  As part of an interpleader action, which Travelers brought in state court following the settlement, six of the Picciottos' former attorneys filed claims for unpaid attorneys fees.  The Picciottos counter-claimed for legal malpractice.  The Picciottos lost.  The attorneys were awarded fees, notwithstanding the Picciottos malpractice claims.  Defendants represented that, as of October

-4-

17, 2005, that case was on appeal in the state court. Def. Opp.
at 5.

The Picciottos next sued Casher for malpractice in state
court. Plaintiffs allege that Casher violated the Massachusetts
Rules of Professional Conduct by failing to specify the
allocations of the Nine Million Dollars in the initial settlement
agreement. Am. Compl. § 50. According to the plaintiffs, the
plaintiffs and Casher had agreed that Casher would be paid $1
million from the settlement money and from that sum she would pay
any other attorneys who had previously represented the plaintiffs
in that action. Am. Compl. ¶ 43. However, the attorney-
lienholders refused to execute and deliver releases to Casher,
releasing Travelers from further liability, and as a result,
Travelers refused to turn over any of the settlement funds. Am.
Compl. ¶ 54-56.

In addition, the Picciottos and the attorneys continue to
pursue other, related claims in state court. Indeed, there were
so many lawsuits involving the same set of facts that they have
been consolidated into a single case – <u>Casher, et al. v.
Picciotto et al.</u> – with a state court judge was specially
assigned to preside over them.[5] Def. Opp. at 5. That case is

_____

[5] In <u>Casher, et al. v. Picciotto et al.</u>, Casher is suing the Picciottos
for unpaid fees. The Picciottos, in turn, are suing Casher, Nunez, and
another of their former attorneys for a number of claims similar to those in
this suit: breach of obligation under attorney-client fee agreement,
negligence, civil conspiracy and interference with contract, fraud and deceit,
breach of fiduciary duty, among others. All current state court claims

set for trial in January of 2007. In 2001, I also stayed a
related case – <u>Picciotto v. Zabin</u> – brought by the Picciottos
against the attorney lienholders pending resolution of the state
court issues.[6]

### A.    <u>Plaintiffs' Claims</u>

Plaintiffs state the following five claims against each of
the defendants:  1) Civil Conspiracy;[7] 2) Tortious Interference
with the contractual relations between Plaintiffs and Casher and
her law firm; 3) Negligence; 4) Fraud; and 5) Mass. Gen Laws 93A
claims.

These claims are raised against Continental in claims 1-5,
against Great Northern in claims 6-10, against Hartford in claims
11-15, and against Twin City in claims 16-20.

Defendants allege that plaintiffs have brought the present
suit largely to obtain discovery that has been denied them in the
on-going state court action and further, to "pressure their state
court opponents" and their opponents' insurers.  Def. Opp. at 7.
Defendants also assert that the current claims against them are
nearly identical to the plaintiffs' state court claims against
Casher.  <u>See</u> n. 5, <u>supra</u>.  Of the 206 factual allegations in the

_____

brought by or against the Picciottos are part of this consolidated case.

[6] That case remains stayed.

[7] Defendants perceive this as a conspiracy between the insurers and
Casher.  Perhaps recognizing that this could make Casher an indispensable
party, plaintiffs in their reply brief state that they are alleging civil
conspiracy among the insurers, not including Casher.

present amended complaint, defendants contend at least 150 are "identical or nearly identical" to allegations in the state court case against Casher.  Def. Reply Mem. at 3.[8]  Indeed, defendants assert that with respect to at least forty allegations in the complaint, the plaintiffs have restated the exact same claim and simply added the words "under the direction of" the defendants in this case.[9]  Id.

B.    **The Present Defendants**

1.    **Continental Casualty and Great Northern**

According to plaintiffs, Continental Casualty insured the law firm of Krulewich, Casher during the relevant period in 1998-2000. Am. Compl. ¶¶ 12-15.  Great Northern provided an umbrella insurance policy to Krulewich during this period as well.[10] Plaintiffs allege that both Continental Casualty and Great Northern provided "coverage for any harm caused by negligent supervision by Leonard and/or Helen Krulewich of the acts, errors or omissions of employee Casher."  Am. Compl. ¶17.

---

[8] Defendants' Motion for Leave to File Reply Brief was granted.  [Docket entry #42]

[9] For example, in the state court case, the Picciottos alleged that Casher "refused to allow the Picciottos and Foreign Car to engage the services of another attorney. . . "  In the current complaint, they allege that "*Under the direction of Continental and Great Northern, and working in conjunction with Twin City, Hartford and First State*, Casher refused to allow the Picciottos and Foreign Car to engage the services of another attorney . . . " Def. Reply Mem. at 3 (emphasis added).

[10] Continental and Great Northern also "reinsured" the policies that Travelers had issued to Salem Suede, either directly or through their subsidiaries, affiliates, or parent company. Am. Compl. ¶ 74, 75.

Plaintiffs state that when Casher became aware of her error in failing to obtain releases from the Picciottos' former attorneys in the January 1999 Salem Suede settlement, she notified Continental, her professional liability insurer, and Krulewich notified Great Northern, of the potential claims against them. Am. Compl. ¶59.  Plaintiffs allege that Continental and Great Northern took charge of the claim.

Plaintiffs allege that "under the direction of Continental and Great Northern," Casher "exercised coercive pressure" on the plaintiffs to sign an amendment to the settlement agreement that released Travelers, Salem Suede's insurer, of its obligation to pay the agreed upon settlement. Am. Compl. ¶63.  Plaintiffs complain that this allowed Travelers to escape its contractual liability, file an interpleader action, and deposit the settlement funds in a court-controlled escrow account. Plaintiffs further allege that Casher, under the direction of Continental and Great Northern also:

    a.   prevented plaintiffs from sending a timely
         demand to Travelers under Mass. Gen. Laws 93A
         to enforce the settlement agreement.

    b.   failed to respond to the interpleader action
         filed in state court or to file crossclaims
         and counterclaims in that action.

### 2.   Twin City and Hartford

Plaintiffs allege that Twin City and Hartford, either directly or through their subsidiaries (including First State),

"reinsured" the policies that Travelers had issued to Salem Suede.  Plaintiff further states that these companies "knew that their insureds had been negligent" in handling the Picciottos' claims.  Am. Compl. ¶78-80.  Plaintiffs also allege that Twin City insured "the negligent acts, errors, [and] omissions" of some of the attorney-lienholders.  Am. Compl. ¶76-77.  Plaintiffs claim that the attorney-lienholders, at the direction of all four defendants in the present action, coordinated their efforts to fight the Picciottos' claims, working as "Joint Defense Team known as the 'Picciotto Defense Group.'"  Am. Compl. ¶83, 87-88.

According to plaintiffs, Casher knew that the Picciottos had valid claims against the attorney-lienholders and Travelers, but under the direction of defendants, she did not plead these claims in the state interpleader action.  In effect, they allege that Casher made a series of bad decisions in representing the Picciottos in the interpleader action, and that she did so at the behest of the defendant insurers.

Defendants deny acting with Casher or otherwise violating plaintiffs' interests.  Moreover, they claim that plaintiffs who unsuccessfully tried to subpoena documents from Twin City as part of the state court litigation bring this action to do an end-run around the pending state cases.

## III.  **ANALYSIS**

### A.  **Legal Standard for a Motion to Dismiss**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "must accept as true the well-pleaded factual allegations of the Complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (internal citation omitted). The Court may "differentiate between well-pleaded facts, on the one hand, and bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like, on the other hand; the latter "can safely be ignored." Id. (internal quotation omitted). A complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (internal citation omitted).

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows for a defense of "failure to join a party under Rule 19." In addition, if the parties lack diversity in a case that is in this Court on diversity jurisdiction, the Court may dismiss *sua sponte* for lack of subject matter jurisdiction. Delgado v. Plaza Las Americas, Inc., 139 F.3d 1 (1st Cir. 1998).

**B.   Joinder of Casher under Rule 19**

Defendants argue that Dana Casher is both a "necessary" and "indispensable" party under Federal Rule of Civil Procedure 19 ("Rule 19").

Rule 19 requires a two step analysis. First, I must consider whether Casher is a "necessary" party, i.e. a person who should be "joined if feasible" under Rule 19(a). If Casher is a necessary party but joinder is not feasible because it would defeat diversity,[11] I must consider whether she is an "indispensable" party to the action. Pujol v. Shearson American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).

This Rule is designed to advance "several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Z & B Enterprises, Inc. v. Valle-Figueroa et al, No. 05-1064, 2006 U.S. App. LEXIS 1124, at *5 (1st Cir. Jan. 18, 2006) quoting Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982). The Rule invites a "pragmatic, case-specific examination of whether resolution of a case in the absence of a particular party comports with the Federal Rules' twin goals of fairness and efficiency." Horizon

---

[11] Joining Casher would destroy diversity because both she and the plaintiffs are residents of Massachusetts, meaning that the case must be dismissed for lack of subject matter jurisdiction.

<u>Bank & Trust Co. v. Flaherty</u>, 309 F. Supp. 2d 178, 191 (D. Mass. 2004).

For the reasons explained below, I find that Casher is both a necessary and an indispensable party to the present litigation.

### 1.  **"Necessary" Parties**

Rule 19(a) states that a person is a "necessary" party if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

In making this determination, courts should keep in mind that the "interests that are being furthered by Rule 19(a)(1) are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." <u>Z & B Enterprises, Inc.</u>, No. 05-1064, 2006 U.S. App. LEXIS 1124 at *13 (internal punctuation omitted) (citing Fed. R. Civ. P. 19 advisory committee's notes).  The court must determine whether "considerations of efficiency and fairness" require joinder in a particular case.  <u>Id.</u> at *7.

Defendants argue that Casher is a necessary party because she has a "vital interest" in the potential outcome of the case and "her absence may adversely impact her rights and leave others already party to this litigation with double, multiple and otherwise inconsistent obligations." Def. Mem. at 9. In particular, they argue that: (1) the outcome of the case could cause the loss of Casher's existing insurance coverage in the Superior Court litigation; and (2) proceeding without Casher could cause the current defendants to incur multiple or inconsistent obligations to the Picciottos. Def. Mem. at 7.

Indeed, defendants suggest that "Casher's role in this matter is pervasive." The plaintiffs repeatedly cite her conduct as evidence of the alleged conspiracy among the defendants in this case. (For example, the complaint says that Casher, "acting under the direction of Continental and Great Northern, and working in concert with Twin City, Hartford and First State, failed to file an answer, affirmative defenses or a counterclaim" in the state court interpleader action. Am. Compl. ¶99.)

Casher would be a necessary party if this Court found *either* that the litigation would "impair or impede" her ability to protect her interests, Fed. R. Civ. P. 19(a)(2)(i) *or* if the case would leave the defendants subject to multiple obligations,

as explained in Fed. R. Civ. P. 19(a)(2)(ii).[12]  On the first
issue, defendants argue that a verdict for the plaintiffs in the
present action could adversely impact Casher in her state court
case.  Although the ruling would not be binding in the state
court, the "adverse ruling could, as a practical matter, impair
its probability of success in a future proceeding and reduce its
ability to reach a favorable settlement." Gonzalez v. Cruz, 926
F.2d 1, 6 (1st Cir. 1991); see also Acton Co. v. Bachman Foods,
Inc., 668 F.2d 76, 78 (1st Cir. 1982) (finding a parent company
to be a "necessary" party where the company played a "substantial
role" in negotiating the contracts at issue and proceeding
without the company would "as a practical matter impair or
impede" the company's ability to protects its interests in the
matter).

I agree that Casher has a significant interest in protecting
her own rights, and further, that proceeding without her could be
prejudicial to those interests.  There can be no doubt that this
litigation would involve significant testimony about the
legitimacy of Casher's conduct.  And further, that testimony
would be relevant to the state court proceeding where she faces

---

[12] An insured is not typically a necessary party in an action against
the insurer because the insurer is the real party in interest.  Gonzalez v.
Cruz, 926 F.2d 1, 6 (1st Cir. 1991) citing Provident Tradesmens Bank & Trust
Co. v. Patterson, 390 U.S. 102 (1968).  This case is distinguishable, however,
because plaintiffs are not suing the defendants as insurers but rather because
of their own alleged negligence, conspiracy, etc. related to, but not stemming
directly from, the insurance coverage.

similar claims.  As defendants point out, 150 of the 206 factual
allegations in the complaint are virtually identical to those in
the state suit against Casher.  While the outcome of the federal
litigation would not be binding on Casher as *res judicata* if she
were not a party to the case, it could nonetheless affect her.
It could hamper her ability to settle the state case.  It could
also cause her to lose her insurance coverage in the state case.
In an affidavit filed with the defendants' motion to dismiss,
Casher writes: "I strongly object to the federal court action
proceeding in my absence because there is a possibility that the
outcome of the federal action could adversely impact me and my
insurance coverage."  Def. Mot. to Dismiss, Ex. A at 2.  Given
these concerns, it seems unreasonable to proceed without giving
Casher an opportunity to properly defend her interests.

Plaintiffs argue Casher is *not* a necessary party.  However,
plaintiffs concede that part of its complaint involves the
allegation that defendants "advised Dana Casher to act in such a
way as to protect their interests (and purportedly hers) that as
a consequence caused harm to plaintiffs." Pl. Opp. at 6.  In
effect, plaintiffs concede that Casher's actions are inextricably
linked to the defendants' alleged conduct.  While plaintiffs deny
that their complaint alleges a civil conspiracy between
defendants and Casher, as opposed to merely a conspiracy among
defendants, id. at 6-7, 12, that is not dispositive.  Under the

-15-

definition in Rule 19(a)(2)(i), Casher's interests could be adversely affected if this litigation proceeds without her, whether she is formally included in the conspiracy or not.

In addition, two other countervailing issues are worth noting, which point against joinder. First, courts are generally hesitant to require joinder because of a desire to let plaintiffs control their own litigation. "[C]ompulsory joinder of a party is an exception to the general practice and should be ordered only where significant countervailing considerations make the joinder of particular absentees desirable." Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 14 (D.P.R. 2000).

Secondly, as a general matter, co-conspirators and joint tortfeasors are not considered indispensable parties. See Pujol v. Shearson American Express, Inc., 877 F.2d 132, 137 (1st Cir. 1989) (noting that "a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissible party subject to joinder under Rule 20"). Thus, to the extent that plaintiffs' claims rest on the joint liability of Casher and the insurers, Casher would not be a "necessary party."[13]

---

[13] To be sure, because of the vagueness of plaintiffs' claims, it is not entirely clear whether Casher would be best characterized as a joint tortfeasor in this suit rather than a coconspirator. Either way, the analysis is the same.

Despite these concerns, the standards of Rule 19 are easily met in the case at bar. It is abundantly clear that Casher's interests could be harmed by resolution of this dispute if she is not joined as a party. Likewise, the defendants would be harmed by facing inconsistent obligations in this proceeding and the parallel state proceeding. I therefore find that Attorney Dana Casher is a "necessary" party as defined by Rule 19(a).[14]

## 2.  "Indispensable" Parties

Because Casher is a "necessary" party and joinder is not feasible without destroying subject matter jurisdiction, I must decide whether she is also an "indispensable party," that is, whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b).

The Rule 19(b) determination involves "the balancing of competing interests and must be steeped in pragmatic considerations." Travelers Indemnity Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989) (internal quotations omitted).

Four factors guide the Rule 19(b) analysis:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by

---

[14] Indeed, to find that Casher is a necessary party requires only one of the factors under the Rule: "To be necessary, a party need only satisfy one of these [Rule 19(a)] factors." Z&B Enterprises, Inc., No. 05-1064, 2006 U.S. App. LEXIS 1124, at *11.

protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); see also Z&B Enterprises Inc., No. 05-1064, 2006 U.S. App. LEXIS 1124, at *14-15; Pujol, 877 F.2d at 134.[15]

Evaluation of these factors plainly points in favor of finding that Casher is also an indispensable party to this action. First, as discussed earlier, adjudication of this case without Casher could be prejudicial to her in the state court proceeding or in her efforts to settle that case out of court. It bears directly on her insurance coverage. Moreover, it could also lead to the present defendants facing multiple, overlapping, and perhaps inconsistent judgments stemming from the same actions.

As to the second factor, it would be difficult if not impossible for this Court to shape relief that would not implicate Casher's interests. Indeed, plaintiffs have not

---

[15] The Supreme Court has characterized the four 19(b) factors slightly differently from the language of the rule: 1) The plaintiff's interest in having a forum; 2) the defendants' interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another; 3) the interest of the party who cannot be joined in protecting her own rights; and 4) the interest of the court and the public in complete, consistent, and efficient settlement of controversies. Travelers Indemnity Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989) citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. at 109. The analysis, however, remains the same.

suggested any way in which relief could be shaped so as to avoid such prejudice.

The third factor, whether a judgment rendered in the person's absence will be adequate, is more complicated.  From the plaintiffs' perspective, adequate relief could be shaped without Casher since the plaintiffs could conceivably fully recover from the defendants, obviating the need to proceed in state court on this claim.  At the same time, the First Circuit has stated that this factor includes "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."  Z&B Enterprises Inc., No. 05-1064, 2006 U.S. App. LEXIS 1124, at *15 quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968).  Here, the existence of related, and in some ways, identical on-going state court litigation demonstrates the availability of an alternative forum and the efficiency of litigating the entire case in state court. See Acton Co., Inc. v. Bachman Foods, Inc., 668 F.2d 76, 81 (1st Cir. 1982) (finding that the "public interest in avoiding piecemeal and inefficient litigation is especially strong where, as here, it is evident that the ongoing state court action will adjudicate the entire controversy").[16]

---

[16] As noted above, many of the claims that the Picciottos brought in state court against their former attorneys are similar to the claims brought in this case against their insurers: breach of obligation under attorney-client fee agreement, breach of the covenant of good faith and fair dealing, negligence, breach of fiduciary duty, conversion, civil conspiracy and interference with contract, and fraud and deceit, among others.

Finally, as the fourth factor, the plaintiffs would also have an adequate remedy if the case was dismissed for nonjoinder of an indispensable non-diverse party.  Plaintiffs' remedy would be in the state court, where there is a judge specially assigned to the consolidated case, where the cases are already underway, and which have the power to grant the relief plaintiffs seek.  As the First Circuit explained in Z&B Enterprises, plaintiffs can join all of these parties as defendants in a suit in a state court and, as in that case, "[p]laintiffs have not given any reason as to why the commonwealth court would be an inadequate alternative, and we see no reason to believe that the commonwealth court would be an inadequate forum."  Z&B Enterprises Inc., No. 05-1064, 2006 U.S. App. LEXIS 1124, at *16. Nothing prevents the plaintiffs in this case from joining all of the defendants in the ongoing state cases as well.

Based on these factors, I conclude that "equity and good conscience" require dismissal of the case for failure to join an indispensable party.

### 3.   Supplemental Jurisdiction

The Picciottos argue that Casher's entry into the case would not destroy diversity because supplemental jurisdiction under 28 U.S.C. §1367 would allow her presence in the case.  See Pl. Opp.

---

at 7-9.  This is plainly incorrect.  While the statute authorizes supplemental jurisdiction over additional parties, it specifically prohibits the exercise of supplemental jurisdiction over persons joined under Rule 19 in diversity cases.[17]  Thus, because Casher is a "necessary" and "indispensable" party under Rule 19, supplemental jurisdiction cannot be used to preserve diversity in this case.

### 4.    Joinder as a Plaintiff

In a last ditch effort to prevent Casher from destroying diversity, plaintiffs suggest that if Casher is a necessary party, she could be joined as a *plaintiff*, thereby preserving diversity.  This makes no sense in the present action, where Casher's interests are contrary to those of the plaintiffs.  While plaintiffs seek to malign Casher's conduct, Casher would seek to defend it.  In addition, Casher has no evident claims against the defendants.  Therefore, if Casher is deemed a necessary and indispensable party, she would have to be joined as a defendant, and this would destroy diversity.

### 5.    Judicial Estoppel

Plaintiffs contend that defendants have asserted a contrary position in state court and therefore judicial estoppel should

---

[17] "[T]he district court shall not have supplemental jurisdiction . . . over claims by plaintiffs against persons made parties under Rule 19 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with [diversity jurisdiction]."  28 U.S.C. §1367(b).

bar them from pursuing the current claim in this Court.  In particular, they note that in the state court litigation, Twin City filed a motion to quash a subpoena on the grounds that the *documents* the Picciottos sought from Twin City were unrelated to the state court action.  Plaintiffs note that Twin City now contends that the *state court proceeding* is relevant to the Picciottos' claims against defendants.  It is entirely possible that the particular Twin City records were irrelevant to the Picciottos' state court case but that the state court case *in toto* is related to the present action.  As plaintiffs themselves note, judicial estoppel applies when a party presents a position "directly inconsistent" with one it has previously put forth. <u>Fleet Nat'l Bank v. Gray</u>, 375 F.3d 51, 61 (1st. Cir. 2004). Nothing on this record meets that test.[18]

**IV.    <u>CONCLUSION</u>**

     The current state court litigation is well-advanced (set for trial in January 2007), and appears to be the most appropriate venue for additional, related litigation.  The similarity of the state court litigation explains, in part, why attorney Casher is both a necessary and indispensable party to the case in this Court.

_____

[18] Plaintiffs have not presented sufficient information about the state court motion to quash to suggest that it is in any way directly inconsistent with the arguments in the motion to dismiss.

Because Casher's conduct is inextricably intertwined with the instant claims and her interests could be substantially affected by the instant litigation, and because joinder of Casher is not possible without destroying diversity jurisdiction, I hereby **GRANT** defendants' motion to dismiss [docket entry. #31]

Notably, although the current motion to dismiss is brought only by two of the four defendants, dismissal on this grounds merits dismissal of the entire case. The other defendants have *not* joined the current motion to dismiss, but because this is a dismissal for nonjoinder, the court can dismiss the entire case *sua sponte*. See Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 2 (1st Cir. 1998)(noting that "We have squarely held that a district court may raise the issue of nonjoinder sua sponte"). The same considerations that make Casher an indispensable party to the suit against Twin City and Hartford also make her indispensable in an action against Continental and Great Northern. I therefore **DISMISS** this case in its entirety.

**SO ORDERED.**

Date:  September 29, 2006            /s/NANCY GERTNER, U.S.D.J.

-23-