# United States Court of Appeals
## For the First Circuit

No. 06-2685

STEFANO PICCIOTTO, JUDITH PICCIOTTO,
MELITA PICCIOTTO, ATHENA PICCIOTTO,
AND FOREIGN CAR CENTER, INC.,

Plaintiffs, Appellants,

v.

CONTINENTAL CASUALTY COMPANY,
GREAT NORTHERN INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY
AND TWIN CITY FIRE INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nancy Gertner, U.S. District Judge]

Before

Lipez, Circuit Judge,
Selya, Senior Circuit Judge,
and Howard, Circuit Judge.

George Richardson, with whom Stefano Picciotto, Judith
Picciotto, Melita Picciotto, and Athena Picciotto, pro se, and
James M. Shannon, were on brief, for appellants.
Scott D. Burke, with whom Harvey Weiner, Timothy O. Egan,
Peabody & Arnold LLP, Morrison Mahoney LLP, Michael R. Byrne, and
Melick, Porter & Shea LLP, were on brief, for appellees.

January 7, 2008

**LIPEZ, Circuit Judge.** This case requires us to consider the interrelationship of joinder and supplemental jurisdiction in a diversity case. The Picciotto family and their company, Foreign Car Center, Inc., ("the Picciottos"), appeal the dismissal of their complaint for failure to join an indispensable party. The district court found that Dana Casher, a citizen of Massachusetts, is a necessary and indispensable party in the Picciottos' suit against Casher's malpractice insurers and others for civil conspiracy. Because the Picciottos are also Massachusetts citizens, the district court dismissed the complaint, concluding that joinder of Casher would destroy its diversity jurisdiction.

On appeal, the Picciottos challenge the district court's determination that Casher is both necessary and indispensable. Alternatively, they argue that 28 U.S.C. § 1367 grants supplemental jurisdiction to the district court, allowing Casher to be joined as a defendant under Federal Rule of Civil Procedure 19 without destroying diversity, provided that the plaintiffs do not assert any claims against her. Finding no abuse of discretion in the district court's determination that Casher is a necessary and indispensable party, and rejecting the Picciottos' assertion that the supplemental jurisdiction statute permits joinder of nondiverse indispensable parties, we affirm the dismissal.

I.

This appeal is the latest episode in a long series of cases involving the Picciotto family, stemming from a toxic tort action brought by the Picciottos against Salem Suede, Inc. in 1983.[1] Although the Picciottos prevailed in a jury trial against Salem Suede in 1993, winning a $1.8 million judgment, Salem Suede subsequently filed for bankruptcy. In the bankruptcy proceedings and settlement negotiations with Salem Suede's insurer, Travelers, the Picciottos hired Dana Casher to represent them.

The Picciottos allege that, without their consent, Casher also agreed to represent Juan Nunez, a former Foreign Car Center employee with claims against Salem Suede, in the negotiations with Travelers. The Picciottos also criticize Casher's representation in the settlement talks with Travelers. They allege that, after allowing the negotiations to run late into the night, Casher refused to allow them to leave the conference to consider the settlement agreement overnight before signing. They further contend that she violated the Massachusetts Rules of Professional Conduct by failing to specify in the settlement agreement itself the allocation among the Picciottos, Nunez, and Casher of the $9

---

[1]In that suit, the Picciotto family, their company, and their employees sought recovery for injuries and property damage caused by exposure to toxic chemicals emitted by Salem Suede, a leather finishing company located adjacent to the Foreign Car Center in Peabody, Massachusetts.   The factual history recounted in this section is drawn from the Picciottos' federal complaint and the district court's memorandum and order dismissing the case.

million settlement Travelers had offered. They claim that Casher had agreed to be paid $1 million from the settlement money, with the understanding that she would use part of this money to pay the other attorneys who had previously represented the Picciottos in their toxic tort case against Salem Suede.[2]  However, when the Picciottos' former attorneys refused to sign releases discharging Travelers from additional liability for attorneys' fees, Travelers refused to turn over the settlement funds.

The Picciottos claim that when Casher realized her error in failing to obtain releases from the other attorneys, she and her firm notified Continental and Great Northern, her firm's malpractice insurers,[3] of potential malpractice claims.  The Picciottos allege that "Continental and Great Northern took charge of the claim and, from that point on, directed the conduct of Casher." They allege that Continental and Great Northern had also reinsured the Travelers policy issued to Salem Suede. They contend that these insurance companies joined forces with Twin City and

---

[2]There were five individual attorneys, as well as several law firms, that made claims against the settlement funds.

[3]The Picciottos allege that Continental provided professional liability coverage for Casher and that her firm also purchased an "umbrella policy" from Great Northern.  It appears that Casher's firm switched liability carriers from Continental to TIG, an affiliate of Twin City, in March 2000.  However, the record contains little evidence related to insurance coverage apart from the Picciottos's allegations.

-4-

Hartford,[4] two other reinsurers of the Travelers policy, and the Picciottos' former attorneys[5] to form "The Picciotto Defense Group." They further allege that Continental and Great Northern, working in concert with Twin City and Hartford, directed Casher to coerce the Picciottos into agreeing to amend the settlement agreement with Travelers. They assert that this amendment allowed Travelers to escape its contractual obligation to pay out the settlement funds and instead to file an interpleader action, depositing the funds in a court-controlled escrow account. The Picciottos further claim that Casher, acting under the direction of Continental and Great Northern, prevented the Picciottos from sending a timely demand letter to Travelers, as required by Massachusetts General Laws Chapter 93A,[6] and failed to file the appropriate crossclaims and counterclaims for the benefit of the Picciottos in the interpleader action.

---

[4]The Picciottos' complaint also describes First State, which it identifies as a subsidiary of Twin City and Hartford, as a co-conspirator, but that company is not named as a defendant.

[5]The Picciottos allege that Twin City insured two of the former attorneys. They also aver that Continental insured some of their former attorneys, in addition to Casher and her firm.

[6]Massachusetts's unfair trade practices law requires that "[a]t least thirty days prior to the filing of [a claim], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws ch. 93A, § 9.

In the interpleader action, the Picciottos' former attorneys filed claims for unpaid fees and the Picciottos counterclaimed for malpractice. The Picciottos lost. The litigation continued as the Picciottos next sued Casher for malpractice in state court. In another suit, they also asserted a variety of claims against Nunez, Casher, and another of their former attorneys, including breach of obligation under an attorney-client fee agreement, negligence, civil conspiracy, interference with contract, fraud, and breach of fiduciary duty. Casher, in turn, has sued the Picciottos for unpaid fees. All of the state court cases involving the Picciottos have been consolidated into a single case with a state court judge specially assigned to preside over them.

In the case at bar, the Picciottos brought suit against Continental, Great Northern, Hartford, and Twin City, predicated on diversity jurisdiction under 28 U.S.C. § 1332. They claim that the defendant insurance companies engaged in a civil conspiracy to interfere tortiously with the contractual relations between the Picciottos, Casher, and Casher's law firm. They also assert claims for negligence, fraud, and violation of Chapter 93A against each of the defendants.

The defendants contend that the Picciottos have brought this suit largely to obtain discovery that they had been denied in the state court actions and to "pressure their state court

-6-

opponents" and their opponents' insurers.[7]   The defendants note
that the claims asserted against the defendant insurers in this
federal case are nearly identical to the claims asserted against
Casher in the state case, and that Casher's conduct is central to
this action.  The defendants moved for dismissal on the ground that
Casher is both a necessary and an indispensable party under Federal
Rule of Civil Procedure 19 ("Rule 19") and that her joinder is not
feasible because it would destroy the district court's diversity
jurisdiction.  The court granted the motion to dismiss and this
appeal ensued.

## II.

## A.  Standard of Review

In  this  circuit,  we  review  a  district  court's
determination that a party is "indispensable" under Rule 19(b) for
abuse of discretion.  B. Fernández & Hnos., Inc. v. Kellogg USA,
Inc., 440 F.3d 541, 547-548 (1st Cir. 2006); Travelers Indem. Co.
v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989).  This deference is
warranted because "Rule 19(b) determinations . . . are anything but
pure legal conclusions."  Travelers, 884 F.2d at 635.  "Instead,
they involve the balancing of competing interests and must be
steeped in 'pragmatic considerations.'"  Id.

_____

[7]None of the defendant insurance companies are parties in the
state court litigation.  TIG, an affiliate of Twin City, is
providing Casher's defense in the state court under a policy
purchased by her firm in 2000, some time after the alleged
conspiracy among the insurance companies began.

We have not previously determined the correct standard to apply in reviewing a district court's determination that a party is "necessary" under Rule 19(a). <u>United States</u> v. <u>San Juan Bay Marina</u>, 239 F.3d 400, 403 (1st Cir. 2001) (citing <u>Tell</u> v. <u>Trustees of Dartmouth Coll.</u>, 145 F.3d 417, 418-419 (1st Cir. 1998) (noting "some difference among the circuits" regarding the appropriate standard of review)). Like Rule 19(b), Rule 19(a) requires the trial court to make pragmatic judgments[6] and to "decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party." <u>Pujol</u> v. <u>Shearson/American Express, Inc.</u>, 877 F.2d 132, 134 (1st Cir. 1989). Such pragmatic judgments generally warrant deference to the trial court because they "turn[] on specific facts, will not recur in identical form and the district judge is closer to the facts . . . and has a comparative advantage over a reviewing court." <u>Tell</u>, 145 F.3d at 418 n.1. The <u>Tell</u> panel indicated that "[i]f it mattered" in that case, it "would be inclined to apply an abuse of discretion standard to such application-of-law decisions under Rule 19(a)." <u>Id.</u> at 418-19. We

---

[6]The text of Rule 19(a)(2)(i) emphasizes the pragmatic nature of this determination. It requires the court to determine "as a practical matter" whether the absent party's interests will be impaired or impeded by her absence. Fed. R. Civ. P. 19(a)(2)(i). A new version of Rule 19 took effect on December 1, 2007, renumbering the subsections of Rule 19(a) and (b) and adding additional headings. The substance of the rule has not changed. We refer herein to the version of the rule in effect at the time the district court made its determinations in 2006.

-8-

share that inclination and now explicitly hold that the abuse of discretion standard applies in both the Rule 19(a) and Rule 19(b) contexts.

Indeed, all of the circuits that have examined the question have applied an abuse of discretion standard to Rule 19(a) determinations. Nat'l Union Fire Ins. Co. v. Rite Aid, Inc., 210 F.3d 246, 250 n.7 (4th Cir. 2000) (collecting cases and holding that abuse of discretion standard applies to both Rule 19(a) and 19(b) determinations); see Keweenaw Bay Indian Cmty. v. Michigan, 11 F.3d 1341, 1346 (6th Cir.1993) (holding that Rule 19(a) determinations are subject to an abuse of discretion review, while Rule 19(b) determinations are to be reviewed de novo); see also Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1022 (9th Cir. 2002); Davis v. United States, 192 F.3d 951, 957 (10th Cir. 1999).[9]

_____

[9]The Ninth and Tenth Circuits review Rule 19 determinations under an abuse of discretion standard, but review underlying legal conclusions supporting Rule 19 determinations de novo.   Am. Greyhound Racing, 305 F.3d at 1022; Davis, 192 F.3d at 957. Although this more nuanced formulation is easily misunderstood, see, e.g., W. Md. Ry. Co. v. Harbor Ins. Co, 910 F.2d 960, 963 n.6 (D.C. Cir. 1990) (stating that Rule 19(a)(2)(ii) determinations are reviewed de novo, but citing Ninth Circuit precedent for support), it is tantamount to an abuse of discretion review.   Because a district court by definition abuses its discretion when it makes an error of law, Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir.2003), even under an abuse of discretion standard, we "review the district court's answers to abstract questions of law de novo," Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004).   The Third and Seventh Circuits have not explicitly determined whether the abuse of discretion standard would apply when an error of law is not alleged. See Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477, 481 (7th Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404

An abuse of discretion exists when the district court makes an error of law, Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir.2003), or "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors," Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 37 (1st Cir. 2003).

## B. Rule 19 Analysis

Rule 19 addresses circumstances in which a lawsuit is proceeding without particular parties whose interests are central to the suit. It provides for the joinder of such "necessary" parties when feasible. Fed. R. Civ. P. 19(a). It then provides for the dismissal of suits when the court determines that the joinder of the "necessary" parties is not feasible, but that they are, nonetheless, so "indispensable" that the suit must not be litigated without them. Fed. R. Civ. P. 19(b).

In proceeding with its inquiry into both necessity and indispensability, a district court should keep in mind the policies that underlie Rule 19, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982). The

(3rd Cir. 1993).

Supreme Court has instructed that the decision whether to dismiss for nonjoinder is a practical determination that "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 (1968).

1. Necessary Party

Against this policy backdrop, the district court must first determine whether the absent person is a necessary party. Pujol, 877 F.2d at 134. In other words, the court must decide whether the person "fits the definition of those who should 'be joined if feasible' under Rule 19(a)."[10] Id. Thus, as the district court explained, Casher "would be a necessary party if [the district court] found either that the litigation would 'impair or impede' her ability to protect her interests, Fed. R. Civ. P.

___

[10] Rule 19(a) provides that an absent party is necessary if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Although Rule 19(a) no longer contains the word "necessary," the term has been retained by courts as a convenient shorthand for the Rule 19(a) determination. See Janney, 11 F.3d at 404 n.4 (citing Provident Tradesmens Bank, 390 U.S. at 116 n.12).

-11-

19(a)(2)(i) or if the case would leave defendants subject to multiple obligations as explained in Fed. R. Civ. P. 19(a)(2)(ii)." The court then went on to find Casher's presence necessary under both aspects of the Rule 19(a)(2) test.[11]

In analyzing Rule 19(a)(2)(i), the district court noted two ways in which the federal litigation could, as a practical matter, impair Casher's ability to protect her interests in the state court proceeding. First, the court stated that "[w]hile the outcome of the federal litigation would not be binding on Casher as res judicata if she were not a party to the case," an adverse ruling would nonetheless impair Casher's ability to settle the state law claims against her. Settlement position is a valid consideration in the practical inquiry required by Rule 19(a)(2)(i) because, even without a direct preclusive effect, an adverse judgment could be "persuasive precedent in a subsequent proceeding, and would weaken [the absent party's] bargaining position for settlement purposes." Acton, 668 F.2d at 78; see also Gonzalez v. Cruz, 926 F.2d 1, 6 (1st Cir. 1991) (holding that although a ruling against the absent party would not be binding in the state court,

_____

[11]Rule 19(a)(1) provides a third criterion by which an absent party could be deemed necessary. However, a party only has to meet one of the three criteria in Rule 19(a) to show necessity. The district court did not analyze the applicability of Rule 19(a)(1), which asks whether complete relief can be afforded among the parties to the suit without joining the absent party. Because we find that Rule 19(a)(2)(i) is sufficient to establish Casher's necessary party status, we need not comment on the applicability of either Rule 19(a)(1) or Rule 19(a)(2)(ii).

it "could, as a practical matter, impair [the absent party's] probability of success in a future proceeding and reduce its ability to reach a favorable settlement").

The Picciottos criticize this analysis by the district court because Casher's affidavit opposing the litigation of the federal case in her absence did not assert that her ability to settle the state case could be impaired. However, in making the highly practical determination required by Rule 19(a)(2)(i), a court may draw reasonable, pragmatic inferences from the particular circumstances in the case to protect the absent party. The determination that Casher's state settlement position would likely be impaired by her absence in the federal litigation is just such an inference.

The district court also concluded that Casher's interests could be impaired because an adverse ruling in the federal litigation could cause her to lose her insurance coverage in the state case. In pursuing their conspiracy claim, the Picciottos allege that Casher gave Continental and Great Northern prompt notice of the Picciottos' potential claims against her, allowing the insurance companies to "take charge" and direct Casher's subsequent representation of the Picciottos. The Picciottos allege that the notice was provided to Continental and Great Northern before Casher and her firm acquired their current coverage from TIG. Such an allegation, if proven, would likely cause Casher and

-13-

her firm to lose their TIG coverage and insurance-paid defense in the state court action. The Picciottos counter this argument by asserting that Continental would step in and provide coverage if TIG disclaims its coverage because Casher has "full prior acts" coverage with Continental. Even if that is so, we agree with the district court that Casher has a cognizable interest in maximizing her available coverage by protecting her current insurance coverage and insurance-paid defense. Thus, the court did not abuse its discretion with its necessary party determination.

2. Feasibility in the Diversity Context

As we explained above, necessary parties should be joined "if [f]easible." Fed. R. Civ. P. 19(a). In the traditional analysis, when the court's subject matter jurisdiction is grounded in diversity, the joinder of a nondiverse party is not feasible because such joinder destroys the court's subject matter jurisdiction. In re Olympic Mills Corp., 477 F.3d 1, 8 (1st Cir. 2007); Acton, 668 F.2d at 79. It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The statutory grant of federal jurisdiction in diversity cases gives district courts "original jurisdiction of all civil actions where the matter in controversy . . . is between . . . citizens of different States." 28 U.S.C. § 1332(a). This statutory grant requires complete diversity between the plaintiffs and defendants in an

-14-

action.   Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806);
Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992).  Thus, under
the traditional analysis, if the "matter in controversy" involves
a necessary, nondiverse absentee, the court must determine whether
the litigation may continue in the absence of this person or
whether she is so indispensable that the court should dismiss the
case for want of subject matter jurisdiction.  Acton, 668 F.2d at
80.

As we discuss in Part III below, the Picciottos contend
that this traditional analysis has been dramatically altered by the
adoption of the supplemental jurisdiction statute, 28 U.S.C. §
1367, in 1990.  They argue, in effect, that the supplemental
jurisdiction statute means that, even in diversity cases, the
joinder of nondiverse parties, when no claims are asserted against
them, is now "feasible."  This novel contention would obviate the
need to conduct an indispensability analysis because Casher's
joinder would be "feasible."  However, before we address that
alternative approach, we first proceed with the indispensability
analysis, premised on the traditional notion that Casher's joinder
as a defendant[12] would not be feasible because the Picciottos and
Casher are both Massachusetts citizens.

_____

[12]The Picciottos did argue to the district court that Casher
should be joined as a plaintiff in order to preserve diversity.
The court found that "this makes no sense in the present action,
where Casher's interests are contrary to those of the plaintiffs."
The point is not pressed on appeal.

-15-

3. Indispensable Party

Under Rule 19(b), the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b). The Rule specifies the four factors the court should consider.[13]

In this case, the district court carefully analyzed each factor before determining that Casher is an indispenable party and dismissing the suit. On the first factor ("to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties"), the court reiterated its Rule 19(a)(2)(i) finding that Casher's interest in settling the state law claims against her and retaining her insurance would be prejudiced by an adverse judgment in this case.[14]

---

[13]The factors are:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These factors implicate many of the same practical judgments required by the Rule 19(a) determination.

[14]The district court also found that the defendant insurance companies would be prejudiced by the possibility of "facing multiple, overlapping and perhaps inconsistent judgments stemming from the same actions." We find that the prejudice to Casher is sufficient for the indispensable party analysis. Accordingly, we need not reach the issue of prejudice to the defendant insurance

-16-

On the second factor ("the extent to which, by protective provisions in the judgment, by the shaping relief, or other measures, the prejudice can be lessened or avoided"), the court found that "it would be difficult if not impossible . . . to shape relief that would not implicate Casher's interests."  Given the prejudice that the court identified (the impact on a potential settlement of the state law claims and the potential loss of insurance coverage), we agree that there is no such protective approach possible because the prejudice to Casher would result from the potential outcome of the litigation itself, not the specific terms of any judgment.

On the third factor ("whether a judgment rendered in the person's absence will be adequate"), the court explained that this factor extends beyond the issue of whether relief could be shaped that would satisfy the parties.  It also encompasses "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."  See Provident Tradesmens Bank, 390 U.S. at 111 ("We read [Rule 19's] third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard

---

companies to find that the district court did not abuse its discretion in finding Casher to be an indispensable party.

to complain about the sufficiency of the relief obtainable against them."). Applying this broader view of the third factor, the district court concluded that the striking similarity between the claims in this case against the insurance companies and the claims against Casher and others in the state court litigation "demonstrates the availability of an alternative forum and the efficiency of litigating the entire case in state court."

In discussing the fourth factor, the availability of an adequate remedy in the event of dismissal, the court reiterated this conclusion. The district court found that the remedy would be to join the insurance companies as defendants in the state court litigation and that nothing would prevent the Picciottos from doing so. The Picciottos protest that they will be barred from joining the insurance companies in the state suit by the statute of limitations or a state court injunction.[15]   However, they undoubtedly could have named the insurance companies as defendants in their initial state court pleadings. We doubt that the statute of limitations poses a bar to refiling in state court. See Mass. Gen. Laws ch. 260, § 32 (providing one year to file a new action following a dismissal "for any matter of form."); Corliss v. City

---

[15]Several parties in the consolidated state action have moved for a preliminary injunction enjoining the Picciottos from filing "further lawsuits and/or motions relating to the facts, claims or issues in these consolidated cases without prior approval of the court." There is no indication in the record that the request for such an injunction has been granted.

-18-

of Fall River, 397 F. Supp. 2d 260, 266 (D. Mass. 2005) (holding that a dismissal for want of subject matter jurisdiction is dismissal for a "matter of form"). Even if the Picciottos were, for some reason, unable to sue the insurance companies in state court, it is a result of their own litigation strategy and not a sufficient reason for them to remain in federal court on these claims.

In sum, the district court's conclusion that Casher is an indispensable party was sufficiently supported by findings that satisfy each of the four factors in the Rule 19(b) analysis. Thus, we find no abuse of discretion in the determination that Casher is a necessary and indispensable party in this action.

## III.

Alternatively, the Picciottos argue that, even if Casher is a necessary and indispensable party, her joinder is "feasible" under the supplemental jurisdiction statute, 28 U.S.C. § 1367, and thus the case should not have been dismissed. Section 1367(a), adopted in 1990, provides a grant of subject matter jurisdiction over supplemental claims:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

-19-

> supplemental jurisdiction shall include claims
> that involve the joinder or intervention of
> additional parties.

(Emphasis added.)  Section 1367(b) then limits the applicability of

this supplemental authority in cases brought under the diversity

jurisdiction statute, 28 U.S.C. § 1332:

> In any civil action of which the district
> courts have original jurisdiction founded
> solely on section 1332 of this title, the
> district courts shall not have supplemental
> jurisdiction under subsection (a) over claims
> by plaintiffs against persons made parties
> under Rule 14, 19, 20, or 24 of the Federal
> Rules of Civil Procedure, or over claims by
> persons proposed to be joined as plaintiffs
> under Rule 19 of such rules, or seeking to
> intervene as plaintiffs under Rule 24 of such
> rules, when exercising supplemental
> jurisdiction over such claims would be
> inconsistent with the jurisdictional
> requirements of section 1332.

Citing a law review article,[16] the Picciottos assert that § 1367(b)

altered the traditional analysis and now allows a nondiverse party

to be joined as a defendant under Rule 19 without destroying the

diversity jurisdiction of the court, so long as the plaintiffs do

not assert any claims against the joined defendant.  However, this

argument is fatally flawed.  Without Casher, as we explain below,

there is no viable civil action over which the district court may

---

[16]The Picciottos rely on Thomas D. Rowe, Jr., Stephen B.
Burbank & Thomas M. Mengler, Compounding or Creating Confusion
about Supplemental Jurisdiction? A Reply to Professor Freer, 40
Emory L.J. 943, 955-959, 966-978 (1991).

assert "original jurisdiction." Thus, there is no "original" suit to which Casher may be added as a "supplemental" party.

Prior to the adoption of § 1367, we explicitly rejected an invitation to apply "ancillary jurisdiction," the historical precursor to § 1367's grant of supplemental jurisdiction, to avoid dismissal in a case requiring the joinder of an indispensable, nondiverse party. Acton, 668 F.2d at 79-80. Taking the same approach as the Picciottos, the appellant in Acton argued that, although the joinder of a nondiverse, indispensable party would appear to destroy diversity jurisdiction, that party could be joined under the doctrine of ancillary jurisdiction. Id. at 79. We rejected that argument, concluding that "ancillary jurisdiction 'presupposes the existence of an action that a federal court can adjudicate and should not be used to breathe life into a lawsuit that is not otherwise viable.'" Id. at 80 n.1 (quoting 7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1610, at 99-100 (1972)); see also ZB Holdings, Inc. v. White, 144 F.R.D. 42, 47 (S.D.N.Y. 1992) (concluding that "the term 'original jurisdiction' presupposes a viable lawsuit," and thus rejecting the argument that § 1367 allows for supplemental jurisdiction over nondiverse indispensable parties).[17]

---

[17]In Acton, the nondiverse indispensable party missing from the suit was a plaintiff rather than a defendant. However, for the purposes of our analysis, this distinction is not relevant. In Acton, as in the instant case, it was the plaintiff who was arguing that ancillary jurisdiction applied. As the Acton court explained,

-21-

By definition, the Rule 19(b) indispensability determination means that there is no viable lawsuit without the missing party. Where jurisdiction depends solely on diversity of citizenship, the absence of a nondiverse, indispensable party is not a mere procedural defect. Rather, it destroys the district court's original subject matter jurisdiction. Calcote v. Texas Pac. Coal & Oil Co., 157 F.2d 216, 219, 221 (5th Cir. 1946) ("[W]here jurisdiction depends solely upon diversity of citizenship . . . the absence of indispensable parties absolutely defeats federal jurisdiction."). Thus, ancillary jurisdiction was not available to cure the jurisdictional defect in a diversity case when the absence of an indispensable party meant that there was no case over which the district court could exercise original jurisdiction.

The plain language of the supplemental jurisdiction statute incorporates this well established requirement that there be a viable action over which the district court has "original jurisdiction" before supplemental jurisdiction may be considered. Section 1367(a) grants supplemental jurisdiction over related claims in "any civil action of which the district courts have

---

allowing a plaintiff to use ancillary jurisdiction in this manner would permit that plaintiff to "create diversity jurisdiction simply by omitting [the indispensable coplaintiff] from the original complaint and then waiting for [that coplaintiff] to be joined under Rule 19." Acton, 668 F.2d at 79-80. This ruse must fail whether the nondiverse party to be joined would be aligned as a plaintiff or a defendant.

original jurisdiction," and § 1332 defines the requirements for "original jurisdiction" in diversity cases. In Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005), the Court explained how these two jurisdictional provisions interact: "Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere." Id. at 554. The complete diversity requirement is consistently imposed on a case-by-case, rather than a claim-by-claim, basis: "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Id. at 553 (citing Strawbridge, 7 U.S. 267; Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 (1978)).

The Court in Allapattah dubbed this view of complete diversity the "contamination theory" because the inclusion of a nondiverse party "contaminates every other claim in the complaint, depriving the court of original jurisdiction over any of these claims." Id. at 560. The "contamination theory" makes sense in the context of the complete diversity requirement, the Court said, because "the presence of nondiverse parties on both sides of a lawsuit eliminates the justification for providing a federal

-23-

forum."  Id. at 562.[18]  Additionally, the "contamination theory"

prevents plaintiffs from creating diversity jurisdiction "simply by

omitting [the nondiverse party] from the original complaint and

then waiting for [that party] to be joined under Rule 19."  Acton,

668 F.2d at 79-80; accord Allapattah, 545 U.S. at 565 ("The

contamination theory . . . means this ruse would fail. . . .").

        Given the continuing vitality of the "contamination

theory," the Picciotos' argument fails at the § 1367(a) threshold.

Casher must be joined because she is both necessary and

indispensable.  The conclusion that she is indispensable means that

there is no viable suit without her presence, and thus no suit over

which the district court has original jurisdiction.  Yet, if she

were joined, her presence would destroy the district court's

---

[18]The justification for diversity jurisdiction cited by the
Court "is to provide a federal forum for important disputes where
state courts might favor, or be perceived as favoring, home-state
litigants."  545 U.S. at 553-54.  Although the Allapattah majority
rejected the "contamination theory" with regard to the amount-in-
controversy requirement, the Court distinguished that requirement
from the diversity requirement where the "contamination theory"
remains applicable.  Id. at 562.  The four dissenting justices in
Allapattah agreed with the majority that the supplemental
jurisdiction statute did not alter the "contamination theory"
approach to complete diversity:

        "'[O]riginal jurisdiction' in § 1367(a) has
        the  same  meaning  in  every  case:  [An]
        underlying  statutory  grant  of  original
        jurisdiction must be satisfied. . . . Section
        1332 . . . predicates original jurisdiction on
        the identity of the parties (i.e., [their]
        complete diversity) . . . .'"

Id. at 592-93 (Ginsburg, J., dissenting) (quoting Rosario Ortega v.
Star-Kist Foods, Inc., 370 F.3d 124, 139-40 (1st Cir. 2004)).

original jurisdiction under § 1332.  Thus no suit over which the
district court has original jurisdiction exists here without Casher
- because the district court ruled that her presence was
indispensable - and no suit exists with Casher - because her
presence will destroy diversity.[19]   Thus, the supplemental
jurisdiction statute does not apply because there is no civil
action to which any additional claims may attach.

Resisting the traditional analysis of the relationship
between joinder and diversity jurisdiction, the Picciottos
emphatically assert that they will not raise any claims against
Casher, and thus § 1367(b)'s prohibition on supplemental
jurisdiction "over claims by plaintiffs against persons made
parties under Rule . . . 19 . . . , when exercising supplemental
jurisdiction over such claims would be inconsistent with the
jurisdictional requirements of section 1332" does not apply.  They
contend that § 1367(b) dramatically alters the traditional analysis
and permits nondiverse parties to be joined, so long as no claims
are asserted against them.

---

[19]We note that the inquiry into indispensability is an
equitable, not a jurisdictional, inquiry.  See Charles Alan Wright,
Arthur R. Miller & Mary Kay Kane, 7 Federal Practice & Procedure:
Civil 3d § 1611, at 169.  However, in the context of a suit where
jurisdiction is founded solely on diversity of citizenship and
where the indispensable party is nondiverse, the indispensability
conclusion has the effect of destroying diversity and, thus,
eliminating any basis for original jurisdiction.

In fact, § 1367(b)'s restrictions on supplemental jurisdiction offer no affirmative grant of jurisdiction and do not alter the traditional analysis with regard to the complete diversity requirement. See Allapattah, 545 U.S. at 554 ("Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere."). The plain language of § 1367(a) makes it clear that supplemental jurisdiction does not apply where, as here, the district court lacks original jurisdiction over any viable suit.[20]

Even if the language of § 1367(b) were relevant, the Picciottos' assertion that their suit should survive because they would assert no claims against Casher is illogical. We fail to comprehend how Casher could be joined as a defendant here unless the Picciottos were ordered to amend their complaint to assert claims against her. As Professors Arthur and Freer explain:

> There can be no defendant against whom no plaintiff asserts a claim for relief.
> . . .
> If the plaintiff . . . really has no claim against the absentee, how under the Federal Rules can the absentee be joined as a defendant? How can it be included in the

---

[20] In cases involving the joinder of indispensable nondiverse parties, the incorporation of the "contamination theory" in § 1367(a)'s definition of original jurisdiction renders § 1367(b) "superfluous." Allapattah, 545 U.S. at 564-65. However, § 1367(b) does apply in cases involving the amount-in-controversy element of § 1332 diversity jurisdiction, and thus the statutory language is not, in fact, entirely superfluous. Id. at 560.

> plaintiff's complaint?  How can it file an
> answer asserting its defenses to the
> plaintiff's claims if there are none?  What
> does it file?  What does it say?  Why does it
> say it?

Thomas C. Arthur & Richard D. Freer, Grasping at Burnt Straws: The

Disaster of the Supplemental Jurisdiction Statute, 40 Emory L.J.

963, 970-71 (1991) (footnotes omitted).  Moreover, we fail to see

how supplemental jurisdiction, which supports the addition of

related claims, could be helpful to the Picciottos in their

argument for the joinder of a party against whom no claims would be

asserted.  Hence, the district court made no error in determining

that it could not exercise supplemental jurisdiction to avoid the

dismissal of the Picciottos' suit for nonjoinder of an

indispensable party.[21]

Affirmed.

---

[21] The Picciottos also assert on appeal that the district court
violated their due process rights by dismissing their complaint as
to all defendants, even though only some defendants had moved for
a Rule 19 dismissal.  The claim is without merit.  "We have
squarely held that a district court may raise the issue of
nonjoinder sua sponte." Delgado v. Plaza Las Americas, Inc., 139
F.3d 1, 2 (1st Cir. 1998).  The Picciottos also assert that their
due process rights were violated by the court's failure to "honor
[their] request for oral arguments pursuant to U.S. District Court
Local Rule 7.1(D)." Even if a request for oral argument pursuant
to a local rule could ever implicate due process concerns (an issue
on which we intimate no opinion), the record on appeal reveals that
the Picciottos did not request an oral argument on the motion to
dismiss for nonjoinder.  Thus, we need not even consider their
assertion of a due process violation.  See North Bridge Assocs.,
Inc. v. Boldt, 274 F.3d 38, 44 (1st Cir. 2001) ("It can hardly be
error for the court to withhold an opportunity appellants did not
request to add to their already substantial response to the
motion.").

-27-